UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
SELENA STALEY, VIVIAN HOLMES, and
OLIVE IVEY, on behalf of themselves and
all others similarly situated,
Plaintiffs,

-against-                                                                No. 22-cv-6781

FOUR SEASONS HOTELS AND RESORTS,
HOTEL 57 SERVICES, LLC, HOTEL 57, LLC,
TY WARNER HOTELS & RESORTS LLC,
and H. TY WARNER,

Defendants.
---------------------------------------------------------X


# REPLY OF DEFENDANT FSR INTERNATIONAL HOTELS INC. IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION


**STOKES WAGNER, ALC**
Paul Wagner
John Hunt
903 Hanshaw Road
Ithaca, New York 14850
(607) 257-5165

*Attorneys for Defendant,*
*FSR International Hotels Inc.*
*(incorrectly sued as Four Seasons*
*Hotels and Resorts)*

**TABLE OF CONTENTS**

**INTRODUCTION** .................................................................................................................. 1

**ARGUMENT** ........................................................................................................................ 2

    THE PLAINTIFFS CANNOT AVOID ARBITRATION BECAUSE THEIR EMPLOYER HAS NOT OFFERED TO PAY THEM NO-FAULT SEPARATION PAY FOR A PERMANENT LAYOFF. ................................... 2

    THE WARN ACT DEFINITIONS DO NOT APPLY TO THE CIRCUMSTANCES OF THIS CASE. ........... 4

    PLAINTIFFS' CLAIMS ARE SIMILAR TO ALLEGATIONS OF CONSTRUCTIVE DISCHARGE, WHICH IS EXPLICITLY ENCOMPASSED BY THE ARBITRATION AGREEMENT. ............................................... 5

    PURSUANT TO SUPREME COURT AND SECOND CIRCUIT PRECEDENT, ANY QUESTIONS ABOUT ARBITRABILITY IN THIS CASE SHOULD BE DECIDED BY THE ARBITRATOR. ................................. 6

    THE CLASS WAIVER IS NOT DEPENDENT ON INVOCATION OF THE MEDIATION/ARBITRATION PROVISIONS, BUT ONLY ON THE PLAINTIFFS' FAILURE TO OPT OUT OF THEM. ............................ 7

**CONCLUSION** ..................................................................................................................... 8

**TABLE OF AUTHORITIES**

C<span>ASES</span>

*Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996) ------------------------ 5

*Contec Corp. v. Remote Sol.Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) ---------------------------- 7

*Emilio v. Spring Spectrum L.P.*, 508 F.App'x 3, 5-6 (2d Cir. 2013) ---------------------------------- 7

*Henry Schein, Inc. v. Archer and White Sales, Inc.,* 139 S.Ct. 524, 529 (2019) --------------------- 6

*Horton v. Dow Jones & Co., Inc.*, 804 F. App'x 81, 84 (2d Cir. 2020) ------------------------------- 8

*International Eng' & Constr. S.A. v. Baker Hughes*, 399 F.Supp.3d 194, 201 (S.D.N.Y. 2019) -- 7

*Murray v. UBS Secs. LLC*, 2014 WL 285093, at *13 (S.D.N.Y., Jan. 27, 2014) -------------------- 7

*Ranieri v. Bell Atl. Mobile*, 304 A.D.2d 353, 354, 759 N.Y.S.2d 448, 449 (2003) ------------------ 8

*Tsadilas v. Providian Nat. Bank*, 13 A.D.3d 190, 786 N.Y.S.2d 478, 480 (1st Dep't 2004) ------- 8

*UBS Securities LLC v. Prowse*, 2020 WL 433859, *4 (S.D.N.Y., Jan. 27, 2020) ------------------- 7

W*hidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 73 (2d Cir. 2000) ---------------------- 5

S<span>TATUTES</span>

WARN (29 U.S.C. §2102(c)) ---------------------------------------------------------------------------------- 4

O<span>THER</span> A<span>UTHORITIES</span>

AAA Employment Rule 6(a) ---------------------------------------------------------------------------------- 7

**INTRODUCTION**

Plaintiffs' opposition to Defendants' motions to compel arbitration is based almost entirely on their assertion that this case involves "No-Fault termination and permanent layoffs," which they contend are exempted from the arbitration provisions of the EmPact agreement. Defendant FSR International Hotels Inc. ("FSR"), however, has flatly denied that Plaintiffs were terminated or permanently laid off. *See* Answer of Defendant FSR, Dkt. 42, filed December 5. In essence, Plaintiffs are asking this Court to decide a primary issue in this case – perhaps the ultimate issue in this case – not after the jury trial they have demanded, but on a Motion to Compel Arbitration. This plainly is inappropriate.

Moreover, the arbitration "exception" Plaintiffs cite is not an exception at all. It specifies that, in the event the employer permanently lays off the Plaintiffs through no fault of theirs ***and*** offers to pay them No-Fault Separation Pay as a consequence, Plaintiffs agree to accept separation pay in lieu of their right and obligation to arbitrate. In the present case, Defendant FSR denies that Plaintiffs have been terminated or permanently laid off, Plaintiffs acknowledge that they have not received an offer of No-Fault Separation Pay from their employer, and there is a dispute among all of the parties as to whether separation pay is owed. This provision of the arbitration agreement therefore does not apply.

In any event, Plaintiffs' entire argument concerns the ***arbitrability*** of Plaintiffs' claims. The Supreme Court has decisively held that where an agreement clearly and unmistakably delegates questions of arbitrability to the arbitrator, that delegation should be upheld by the courts. Moreover, the Second Circuit has recognized that where an agreement incorporates the American Arbitration Association's rules, such incorporation constitutes clear and unmistakable evidence of

1

delegation. As the agreement in this case expressly incorporates the AAA's Rules, any issues of arbitrability are for the arbitrator.

Finally, the class action waiver is neither inextricably intertwined nor dependent on invocation of the arbitration procedures in the agreement. The Plaintiffs declined to opt out of EmPact, which is the only prerequisite to the efficacy of the class action waiver, and they must be held to their bargain.

## ARGUMENT

A. The Plaintiffs Cannot Avoid Arbitration Because their Employer Has Not Offered to Pay Them No-Fault Separation Pay for a Permanent Layoff.

In their Opposition, the Plaintiffs fail to comprehend that they cannot simply allege a permanent layoff to avoid the obligation to arbitrate their dispute under EmPact. Instead, once the Plaintiffs agreed to the terms of EmPact, only their employer could choose to preclude arbitration by offering to pay them No-Fault Separation Pay for a permanent layoff. Because their employer, Hotel 57 Services, LLC, has not offered to pay them No-Fault Separation Pay for a permanent layoff and they have not accepted the same, their contractual obligation to arbitrate their dispute remains squarely intact.

The introductory portion of Plaintiffs' Complaint, entitled, "Nature of the Case," claims that "Plaintiffs and the other similarly situated employees were effectively terminated from their employment when their furloughs began." Complaint ¶ 3. Defendant FSR, however, has consistently denied that Plaintiffs or other Hotel employees have been terminated from their employment. (*See, e.g.*, Answer of FSR at ¶¶ 3-5, 17-19, Dkt. 42). This dispute is a primary issue in this case.

In their Opposition, Plaintiffs rely almost entirely on the above-quoted allegation, which has yet to be proved, and on the following two sentences in EmPact:

> If I receive a permanent layoff with no right of recall or I am terminated for no fault, my termination will be considered "no-fault." I understand that I may not seek mediation or arbitration of a permanent lay-off or "no-fault" termination under Step 6 of C.A.R.E.

Dkt. 43.1 (Exhibit A, EmPact) at p. 56. Nevertheless, the Plaintiffs misconstrue the context of these sentences, which is important, as the paragraph goes on to say:

> ***However, in the event of a permanent layoff or "no-fault" termination, I will be eligible for separation pay in accordance with the "No-Fault Separation Pay Schedule" in effect at the time of my separation*** unless I have opted out by signing the "Opt-Out Verification" attached to my EmPact. ***By accepting No-Fault Separation Pay, I am acknowledging that my termination was "no-fault" and that I am not entitled to challenge my termination through the mediation/arbitration provisions of C.A.R.E***.

Dkt. 43.1 at p. 56-57 (emphasis added).[1] In other words, the provision of the agreement relied upon by the Plaintiffs states that the employer would first have to offer, and the Plaintiffs would have to accept separation pay to avoid their obligation to arbitrate their putative dismissals under EmPact. The option to preclude arbitration belongs to the employer upon an offer of separation pay, not to the Plaintiffs. The language of the provision makes that clear when it states, "By accepting No-Fault Separation Pay, I am acknowledging … that I am not entitled to challenge my termination through the mediation/arbitration provisions of C.A.R.E." *Id*. The employer had the power to preclude the Plaintiffs from arbitrating this dispute, but it has not done so. Moreover, Defendant FSR has denied that the Plaintiffs have been permanently laid off or that their

---

[1] Plaintiffs in their Opposition argue that the EmPact agreement attached to the Ty Warner Defendants' Motion to Compel Arbitration is not the applicable EmPact agreement. However, the pertinent language is identical in both, and in this brief, FSR cites to the version Plaintiffs assert is correct. *Compare* Dkt. 43.1, pp. 54-57 with Dkt. 30., pp. 55-58.

3

employment has been terminated.  (*See, e.g.*, FSR's Answer at ¶¶ 3-5, 17-19, Dkt. 42).  The requirement to use the arbitration process, rather than court litigation, remains firmly intact.[2]

    B. <u>The WARN Act Definitions Do Not Apply to the Circumstances of This Case</u>.

Plaintiffs assert that they must be considered permanently laid off because a WARN notice is required if a layoff lasts at least six months.  This interpretation puts more weight on the WARN Act than it can reasonably bear.  Section 2102(c) of WARN (29 U.S.C. §2102(c)), states (emphasis added): "A layoff of more than 6 months which, at its outset, was announced to be a layoff of 6 months or less, ***shall be treated as*** an employment loss ***under this chapter*** unless (1) the extension beyond 6 months is caused by business circumstances … not reasonably foreseeable at the time of the initial layoff; and notice is given at the time it becomes reasonably foreseeable that the extension beyond 6 months will be required."

The definitions in the WARN Act were created for the purpose of defining when a WARN notice is required.  The Act does not create a formal legal definition of "permanent layoff" for all circumstances under all possible legal theories, and has no bearing on defining the term "permanent layoff" in a private contract.  The circumstances of this case, which arose from conditions caused by the most significant pandemic since the great influenza of 1918, are unprecedented in modern law and cannot be simplistically summarized with a legal formulation from a statute whose specific purpose is quite narrow.

---

[2] Moreover, Plaintiffs did not contradict the equitable estoppel argument made by Defendant FSR in its Motion to Compel Arbitration.  Therefore, if the Court orders the Plaintiffs to arbitration, the Plaintiffs have effectively conceded that their claims against FSR must also be arbitrated.

C.  <u>Plaintiffs' Claims are Similar to Allegations of Constructive Discharge, Which is Explicitly Encompassed by the Arbitration Agreement</u>.

Plaintiffs essentially argue that they have been constructively discharged, that is, forced to seek work elsewhere because the lengthy furlough has made their "working" conditions intolerable. *Cf.* W*hidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 73 (2d Cir. 2000) ("Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."); *see also Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996) ("Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily."). Notably, constructive discharge is one of the categories of disputes that are explicitly encompassed by EmPact's broad arbitration agreement:

> **MEDIATION/ARBITRATION**. If I am not satisfied with the General Manager's written decision in STEP 5, and the complaint is based on one of the following types of claims as defined by law:
> **a**. employment discrimination;
> **b**. harassment as it relates to my employment;
> **c**. a wage or hour violation;
> **d**. or termination of my employment from the Hotel (**including "constructive discharge"**, but not a permanent layoff)
>
> then I must submit my complaint to be heard by an independent mediator/arbitrator unless I have chosen to opt out of the mediation/arbitration provisions by following the opt-out procedure provided on page 61.

Dkt. 43.1 (Exhibit A, EmPact) at p. 54 (emphasis added).

5

D.  <u>Pursuant to Supreme Court and Second Circuit Precedent, Any Questions about Arbitrability in this Case Should be Decided by the Arbitrator.</u>

The Supreme Court recently reconfirmed that the parties to an arbitration agreement "may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 529 (2019). These threshold arbitrability questions may be delegated to the arbitrator, "so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Id*. at 530. If an agreement reflects such an intent, "a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Id*. The court must defer to the arbitrator even where the court may believe that a motion to compel arbitration is "wholly groundless." *Id*. at 531.

The EmPact agreement in the present case contains such "clear and unmistakable evidence" of delegation through its incorporation of the AAA's rules. *See* Dkt. 43.1 (Exhibit A, EmPact) at p. 55:

> What is Mediation/Arbitration? My complaint will be submitted to and resolved through a two-stage process of (a) non-binding mediation, and then, if necessary, (b) mutually binding arbitration. Both the mediation and arbitration stages shall be administered by the American Arbitration Association (the "Association") or another agency if the Hotel and I so agree.
> …
> The Association's "National Rules for the Resolution of Employment Disputes" will be used in any mediation and/or arbitration proceeding. A copy of these rules is available from the Human Resources Director or on their web site at www.adr.org.

The parties, by agreeing to AAA jurisdiction and AAA rules, have empowered the arbitrator to decide the issue of arbitrability where it is disputed, as called for in Rule 6 of the AAA employment rules:

6

> 6. Jurisdiction
>
> a. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

AAA Employment Rule 6(a)

(https://www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf), at p. 12.

In *Contec Corp. v. Remote Sol.Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005), the Second Circuit held that an arbitration clause that incorporates the AAA's rules "that empower an arbitrator to decide issues of arbitrability ... serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator'." *See also Emilio v. Spring Spectrum L.P.*, 508 F.App'x 3, 5-6 (2d Cir. 2013)(JAMS arbitrations); *UBS Securities LLC v. Prowse*, 2020 WL 433859, \*4 (S.D.N.Y., Jan. 27, 2020)(JAMS arbitrations); *International Eng' & Constr. S.A. v. Baker Hughes*, 399 F.Supp.3d 194, 201 (S.D.N.Y. 2019)(AAA arbitrations); *Murray v. UBS Secs. LLC*, 2014 WL 285093, at \*13 (S.D.N.Y., Jan. 27, 2014)(JAMS and FINRA arbitrations). Here, EmPact incorporates the AAA's Employment Rules and AAA Rule 6(a) grants the arbitrator the authority to rule on the existence, scope or validity of the arbitration agreement. Given this express incorporation, any questions of arbitrability in this case should be decided by the arbitrator.

E. <u>The Class Waiver is Not Dependent on Invocation of the Mediation/Arbitration Provisions, but Only on the Plaintiffs' Failure to Opt Out of Them</u>.

The arbitration agreement contains a class waiver provision that stands apart from any dispute regarding what types of claims are amenable to arbitration. "To the extent permitted by law, I understand that ***if I do not opt out of the mediation/arbitration provisions of C.A.R.E***., I waive my right to have my claims submitted as part of a class or collective action in court ..." Dkt. 43.1 (Exhibit A, EmPact) at p. 56 (emphasis added). Plaintiffs did not opt out of these provisions. Therefore, they have waived the right to have their claims submitted as part of a class or collective

7

action in court. The language is plain. It does not state that the class waiver depends on whether the mediation/arbitration process is ***invoked*** or ***disputed***; instead, it depends on whether the Plaintiffs opted out of the mediation/arbitration provisions, which they undisputedly did not.

Under New York law, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Horton v. Dow Jones & Co., Inc.*, 804 F. App'x 81, 84 (2d Cir. 2020) (citation omitted). And "a contractual proscription against class actions is neither unconscionable nor violative of public policy." *Id.*, citing *Tsadilas v. Providian Nat. Bank*, 13 A.D.3d 190, 786 N.Y.S.2d 478, 480 (1st Dep't 2004). *See also Ranieri v. Bell Atl. Mobile*, 304 A.D.2d 353, 354, 759 N.Y.S.2d 448, 449 (2003) ("[W]e are in accord with authorities holding that a contractual proscription against class actions, such as contained in the Agreements, is neither unconscionable nor violative of public policy."). The class action waiver should be enforced as written.

## CONCLUSION

Plaintiffs have not presented any valid basis for denying the enforcement of the arbitration agreement in this case. Defendant FSR respectfully requests that its motion, and the motion of its co-defendants, be granted.

Dated: New York, New York
December 13, 2022

**STOKES WAGNER, ALC**

*/s/ Paul E. Wagner*
_____
Paul Wagner
John Hunt
903 Hanshaw Road
Ithaca, New York 14850
(607) 257-5165

*Attorneys for Defendant,
FSR International Hotels Inc.
(incorrectly sued as Four Seasons
Hotels and Resorts)*

9

## CERTIFICATE OF SERVICE

I hereby certify that on this date a copy of the foregoing "REPLY OF DEFENDANT FSR INTERNATIONAL HOTELS INC. IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION" was electronically filed using the Court's CM/ECF system which will automatically send copies of same to counsel of record below:

**Evan Craig Brustein**
Brustein Law PLLC
299 Broadway
Ste 17th Floor
New York, NY 10007
212-233-3900
212-285-0531 (fax)
evan@brusteinlaw.com

*Counsel for Plaintiffs Selena Staley, Vivian Holmes, and Olive Ivey and the proposed Class*

**Maya Risman**
Risman & Risman, P.C.
299 Broadway
Ste Fl. 17
New York, NY 10007
212-233-6400
info@risman-law.com

*Counsel for Plaintiffs Selena Staley, Vivian Holmes, and Olive Ivey and the proposed Class*

**Kathryn Lundy**
Freeborn & Peters LLP
1155 Avenue of the Americas
Ste 26th Floor
New York, NY 10036
212-218-8760
212-218-8761 (fax)
klundy@freeborn.com

*Attorneys for Defendants Hotel 57 Services, LLC Hotel 57, LLC, Ty Warner Hotels & Resorts LLC and H. Ty Warner*

**Marc Brian Zimmerman**
Freeborn & Peters LLP
1155 Avenue of the Americas
Ste 26th Floor
New York, NY 10036
212-218-8760
212-218-8761 (fax)
mzimmerman@freeborn.com

*Attorneys for Defendants Hotel 57 Services, LLC Hotel 57, LLC, Ty Warner Hotels & Resorts LLC and H. Ty Warner*

Dated: December 13, 2022

**STOKES WAGNER, ALC**

*/s/ Paul E. Wagner*
_____

Paul Wagner
903 Hanshaw Road
Ithaca, New York 14850
(607) 257-5165
pwagner@stokeswagner.com

*Attorneys for Defendant,*
*FSR International Hotels, Inc.*
*(incorrectly sued as Four Seasons*
*Hotels and Resorts)*