UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

SELENA STALEY, VIVIAN HOLMES, and OLIVE IVEY, on behalf of themselves and all others similarly situated,

                  Plaintiffs,

v.

FOUR SEASONS HOTELS AND RESORTS, HOTEL 57 SERVICES, LLC, HOTEL 57, LLC, TY WARNER HOTELS & RESORTS, LLC, and H. TY WARNER

                  Defendants.

------------------------------------------------------------------- X

Case No.: 22-CV-6781 (JSR)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE WARNER DEFENDANTS' MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS AND STAY ACTION**

**FREEBORN & PETERS, LLP**
Marc B. Zimmerman
Kathryn T. Lundy
1155 Avenue of the Americas, 26th Floor
New York, NY 10036
(212) 218-8760

*Attorneys for Defendants*
*Hotel 57 Services, LLC, Hotel 57, LLC, Ty*
*Warner Hotels & Resorts, LLC and*
*H. Ty Warner*

## **TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    POINT I - PLAINTIFFS SHOULD BE COMPELLED TO ARBITRATE THE
    CLAIMS ALLEGED IN THE COMPLAINT ........................................................................ 2

        A.   Plaintiffs' claims are subject to the arbitration agreement ............................................... 3

            1.   Plaintiffs cannot sidestep the arbitration agreement by
               asserting legal conclusions couched as factual allegations ........................................ 4

            2.   All Warner Defendants are entitled to enforcement of the
               EmPact Agreement ..................................................................................................... 7

    POINT II - PLAINTIFFS' CLASS CLAIMS MUST BE DISMISSED ................................... 7

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London)*,
  923 F.2d 245 (2d Cir. 1991)..................................................................................................3

*Lawyers' Fund for Client Prot. Of State of N.Y. v. Bank Leumi Trust Co. of N.Y.*,
  94 N.Y.2d 398 (2000) ............................................................................................................9

*Lismore v. Societe Generale Energy Corp.*,
  No. 11 Civ. 6705 (AJN), 2012 WL 3577833 (S.D.N.Y. Aug. 17, 2012) .................................4

*Morse/Diesel, Inc. v. Trinity Indus., Inc.*,
  67 F.3d 435 (2d Cir. 1995).....................................................................................................5

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)...................................................................................................................3

*WTA Tour, Inc. v. Super Slam Ltd.*,
  339 F. Supp. 3d 390 (S.D.N.Y. 2018)................................................................................2, 3

**STATUTES**

WARN Act.......................................................................................................................................6

**PRELIMINARY STATEMENT**

In opposition to the Warner Defendants' motion, Plaintiffs concede, or do not dispute, all the facts establishing the motion should be granted:

- Plaintiffs concede they entered into the EmPact Agreement;

- Plaintiffs concede the EmPact Agreement is a valid contract;

- Plaintiffs concede the EmPact Agreement contains a valid arbitration clause and class action waiver;

- Plaintiffs concede they did not "opt out" of either the arbitration clause or class and collective action waiver in the EmPact Agreement, despite having the opportunity to do so;

- Plaintiffs concede the arbitration clause requires arbitration of claims relating to termination of their employment; and

- Plaintiffs concede their claims are related to their alleged terminations of employment.

These concessions are fatal to Plaintiffs' attempt to avoid arbitration. Plaintiffs' claims are arbitrable, and must be individually arbitrated, under the EmPact Agreement.

Rather than contest the facts, Plaintiffs instead try to re-write them by mischaracterizing their own claims. Ignoring their own factual allegations -- in which Plaintiffs specifically allege that their employment was "terminated" at least 28 times -- Plaintiffs now argue that their claims are "excluded" or "barred" from their express arbitration agreement and class and collective action waiver solely because in some Complaint allegations *Plaintiffs* characterize their employment status with the Hotel as having been subject to a "permanent layoff" or "no-fault termination."

Plaintiffs cannot avoid arbitration by asserting legal conclusions couched as facts. Plaintiffs' own allegations demonstrate that all their claims are based on their alleged "terminations," not anything else. Plaintiffs make no allegations that the Hotel designated Plaintiffs' employment status as having been permanently laid off or terminated for no fault, nor

can they. Plaintiffs concede the Hotel neither offered, nor paid to Plaintiffs, "No-Fault Separation Pay" to establish a permanent layoff under the EmPact Agreement. Accordingly, Plaintiffs cannot unilaterally designate that such purported employment action occurred to avoid their explicit contractual obligations to arbitrate and waive class claims pursuant to the EmPact Agreement. Plaintiffs are bound by their agreement to individually arbitrate all their claims, and the instant motion should be granted in its entirety.

## ARGUMENT

### POINT I

### PLAINTIFFS SHOULD BE COMPELLED TO ARBITRATE THE CLAIMS ALLEGED IN THE COMPLAINT

**A.    Plaintiffs' claims are subject to the arbitration agreement.**

Plaintiffs concede they "entered into the EmPact Agreement with the Hotel" and "[t]he EmPact Agreement constitutes a valid contract between Plaintiffs and Defendants". *See* Plaintiffs' Memorandum of Law in Opposition of the instant motion, dated December 6, 2022 (Dkt. 44) ("Pl. Opp. Memo.") at p. 6; Compl. at ¶¶ 210-211, 221-222, 236-237).[1] Plaintiffs do not dispute that they failed to opt out of the arbitration agreement and class and collective action waiver contained in the EmPact Agreement by executing a written C.A.R.E. Opt-Out Verification. Accordingly, in deciding this motion, the Court need only determine that Plaintiffs' claims are subject to the arbitration agreement contained in the EmPact Agreement. *See WTA Tour, Inc. v. Super Slam*

---

[1] Plaintiffs state they signed a slightly different version of the EmPact Agreement than the version referenced in the Moving Memo. (*see* Pl. Opp. Memo. at p. 5, n. 2) and submit such version in opposition to this motion (*see* Declaration of Evan Brustein, dated December 5, 2022 at Exh. 1 (Dkt. 43-1) (the "EmPact Agreement"). This distinction is immaterial. Both versions of the EmPact Agreement (Dkt. 30-1 (submitted by the Warner Defendants) and Dkt. 43-1 (submitted by Plaintiffs)) contain *identical language* with respect to the C.A.R.E. procedure and arbitration agreement and class and collective action waiver agreement at issue. For the purposes of this motion, the Warner Defendants accept Plaintiffs' representations that they received, signed and are bound by the terms of, the version of the EmPact Agreement submitted by Plaintiffs.

*Ltd.*, 339 F. Supp. 3d 390, 399 (S.D.N.Y. 2018) (*citing David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 249 (2d Cir. 1991) ("A court faced with a petition to compel arbitration must decide two questions: Whether the parties agreed to arbitrate, and whether the claims fall within the scope of the arbitration agreement."). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983).

Plaintiffs also concede all their claims are related to the termination of their employment and do not dispute the applicability of the EmPact Agreement's arbitration provision to claims relating to the termination of Plaintiffs' employment. In opposition, Plaintiffs argue only that claims related to "permanent layoff" or "no-fault termination" are excluded from arbitration:

> Here, the Plaintiffs' allegations are related to their alleged terminations of employment, however, those terminations are specifically "permanent layoffs" that are excluded under the EmPact Agreement's mediation/arbitration provision pursuant to C.A.R.E[.] and separation pay as a result of a "no-fault" termination.
>
> As the EmPact Agreement clearly excludes claims related to "permanent layoffs" and "no-fault terminations," the question for the Court is if the claims brought in this action fall in either of these categories.
> (Pl. Opp. Memo. at pp. 14-15.)

Plaintiffs' contention perverts the EmPact Agreement by putting the cart before the horse.

The EmPact Agreement provides that if the Hotel pays an employee "No-Fault Separation Pay" and the employee accepts such payment, the employee is precluded from challenging the Hotel's decision to permanently lay off a Hotel employee or terminate a Hotel employee for no fault. It does not, conversely, permit Plaintiffs to evade their express agreement to arbitrate claims relating to the termination of their employment by unilaterally mischaracterizing circumstances as a "permanent layoff" or "no-fault termination" where the Hotel did not so designate any such action or pay to them No-Fault Separation Pay.

3

### 1. Plaintiffs' cannot sidestep the arbitration agreement by asserting legal conclusions couched as factual allegations.

Plaintiffs mislead the Court by arguing "Defendants do not dispute Plaintiffs' allegations in the Complaint that their employment ended because of ether a "permanent layoff" or a "No-Fault termination". Pl. Opp. Memo. at p. 5. In the Memorandum of Law in Support of the instant motion, dated November 15, 2022 (Dkt. 31) ("Moving Memo."), the Warner Defendants demonstrated the Complaint is replete with dozens of allegations confirming Plaintiffs' employment was terminated, with no reference whatsoever to a "permanent layoff" or "no-fault termination" (*see* Compl. at ¶¶ 139, 140, 141, 142, 166, 168(b), 168(c), 178, 179, 181, 182, 184, 186, 187, 188, 189, 190, 194, 195, 196, 197, 198, 200, 201, 203, 204, 205, 206). Plaintiffs even fail to allege "permanent layoff" or a "no-fault termination" as purported "common questions of law and fact affecting the rights and members of the Class" (*see* Compl. at ¶¶ 168(a)-(e)).

Plaintiffs cannot now avoid the majority of their own allegations in favor of an unsupported legal conclusion that they experienced a "permanent layoff" or "no-fault termination" to evade their arbitration agreement and class waiver -- particularly where, as here, such legal conclusion goes to the merits of Plaintiffs' claims.[2] *Lismore v. Societe Generale Energy Corp.*, No. 11 Civ. 6705 (AJN), 2012 WL 3577833, at *3 (S.D.N.Y. Aug. 17, 2012) is on point.

In *Lismore*, this Court enforced an arbitration agreement, determining, as here, a plaintiff could not avoid an obligation to arbitrate based on "a legal conclusion couched as a factual allegation that the Court need not credit." *Id*. Dispensing with such legal conclusions, this Court held "there is no sufficient allegation in the Complaint that the arbitration clause [in the parties' written agreement] does not govern any dispute arising from Plaintiff's employment…." *Id*. at *5.

---

[2] Plaintiffs' Third, Fourth and Fifth Causes of Action alleging non-payment of No-Fault Separation Pay hinges on the legal conclusion that Plaintiffs "receive[d] receive a permanent layoff with no right of recall or I am terminated for no fault" *See* EmPact Agreement, pp. 56-57.

4

The same is true here. Plaintiffs label certain actions as "permanent layoffs" or "no-fault terminations" and argue such mischaracterization unilaterally "exempts" or "bars" the application of their arbitration and class waiver agreements. Plaintiffs are categorically wrong. Under the EmPact Agreement, a "permanent layoff" or "'no-fault' termination" under the EmPact Agreement occurs only when the Hotel designates that action and offers (and an employee accepts) No-Fault Separation Pay:

> If I receive a permanent layoff with no right of recall or I am terminated for no fault, my termination will be considered "no-fault." I understand that I may not seek mediation or arbitration of a permanent lay-off or "no-fault" termination under Step 6 of C.A.R.E. However, in the event of a permanent layoff or "no-fault" termination, I will be eligible for separation pay in accordance with the "No-Fault Separation Pay Schedule" in effect at the time of my separation unless I have opted out by signing the "Opt-Out Verification" attached to my EmPact $^{SM}$.
>
> By accepting No-Fault Separation Pay, I am acknowledging that my termination was "no-fault" and that I am not entitled to challenge my termination through the mediation/arbitration provisions of C.A.R.E.
> *See* EmPact Agreement, pp. 56-57.

In such event, an employee elects to forego the right to challenge such action through the arbitration agreement. *Id*. This provision simply prevents an employee from accepting No-Fault Separation Pay and subsequently challenging their termination at arbitration.[3]

---

[3] Plaintiffs misconstrue the unambiguous terms of the EmPact Agreement. In interpreting a contract, "[t]he entire contract must be considered, and all parts of it reconciled, if possible, in order to avoid inconsistence." *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 67 F.3d 435, 439 (2d Cir. 1995) (citation omitted)). Plaintiffs rely on a single sentence lifted from the "No-Fault Separation Pay" section of the EmPact Agreement that reads: "I may not seek mediation or arbitration of a permanent layoff or no-fault termination under Step 6 of C.A.R.E." *See* Pl. Opp Memo. at p. 8; EmPact Agreement at p. 54. Read in context with the rest of the section, a Hotel employee may not pursue arbitration *because* the employee was provided (and accepted) No-Fault Separation Pay and thereby waives the right to challenge the nature of their termination of employment. The last sentence of the quoted section clarifies: "By accepting No-Fault Separation Pay, I am acknowledging that my termination was "no-fault" and that I am not entitled to challenge my termination through the mediation/arbitration provisions of C.A.R.E." *See* EmPact Agreement at p. 54. That did not happen and Plaintiffs therefore are required to arbitrate their claims.

5

The EmPact Agreement does not, however, operate to exclude or bar arbitration of Plaintiffs' claims based on Plaintiffs' subjective characterization of their employment status or whether notice is required under federal or New York State WARN Acts.[4] Plaintiffs fail to provide any support (other than their conclusory allegations) suggesting their employment even was terminated by the Hotel (much less terminated due to a permanent layoff) and concede they were not paid No-Fault Separation Pay.

If (as they attempt to do here) Plaintiffs could avoid their contractual obligations simply based upon their own characterization of their employment termination with the Hotel, Plaintiffs could entirely sidestep the EmPact Agreement and unilaterally avoid individual arbitration of any and all claims related to the termination of their employment -- even those specifically enumerated in the C.A.R.E. procedure -- simply by concluding they experienced a permanent layoff or no-fault termination.[5] Such result is directly contrary to the terms of the EmPact Agreement.

At most, Plaintiffs' allegations suggest they were constructively discharged from the Hotel because the Hotel remains closed following the Hotel's temporary suspension of operations following the COVID-10 pandemic and Plaintiffs are not presently at work. Whether or not any of such allegations are true, all such claims are *explicitly covered by the arbitration agreement*,

---

[4] Indeed, Plaintiffs' unsupported contention that an employment loss under federal and New York State WARN Acts somehow equate to a "permanent layoff" or "termination for no cause" pursuant to the EmPact Agreement is wrong. Neither federal or New York State WARN even define the term "permanent layoff" or "termination for no cause," much less preclude arbitration under the EmPact Agreement on such basis. Additionally, Plaintiffs even allege the WARN Act applies here because the Plaintiffs' employment was *terminated*. *See* Compl. at ¶¶ 4, 6, 119, 123 and 124.

[5] Identically, Plaintiffs cannot avoid their arbitration and class and collective action waiver agreements simply by alleging their claims are somehow "related to" the Hotel's failure to provide No-Fault Separation Pay (*see* Pl. Opp. Memo. at pp. 15-17). Again, while the Hotel's payment, and an employee's acceptance, of No-Fault Separation Pay precludes the employee from challenging a termination through the arbitration process, merely claiming an entitlement to unpaid No-Fault Separation Pay in connection with Plaintiffs' alleged termination of employment does not relieve Plaintiffs of their contractual obligations to individually arbitrate such claims.

which explicitly requires arbitration for employee termination claims "including constructive discharge." *See* EmPact Agreement at p. 54.

### 2. All Warner Defendants are entitled to enforcement of the EmPact Agreement.

Plaintiffs do not dispute that Hotel 57 Services, LLC is entitled to enforce the provisions of the EmPact Agreement, including the arbitration agreement and class waiver provisions, as a signatory thereto. Plaintiffs' have not meaningfully opposed the Warner Defendants argument that the non-signatory Warner Defendants (Hotel 57, LLC, Ty Warner Hotels & Resorts and H. Ty Warner) also are entitled to enforce the provisions of the EmPact Agreement on the basis of equitable estoppel.

In fact, Plaintiffs only opposition to the Warner Defendants position is that the Court should not rule on this issue because "this Court should not consider equitable estoppel claims to arbitrate before deciding whether to compel arbitration in the first place." Pl. Opp. Memo. at p. 19. Since the instant motion *is* to compel arbitration of all Plaintiffs' claims in the Complaint, the Court should grant as unopposed that portion of the Warner Defendants motion entitling all the Warner Defendants (signatories and non-signatories) to enforce the provisions of the EmPact Agreement.

## POINT II

## PLAINTIFFS' CLASS CLAIMS MUST BE DISMISSED

Plaintiffs also fail to meaningfully opposed the Warner Defendants' motion to dismiss Plaintiffs' class claims and submit no authority in support of their contention that the class and collective action waiver is inapplicable to all Plaintiffs claims in the Complaint.

The EmPact Agreement expressly provides:

> <u>Waiver of Right to Submit Claim as Part of Class or Collective Action.</u> To the extent permitted by law, I understand that if I do not opt out of the mediation/arbitration provision of CARE, I waive my right to have my claims submitted as part of a class or collective action in court (whether I initiate a claim or I am invited to join a class or collective action), and I

7

> waive my right to have my claims submitted as part of a class arbitration. This waiver shall not affect or diminish the substantive remedies that I may be awarded by an arbitrator.

*See* EmPact Agreement at pp. 56-57.

Plaintiffs' concede they entered into the EmPact Agreement and that the EmPact Agreement is a valid contract between Plaintiffs and Defendants, and do not dispute that they did not opt out of the class and collective action waiver contained therein. *See* Pl. Opp. Memo. at p. 6; Compl. at ¶¶ 210-211, 221-222, 236-237). In fact, Plaintiffs concede in opposition that they explicitly waived their right to pursue claims as part of a class or collective action for all claims covered by the EmPact Agreement, stating: "[i]ndeed, a logical reading of this clause shows that by agreeing to arbitrate those claims that mandate arbitration under C.A.R.E., the individual also waives their right to participate in a class action for those claims." Pl. Opp. Memo. at p. 18. Accordingly, Plaintiffs admit that if their claims are arbitrable (which they are), they have agreed to waive their right to bring their claims on a class-wide basis, either as a class representative or participant. Accordingly, such portion of the Warner Defendants' motion to dismiss class claims should be granted as unopposed.

However, even if the Court were to determine any of Plaintiffs' claims in this action are not subject to the arbitration agreement, Plaintiffs have not demonstrated the inapplicability of their class and collective action waiver agreement to all claims, arbitrable or not. As Plaintiffs concede they did not exercise their right to opt out of the EmPact Agreement's C.A.R.E. procedure, each agreed to a broad class and collective action waiver -- whether or not their claims were subject to arbitration.

Indeed, like Plaintiffs' twisted interpretation of their arbitration agreement, Plaintiffs try to sidestep their explicit class action waiver agreement. In opposition, Plaintiffs contend the class action waiver "is not a standalone clause" because it is part of the C.A.R.E. procedure (*see* Pl.

8

Opp. Memo. at p. 17).  However, Plaintiffs do not, and cannot, dispute that, based on their failure to opt out of the EmPact Agreement, they nonetheless are subject to the 5 other "steps" in the C.A.R.E. dispute resolution procedure that precede the "Step 6" arbitration provision thereto, and therefore the class waiver agreement.

Additionally, Plaintiffs contention that the waiver only applies in the context of arbitration based upon the last sentence of the class waiver that reads "[t]his waiver shall not affect or diminish the substantive remedies that I may be awarded by an arbitrator" (*see* Pl. Opp. Memo. at p. 17-18; EmPact Agreement, p. 56) simply makes no sense, as it would render meaningless the provision of the class action waiver in which Plaintiffs' each expressly "waive my right to have my claims submitted as part of a class or collective action *in court*".  EmPact Agreement at p. 56 (emphasis added).  *See, e.g., Lawyers' Fund for Client Prot. Of State of N.Y. v. Bank Leumi Trust Co. of N.Y.*, 94 N.Y.2d 398, 404 (2000) (interpretation that would render contractual provision superfluous is "unsupportable under standard principles of contract interpretation").  The fact that an arbitrator has the ability to provide substantive remedies with respect to arbitrable claims has no effect on whether Plaintiffs' broad agreement to waive their class claims herein.  Accordingly, the Court should dismiss Plaintiffs' class claims pursuant to their express waiver of same.

## CONCLUSION

For all the reasons set forth herein and in their Moving Memo., the Warner Defendants respectfully request the Court grant their Motion, in its entirety, and compel Plaintiffs to arbitrate the claims in the Complaint on an individual basis respectively, dismiss class claims, and stay this action pending arbitration.

Dated: New York, New York
       December 13, 2022

**FREEBORN & PETERS LLP**

By: */s/ Marc B. Zimmerman*
    Marc B. Zimmerman
    Kathryn T. Lundy
1155 Avenue of the Americas, 26th Floor
New York, NY 10036
(212) 218-8760

*Attorneys for Defendants Hotel 57 Services, LLC, Hotel 57, LLC, Ty Warner Hotels & Resorts, LLC and H. Ty Warner*