# EXHIBIT F

```
 1              UNITED STATES DISTRICT COURT

 2              SOUTHERN DISTRICT OF NEW YORK

 3     -------------------------------
       SELENA STALEY, VIVIAN HOLMES and
 4     OLIVE IVEY, on behalf of themselves
       and all others similarly situated,
 5
                  Plaintiffs,
 6
                  -against-                    Case No.
 7                                         1:22-cv-06781-JSR
       FOUR SEASONS HOTELS AND
 8     RESORTS, HOTEL 57 SERVICES,
       LLC, HOTEL 57, LLC and
 9     H. TY WARNER,

10                Defendants.
       -------------------------------
11

12              VIDEOTAPED DEPOSITION OF

13                  ANTOINE CHAHWAN

14                  DALLAS, TEXAS

15                  April 10, 2023

16

17

18

19

20

21

22

23     Reported by:  Susan S. Klinger, RMR-CRR, CSR

24     Job No. J9531034

25
```



```
 1
 2
 3                            April 10, 2023
 4                              9:01 a.m.
 5
 6
 7
 8        Videotaped Deposition of ANTOINE CHAHWAN, held
 9   at Four Seasons, 5221 North O'Connor Boulevard,
10   Suite 650, Irving, Texas, before Susan S. Klinger,
11   a Registered Merit Reporter and Certified Realtime
12   Reporter of the State of Texas.
13
14
15
16
17
18
19
20
21
22
23
24
25
```



```
 1    A P P E A R A N C E S:

 2    Attorneys for Plaintiff(s):
         Evan Brustein, Esquire (Via Zoom)
 3       BRUSTEIN LAW PLLC
         299 Broadway, 17th Floor
 4       New York, New York  10007
         212.233.3900
 5       Evan@brusteinlaw.com
      and
 6       Brian Bromberg, Esquire (Via Zoom)
         BROMBERG LAW OFFICE, P.C.
 7       352 Rutland Road
         Brooklyn, New York  11225
 8       212.248.7906
      and
 9       Maya Risman, Esquire (Via Zoom)
         RISMAN & RISMAN, P.C.
10       299 Broadway, 17th Floor
         New York, New York  10007
11       212.233.6400
         Mrisman@risman-law.com
12
      Attorneys for Defendants Hotel 57 Services, LLC,
13    Hotel 57, LLC, Ty Warner Hotels & Resorts LLC and
      H. Ty WARNER:
14       Kathryn Lundy, Esquire (Via Zoom)
         Marc Brian Zimmerman, Esquire (Via Zoom)
15       SMITH GAMBRELL RUSSELL
         1301 Avenue of the Americas, 21st Floor
16       New York, New York  10019
         212.218.8760
17       Klundy@Sgrlaw.Com

18    Attorney for Defendant Four Seasons Hotels and
      Resorts and the Witness:
19       Paul Eric Wagner, Esquire
         STOKES WAGNER, ALC
20       903 Hanshaw Road
         Ithaca, New York  14850
21
      Also Present:
22       Mark Hendricks, videographer

23

24

25
```



```
 1                    I N D E X
 2
 3    WITNESS                                              PAGE
 4    ANTOINE CHAHWAN
 5    EXAMINATION BY MR. BRUSTEIN                             6
 6
 7
 8                    E X H I B I T S
 9    No.         Description                              Page
10    Exhibit 25  Email, WARNERDEF_000700                   223
11    Exhibit 26  Petition for Appointment of               291
12                Arbitrators
13    Exhibit 28  U.S. EmPact Employee Handbook             125
14
15
16
17
18
19
20
21
22
23
24
25
```



1        P R O C E E D I N G S
2        VIDEOGRAPHER: Today's date is April the
3    10th, 2023. We are on the record at approximately
4    9:01 a.m. Central time in the deposition of
5    Antoine Chahwan. Start of media 1 in the matter
6    of Selena Staley, et al versus Four Seasons Hotels
7    and Resorts, et al, number 1:22-CV-6781-JSR, in
8    the United States District Court, Southern
9    District of New York.
10       This deposition is taking place at the
11   offices of Four Seasons Hotels and Resorts located
12   at 5221 North O'Connor Boulevard, Suite 650,
13   Irving, Texas.
14       My name is Mark Hendricks, video
15   specialist for Esquire. The court reporter is
16   Susan Klinger also with Esquire.
17       Would all counsel please introduce
18   themselves for the record, after which the court
19   reporter will swear in the deponent.
20       MR. BRUSTEIN: Good morning, Evan
21   Brustein, Brustein Law for the plaintiffs.
22       MR. BROMBERG: Bryan Bromberg, Bromberg
23   Law Office, PC also for the plaintiffs, good
24   morning.
25       MS. LUNCH: Good morning, Kathryn Lundy



```
 1   for defendants Hotel 57 Services, LLC, Hotel 57
 2   LLC, Time Warner Hotels & Resorts, LLC and H. Ty
 3   Warner, Smith Gambrell & Russell, LLP, 1301 Avenue
 4   of the Americas, 21st floor, New York, New York
 5   10019.
 6           MR. WAGNER:  I'm Paul Wagner from Stokes
 7   Wagner on behalf of FSR International Hotels, Inc.
 8   and also representing the deponent Antoine
 9   Chahwan.
10           MR. ZIMMERMAN:  And I'm Marc Zimmerman.
11   I'm also from Smith, Gambrell & Russell for the
12   same defendants as Ms. Lundy.
13           MR. RISMAN:  I am Maya Risman with Risman
14   & Risman, PC.  Attorneys also for the plaintiffs.
15                   ANTOINE CHAHWAN,
16   having been first duly sworn testified as follows:
17           VIDEOGRAPHER:  Counsel, you may proceed.
18           MR. BRUSTEIN:  I was waiting for Paul.
19           COURT REPORTER:  Hold on one second, I
20   need to give him the Zoom link.
21           MR. BRUSTEIN:  Welcome Paul.
22           MR. WAGNER:  Thank you.
23           MR. BRUSTEIN:  Everyone ready?
24           COURT REPORTER:  Yes, we are, thank you.
25                   EXAMINATION
```



1     Q   What -- I apologize.
2     A   No, I said I don't recall exactly when,
3  but I did at one point.
4     Q   What is an EmPact agreement?
5     A   It is basically an employment agreement
6  between two parties, the -- the Four Seasons
7  hiring entity and the employee where specific
8  rules and expectations are laid out specifically
9  on -- from both parties, what is expected from
10 both parties.  And that governs your employment
11 period during the time that you are there.
12    Q   What does a Four Seasons hiring entity
13 mean?
14    A   There is an entity that hires all
15 employees for each property.  As I mentioned
16 before, maybe I didn't, but I will -- I will
17 specifically speak to that.  We are a brand and we
18 don't own necessarily the properties that we
19 manage.  We manage properties on behalf of other
20 owners.  And it varies from property to property,
21 on which entity normally hires the employees for
22 that specific hotel.
23    Q   And you said the Four Seasons hiring
24 entity?
25    A   Uh-huh.



1    Q   Who is the owner of FSNY?
2    A   Taiwan Hotels and Resorts.
3    Q   Who is the operator of FSNY?
4    A   Four Seasons.  We operate the Four Seasons
5  hotels, we operate.
6    Q   Are there other entities involved in the
7  management, running, owning, employing of that
8  hotel or are those the three entities that you are
9  aware of?
10       MR. WAGNER:  Objection, you can answer.
11   A   To the best of my knowledge, those are the
12 three.
13   Q   Now, do you know who H. Ty Warner is?
14   A   I know who he is, but I've never met him
15 in-person, never had any contact with him.
16   Q   Who is he?
17   A   He is the owner of the Four Seasons FSNY.
18   Q   And you said you have never met him
19 in-person.  Have you spoken to him on the phone?
20   A   I have never had any contact with him.
21   Q   Have you emailed with him?
22   A   I have not.
23   Q   If you ever need to speak to or
24 communicate with H. Ty Warner, is there someone
25 you are supposed to contact?



1   York at the time.  The -- the cases kept on
2   multiplying to a level that was just not feasible
3   for us to reopen at that moment, so we extended
4   the closure.
5       Q  Now, when you say there was no written
6   plan back in April 15, 2020, was that just a call
7   that you had like, hey, guys let's reopen the
8   hotel or was it informally memorialized in emails
9   or text messages or, you know, back of the napkin
10  or something?
11      A  There was a lot in this question, but I
12  will -- at the time we decided to reopen on April
13  15, it was a date that we selected based on what
14  we knew at the time.  As COVID developed, as cases
15  kept on going higher, we had to make adjustment to
16  that.
17          There was no specific action plan in
18  place.  I'm sure you can appreciate the rest of
19  the world and what was going on at the time we had
20  very little knowledge of what was to -- what was
21  happening at the time.  And we were just reacting
22  to what the authorities had been telling us to
23  what we had been seeing on the ground and whether
24  it made sense to open the hotel on April 15.  At
25  the time it didn't.

1  it is the circumstances that we're dealing with
2  there.
3      Q   Your job is about managing the brand of
4  the Four Seasons.  Are you proud of the way the
5  employees of the Four Seasons New York have been
6  treated?
7          MR. WAGNER:  Objection.
8          MS. LUNDY:  Objection.
9          MR. WAGNER:  You can answer.
10     A   My job is not to -- is not the brand.  My
11 job to -- is the operations.  And that is what I
12 do and I believe in treating people with respect
13 and dignity, be open, be transparent with them and
14 that is what we have and continue to do.
15     Q   Did you tell the employees of the hotel
16 back in 2020 that the hotel would not be open
17 because of disputes between management over fees?
18     A   That was not -- that was not what I --
19 what I told them.  And I'm not aware of the nature
20 of the dispute between management and ownership as
21 I said before.
22         The reason why we did not open in April
23 was strictly due to COVID at the time.  And as
24 COVID continues or continued, we were in a
25 position where it would not make business sense to



1  open, and hence, the decision was made to embark
2  on the rectification and the renovation of the
3  hotel to bring it back to reopen, and that is what
4  we continue to do today.
5      Q  Let's not talk about April 2020.
6      A  Okay.
7      Q  September of 2020 --
8      A  Yes.
9      Q  -- when you knew that the hotel was going
10 to be undergoing significant renovations that
11 could require the hotel to be closed for more than
12 a year, did you as the president of operations and
13 the secretary of the company speak honestly with
14 the employees about the fact that they would be
15 out of work for more than a year?
16         MR. WAGNER:  Objection.
17         MS. LUNDY:  Objection.
18         MR. WAGNER:  You can answer.
19     A  I did not personally speak to them, but we
20 did have a conference call where we conveyed those
21 messages to them and relayed the options for what
22 they can do in the interim on how they could, you
23 know, gain lawful employment if they chose to or
24 continue to look at the means that are available
25 to them to receive pay through unemployment.



```
 1   -- and reacted to it as best we could.
 2       Q   And at what point did you realize COVID-19
 3   was going to require the Four Seasons New York to
 4   shutdown?
 5       A   I would say around that middle of March
 6   between the 16th through the March 20th is the day
 7   when we closed, when we shutdown the Four Seasons
 8   New York with the -- with the plan to reopen on
 9   April 15th.  That is when --
10       Q   Did you --
11       A   Go ahead.
12       Q   Did you think at that point it was
13   important to notify employees about closing down
14   the hotel and how it was going to impact them long
15   term?
16       A   I believe that was done by the local team,
17   yes.
18       Q   Now, I'm going to turn your attention to
19   the EmPact agreement, give me one second, page 56.
20       A   Okay.
21       Q   At the bottom of the page do you see where
22   it says no-fault separation pay?
23       A   Yes.
24       Q   Can you please read the first two
25   sentences aloud?
```



```
 1   with Four Seasons would make them eligible for
 2   no-fault separation?
 3           MR. WAGNER:  Objection.
 4           MS. LUNDY:  Objection.
 5      A   Let me tell you why.  I could say they
 6   have the right of recall, because they do.  We
 7   have every intention to reopen, and we're working
 8   towards that and we will reopen and when we do
 9   reopen, they will be recalled.  What I don't have
10   the authority -- pardon.
11      Q   No, I didn't mean to cut you off.  With
12   Zoom there is sometimes a lag.
13      A   That is okay.  But I cannot comment on
14   whether -- if the agreement is terminated whether
15   everyone will be entitled to no-fault.  That is
16   not -- that is a legal question and they need to
17   seek legal opinion on that, not from me.  That is
18   not what I could comment on and give you -- it is
19   not about what I feel or what I think.
20           It is about these are -- these are facts
21   and they're legal facts.  I'm not -- I'm not -- I
22   don't have the knowledge to be able to answer that
23   question for you.  But I know on the recall piece
24   that yes, we -- we -- you are going to be recalled
25   and you will be recalled, and that is why I'm
```



1  their right to recall?
2    A  Thereagain, they're in the same -- they
3  have all the right -- every one of them has the
4  right of recall.
5    Q  Well, you just testified that the hotel
6  may open without some positions.  You don't know
7  until the hotel opens which positions will be
8  recalled and which won't; right?
9    A  Possibly, I don't know for certain, yes.
10       MR. WAGNER:  Evan, when you have an
11  appropriate break I just need to use the mens
12  room.
13       MR. BRUSTEIN:  Just give me one more
14  minute.
15       MR. WAGNER:  No problem.
16    A  Please.
17    Q  So is it fair to say that until there is
18  an actual agreement you can't guarantee which
19  positions will actually be recalled if and when
20  the hotel reopens?
21       MR. WAGNER:  Objection.
22    A  No.  What I'm saying is the eligibility
23  for recall applies to everyone.  That has -- that
24  has always been the case and will continue to be
25  the case.

