UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

SELENA STALEY, VIVIAN HOLMES, and OLIVE :
IVEY, on behalf of themselves and all others similarly :
situated, :

                                                 :    Case No.: 22-CV-6781 (JSR)

                       Plaintiffs, :

         v.                                 :    **(ORAL ARGUMENT**
                                                 :    **REQUESTED)**

FSR INTERNATIONAL HOTEL INC. d/b/a FOUR :
SEASONS HOTELS AND RESORTS, HOTEL 57 :
SERVICES, LLC, HOTEL 57, LLC, TY WARNER :
HOTELS & RESORTS, LLC, and H. TY WARNER, :
                                                 :

                     Defendants. :

------------------------------------------------------------- X

# MEMORANDUM OF LAW IN SUPPORT OF
# HOTEL 57 SERVICES, LLC, HOTEL 57, LLC, TY WARNER HOTELS & RESORTS, LLC AND H. TY WARNER'S MOTION FOR SUMMARY JUDGMENT

Marc B. Zimmerman
James J. Boland
SMITH, GAMBRELL & RUSSELL, LLP
1301 Avenue of the Americas, 21st Floor
New York, NY 10019
(212) 907-9700

Kathryn T. Lundy
VENABLE LLP
151 West 42nd Street, 49th Floor
New York, NY 10036
(212) 307-5500

*Attorneys for Defendants Hotel 57 Services,*
*LLC, Hotel 57, LLC, Ty Warner Hotels &*
*Resorts, LLC and H. Ty Warner*

## <u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

PROCEDURAL HISTORY ...................................................................................... 2

FACTS ....................................................................................................................... 3

      A.      Parties ............................................................................................... 3

      B.      A brief history of restrictions caused by the COVID-19 pandemic .................... 5

      C.      Hotel 57 Services, LLC issued WARN Act notices to its employees, including Plaintiffs .................................................................. 9

      D.      Plaintiffs' continued employment by Hotel 57 Services, LLC ........................... 10

      E.      Plaintiffs maintain their right of recall to employment with Hotel 57 Services, LLC at the Hotel upon its reopening ................................ 11

      F.      The Hotel plans to reopen in Fall 2024 ......................................... 11

ARGUMENT .......................................................................................................... 12

POINT I ................................................................................................................... 13

SUMMARY JUDGMENT SHOULD BE GRANTED ON THE WARN ACT CLAIMS ......... 13

      A.      Plaintiffs cannot establish liability for alleged federal and New York WARN Act violations against Hotel 57, LLC and Ty Warner Hotels & Resorts, LLC .................................................................................. 14

      B.      Proper notice was issued to Plaintiffs pursuant to federal and New York WARN Acts ................................................................................. 16

            1.      WARN Act notices were sent to Plaintiffs on August 5, 2020 ............... 16

            2.      The unforeseen business exception to federal and New York WARN Acts apply .................................................................. 17

POINT II ................................................................................................................. 20

SUMMARY JUDGMENT SHOULD BE GRANTED ON THE BREACH OF CONTRACT CLAIM ................................................................................................ 20

      A.      Plaintiffs have not complied with a contractual condition precedent ................ 20

      B.      Plaintiffs are not eligible for No-Fault Separation Pay ...................... 21

            1.      Plaintiffs' employment was not terminated ............................. 21

2.    Plaintiffs did not receive permanent layoffs with no right to recall ........ 22

3.    COVID-19 was a "national emergency," precluding No-Fault
Separation Pay ...................................................................................... 22

CONCLUSION............................................................................................................. 24

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................................................12

*Arculeo v. On-Site Sales & Mktg., LLC*,
425 F.3d 193 (2d Cir. 2005)...........................................................................................14

*Bickerstaff v. Vassar Coll.*,
196 F. 3d 435 (2d Cir. 1999).........................................................................................13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)........................................................................................................12

*Coleman v. Optum, Inc.*,
22 CV 5664 (ALC) 2023, WL 6390665 (S.D.N.Y. Oct. 1, 2023)........................................15

*Cook v. Arrowsmith Shelburne, Inc.*,
69 F.3d 1235 (2d Cir. 1995)...........................................................................................15

*Excelled Sheepskin & Leather Corp. v. Oregon Brewing Co.*,
897 F.3d 413 (2d Cir. 2018)...........................................................................................12

*Farid v. Smith*,
850 F.2d 917 (2d Cir. 1988)...........................................................................................12

*FDIC v. Great Am. Ins. Co.*,
607 F.3d 288 (2d Cir. 2010)...........................................................................................13

*Gross v. NBC*,
232 F. Supp. 2d 58 (S.D.N.Y. 2002)................................................................................13

*Guippone v. BHS& B Holdings LLC*,
747 F.3d 221 (2d Cir. 2013)...........................................................................................15

*Halkias v. Gen. Dynamics Corp.*,
137 F.3d 333 (5th Cir. 1998) ..........................................................................................18

*Holcomb v. Iona Coll.*,
521 F.3d 130 (2d Cir. 2008)...........................................................................................12

*ISS Facility Services, Inc. v. Fedcap Rehabilitation Services, Inc*.,
20 CV 6591 (RA), 2021 WL 2784550 (S.D.N.Y. July 2, 2021) .............................................20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................................13

*Presser v. Key Food Stores Co-Op.*,
    01 CV 8059, 2006 WL 2086346 (E.D.N.Y. July 25, 2006) ...................16

*R.G. Group, Inc. v. Horn & Hardart Co.*,
    751 F. 2d 69 (2d Cir. 1984)....................................................................12

*Shaw v. Hornblower Cruises & Events LCC*,
    21 CV 10408 (VM), 2022 WL 16748584 (S.D.N.Y. Nov. 7, 2022) .....14

*Sourceone Healthcare Techs., Inc. v. Bensonhurst Imaging Assocs. Mgmt. LLC*,
    08 CV 2568 (BMC), 2008 WL 2697324 (E.D.N.Y. July 2, 2008).........14

*Trans Sport v. Starter Sportswear*,
    964 F. 2d 186 (2d Cir. 1992)...................................................................13

*In re Transcare Corp.*,
    614 B.R. 187 (Bankr. S.D.N.Y. 2020) ...................................................19

*Watson v. Mich. Indus. Holdings, Inc.*,
    311 F.3d 760 (6th Cir. 2002) .................................................................18

**OTHER AUTHORITIES**

29 U.S.C. §2102(b)(2)(A) ...............................................................................17

Fed. R. Civ. P. 56(a) .......................................................................................12

Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern
Districts of New York ........................................................................................3

New York City Local Law No. 405 Int. No. 2397-A (2021)...........................10

New York WARN Act.....................................................1, 2, 3, 9, 10, 13, 14, 15, 16, 18

20 C.F.R. §639.3(a)(2) ....................................................................................15

20 C.F.R §639.7 ..............................................................................................16

20 C.F.R. §639.9(b)(2) ....................................................................................17

22 C.F.R. §639.10 ...........................................................................................16

85 Fed. Reg. 15337 .....................................................................................6, 23

12 N.Y.C.R.R. §921-2.1 .................................................................................16

12 N.Y.C.R.R. §921-6.3 .................................................................................17

12 NYCRR §921-1.1(e)................................................................................................15

12 NYCRR §921-6.3(b)..............................................................................................18

**New York Executive Orders**

202.1......................................................................................................................5, 6

202.8.........................................................................................................................9

202.9.........................................................................................................................9

202.10.......................................................................................................................9

202.11.......................................................................................................................9

202.12.......................................................................................................................9

202.13.......................................................................................................................9

202.14.......................................................................................................................9

202.15.......................................................................................................................9

202.16.......................................................................................................................9

202.17.......................................................................................................................9

202.18.......................................................................................................................9

202.19.......................................................................................................................9

202.20.......................................................................................................................9

202.21.......................................................................................................................9

202.22.......................................................................................................................9

202.23.......................................................................................................................9

202.24.......................................................................................................................9

202.25.......................................................................................................................9

202.26.......................................................................................................................9

202.27.......................................................................................................................9

202.28.......................................................................................................................9

202.29................................................................................................................9

202.30................................................................................................................9

202.31................................................................................................................9

202.32................................................................................................................9

202.33................................................................................................................9

202.34................................................................................................................9

202.35................................................................................................................9

202.36................................................................................................................9

202.37................................................................................................................9

202.38................................................................................................................9

202.39................................................................................................................9

202.40................................................................................................................9

202.41................................................................................................................9

202.42................................................................................................................9

202.43................................................................................................................9

202.44................................................................................................................9

202.45................................................................................................................9

202.46................................................................................................................9

202.47................................................................................................................9

202.48................................................................................................................9

202.49................................................................................................................9

202.50................................................................................................................9

202.51................................................................................................................9

202.52................................................................................................................9

202.53................................................................................................................9

202.54................................................................................................................................9

Hotel's website (https://www.fourseasons.com/newyork/) ...........................................................11

## PRELIMINARY STATEMENT

Plaintiffs Selena Staley, Vivian Holmes, and Olive Ivey (collectively, "Plaintiffs"), each a long-time employee of Hotel 57 Services, LLC at the Four Seasons Hotel New York, were placed on temporary furlough when the Four Seasons Hotel New York (the "Hotel") was forced to temporarily suspend operations and shut down to the public in March 2020 as a result of the COVID-19 pandemic.  Unhappy that the Hotel had not yet reopened for an extended period, Plaintiffs filed this lawsuit, apparently believing that someone should compensate them for these unforeseen business circumstances.

Following the Court's April 19, 2024 Order dismissing three of Plaintiffs' causes of action and all claims against H. Ty Warner, the only claims left in this lawsuit are based on a: (1) purported failure to provide notice under the federal and New York WARN Acts; and (2) a contractual severance payment pursuant to Plaintiffs employment contract with Hotel 57 Services, LLC.  Summary judgment should be granted in favor of the Warner Defendants on all these remaining claims in Plaintiffs' First Amended Complaint.

Plaintiffs' federal and New York WARN Act claims fail because Plaintiffs were sent proper WARN Act notices.  Plaintiffs take issue that such WARN notices were slightly, but lawfully, delayed due to unprecedented and unforeseen business circumstances arising from the COVID-19 pandemic, and contend the Warner Defendants should have provided advance notice of Plaintiffs' furloughs before the Hotel was forced to close in compliance with state and city emergency mandate and before it reasonably believed the Hotel could not promptly reopen in light of the continuing effect of the COVID-19 pandemic.  Despite Plaintiffs' belief, the federal and New York WARN Acts do not require the Warner Defendants to have clairvoyant powers to foresee the unforeseeable COVID-19 pandemic and its scope and effect on travel and business in New York City (including the Hotel's ability to operate in a safe and profitable manner) in

requiring the issuance of WARN Act notices.  To the contrary, the WARN Acts specifically excuse advance notice to employees when the closure or employment loss results from unforeseen business circumstances, as was the case here.  Plaintiffs' allegations that multiple or successive WARN Act notices are required are legally baseless.  The WARN Acts do not place such additional obligations on employers.

Plaintiffs' last remaining claim is that they were contractually entitled to a severance payment ("No-Fault Separation Pay") pursuant to their employment agreement with Hotel 57 Services, LLC. But No-Fault Separation Pay was due under the agreement only if Plaintiffs' employment with Hotel 57 Services, LLC *irrevocably ended* through (a) a permanent lay off with no right of recall or (b) termination without cause.  As the record establishes, neither of those triggering events has happened to Plaintiffs.  Plaintiffs were not provided any termination notice by Hotel 57 Services, LLC; they maintain and continue to accrue seniority; they maintain accrued vacation time; and, significantly, they have continued to be paid by Hotel 57 Services, LLC even during the Hotel's closure.  Indeed, Staley and most other furloughed non-exempt, non-union employees are being paid $500 each week to this very day.  Because, as these facts establish, as current employees on furlough, Plaintiffs all remain Hotel 57 Services, LLC employees, who are not entitled to Non-Fault Separation Pay.

## **PROCEDURAL HISTORY**

Plaintiffs' First Amended Complaint dated December 19, 2022 contained six claims for relief (Dkt. No. 47) ("Amended Complaint" or "Amd. Compl.").  Following the Court's Order and Decision dated April 19, 2024 (Dkt. No. 78) on the Warner Defendants' Motion to Dismiss, only three claims remain: (1) the federal WARN Act claim against the Warner Defendants, except H. Ty Warner (Amd. Compl., First Cause of Action); (2) the New York WARN Act claim against the Warner Defendants, except H. Ty Warner (Amd. Compl., Second Cause of Action); and (3) breach

of contract against Defendant Hotel 57 Services, LLC (Amd. Compl., Third Cause of Action).
Every claim in the Amended Complaint has been dismissed against H. Ty Warner.

## FACTS[1]

### A.   Parties

This lawsuit involves the Four Seasons Hotel New York (the "Hotel"), a landmark 52-
story, I.M. Pei designed 5-star hotel located at 57 East 57th Street, New York, New York (R.56:
1).  Given Plaintiffs' "kitchen sink" approach to their WARN Act claims against the Warner
Defendants, it is necessary to distinguish these parties and their relationship (or lack thereof) to
Plaintiffs.

Hotel 57 Services, LLC is a Delaware limited liability company (R.56: 2).  Hotel 57
Services, LLC was (and is) the employer of the majority of the workers at the Hotel, including
Plaintiffs (R.56: 4).  Hotel 57 Services, LLC is *the* signatory to an employment contract with non-
union employees (including Plaintiffs) who work at the Hotel (the U.S. EmPact[sm] Employee
Handbook agreement revised February 1, 2018 (the "EmPact Agreement"), which was
promulgated by the Hotel's operator, FSR International Hotels Inc. d/b/a Four Seasons Hotel
("FSR") (R.56: 5).[2]

Hotel 57, LLC is a Delaware limited liability company (R.56: 8). Hotel 57, LLC is the
owner of the Hotel building and property and a signatory to the hotel management agreement with
the Hotel's operator, FSR, which manages the Hotel (R.56: 10).  Hotel 57, LLC is not a signatory

---

[1] References to the Warner Defendants' Local Rule 56.1 Statement of Undisputed Facts are
denoted as "R.56: __".

[2] Hotel 57 Services, LLC also was (and is) the employer of union employees working at the Hotel
(R.56: 6). The terms and condition of such employees are governed by an applicable union
collective bargaining agreement; not the EmPact Agreement (R.56: 7).  Because Plaintiffs are not
union employees, that collective bargaining agreement is not implicated by the present motion.

to the EmPact Agreement and has no employment relationship with any of the workers at the Hotel, including Plaintiffs (R.56: 11, 21).  It has no employees (R.56: 11).  It is a separate and distinct entity from Hotel 57 Services, LLC (R.56: 20).

Ty Warner Hotels & Resorts, LLC is a Delaware limited liability company (R.56: 12).  Ty Warner Hotels & Resorts, LLC does not have (and never had) any ownership interest in the Hotel, Hotel 57, LLC or Hotel 57 Services, LLC (R.56: 13, 14, 15).  Ty Warner Hotels & Resorts, LLC is not a party to the EmPact Agreement or the hotel management agreement, and it has no employment relationship with any of the workers at the Hotel, including Plaintiffs (R.56: 16, 17, 18, 21 ).  It is a separate and distinct entity from Hotel 57 Services, LLC (R.56: 20).

FSR International Hotels Inc. d/b/a Four Seasons Hotel ("FSR") operates branded hotels worldwide (R.56: 27).  FSR is a signatory to the hotel management agreement with Hotel 57 Services, LLC and operates the Hotel pursuant to the terms thereto (R.56: 28).

Plaintiffs Selena Staley, Vivian Holmes, and Olive Ivey (f/k/a Olive Rodriguez), all are New York residents (R.56: 29).  Each is a non-union employee of Hotel 57 Services, LLC who works at the Hotel (R.56: 30). Staley is a Reservations Agent hired in 2007 (R.56: 31); Holmes is a Rooms Administrative Assistant hired in 1998 (R.56: 32); and Ivey is a Housekeeping Manager hired in 1997 (R.56: 33).  Plaintiffs are all parties to the EmPact Agreement and signed acknowledgements to that effect (R.56: 34).  Plaintiffs' claim for No-Fault Separation Pay is based on purported obligations pursuant to the terms of the EmPact Agreement. [3]

---

[3] The EmPact Agreement provides for a severance payment called "No-Fault Separation Pay" to employees of Hotel 57 Services, LLC *only* if their employment terminates by: (a) termination of employment without cause; or (b) permanent layoff with no right of recall, provided such permanent layoff did not "result[] from … national emergencies … acts of God … disasters … and any other cause beyond the control of Four Seasons" (R.56: 36, 37).

**B.      A brief history of restrictions caused by the COVID-19 pandemic**

*December 2019: COVID-19 Is Not A Concern In the United States*

In December 2019, COVID-19 was not a concern in the United States, let alone a foreseeable risk to force the Hotel to close and furlough employees for more than six (6) months. Indeed, not even a single article concerning the novel coronavirus COVID-19 appeared in the New York Times' December 19, 2020 newspaper issue -- the newspaper issue published 90 days prior to the Hotel's closure because of the pandemic (R.56: 47).

*January 2020: the anticipated risk level in the U.S. is very low*

Likewise, in January 2020, the soon-to-be global COVID-19 pandemic was perceived in the United States as a very low risk and it was doubtful the virus would even spread within the United States (R.56: 50).  The lack of perceived danger was reflected in the recommended response as the country was informed "all that most Americans need to do [in response to COVID-19] is wash their hands and proceed with their usual weekend plans." (R.56: 49).  No article concerning the novel coronavirus COVID-19 appeared in the New York Times' January 19, 2020 newspaper issue -- the newspaper issue published 60 days prior to the Hotel's closure because of the pandemic (R.56: 48).

*March 7, 2020: New York State declares a disaster emergency from COVID-19*

Despite these early assurances, the COVID-19 outbreak developed rapidly and in unexpected ways through early 2020.  Faced with dramatically changing circumstances, on March 7, 2020, New York State Governor Andrew Cuomo issued Executive Order 202.1, "Declaring a Disaster Emergency in the State of New York[.]" (R.56: 51).  EO 202.1 reported that "both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and more are expected to continue" and that "New York State is addressing the threat that COVID-19 poses to the health of its residents and visitors."  *Id.*  As a result, Governor Cuomo

"declare[ed] a state of disaster emergency for the entire state of New York." *Id.* Numerous laws, ordinances, rules and regulations were modified, and Governor Cuomo authorized "all necessary State agencies to take appropriate action to assist local governments and individuals in containing, preparing for, responding to and recovering from this state disaster emergency, to protect state and local property, and to provide such other assistance as is necessary to protect public health, welfare, and safety." *Id.*

### *March 11, 2020: COVID-19 is designated as a pandemic*

On March 11, 2020, the World Health Organization ("WHO") designated COVID-19 as a pandemic (R.56: 56). On March 12, 2020, Governor Cuomo ordered the cancellation of any large events or gatherings anticipated to be in excess of 500 people and restricted places of public accommodation and events or gatherings with less than 500 people to 50% of their occupancy or seating capacity (R.56: 57).

### *March 13, 2020: COVID-19 is declared a National Emergency*

On March 13, 2020, COVID-19 was declared a "National Emergency" by the President of the United States, a designation that continued through May 11, 2023. (R.56: 58); 85 Fed. Reg. 15337 (POTUS Proclamation 9994 of March 13, 2020, Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak).

### *New York State limitations on gatherings and workplace restrictions are ordered in rapid succession as COVID-19 rages on*

On March 16, 2020, Governor Cuomo modified the restrictions on large events or gatherings in New York State, requiring cancellation of those of more than 50 people (R.56: 59). New York's restaurants and bars were ordered closed immediately for on-site service, the city's gyms and fitness centers were closed, and its schools were shut down (R.56: 60). On March 18,

2020, New York's shopping malls and indoor and outdoor places of public amusement were ordered closed (R.56: 63).

Also on March 18, 2020, all New York businesses (with the exception of those entities providing "essential" services) were required -- effective March 20, 2020 -- to reduce their in-person workforces by 50% and to "utilize, to the maximum extent possible, any telecommuting or work from home procedures that they can safely utilize" (R.56: 64). On March 19, 2020, Governor Cuomo increased the required percentage of in-person workforce reduction from 50% to 75% (R.56: 65).

### March 20, 2020: hospitality operations at the Hotel are temporarily suspended due to the risks and restrictions caused by COVID-19

The Hotel temporarily closed to outside guests effective March 20, 2020, as a result of the collective impact of the national emergency caused by COVID-19, the New York State Executive Orders, the unprecedented health and safety issues, and the risks and restrictions presented by the global pandemic, which included the wholesale shutdown of any travel and demand for hotel accommodations (R.56: 66). At the time of this initial temporary suspension of hotel operations, the initial plan was to resume operations on April 15, 2020 (R.56: 67). However, there was unprecedented uncertainty about the continuing and future impact COVID-19 would have on New York City and the world as well as the length or extent of restrictions that would be imposed during the coming months on businesses in New York City (R.56: 73). Consequently, it could not be determined for how long the global pandemic would impact the Hotel's hospitality operations or when it could safely (and economically) reopen to guests (R.56: 83).

Despite the March 20, 2020 suspension of hospitality services, the Hotel remained open and continued to operate as a business -- albeit with reduced staffing requirements (R.56: 75, 76, 77). As a result of this unanticipated change, most (but not all) Hotel 57 Services employees

working at the Hotel were either placed on temporary furlough or had their working hours significantly reduced (R.56: 76, 77).  For their part, Staley and Ivey were placed on temporary furlough from their employment at the Hotel in March 2020 (R.56: 70) while Holmes continued to work (as many as 17 hours per week) through July 2020 (R.56: 71).

### *April 2, 2020: the Hotel reopens to house COVID-19 first responders*

On April 2, 2020, the Hotel re-opened to house (free of charge) frontline COVID-19 first responders (*i.e.*, doctors, nurses and other health care professionals) battling the pandemic in New York City (R.56: 75).  Accordingly, some Hotel 57 Services, LLC employees returned to work on-site (R.56: 76). Others, including Holmes, continued to work remotely, albeit on a reduced schedule (R.56: 77).

### *Employees of Hotel 57 Services, LLC were regularly apprised of the Hotel's status*

The COVID-19 pandemic was an unprecedented and unpredictable time in New York and throughout the world, creating uncertainty for the Hotel and the employees who worked there (R.56: 78, 79).  When Hotel operations were suspended on March 20, 2020, reopening was anticipated to take place on April 15, 2020 (R.56: 83).  That date, however, changed again and again, as the COVID-19 pandemic continued and evolved (R.56: 83).

The evolving scope and duration of the COVID-19 pandemic in New York was reflected in the similarly evolving restrictions put in place in Executive Orders issued by Governor Cuomo (R.56: 51-65).  During this period of uncertainty, employees of Hotel 57 Services, LLC were regularly kept apprised of the status of the Hotel and its operations (R.56: 84).  For example:

- on April 9, 2020, it advised employees of its plans to house first responder medical personnel at the Hotel, informed them of the present state of the evolving pandemic restrictions, and noted that the suspension of regular operations at the Hotel would continue until April 30, 2020 (R.56: 85);

- on April 30, 2020, it advised employees that, due to continuing COVID-19 restrictions, the suspension of regular operations at the Hotel would continue and the anticipated reopening date was pushed out to June 15, 2020 (R.56: 86); and

- on May 22, 2020, it advised employees that it was extending the commitment to house first responders through June 30, 2020, that the suspension of regular operations at the Hotel would continue, and that the anticipated reopening date was pushed out to July 15, 2020 (R.56: 87).

On June 30, 2020, the Hotel ceased housing first responders (R.56: 88).  Given the continuing effect of the COVID-19 pandemic -- including the restrictions on travel, business and everyday life in New York[4] -- Hotel 57 Services, LLC determined, and advised employees, that it would be "transitioning to a temporary shutdown of the hotel." (R.56: 88).

C.     **Hotel 57 Services, LLC issued WARN Act notices to its employees, including Plaintiffs**

Hotel 57 Services, LLC's decision to transition the Hotel during a span of just four months from: (a) operational, to (b) semi-operational, to (c) operational only to house first responders, to (d) temporary shutdown status reflected the uncertainty of the effect and duration of the COVID-19 crisis (R.56: 85-89, 92).

Only in August 2020 did Hotel 57 Services, LLC conclude that it could not continue to operate the Hotel in any capacity due to the pandemic and likely would not be able to do so safely

---

[4] *See* EO 202.8; EO 202.9; EO 202.10; EO 202.11; EO 202.12; EO 202.13; EO 202.14; EO 202.15; EO 202.16; EO 202.17; EO 202.18; EO 202.19; EO 202.20; EO 202.21; EO 202.22; EO 202.23; EO 202.24; EO 202.25; EO 202.26; EO 202.27; EO 202.28; EO 202.29; EO 202.30; EO 202.31; EO 202.32; EO 202.33; EO 202.34; EO 202.35; EO 202.36; EO 202.37; EO 202.38; EO 202.39; EO 202.40; EO 202.41; EO 202.42; EO 202.43; EO 202.44; EO 202.45; EO 202.46; EO 202.47; EO 202.48; EO 202.49; EO 202.50; EO 202.51; EO 202.52; EO 202.53; EO 202.54.

and profitably for an extended, indeterminable period of time expected to last more than six months (R.56: 92).  Accordingly, on August 5, 2020, Hotel 57 Services, LLC issued WARN Act notices to Plaintiffs (and all its non-union employees) (R.56: 93), effective on, and specifying, their furlough date (Ivey's was March 14, 2020; Staley's was March 21, 2020 (R.56: 93); and Holmes' was July 14, 2020 (R.56: 93)).

### D.     Plaintiffs' continued employment by Hotel 57 Services, LLC

Although temporarily furloughed, the evidence in the record conclusively establishes that Plaintiffs (like other non-union employees who did not previously resign their employment with Hotel 57 Services, LLC or transfer to another FSR-operated property) remain Hotel 57 Services, LLC employees (R.56: 105, 106, 108, 112, 115, 116, 120, 121, 127-130).  Staley, Holmes and Ivey have not been terminated (for any reason), nor have they been permanently laid off without right to recall when the Hotel reopens (R.56: 105, 106, 110). Ivey never received a notice of termination (R.56: 112).  Plaintiffs also continue to accrue seniority (R.56: 128) and maintain their accrued vacation time banks for their return to work (R.56: 129, 130).  Staley and Holmes (along with other non-union, non-exempt employees) were paid their accrued but unused vacation time in 2021 and 2022 (R.56: 116).

Additionally, Staley and Holmes (along with many other Hotel 57 Services, LLC non-union, non-exempt employees) were paid by Hotel 57 Services, LLC during their furlough, pursuant to (R.56: 117) which required payments to certain hotel service employees who were temporarily laid off as a result of closures or mass layoffs caused by the COVID-19 pandemic[5]

---

[5] Hotel 57 Services, LLC was required to pay each "covered hotel service employee" five hundred dollars "for each week … that such employee remains laid off," up to a maximum of 30 weeks; New York City Local Law No. 405 Int. No. 2397-A (2021) at §2(a).

(R.56: 117).  Holmes and Staley each began receiving $500 weekly payments from Hotel 57 Services, LLC in October 2021 (R.56: 117).

Moreover, after the 30-week period of required payments under New York City law expired, Hotel 57 Services, LLC voluntarily continued to pay many of its non-exempt employees, including Staley, $500 weekly -- *payments that continue to the present day* (R.56: 120).  Staley's most recent $500 payment from Hotel 57 Services, Inc. occurred on May 30, 2024 (R.56: 122).  During the period beginning on October 11, 2021 and continuing through the present day, Hotel 57 Services, LLC paid to its non-union employees who were on temporary furlough following the temporary suspension of the Hotel's operations with respect to outside guests on March 20, 2020, the total sum of $1,436,051.00. (R.56: 123). From October 21, 2021 through the present day, Staley has received sixty five thousand dollars ($65,000), for which W-2 employee tax forms reflecting these payments have been issued by Hotel 57 Services, LLC (R.56: 122, 125).

### E.      Plaintiffs maintain their right of recall to employment with Hotel 57 Services, LLC at the Hotel upon its reopening

Because Plaintiffs (like other non-union employees of Hotel 57 Services, LLC) have neither been permanently laid off with no right of recall nor terminated (for any reason), they retain their right to be recalled when the Hotel reopens. (R.56: 135).  It is (and has always been) Hotel 57 Services, LLC's intention to reopen the Hotel and to recall Plaintiffs and its other furloughed non-union employees (R.56: 109).  Those employees will return with their accrued seniority and other associated benefits under the EmPact Agreement. (R.56: 128).

### F.      The Hotel plans to reopen in Fall 2024

On August 3, 2023, Hotel 57 Services, LLC, in collaboration with FSR, announced the Hotel would be reopening in Fall 2024, upon completion of renovations and improvements (R.56: 131).  Following that press release, the Hotel's website (https://www.fourseasons.com/newyork/)

contains information documenting a Fall 2024 reopening (R.56: 131).  Upon the Hotel's reopening, Hotel 57 Services, LLC's employees, including Plaintiffs, will be recalled to their employment with the Hotel (R.56: 135).

## ARGUMENT

Summary judgment is warranted where the record establishes that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (summary judgment is integral "to secure the judge, speedy and inexpensive determination of every action").  A fact is only "material" if it might affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A party seeking summary judgment "bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact'" (*Excelled Sheepskin & Leather Corp. v. Oregon Brewing Co.*, 897 F.3d 413, 419 (2d Cir. 2018) (*quoting Celotex Corp.*, 447 U.S. at 323)) and can meet this burden in two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim; or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim.  *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988) (*citing Celotex,* 477 U.S. at 331).

Once that burden is met, "[t]he non[]moving party is required to 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Holcomb v. Iona Coll*., 521 F.3d 130, 137 (2d Cir. 2008) (*quoting Celotex*, 477 U.S. at 324).   To meet that burden, the nonmoving party must provide "concrete particulars" rather than merely assert "a conclusion without supplying supporting arguments or facts."  *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F. 2d 69, 77 (2d Cir. 1984).

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).  To defeat summary judgment, a nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986).  The nonmoving party may not defeat summary judgment by asserting mere "conclusory statements, conjecture or speculation".  *Gross v. NBC*, 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002); *see also FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation); *Bickerstaff v. Vassar Coll.*, 196 F. 3d 435, 451 (2d Cir 1999) (a plaintiff's feelings and perceptions cannot serve as evidence to support a claim); *Trans Sport v. Starter Sportswear*, 964 F. 2d 186, 188 (2d Cir. 1992) (party cannot defeat summary judgment merely on the basis of conjecture or surmise).

The Amended Complaint is a confusing hodgepodge of disparate allegations, many of them contradictory and the vast majority conclusory and/or made "on information and belief."  (R.56: 1).  As set forth below, Plaintiffs failed to meet their burden to establish any of the remaining claims in the Amended Complaint based on: (1) federal WARN Act (Amd. Compl., First Cause of Action); (2) New York WARN Act (*Id*., Second Cause of Action); or (3) breach of contract (*Id*., Third Cause of Action).  As such, the Warner Defendants are entitled to summary judgment.

## POINT I

## SUMMARY JUDGMENT SHOULD BE GRANTED ON THE WARN ACT CLAIMS

Despite Plaintiffs' knowing that *only* Hotel 57 Services, LLC was their employer (which employed and paid them *for years* prior to filing the instant lawsuit), and *only* Hotel 57 Services, LLC was a party to their employment contract, Plaintiffs assert claims against the other Warner Defendants without any purported factual basis, even though they maintain no legal or contractual relationship with Plaintiffs.

The Amended Complaint contains 42 purported "factual" allegations concerning Hotel 57, LLC and Ty Warner Hotels & Resorts, LLC (Amd. Compl. ¶¶93-133), yet 38 of the 42 allegations (more than 90%) are pled solely "upon information and belief" (*Id*).  Tellingly, Plaintiffs do not allege even a single fact upon which any supposed "information" or "belief" is based.  This pleading tactic is not only improper (*see Sourceone Healthcare Techs., Inc. v. Bensonhurst Imaging Assocs. Mgmt. LLC*, 08 CV 2568 (BMC), 2008 WL 2697324, *2 (E.D.N.Y. July 2, 2008) ("[m]aking the allegation 'upon information and belief' does not dilute the Rule 11 obligation[s] in any way")) but faced with the record evidence to the contrary, highlights that Plaintiffs' unsupported "beliefs" are false and irrelevant.  Hotel 57, LLC and Ty Warner Hotels & Resorts, LLC are entitled to summary judgment on the remaining claims in the Amended Complaint.

A.     **Plaintiffs cannot establish liability for alleged federal and New York WARN Act violations against Hotel 57, LLC and Ty Warner Hotels & Resorts, LLC**

To establish liability under federal and New York WARN Acts, a plaintiff must demonstrate the defendant is a "covered employer."  *Coleman v. Optum, Inc.,* 22 CV 05664 (ALC), 2023 WL 6390665, *8 (S.D.N.Y. Oct. 1, 2023), citing to, *Shaw v. Hornblower Cruises & Events LCC*, 21 CV 10408 (VM), 2022 WL 16748584 (S.D.N.Y. Nov. 7, 2022).  Here, Plaintiffs admit they were not employed by either Hotel 57, LLC or Ty Warner Hotels & Resorts, LLC (R.56: 31, 32, 33); and admit their employer is Hotel 57 Services, LLC (R.56: 30, 31, 32, 33).

These undisputed facts demonstrate Hotel 57, LLC and Ty Warner Hotel & Resorts, LLC: (1) are not individual employers for purposes of coverage under the federal or New York WARN Acts and; (2) are separate and distinct entities from Hotel 57 Services, LLC that cannot be considered a "single employer" with Hotel 57 Services, LLC (Plaintiffs' actual employer) for WARN Act purposes.

Only in limited circumstances (not present here) does the "single employer doctrine" permit distinct entities to constitute a single employer for the WARN Act. *See Arculeo v. On-Site Sales & Mktg., LLC,* 425 F.3d 193, 198 (2d Cir. 2005). "Under existing legal rules, independent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as part of the parent or contracting company depending upon the degree of their independence from the parent." 20 C.F.R. §639.3(a)(2); *see also* 12 NYCRR §921-1.1(e). In the Second Circuit, a plaintiff alleging a single employer relationship must establish five factors: (i) common ownership; (ii) common directors/officers; (iii) de facto exercise of control; (iv) unity of personnel policies emanating from a common source; and (v) dependency of operations. *Guippone v. BHS& B Holdings LLC,* 747 F.3d 221, 226 (2d Cir. 2013). The determinative factor is the existence of control of labor relations. *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1241 (2d Cir. 1995). However, the Second Circuit has declined to extend the single employer doctrine (and consideration of the foregoing five factors) beyond a corporate subsidiary or a subcontractor of plaintiff's employment for claims relating to Federal and New York WARN Act violations. *See Coleman v. Optum, Inc.,* 2023 WL 6390665, *9, *citing*, *Gulino v. New York State Educ. Dep't.,* 460 F.3d 361 (2d Cir. 2006).

Hotel 57, LLC and Ty Warner Hotels & Resorts, LLC were not contractually responsible for, and played no role whatsoever with respect to, Plaintiff's employment with Hotel 57 Services, LLC (R.56: 10, 11, 18). Hotel 57, LLC owns the real estate and improvements (*i.e.*, the building itself) that houses the Hotel (R.56: 10). For its part, Ty Warner Hotels & Resorts, LLC has no interest in the Hotel or its business (R.56: 13-18). Neither Hotel 57, LLC or Ty Warner Hotels & Resorts, LLC is a subsidiary of, or subcontractor to, Hotel 57 Services, LLC but separate and distinct entities (R.56: 19, 20). Accordingly, the undisputed facts demonstrate that neither entity

has any control over Plaintiffs' employment necessary to establish WARN Act liability against either entity.

**B.     Proper notice was issued to Plaintiffs pursuant to federal and New York WARN Acts**

Summary judgment is also warranted on Plaintiffs' WARN Act claims (Amd. Compl., First and Second Causes of Action) as proper WARN Act notices were sent to Plaintiffs pursuant to the federal and New York WARN Acts.

**1.     WARN Act notices were sent to Plaintiffs on August 5, 2020**

WARN Act notices were sent to Plaintiffs (and Hotel 57 Services, LLC's other non-union employees) on August 5, 2020 (R.56: 93) (the "August 5, 2020 WARN Act Notices").  It is undisputed that each of Staley, Holmes and Ivey were sent and received such a notice (R.56: 93). And it is undisputed that each of the August 5, 2020 WARN Act Notices contains the information required by the federal and New York WARN Acts and their regulations. (R.56: 97-104).[6]

Further, Plaintiffs' theory that the Warner Defendants violated the WARN Acts by not issuing successive WARN Act notices every six (6) months is baseless (Amd. Compl. at ¶ 172). The WARN Acts do not require employers to provide affected employees with multiple notices, except in the limited circumstance (not present in this case) where the date or scheduled dates of a plant closing or mass layoff is extended before the layoff occurs.  *See* 22 C.F.R. §639.10; *Presser v. Key Food Stores Co-Op*., 01 CV 8059, 2006 WL 2086346 (E.D.N.Y. July 25, 2006) (holding, in part, that additional notice was sufficient as it confirmed a postponement of the layoff was required and identifying the new date on which the layoff was anticipated).  No additional WARN

---

[6] The August 5, 2020 WARN Act notices duly contain: (1) a statement as to whether the planned action is expected to be permanent or temporary (R.56: 98); (2) the expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated. (R.56: 97); and (3) The name and telephone number of a company official to contact for further information. (R.56: 102). See 20 C.F.R §639.7; 12 N.Y.C.R.R. §921-2.1.

Act notice was required to Plaintiffs beyond the August 5, 2020 WARN Act Notices, which related to Plaintiffs original (and only) temporary furlough and was timely sent upon Hotel 57 Services, LLC's reasonable expectation after the onset of the unforeseen business circumstances caused by COVID-19 that Plaintiffs' temporary furlough would last longer than six months.

### 2.   The unforeseen business exception to federal and New York WARN Acts apply

Plaintiffs purportedly challenge the timeliness of the August 5, 2020 WARN Act Notices. The federal and New York WARN Acts generally require advance notice (60 or 90 days, respectively) to workers of plant closings and mass layoffs, to provide transition time to adjust to employment loss.  However, neither requires employers to have prophetic abilities to anticipate the unforeseeable.  Indeed, exceptions apply to the advance notice requirement in circumstances present here.

Accordingly, both federal and New York WARN Acts specifically relieve employers from the advance 60-day or 90-day notice requirements when a covered "employment loss" is caused by circumstances or events not reasonably foreseeable at the time notice would otherwise have been required.  *See* 29 U.S.C. §2102(b)(2)(A) (exception to federal WARN Act 60-day notice requirement if "the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required"); 12 N.Y.C.R.R. §921-6.3 (exception to New York WARN Act 90-day notice requirement "where a plant closing, mass layoff, relocation or covered reduction in work hours was caused by business circumstances that were not reasonably foreseeable when the 90-day notice would have been required").

Determining whether business circumstances causing a closing or mass layoff were reasonably foreseeable "focuses on the employer's business judgment."  20 C.F.R. §639.9(b)(2) ("[t]he employer must exercise such commercially reasonable business judgment as would a similarly situated employer in predicting the demands of its particular market"); 12 N.Y.C.R.R.

§921-6.3 ("[t]he employer shall exercise commercially reasonable business judgment"). An employer is not required -- or even encouraged -- to provide "WARN notice and close its doors when there is a *possibility* that [layoffs may occur] at some undetermined time in the future." *Watson v. Mich. Indus. Holdings, Inc.*, 311 F.3d 760, 765 (6th Cir. 2002) (emphasis in original). "Such a reading of the Act would force many employers to lay off their employees prematurely, harming precisely those individuals WARN attempts to protect." *Id*. at 765.  Instead, "it is the *probability* of occurrence that makes a business circumstance 'reasonably foreseeable'" such that notice is required under the WARN Act.  *Halkias v. Gen. Dynamics Corp.*, 137 F.3d 333 (5th Cir. 1998) (emphasis added).[7]

Here, there is no evidence that Hotel 57 Services, LLC (or FSR, as operator of the Hotel charged with managing Hotel 57 Services, LLC's employees), had any advance knowledge that COVID-19 would impact New York, or that New York State's Governor would shut down hotel operations before the executive orders mandated these restrictions.  To the contrary, newspapers published on December 19, 2020 (90 days before the Hotel's closure) and January 20, 2020 (60 days before the Hotel's closure) did not even cover the novel coronavirus (COVID-19) (R. 56: 47, 48).  In January 2020, COVID-19 was perceived in the United States as a risk that was exceedingly low with doubtfulness as to whether it would even spread within the United States (R.56: 49).  It was not until March 11, 2020, mere days before the Hotel's forced temporary closure, that COVID-19 was designated as a pandemic by the WHO and not until March 13, 2020 that it was declared a National Emergency by the President of the United States (R.56: 56).

---

[7]  The regulations implementing the New York WARN Act expressly identify a "a public health emergency, including but not limited to a pandemic" as an unforeseen business circumstance that will excuse advanced notice.  *See* 12 NYCRR §921-6.3(b)

The evidence establishes that uncertainty over the continued necessity and/or duration of that closure progressed rapidly -- all in a matter of a few months following Hotel 57 Services, LLC's decision to close the Hotel to outside guests on March 20, 2020 (R.56: 56-66, 73, 78-83).

The record evidence establishes that Hotel 57 Services, LLC, using its reasonable commercial business judgment, did not determine that the probability of an extended closure (based upon a determination that it could not operate the Hotel safely and profitably in any capacity) required WARN Notices (*i.e.*, that the temporary layoff would last more than six months) until it issued those notices on August 5, 2020 (R.56: 92).  As the August 5, 2020 WARN Act Notices expressly confirm, the probable extended closure and layoffs were "due to *unforeseen business circumstances* and the continued major economic downturn stemming from the COVID-19 virus pandemic and consequent travel and tourism disruptions outside the employer's control" (R.56: 92) (emphasis added).

"In reviewing the employer's business judgment, the court 'must be careful to avoid analysis by hindsight.'" *In re Transcare Corp.*, 614 B.R. 187, 209 (Bankr. S.D.N.Y. 2020) (quoting *Watson* 311 F.3d at 765).  The only evidence in the record about Hotel 57 Services, LLC's business judgment is that Hotel 57 Services, LLC provided Plaintiffs proper notice of their "employment loss", as defined under the federal and New York WARN Acts, as soon as practicable following: (a) the Hotel's suspension of hospitality operations on March 20, 2020; (b) the Hotel ending its April 9, 2020 through June 30, 2020 period of housing first responders; and (c) its resulting decision that it could no longer continue any operations amidst the raging COVID-19 crisis. Plaintiffs have adduced no evidence in the record, from either a fact or expert witness, to the contrary.  Accordingly, Hotel 57 Services, LLC (and the other Warner Defendants) are entitled to summary judgment on Plaintiffs' First and Second Causes of Action.

## POINT II

## SUMMARY JUDGMENT SHOULD BE GRANTED
## ON THE BREACH OF CONTRACT CLAIM

In their Third Cause of Action, Plaintiffs contend Hotel 57 Services, LLC breached the EmPact Agreement by not paying them contractual severance pay ("No-Fault Separation Pay") based on their contradictory allegations that Plaintiffs were both: (1) permanently laid off by Hotel 57 Services, LLC without a right of recall (Amd. Compl. at ¶¶15, 16, 350); and (2) terminated from their employment for no fault (*Id.*, at ¶¶ 255, 259, 350).

### A.   Plaintiffs have not complied with a contractual condition precedent

As an initial matter, summary judgment should be granted on Plaintiffs' breach of contract claim because Plaintiffs have not, nor can they, submit any evidence to establish they have complied with the dispute resolution process set forth in Steps 1-5 of the C.A.R.E. procedure in the EmPact Agreement[8] -- a condition precedent to bringing a claim against Hotel 57 Services, LLC (R.56: 43-46).  In fact, Plaintiffs flatly concede they did not comply with their contractual requirements to follow any of the required steps 1-5 of C.A.R.E (R.56: 46)*. See ISS Facility Services, Inc. v. Fedcap Rehabilitation Services, Inc*., 20 CV 6591 (RA), 2021 WL 2784550 (S.D.N.Y. July 2, 2021) (dismissing breach of contract claim for failure to comply with a contractual condition precedent where plaintiff did not plausibly allege that the parties complied with all the contract's dispute resolution provisions).

---

[8] The C.A.R.E. dispute resolution procedure requires, in order: informal discussion with an immediate supervisor (Step 1); a written complaint with the Human Resources Office (Step 2), an investigation concerning the complaint by the Director of Human Resources (Step 3), a written decision following the close of investigation by the Director of Human Resources (Step 4), and an appeal to the General Manager, and written decision thereafter (Step 5) (R.56: 45).

**B.**     **Plaintiffs are not eligible for No-Fault Separation Pay**

Assuming, arguendo, that they had engaged in the required internal dispute resolution procedure under C.A.R.E. (they did not), the undisputed facts demonstrate Plaintiffs still are not eligible for No-Fault Separation Pay under their contract with Hotel 57 Services, LLC.   The EmPact Agreement provides: "[i]f I receive a permanent layoff with no right of recall or I am terminated for no fault, my termination will be considered "no-fault."   …. [I]n the event of a permanent layoff or "no-fault" termination, I will be eligible for separation pay in accordance with the "No-Fault Separation Pay Schedule" in effect at the time of my separation…." (R. 56: 37; EmPact at pp. 56-57). The contractual framework of the EmPact Agreement is straightforward. There are only two events that could trigger Plaintiffs' eligibility for No-Fault Separation Pay: (1) termination of Plaintiffs' employment for no fault; or (2) Plaintiffs' permanent layoff with no right of recall, provided that such permanent layoff was not the result of causes beyond the control of Four Seasons, specifically including national emergencies.

Plaintiffs rely on the extended nature of their furlough and contend the lengthy time period necessarily connotes a termination of their employment or permanent layoff without a right of recall.  But argument and subjective belief are not evidence, nor are they sufficient to create an issue of fact to avoid summary judgment.  The irrefutable evidence demonstrates neither event happened, and Plaintiffs are not entitled to contractual No-Fault Separation Pay.

**1.**     **Plaintiffs' employment was not terminated**

No Plaintiff was terminated from her employment with Hotel 57 Services, LLC.  It is undisputed that Hotel 57 Services, LLC did not provide notice of termination of employment (R.56: 112).  That is because not only was Plaintiffs' employment not terminated, but *they remain employed by Hotel 57 Services, LLC to this very day*.

Specifically, Plaintiffs: (1) receive periodic communications from Hotel 57 Services, LLC concerning the Hotel's reopening status (R.56: 84); (2) maintain and continue to accrue seniority (R.56: 128); and (3) maintain their accrued vacation time banks for use upon their return to work (R.56: 129, 130) (if they did not themselves elect to be paid out that accrued time during their furlough (R.56: 125).

Perhaps most importantly, Hotel 57 Services, LLC paid its non-exempt, non-union furloughed employees (including Staley) $500 each week from October 2021 (the beginning date of 30 weeks of required payments to those furloughed employees pursuant to New York City law) and continuing to the present day -- even though the required payments to those furloughed employees ended in May 2022 (R.56: 120). In all, Hotel 57 Services, LLC paid to these furloughed employees a total of $1,436,051.00 while they were on furlough (R.56: 123).

### 2.       Plaintiffs did not receive permanent layoffs with no right to recall

The same record evidence demonstrates that Hotel 57 Services, LLC did not permanently lay off Plaintiffs from their employment at the Hotel without a right of recall -- and Plaintiffs have adduced no evidence to the contrary. In fact, again notwithstanding Plaintiffs' subjective beliefs, it is undisputed that Plaintiffs Staley, Holmes and Ivey all maintain their right to recall to their employment at the Hotel upon its reopening, which is currently expected to be in Fall 2024 (R.56: 131). In fact, Plaintiff Holmes even acknowledged she believes she has such right to be recalled (R.56: 114). Accordingly, because they maintain a right to recall to employment at the Hotel, Hotel 57 Services, LLC did not breach the EmPact Agreement as Plaintiffs are not eligible for No-Fault Separation Pay, regardless of whether or not their furlough is deemed a permanent layoff.

### 3.       COVID-19 was a "national emergency," precluding No-Fault Separation Pay

Even assuming, *arguendo* Plaintiffs were able to establish that they experienced a permanent layoff and lost their recall rights (they cannot), they still would be unable to establish a

breach of contract claim under the EmPact Agreement.  This is because the EmPact Agreement specifically provides Hotel 57 Services, LLC employees are ineligible for No-Fault Separation Pay where a layoff results from, in relevant part, "national emergencies" (R.56: 37) -- whether or not their layoff was permanent and whether or not the employee had a right of recall to their employment at the Hotel.

Regardless of whether Plaintiffs experienced a permanent layoff with no right of recall, they still are not entitled to No-Fault Separation Pay because it is indisputable such action was caused by the COVID-19 pandemic -- which was designated a National Emergency on March 13, 2020  (R.56: 58); 85 Fed. Reg. 15337 (POTUS Proclamation 9994 of March 13, 2020, Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak).  As the record establishes Plaintiffs were subject to layoffs beginning in March 2020 stemming from the COVID-19 virus pandemic (R.56: 69, 90, 91), Plaintiffs cannot establish an actual breach of the EmPact Agreement resulting from a failure to pay them such No-Fault Separation Pay because they are simply not entitled to this payment pursuant to that contract.

## **CONCLUSION**

For all of the foregoing reasons, there is no genuine issue as to any material fact and the

Warner Defendants are entitled to judgment as a matter of law on all claims asserted by Plaintiffs

in the First Amended Complaint.


Dated:  New York, New York
        May 31, 2024

/s/ Marc B. Zimmerman
Marc B. Zimmerman
James J. Boland
SMITH, GAMBRELL & RUSSELL, LLP
1301 Avenue of the Americas, 21st Floor
New York, NY 10019
(212) 907-9700

Kathryn T. Lundy
VENABLE LLP
151 West 42nd Street, 49th Floor
New York, NY 10036
(212) 307-5500

*Attorneys for Defendants Hotel 57 Services,
LLC, Hotel 57, LLC, Ty Warner Hotels &
Resorts, LLC and H. Ty Warner*