UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SELENA STALEY, VIVIAN HOLMES, and OLIVE IVEY, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

FSR INTERNATIONAL HOTEL INC. d/b/a FOUR SEASONS HOTELS AND RESORTS, HOTEL 57 SERVICES, LLC, HOTEL 57, LLC, TY WARNER HOTELS & RESORTS, LLC, and H. TY WARNER

Defendants.

Case No.: 22-CV-6781 (JSR)

**(ORAL ARGUMENT REQUESTED)**

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Paul Wagner
STOKES WAGNER ALCA
903 Henshaw Road
Ithaca, NY 14850
(607) 677-6801

John R. Hunt
STOKES WAGNER ALCA
1201 W. Peachtree Street, NW, St. 2615
Atlanta, GA 30309
(404) 766-0076

*Attorneys for Defendant FSR International Hotel, Inc.*

Marc B. Zimmerman
James J. Boland
SMITH GAMBRELL & RUSSELL, LLP
1301 Avenue of the Americas, 21st Floor
New York, NY 10019
(212) 907-9700

Kathryn T. Lundy
VENABLE LLP
151 West 42nd Street, 49th Floor
New York, NY 10036
(212) 307-5500

*Attorneys for Defendants Hotel 57 Services, LLC, Hotel 57, LLC, Ty Warner Hotels & Resorts, LLC and H. Ty Warner*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..... 1

BACKGROUND ..... 1

A. The COVID-19 Pandemic and Suspension of Hotel Operations ..... 2

B. Hotel 57 Services, LLC's WARN Act Notices ..... 3

C. Plaintiffs' Furloughs, WARN Act Notices, and Continued Employment by Hotel 57 Services, LLC ..... 6

D. Plaintiffs' Remaining Claims and Proposed Classes ..... 12

ARGUMENT ..... 15

I. PLAINTIFFS' MOTION SHOULD BE DENIED FOR DISPOSITIVE THRESHOLD REASONS ..... 16

A. Plaintiffs Waived Their Rights to Pursue Their Claims As a Class Action ..... 16

B. Plaintiffs Improperly Seek to Certify Fail-Safe Classes ..... 18

C. Plaintiffs Have Not Established Standing Of Their Purported Class Members, and Their Proposed Classes are Not Ascertainable ..... 19

II. PLAINTIFFS HAVE NOT SATISFIED RULE 23(a) ..... 20

A. Plaintiffs Have Not Proven Numerosity ..... 21

B. Plaintiffs Have Not Established Common Questions of Law or Fact ..... 22

C. Plaintiffs' Claims Are Not Typical ..... 23

D. Plaintiffs Are Not Adequate Class Representatives ..... 27

1. Plaintiffs Are Not Adequate Class Representatives ..... 27

2. Proposed Counsel is Not Adequate ..... 32

III. PLAINTIFFS' CLASSES CANNOT BE CERTIFIED UNDER RULE 23(b)(3) ..... 35

A. Individual Issues Predominate ..... 35

B. A Class Action is Neither Manageable Nor Superior ..... 39

CONCLUSION ..... 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 291 (1997)....................35

*Ansari v New York University*,
179 F.R.D. 112 (S.D.N.Y. 1998)....................15

*Bombin v. Southwest Airlines Co.,*
No. 5:20-cv-01883-JMG, 2023 WL 5832166 (E.D. Pa. Sept. 7, 2023)....................17

*Bowling v. Johnson & Johnson*¸
No. 17 Civ. 3982 (AJN), 2019 WL 1760162....................22, 26

*Coleman v. Optum Inc.*,
No. 1:22-cv-05664 (ALC), 2023 WL 6390665 (S.D.N.Y. Oct. 1, 2023)....................16

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)....................15, 16, 35

*DeCastro v. City of New York*,
No. 16-CV-3850 (RA), 2019 WL 4509027 (S.D.N.Y. Sept. 19. 2019)....................19

*Denny v. Deutsch Bank AG*,
443 F.3d. 253 (2d Cir. 2006)....................19, 29

*Eisen v. Carlisle & Jacquelin*,
391 F.2d 555 (2d Cir. 1968)....................32

*West Virginia v. Environmental Protection Agency*¸
597 U.S. 697 (2022)....................20

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)....................15, 23, 24, 35

*Haymount Urgent Care PC v. Go Fund Advance, LLC*¸
635 F. Supp. 3d 238 (S.D.N.Y. 2022)....................17

*In re Initial Public Offerings Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006)....................15

*Johnson v. Nextel Communications*,
780 F.3d 128 (2d Cir. 2015)....................22

5965933v1/33457-0004

SGR/56201433.15

*Korea Week, Inc. v. Got Capital, LLC*¸
No. 15-6351, 2016 WL 3049490 (E.D. Pa. May 27, 2016) .... 17

*In re LIBOR-Based Financial Instruments Antitrust Litig.*,
299 F. Supp. 3d 430 (S.D.N.Y. 2018) .... 25, 26, 27

*Lujan v. Defenders of Wildlife*¸
504 U.S. 555, 560-61 (1992) .... 19

*Marin v. Apple-Metro, Inc.,*
Nos. 12 CV 5274 (ENV) (CLP) and 13 CV 1417 (DNV (CLP), 2017 WL 4950009, at *37 (E.D.N.Y. Oct. 4, 2017) .... 18

*Nayal v. HIP Network Services IPA, Inc.*,
620 F. Supp. 2d 566 (S.D.N.Y. 2009) .... 17

*Palmer v. Convergys Corp.*,
No. 7:10-cv-145 (HL), 2012 WL 425256 (M.D. Ga. Feb. 9, 2012) .... 17

*In re Petrobas Securities*,
862 F.3d at 269 .... 19, 21

*Schonton v. MPA Granada Highlands*,
No. 16-cv-12151-DJC, 2019 WL 1455197 (D. Mass. April 2, 2019) .... 23, 24, 27

*Scott v. New York City Dist. Council of Carpenters Pension Plan*¸
224 F.R.D. 353 (S.D.N.Y. 2004) .... 27, 28, 29

*Spokeo, Inc. v. Robbins*,
578 U.S. 330 (2016) .... 19

*TransUnion LLC v. Ramirez*,
--- U.S. ---, 141 S. Ct. 2190 (2021) .... 19

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016) .... 35

*Wal-Mart Stores, Inc. v. Dukes*¸
564 U.S. 388 (2011) .... 16, 22

*Wexler v. AT&T Corp.*,
No. 15-cv-686 (FB)(PK), 2019 WL 5694028 (E.D.N.Y. Aug. 5, 2019) .... 27, 32

*Zinser v. Accufix Research Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) .... 40

**Statutes**

29 U.S.C. § 2102(b)(2)(A) .... 36

**Other Authorities**

20 C.F.R. § 639.1(a) .....36

20 C.F.R. § 639.3 .....36

12 N.Y.C.R.R. § 921-1.1 .....36

12 N.Y.C.R.R. § 921-2.1 .....36

12 N.Y.C.R.R. § 921-6.3 .....36

Fed. R. Civ. P. 12(a)(1) .....22

Fed. R. Civ. P. 23(a) and 23(b)(3) .....40

Fed. R. Civ. P 23(b)(3)(A) .....40

Fed. R. Civ. P. 23(g) .....32

Fed. R. Civ. P. 23(g)(1)(A(i) .....33

Fed. R. Evid. 602 .....21

Fed. R. Evid. 702 .....21

Fed. R. Civ. P. 23 .....1, 15, 35

## INTRODUCTION

Ignoring that the United States Supreme Court has expressly held that a party seeking class certification must affirmatively establish – with "evidentiary proof" – that each and every requirement of Rule 23 of the Federal Rules of Civil Procedure is satisfied, Plaintiffs have filed a motion to certify two classes in this lawsuit without even attempting to meet their burden.

Although there are myriad reasons why this case cannot and should not be certified as a class action – including that Plaintiffs' claims involve numerous issues of individual fact about which even the three named Plaintiffs do not agree – the most glaring, and insurmountable, defect is the inadequacy of Plaintiffs and their chosen counsel to properly represent the interests of absent class members.  Plaintiffs, who waived their right to bring a class action in the first instance and admittedly have not complied with their contractual pre-suit obligations, all admit that they cannot testify about critical facts in support or their own claims, let alone the claims of absent class members.  And their counsel, who presented Plaintiffs' motion without regard for Plaintiffs' burden of proof and without competent admissible evidence, neglected to secure and identify an expert to calculate the damages for Plaintiffs or any purported classes – leaving the named Plaintiffs and purported class members with no admissible evidence of damages in this case should a class be certified.

Absent and unsuspecting class members deserve better.  No classes can – or should – be certified in this case.  Plaintiffs' motion for class certification should be denied.

## BACKGROUND

This case involves the Four Seasons Hotel New York, a landmark 52-story, I.M. Pei designed 5-star hotel located at 57 East 57th Street, New York, New York ("Hotel").  Hwang Decl. ¶ 3.  That Hotel is owned by defendant Hotel 57 LLC, and managed by defendant FSR International Hotel, Inc. ("FSR") pursuant to a hotel management agreement with Hotel 57 LLC.

*Id*. at ¶ 15. Hotel 57 Services, LLC employs Plaintiffs and others working at the Hotel. *Id*. at ¶ 5. Although named as a defendant, Ty Warner Hotels & Resorts LLC has no relationship to Hotel management or Plaintiffs. *Id.* at ¶¶ 16-20; Hwang Dep. 85:17-21, 86:2-15. No claims remain against H. Ty Warner.[1]

**A. The COVID-19 Pandemic and Suspension of Hotel Operations**

On March 7, 2020, Governor Cuomo issued Executive Order 202.1, "Declaring a Disaster Emergency in the State of New York[.]" EOH 202.1.[2] The executive order reported that "both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and more are expected to continue" and that "New York State is addressing the threat that COVID-19 poses to the health of its residents and visitors." *Id.* As a result, Governor Cuomo "declare[ed] a state of disaster emergency for the entire state of New York." *Id.* Numerous laws, ordinances, rules and regulations were modified, and the governor authorized "all necessary State agencies to take appropriate action to assist local governments and individuals in containing, preparing for, responding to and recovering from this state disaster emergency, to protect state and local property, and to provide such other assistance as is necessary to protect public health, welfare, and safety." *Id.*

---

[1] Plaintiffs' motion fails to candidly address the different defendants that they have sued, the evidence relating to their respective individual involvement (or, for most, lack of involvement) in the Hotel, its operations, Plaintiff's employment, or the claims Plaintiffs have asserted – or not asserted – against each. It is unclear whether that is deliberate or whether Plaintiffs simply do not understand these factual and legal realities.

[2] "EO ___" refers to Executive Orders issues by Governor Cuomo, attached to the declaration in support of the Warner Defendants' motion for judicial notice and publicly available at www.op.nysed.gov/about/covid-19/expired-executive-orders.

More executive orders followed in rapid succession.[3] Workplace restrictions were also quickly put in place. On March 18, 2020, Governor Cuomo ordered that with the exception of entities providing "essential" services, "[a]all business and not-for-profit entities shall utilize, to the maximum extent possible, any telecommuting or work from home procedures that they can safely utilize" effective March 20, 2020 at 8:00 p.m. EOH 202.6. Employers were ordered to reduce their in-person workforce at any location by 50% by the same day and time. *Id.* The next day, Governor Cuomo increased the in-person reduction to 75%. EO 202.7.

Given the collective impact of the orders relating to COVID-19, the health and safety issues presented, and the lack of any travel or demand for accommodations, the Hotel closed to outside guests were temporarily suspended on March 20, 2020. Ortiz Dep. 46:19-24.

Although the Hotel closed to outside guests, it qualified as an "essential services" and continued to operate as a business with reduced staffing. *Id* at 46:2-8, 68:18-21. As a result, starting in March 2020 and continuing over the course of the next few months, most, but not all, employees, were either placed on temporary furlough or had their working hours reduced. *Id* at 46:19-24.

**B. Hotel 57 Services, LLC's WARN Act Notices**

Although Plaintiffs' lawsuit centers around an alleged failure to provide WARN Act notices in connection with the events set forth above (under federal and New York law), in truth, WARN Act notices were promptly sent – a fact of which all three Plaintiffs and their counsel were aware when Plaintiffs commenced this lawsuit but never disclosed in any complaint.

[3] *See* EO 202.1 (March 12, 2020, cancelling gathering excess of 500 people and restricting places of public accommodation to 50% of capacity); EO 202.3 (March 16, 2020, closing restaurants, bars, gyms and fitness centers and cancelling gatherings of more than 50 people); EO 202.4 (March 16, 2020.closing schools); EO 202.5 (March 18, 2020, closing shopping malls and indoor and outdoor places of public amusement, save parks).

In March 2020, hotel employees fell into two categories, union and non-union. Ortiz Decl. at ¶ 4. For union employees, the suspension of Hotel operations required immediate action. Union employees are governed by a collective bargaining agreement. *Id* at ¶ 5. That agreement called for advance notice of a temporary reduction in work for a business reason. *Id* at ¶ 8. Although there was uncertainty over the nature and extent of COVID-19 and its effect on operations, WARN Act notices were sent to union employees on March 26, 2020 to satisfy the contract requirement. *Id*.

Non-union employees, which included supervisory and management-level staff, were in a different position. No collective bargaining agreement required any immediate action or notice, and at the time the Hotel stopped taking guests, there was uncertainty about the impact COVID-19 would have and the length of time that it would impact Hotel operations. *Id* at ¶ 9-10; Ortiz Dep. 64:9-11. For example, on April 2, 2020, the Hotel was opened to house doctors, nurses and other health care professionals battling the pandemic free of charge, at Hotel 57, LLC's expense. Ortiz Dep. 51:7-13. As result, many employees, including non-union employees who had just been furloughed in March, were back working on-site. *Id* at 51:7-13; Ortiz Decl. ¶ 13.

Uncertainty about the scope and duration of the pandemic continued over the following months, as reflected in the multiple New York executive orders issued from and after March 2020 that evolved over time, both as to the level of restrictions and their duration.[4]

[4] The very first March 7, 2020 executive order declaring the state of emergency, but not ordering closures or other personal or business restrictions, expired six months later, on September 7, 2020, and the suspension and modification of laws and regulations in that order only extended through April 6, 2020. EO 202. These and other dates in executive orders were changed and extended over time in subsequent orders as the pandemic developed. *See, e.g.*, EO 202.8; EO 202.9; EO 202.10; EO 202.11; EO 202.12; EO 202.13; EO 202.14; EO 202.15; EO 202.16; EO 202.17; EO 202.18; EO 202.19; EO 202.20; EO 202.21; EO 202.22; EO 202.23; EO 202.24; EO 202.25; EO 202.26; EO 202.27; EO 202.28; EO 202.29; EO 202.30; EO 202.31; EO 202.32; EO 202.33; EO 202.34; EO 202.35; EO 202.36; EO 202.37; EO 202.38; EO 202.39; EO 202.40; EO 202.41; EO 202.42;

The same uncertainty existed at the Hotel. Initially, when the Hotel closed to outside guests on March 20, 2020, the targeted "return date" for full operations was April 15, 2020. Ortiz Decl. ¶ 11. As the pandemic evolved, the targeted date to resume regular operations changed. *Id.* at ¶¶ 15-17, Ex. A (April 30, 2020 (reported on April 9); Ex. B (June 15, 2020 (reported on April 30)); Ex. C (July 15, 2020, with first responders staying on until June 15, 2002 (reported on May 22)).

On June 22, 2020, employees were informed that the housing of health care professionals would end on June 30, 2020. *Id.* at ¶ 18**,** Ex. D. Employees were also told that the Hotel would "temporarily be suspending most . . . operations," but would "continue to operate with reduced staffing" with a targeted re-opening in "late summer." *Id.* With the COVID-19 pandemic still raging in August 2020 and although uncertainty remained as to its duration, WARN Act notices were sent to all remaining Hotel 57 Services, LLC non-union employees on August 5, 2020. *Id.* at ¶¶ 19-20; Ortiz Dep. 100:1-19, 189:3-12.

Non-union Hotel 57 Services, LLC employees who are not actively working remain on furlough pending the Hotel's reopening, which has been publicly announced to take place in Fall 2024. Ortiz Decl. ¶ 23. No furloughed employee has been terminated. *Id.* at ¶ 21. Nor has any furloughed employee been permanently laid off with no right of recall. *Id.* at ¶ 22. Each retains their accrued seniority, and also retains their accrued vacation (to the extent the employee did not elect to be paid for that vacation during furlough, which many did). *Id.* at ¶¶ 27-28.

In addition, under New York City Local Law No. 405 Int. No. 2397-A (2021), hotels were required to provide certain payments to "covered hotel service employee[s]" temporarily laid off

EO 202.43; EO 202.44; EO 202.45; EO 202.46; EO 202.47; EO 202.48; EO 202.49; EO 202.50; EO 202.51; EO 202.52; EO 202.53; EO 202.54.

as a result of the COVID-19 pandemic.[5] Under that law, Hotel 57 Services, LLC was required to pay covered employees $500 "for each week … that such employee ***remains*** laid off," up to a maximum of 30 weeks. Int. No. 2397-A § 2(a) (emphasis added). Under that provision, covered furloughed employees were paid $500 per week for the required period beginning in October 2021 and continuing through February 2022. Ortiz Decl. ¶¶ 29-32. In addition, beginning in July 2022, Hotel 57 Services, LLC elected to continue paying, and is still paying, $500 per week to most furloughed non-union, non-exempt employees, including Selena Staley.[6] *Id.* at ¶ 33.

### C. Plaintiffs' Furloughs, WARN Act Notices, and Continued Employment by Hotel 57 Services, LLC

Plaintiffs' motion is conspicuously silent on the facts relating to each of the three named Plaintiffs. Despite proclaiming each to be typical, adequate representatives whose circumstances mirror those of every purported absent class member, Plaintiffs do not candidly reveal the evidence and facts about themselves. That is not accidental. The evidence refutes Plaintiffs' proclamations.

***Selena Staley***: Staley has been a Hotel 57 Services, LLC employee at the Hotel since 2007, and is a Reservations Agent.[7] Staley was furloughed on March 20, 2020, when the Hotel stopped taking outside guests as a result of COVID-19. Staley Dep. 204:10-23, 207:22-208:2. Staley was

---

[5] A "covered hotel service employee" is one who: "(i) was employed by such hotel on March 1, 2020; (ii) as of March 1, 2020, had been employed by such hotel for a period of not less than one year to perform hotel service; (iii) was not a managerial, supervisory or confidential employee and did not otherwise exercise control over the management of such hotel; and (iv) was laid off after March 1, 2020 due to a closure or a mass layoff." Int. No. 2397-A § 1.

[6] As of the date of this opposition, payments to these furloughed employees, including Staley, total $1,013,524,75, which are reflected in IRS Form W-2s issued (for prior years, and to be issued for current year) to each. Ortiz Decl. ¶ 38.

[7] Staley maintains a profile on LinkedIn, an April 10, 2023 printout of which she identified at her deposition. Staley Dep. 24:6-10; Boland Decl. ¶ 8, Ex. 72. That printout disclosed her ***current*** (April 10, 2023) employment as "Reservations Agent at Four Seasons Hotel," Ex. 72, which she has not changed since. *See* https://www.linkedin.com/in/selena-staley-818a8612/ (accessed May 29, 2024).

aware that the Hotel reopened shortly thereafter to house doctors and nurses, but was not working on-site during the time. *Id*. at 210:9-211:14, 213:7-10. Staley does not know who was working at the Hotel during this time, how many people were working or whether they were union employees, non-union employees, or both. *Id*. at 213:11-214:14. Staley was sent a WARN Act notice dated August 4, 2022, which she produced from her files. *Id.* at 278:5-279:20; Boland Decl. ¶ **7**, Ex. 78.

Staley testified that her employment was "terminated," although she is "confused" about the date. *Compare* Staley Dep. 242:16-20 (unequivocally testifying she was terminated was March 20, 2020) *with id*. at 274:5-20 (changing the date to June 25, 2021). Whatever the date, Staley continued to be paid vacation pay and holiday pay by Hotel 57 Services, LLC through the end of 2021. *Id.* at 290:20-291:24, 293:13-18; Boland Decl. ¶ **7**, Ex. 83. Staley was also paid $500 per week (under the New York City law for current employees who remained on furlough) by Hotel 57 Services, LLC from October 2021 through at least her deposition in April 2023. Staley Dep. 292:10-24, 293:19-294:23, 299:4-23. Indeed, although Staley continues to claim she was "terminated" back in June 2021, ***she continues to be paid the $500 per week as a current employee to this day***. Oritz Decl. ¶¶ 33-35, Ex. H.

Although she seeks to serve as a class representative, Staley does not know if she will even testify at trial. Staley Dep. 145:6-146:6. That is because Staley has limited, if any, ability to testify in support of her own claims. *See id*., *passim* (answering "I don't remember" or "I don't understand [the/your/that] question" 227 times and 111 times, respectively). Staley does not know anything about the defendants she sued. *Id*. at 315:24-327:11. She does not know what, if anything, any of them allegedly did wrong. *Id.* Other than wanting to be "treated fairly" and to be "heard," Staley does not know what recovery she seeks. *Id*. at 88:24-90:7. Staley does not know how much money she wants, cannot calculate her alleged damages, and does not know if she wants anything in addition to money (and does not know who would know), and does not

know who will testify at trial about what Staley wants. *Id*. at 320:17-321:11; *see also id*. at 195:25-199:2.

Staley also cannot testify about the merits of her claims. Although suing defendants for allegedly violating the federal or New York WARN Acts, Staley admits that she was sent (and received) the August 5, 2020 WARN Act notice. *Id*. at 278:5-279:20. Staley testified that her only complaint under the WARN Act is that the Hotel has not yet reopened, which is not a violation of the federal or New York WARN Acts. *Id*. at 280:15-25. And with respect to her claim for payment of No-Fault Separation Pay under the EmPact Agreement, Staley admits that she can only receive that payment if she was either (i) permanently laid off with no right of recall, or (ii) terminated for no-fault. *Id*. at 334:3-7. Staley admits that she cannot testify that either happened to her, *id*. at 334:8-336:17, nor can she testify as to what happened to any other purported class member, *id*. at 336:18-20.[8] Staley also cannot testify that she followed the necessary steps in the EmPact Agreement (C.A.R.E. steps 1-5) required to pursue a claim in the first place. *Id*. at 336:24-339:21.

***Vivian Holmes***: Holmes, a Rooms Division Administrative Assistant, has been a Hotel 57 Services, LLC employee at the Hotel since 1998.[9] Holmes Dep. 156:9-164:14. After the Hotel stopped taking outside guests on March 20, 2020, Holmes was designated an "essential worker"

---

[8] Staley also refused to answer basic questions outright, and dodged many others. Staley was repeatedly asked who, if anyone, told her that she was terminated. She refused to and did not identify a single person. Staley Dep. 240:2-241:14, 274:21-275:16. Ultimately, Staley was forced to admit that it was just a conclusion she drew in June 2021, not something that actually happened. *Id*. at 275:17-276:11.

[9] Holmes maintains a profile on LinkedIn, a March 28, 2023 printout of which she identified at her deposition. Holmes Dep. 24:6-10; Boland Decl. ¶ **8**, Ex. 4. That printout disclosed her ***current*** (March 28, 2023) employment as "Administrative Assistant Four Seasons Hotels and Resorts," Ex. 4, which she has not changed since. *See* https://www.linkedin.com/in/vivian-holmes-079005a1/ (accessed May 6, 2024).

who was allowed to travel to and from work and continued working, doing payroll from home. *Id*. at 155:6-156:8; 161:4-12. Holmes admitted that there were other workers designated as "essential" working onsite and remotely after March 20, 2020, but does not know the number or the names. *Id*. at 156:9-164:14. Holmes continued to do payroll after the Hotel opened to house medical personnel and knows that workers changed over time, but does not know how many people were working or their names. *Id*. at 170:172:17.

Ultimately, Holmes was placed on temporary layoff/furlough on July 14, 2020. Ortiz Decl. ¶ 20, Ex. F. A WARN Act notice was sent to Holmes on August 5, 2020. *Id*. Despite Plaintiffs (collectively) producing two copies of the August 5, 2020 WARN Act notice addressed to Holmes, Boland Decl. ¶ 7, Exs. 39, 40, Holmes testified that she did not receive that notice in August 2020.[10] Holmes Dep. 234:24-235:4. Instead, Holmes testified that she received the letter in 2021 as an attachment to an (alleged) email from Elizabeth Ortiz.[11] *Id*. at 235:5-8, 236:4-8.

Whether she did or did not receive the WARN Act notice sent to her in August 2020 (or simply does not remember), Holmes continued to be paid accrued vacation and holiday pay by Hotel 57 Services, LLC through the end of 2021 and into 2022. *Id*. at 299:301:11. Holmes was also paid $500 per week (under the New York City law for current furloughed employees) from October 2021 into 2022, for a total of $15,000.00. Ortiz Decl. ¶ 34, Ex. H.

Like Staley, Holmes seeks to serve as a class representative. Holmes Dep. 37:14-18. Unlike Staley, Holmes understands that she will testify at trial. Holmes Dep. 311:22-25. Yet

---

[10] Plaintiffs' counsel produced documents, purportedly from the three Plaintiffs, as an undifferentiated group, all with the same Bates prefix. *See* Boland Decl. ¶ 8, Ex. 20. With limited exceptions, no Plaintiff can even identify, much less authenticate, documents that she may have produced. *See* Staley Dep, *passim*; Holmes Dep. *passim*; Ivey Dep. *passim*.

[11] Holmes admits that she does not know whether any other employee received or did not receive the August 5, 2020 WARN Act notice when it was sent. Holmes Dep. 237:19-238:7.

Holmes, like Staley, lacks memory and is unable to testify to a host of facts and alleged events/issues relevant to her claims in this case. *See id*., *passim* (answering "I don't know" or "I [don't/can't] remember" 118 times and 181 times, respectively). Holmes does not know who/what any of the Defendants she sued are (she testified that H. Ty Warner is "[a]n entity," *id*. at 329:17-20), cannot testify about her allegations against them or what any of them specifically did wrong (other than "violation of the WARN Act and no-fault separation pay"). *Id*. at 311:22-334:2.

Like Staley, Holmes claims that she is entitled to be paid No-Fault Separation Pay under the EmPact Agreement. *Id*. at 361:7-10. But like Staley, Holmes did not follow the required C.A.R.E. steps (1-5) in the EmPact Agreement required to pursue a claim. Holmes concedes that No-Fault Separation Pay is only paid if she receives a permanent layoff with no right of recall or is terminated for no-fault. *Id*. at 361:11-362:19. Unlike Staley, Holmes did ***not*** testify that she was terminated. Instead, Holmes testified that she was "permanently laid off." *Id*. at 362:21-24, 363:8-9, 364:24, 366:24-25, 371:21-372:6. Holmes, however, will not and cannot testify that she has been permanently laid off ***with no right of recall***.[12] *Id.* at 363:4-13, 372:7-18. Holmes testified that she should be recalled when the Hotel reopens and very much wants that to happen. *Id*. at 141:5-19, 363:17-20, 369:13-370:3.

Holmes testified that she has suffered a host of monetary damages as a result of both the alleged WARN Act violations and failure to pay No-Fault Separation Pay for which she wants to be compensated, which extend ***far*** beyond the statutory WARN Act penalty and amount of No-Fault Separation Pay sought on her behalf. *Id*. at 343:345:4, 386:20-390:10. Holmes admitted that she cannot testify to the amount of any damages. *See Id.* at 340:21-25.

---

[12] Like Staley, Holmes cannot testify that anyone ever told her that she was permanently laid off. Holmes Dep. 365:6-366:25. At her deposition, Holmes testified that she was still "furloughed." *Id*. at 28:24-29:4.

***Olive Ivey***: Ivey is a Senior Housekeeping Manger at the Hotel and has been employed since 1997. Ivey Dep. 102:6-104:15. Ivey was furloughed in March 2020, when the Hotel stopped taking outside guests as a result of COVID-19. *Id*. at 151:7-11, 153:12-16. Ivey was aware that the Hotel reopened shortly thereafter to house COVID-19 first responders, but did not work there during that time, although others did. *Id*. at 168:25-170:7. Ivey was asked to return to work at that time but declined for family health reasons. *Id*. at 170:8-19. Ivey does not know if others were similarly asked to work during that time but declined. *Id*. at 170:20-24.

Ivey was sent a WARN Act notice on August 5, 2020. Ortiz Decl. ¶ 20; Boland Decl. ¶ 8, Ex. 69**.** Ivey admits that she "might have seen that notice," but does not recall. Ivey Dep. 192:11-25.

Although Ivey declined to return to work at the Hotel in 2020, she did return to work after being placed on furlough. *Id*. at 108:17-109:21 In "either 2021 or 2022," Ivey worked at a Four Seasons hotel in downtown New York as a Housekeeping Manager (an option for current employees) until she had an accident and could no longer work due to her injury. *Id*. at 12:6-13:6. Prior to that (Ivey has not worked since her injury, *id*. at 13:23-24), but still in 2021 or 2022, Ivey worked as part of a task force at a Four Seasons hotel in Philadelphia. *Id*. at 108:17-109:21. In addition to working for these other Four Seasons hotels, Ivey continued to be paid by Hotel 57 Services, LLC for accrued vacation and other pay in 2021 and 2022. Boland Decl. ¶¶ 7-8, Exs. 64, 54.

Like Staley and Holmes, Ivey has limited ability to testify in support of her own claims. Like Staley and Holmes, Ivey did not and cannot testify about the amount of any damages she seeks. Ivey Dep. 236:17-24, 238:8-17. And just as Staley's and Holmes' stories differ on key facts, so does Ivey's story. As for the WARN Acts, Ivey contends that they were violated because she was temporarily sent home initially, later concluded that it was permanent, and claims that she

should have been informed – ignoring the August 5, 2020 WARN Act notice that Plaintiffs produced (which Ivey does not recall but does not deny receiving). *Id*. at 195:12-25.

As for No-Fault Separation Pay under the EmPact Agreement, Ivey admits that she never received a notice of termination from Hotel 57 Services, LLC. *Id*. at 212:10-14, 215:14-22. And just like Staley and Holmes, Ivey admits that not a single person from Hotel 57 Services, LLC ever told her that her employment was terminated – which, according to Ivey, happened in June 2021 before she was allowed to work at the downtown New York and Philadelphia Four Seasons locations. *Id*. at 211:25-212:13. In addition, like Staley and Holmes, Ivey did not follow the C.A.R.E. steps (1-5) required before she filed suit. *Id*. at 245:11-248:11.

**D. Plaintiffs' Remaining Claims and Proposed Classes**

Without ever disclosing that: (i) they were sent WARN Act notices on August 5, 2020, (ii) no one from Hotel 57 Services, LLC or anyone associated with the Four Seasons Hotel New York ever told them they were permanently laid off with no right of recall or terminated for no-fault, (iii) they each continued to be paid by Hotel 57 Services, LLC into at least 2022 (and to this day for Staley), or (iv) they had not followed the required pre-suit C.A.R.E. steps in the EmPact Agreement, Plaintiffs commenced this lawsuit on August 9, 2022. Dkt. 1. Plaintiffs alleged, contrary to fact, that no WARN Act notices were ever provided to them, they had been terminated from their employment, and they had satisfied all of their obligations under the EmPact Agreement and were entitled to No-Fault Separation Pay.

After the Warner Defendants[13] moved to dismiss Plaintiffs' complaint (FSR, which was misnamed, filed an answer), Plaintiffs filed a First Amended Complaint on December 19, 2022. Dkt. 48. The First Amended Complaint corrected the misnomer and made the same allegations,

[13] "Warner Defendants" refers to Hotel 57 Services, LLC, Hotel 57, LLC, Ty Warner Hotels & Resorts, LLC and H. Ty Warner.

asserting claims for : (1) violation of the Federal WARN Act (First Cause of Action); (2) violation of the New York WARN Act (Second Cause of Action): (3) breach of contract (Third Cause of Action); (4) breach of the implied covenant of good faith and fair dealing (Fourth Cause of Action); (5) "alter ego" (Fifth Cause of Action); and (6) promissory estoppel (Sixth Cause of Action). *Id.* Five claims were asserted against all Defendants. *Id.* One – the self-styled "alter ego" claim – was asserted only against Mr. Warner. *Id.*

The First Amended Complaint sought certification of two classes (termed "Class" and "Sub-Class"):

> [A]ll former employees of Defendants who worked for Defendants at the Hotel, and whose employment was furloughed on the Furlough Date,[14] and whose employment at the Hotel was furloughed for more than six months, commencing on or about the Furlough Date, and/or laid off as a result of a mass layoff or plant closing carried out by Defendants on or about or after March 20, 2020 ["Class"].
>
> [A]ll members of the Class who remained on furlough through June 25, 2021 and were not paid their No-Fault Separation Pay. ["Sub-Class"].

*Id.* at ¶¶ 286, 298. Plaintiffs purported to assert their first, second and fifth causes of action on behalf of themselves and the Class, and their third, fourth and fifth causes of action on behalf of themselves and the Sub-Class. *Id.* at ¶¶ 285, 297.

The Warner Defendants filed a motion to dismiss the First Amended Complaint on November 9, 2022.[15] Dkt. 28, 41. On April 19, 2024, the Court granted that motion in part and denied it in part. Dkt. 78. The Court dismissed Plaintiffs' federal and New York state WARN Act claims (first and second causes of action) against H. Ty Warner, and dismissed Plaintiffs' breach of contract claim (third cause of action) against all Warner Defendants except Hotel 57 Services,

[14] The First Amended Complaint defines the "Furlough Date" as March 20, 2020. 1st Am. Compl. ¶ 3.

[15] FSR filed an answer to the First Amended Complaint on December 5, 2022, asserting 16 defenses to Plaintiffs' claims. Dkt. 42.

LLC. *Id*. The Court also dismissed Plaintiffs' claims for breach of the duty of good faith and fair dealing (fourth cause of action), alter ego (fifth cause of action) and promissory estoppel (sixth cause of action), which Plaintiffs conceded they would not pursue. *Id*. On May 3, 2024, the Warner Defendants filed an answer to the First Amended Complaint, asserting ten separate defenses to Plaintiffs' claims. Dkt. 80.

As a result of the Court's April 19, 2024 Order, three claims remain in this case: (1) violation of the federal WARN Act against FSR, Hotel 57 Services, LLC, Hotel 57 LLC and Ty Warner Hotels & Resorts, LLC; (2) violation of the New York WARN Act against FSR, Hotel 57 Services, LLC, Hotel 57 LLC and Ty Warner Hotels & Resorts, LLC; and (3) breach of contract against FSR and Hotel 57 Services, LLC. No claims remain against H. Ty Warner.

In their motion for class certification, Plaintiffs have switched things up. Plaintiffs now seek certification of the following two classes:

> [A]ll former non-union employees of Defendants who worked for Defendants at the Hotel, and whose employment was furloughed on or after March 14, 2020, and whose employment at the Hotel was furloughed for more than six months, commencing on or after March 14, 2020, and/or laid off as a result of a mass layoff and/or plant closing carried out by Defendants on or about or after March 14, 2020. [WARN Class]
>
> [A]ll former non-union employees of Defendants who worked for Defendants at the Hotel, and remained on layoff through June 25, 2021 and were not paid their No-Fault Severance Pay. [EmPact Class]

Pls.' Mem. at 1-2. Plaintiffs have changed their definitions in two material respects. First, Plaintiffs have replaced the "Furlough Date" in their first definition with "on or after March 14, 2020." This change recognizes that, contrary to their representations, the facts of employee furloughs, dates, timing, etc., vary among purported class members – just as they vary as among

Staley, Holmes and Ivey (*e.g.*, all three have different dates, only one of which (Staley) is on or about the prior "Furlough Date").[16]

Second, Plaintiffs have restricted their proposed classes to only non-union employees. Plaintiffs do not explain this change, nor do they provide any rationale for it.

**ARGUMENT**

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual names parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted). To fall within the exception, Plaintiffs, as proponent of the class, must affirmatively ***prove*** that each of the requirements of Rule 23 is satisfied. *Id.*; *see also In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 39-42 (2d Cir. 2006). Plaintiffs must "'prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation as required by Rule 23(a)." *Comcast Corp.* 569 U.S. at 33, quoting *Wal-Mart Stores, Inc. v. Dukes*¸ 564 U.S. 388 (2011) (emphasis in original). Plaintiffs must also "satisfy, through evidentiary proof, at least one of the provisions of Rule 23(b)." *Id.* A failure to establish any one of Rule 23's requirements precludes certification. *Ansari v New York University*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998) ("[F]ailure to prove any element precludes [class] certification.").

A court must engage in a "rigorous analysis" of Rule 23's requirements. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *In re Initial Public Offering Sec. Litig.*, 471 F.3d at 33 ("the certification decision requires 'rigorous analysis'") (citing *Gen. Tel. Co.*). Because "that

---

[16] In their brief, Plaintiffs suggest that this change was the result of reviewing "7,400 pages of documents" and, specifically, certain spreadsheets. Pls.' Mem. at 24. This excuse does not hold water. Plaintiffs knew before the first complaint was filed that different non-union employees continued to work for different periods of time after COVID-19 hit, including when the Hotel reopened for first responders. Plaintiffs also knew that even Staley, Holmes and Ivey had different post-March 2020 work experiences and different furlough dates.

'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim," *Wal-Mart*, 564 U.S. at 351, a court must probe behind the pleadings and make whatever factual and legal inquiries are necessary to resolve class certification. *Comcast*, 569 U.S. at 33 ("[r]epeatedly, we have emphasized that it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question").

## I. PLAINTIFFS' MOTION SHOULD BE DENIED FOR DISPOSITIVE THRESHOLD REASONS

### A. Plaintiffs Waived Their Rights to Pursue Their Claims As a Class Action

As an initial dispositive matter, Plaintiffs' motion should be denied because Plaintiffs are barred from pursuing claims in this case on a class-wide basis. Under the plain terms of the EmPact Agreement, Staley, Holmes and Ivey all clearly and unequivocally waived their right to have claims submitted as part of a class action:

> Waiver of Right to Submit Claim as Part of Class or Collective Action. To the extent permitted by law, I understand that if I do not opt out of the mediation/arbitration provision of CARE, ***I waive my right to have my claims submitted as part of a class or collective action in court (whether I initiate a claim or I am invited to join a class or collective action),*** and I waive my right to have my claims submitted as part of a class arbitration. This waiver shall not affect or diminish the substantive remedies that I may be awarded by an arbitrator.

Boland Decl. ¶ 8, Ex. 58 at 56 (emphasis added). The express purpose of this provision was to bar employees from asserting ***any*** claims as part of a class or collective action, whether they are subject to arbitration or litigated in court. Brown Decl. ¶ 5. It applies not only to Plaintiffs' claim for breach of the EmPact Agreement itself (first cause of action), but also to Plaintiffs' claims under the WARN Acts (second and third causes of action). *See e.g.*, *Coleman v. Optum Inc.*, No. 1:22-cv-05664 (ALC), 2023 WL 6390665, at *7-8 (S.D.N.Y. Oct. 1, 2023) (class action waiver applies to claims under federal and New York state WARN Acts).

Plaintiffs concede that the EmPact Agreement is a valid and enforceable contract; indeed, it provides the basis for Plaintiffs' breach of contract claim. Contractual class action waivers are valid and enforceable under New York law. *Nayal v. HIP Network Services IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) (courts applying New York law uniformly hold that class action waivers are not unconscionable); *see also Haymount Urgent Care PC v. Go Fund Advance, LLC*¸ 635 F. Supp. 238, 245-46 (S.D.N.Y. 2022) (class action waiver not unconscionable under New York law) (*citing Nayal*). And they are valid and enforceable whether the claims are asserted in arbitration or in court, as the EmPact Agreement expressly provides. *See, e.g., Haymount*, 635 F. Supp. 3d at 246; *see also Palmer v. Convergys Corp.*, No. 7:10-cv-145 (HL), 2012 WL 425256, at *3 (M.D. Ga. Feb. 9, 2012) ([a]s a litigation device, class action waivers are proper tools to be used by parties in contracting and bargaining . . . these waivers are not limited to the context of arbitration").

Because Staley, Holmes and Ivey are contractually barred from pursuing any of their remaining claims as part of a "class or collective action in court, their motion for class certification should be denied. *See e.g.*¸ *Bombin v. Southwest Airlines Co.*¸ No. 5:20-cv-01883-JMG, 2023 WL 5832166, at *15 (E.D. Pa. Sept. 7, 2023) (plaintiffs subject to contractual class action waiver are inadequate class representatives precluding certification); *Korea Week, Inc. v. Got Capital, LLC*¸ No. 15-6351, 2016 WL 3049490, at*11 (E.D. Pa. May 27, 2016) (same; "[t]he Plaintiffs agreed to pursue claims on their own behalf and cannot now change their minds and transform into fiduciaries for others").[17]

[17] In their brief, Plaintiffs seek to avoid their waiver by arguing that the Court already definitively held that the waiver only applies to claims subject to arbitration. Pls.' Mem. at 7. Not only is that false, Dkt. 73 at 15, but it also ignores that the Court's prior ruling applied the standard for a motion to strike. *Id.* at 8-9. The standard of proof for class certification is fundamentally different, as is the evidence. *See* Brown Decl. ¶¶ 1-6.

### B. Plaintiffs Improperly Seek to Certify Fail-Safe Classes

Plaintiffs' motion should also be denied because it seeks to have the Court certify improper fail-safe classes. "'A fail-safe class is one whose definition shields the putative class members from receiving an adverse judgment . . .' In other words, either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment.'" *Marin v. Apple-Metro, Inc.*¸ Nos. 12 CV 5274 (ENV) (CLP) and 13 CV 1417 (DNV (CLP), 2017 WL 4950009, at *37 (E.D.N.Y. Oct. 4, 2017), quoting *Spread Enters., Inc. v. First Data Merchant Servs. Corp.*, 298 F.R.D. 54, 69 (E.D.N.Y. 2014). Proposed fail-safe classes may not be certified because "they are unfair to defendants, prevent[] an adverse judgment being entered against plaintiffs, and are unmanageable because the members of the class could only be known after a determination of liability." *Id.* (citations omitted).

Plaintiffs' proposed classes are fail-safe. Both are comprised of "all former non-union employees of Defendants who worked for Defendants at the Hotel . . ." Pls.' Mem. at 1-2. In doing so, Plaintiffs confine the classes to employees who were, in fact, "terminated" or "permanently laid off" and thus no longer employees. But whether Plaintiffs – or any other purported class members – were, in fact, terminated or permanently laid off and are thus "former non-union employees" of Hotel 57 Services, LLC is the central issue in dispute for Plaintiffs' breach of contract claim. It is ***only*** if Plaintiffs prevail on that claim that Plaintiffs and any other purported class members will be "former employees." If Plaintiffs lose, they will not be former employees but will remain the current employees that they are today. Plaintiffs' proposed classes are both fail-safe and cannot be certified.[18]

---

[18] Plaintiffs' "WARN Class" is a fail-safe class for the further reason that membership is triggered, in part, by a purported "former employee" being "laid off as a result of a mass layoff and/or plant closing carried out by Defendants on or about or after March 14, 2020" – an element that Plaintiffs must prove to recover on their WARN Act claims. Pls.' Mem. at 2.

### C. Plaintiffs Have Not Established Standing Of Their Purported Class Members, and Their Proposed Classes are Not Ascertainable

"To succeed on their motion for class certification, Plaintiffs must first surpass the threshold requirements of Article III standing and ascertainability." *DeCastro v. City of New York*, No. 16-CV-3850 (RA), 2019 WL 4509027, at *4 (S.D.N.Y. Sept. 19. 2019) *citing In re Petrobas Securities*, 862 F.3d at 269. Plaintiffs' motion should be denied because Plaintiffs have not established either.

To have standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016), *citing Lujan v. Defenders of Wildlife*¸ 504 U.S. 555, 560-61 (1992). As the Supreme Court has held, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, --- U.S. ---, 141 S. Ct. 2190, 2208 (2021). "'The filing of suit as a class action does not relax this jurisdictional requirement.'" *DeCastro*, 2019 WL 4509027, at *4, quoting *Denny v. Deutsch Bank AG*, 443 F.3d. 253, 263 (2d Cir. 2006). "[N]o class may be certified that contains members lacking Article III standing." *Id.*

Plaintiffs have not even attempted to prove that each of them has, or continues to have, Article III standing for each claim they present and form of relief – damages – they seek, much less that all purported class members have standing. That is because Plaintiffs fail to deal with any facts established by evidence. For example, Staley and Holmes each were paid substantial amounts by Hotel 57 Services, LLC as current employees on furlough long ***after*** they now claim they were "terminated" or "permanently laid off" in June 2021. Indeed, to date, Staley has been paid $65,000.00 since October 2021 as a current employee. Ortiz Decl. ¶ 36.

Article III standing must exist not only at the time a lawsuit is filed, but at all times thereafter. *West Virginia v. Environmental Protection Agency*, 597 U.S. 697, 718 (2022) ("Although most disputes over standing concern whether a plaintiff has satisfied the requirement when filing suit, Article III demands that an actual controversy persist throughout all stages of litigation.") (internal quotations omitted). Plaintiffs offer no evidence to prove that Staley continues to have Article III standing after accounting for her post-alleged termination payments. Nor do they offer evidence to prove that any other Plaintiff or purported class member has Article III standing, including the numerous non-union employees who, like Staley, have been paid $500 per week for years. Ortiz Decl. ¶ 34, Ex. H.

Plaintiffs' proposed classes also have serious ascertainability problems that relate to Article III standing. Their class definitions do not square with the people they apparently think are class members. As explained above, those classes only include "former non-union employees" who worked at the Hotel. But the only "former non-union employees" who worked at the Hotel are those who either (i) transferred, or (ii) resigned. *Id*. at ¶¶ 21-24. Plaintiffs have not established standing for these purported class members, either. Employees who transferred or voluntarily resigned would not be entitled to No-Fault Separation Pay under the EmPact Agreement, and whether Hotel 57 Services, LLC violated the WARN Acts with respect to any of them – such that they have Article III standing to assert claims for any violations – is not addressed in Plaintiffs' motion. Because Plaintiffs have not established Article III standing for any purported class members and their classes are not ascertainable, their motion should be denied.

## II. PLAINTIFFS HAVE NOT SATISFIED RULE 23(a)

Under Rule 23(a), Plaintiffs are required to prove four things: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). As with all requirements for certification, Plaintiffs must prove that each Rule 23(a) requirement is satisfied by a preponderance of the evidence. *In re Petrobras Securities*, 862 F.3d at 260.

As explained below, Plaintiffs fail to do so. To the contrary, Plaintiffs ignore – or simply do not comprehend – the requirement to provide actual "evidentiary proof" that each requirement of Rule 23(a) is satisfied. Instead, Plaintiffs astoundingly submit a declaration from one of their lawyers, Evan Brustein, "testifying" to various purported facts and creating and testifying about documents in support. Brustein Decl. ¶¶ 3-34, Exs. A-D. And, just as astoundingly, Plaintiffs purport to rely on their lawyer's declaration and the documents that he created. Pls.' Mem. at 3 & n.7, 5-6, 9 & n.37, 18-19 & n.76, 22-23.

It should go without saying that counsel's declaration, its contents, and documents he created and attempts to testify about substantively (rather than simply identify as true copies of documents produced) are inadmissible and wholly insufficient to satisfy Plaintiffs' burden of proof. Counsel is neither a witness with personal knowledge of any relevant facts as required by Fed. R. Evid. 602, nor is he an expert providing testimony under Fed. R. Evid. 702.[19] Nothing in his declaration (including documents he created) other than his recitation of his background and experience is admissible – *i.e.*, it is not "evidentiary proof – nor may it be considered. Plaintiffs have failed to meet their evidentiary burden of proof under Rule 23(a).

**A. Plaintiffs Have Not Proven Numerosity**

Plaintiffs' failure to meet their burden of proof begins with the very first requirement for certification: that their proposed classes are "so numerous that joinder of all members is

[19] Nor could counsel serve as a witness for Plaintiffs in this WARN Act/breach of contract class action in any event. *See* N.Y. Rules of Prof. Conduct 3.7 (lawyer as witness).

impracticable." Fed. R. Civ. P. 12(a)(1). Plaintiffs provide no competent evidentiary proof – witness testimony, authenticated documents – to establish this element. They rely solely on the inadmissible testimony of their lawyer, which they cannot do. Pls.' Mem. 5-6, 9 & n.37.

In any event, Plaintiffs ignore that their class definitions refute their lawyer's numerosity contentions. As noted above, both of Plaintiffs' proposed classes are defined to include only "former non-union employees." Pls.' Mem. at 1-2. But as explained above, as of now the only "former" non-union employees of Hotel 57 Services, LLC are those who (i) transferred to another Four Seasons location, or (ii) resigned. Ortiz Decl. ¶¶ 21-24. Not only have Plaintiffs failed to establish that these purported class members have standing to assert any of the remaining claims in this lawsuit, but there is no evidence that they are so numerous that joinder is impracticable.

**B. Plaintiffs Have Not Established Common Questions of Law or Fact**

As the Supreme Court has noted, "[a]ny competently crafted class complaint literally raises common questions." *Wal-Mart*, 564 U.S. at 349 (*quoting* Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97 (2009)); *Johnson v. Nextel Communications,* 780 F.3d 128, 138 (2d Cir. 2015). As the Court held, however, "[r]eciting these questions is not sufficient to obtain class certification." *Id*. Instead,

> What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id*. at 350 (quoting Nagareda) (emphasis in original). Thus, the focus of the commonality requirement is not merely on identifying purportedly common questions ("even in droves"), but on demonstrating that the proceeding can generate answers to those questions that are the same for each and every class member. And, like all requirements for class certification, Plaintiffs must establish this requirement "with evidentiary proof." *Johnson*¸ 780 F.3d at 138.

Plaintiffs have wholly failed to meet their burden. Rather than identify questions common to the claims of the three Plaintiffs and all purported class members in this lawsuit, Plaintiffs instead list questions found to be common in a ***different lawsuit*** with different facts, different plaintiffs, and a different record.[20] Pls.' Mem. at 10-11. Plaintiffs never explain, or demonstrate with evidentiary proof, how any of the three remaining claims ***in this lawsuit based on the facts and the record developed*** can be resolved with class-wide proof applicable to each and every class member.

Nor could they. Not even the claims of Staley, Holmes and Ivey can be established with proof applicable to all three. They each have different furlough dates, different post-March 2020 work experiences and different testimony about what the contend happened to them (*i.e.*, termination or permanent layoff – neither of which Plaintiffs testified were for "no fault" or with "no right of recall"). They also tell different stories about how they came to believe they were no longer employed in June 2021 despite continuing to be paid long after. Every other purported class member will likewise have his or her own story to tell. Commonality is not satisfied.

**C. Plaintiffs' Claims Are Not Typical**

The Supreme Court has held that the commonality and typicality requirements "tend to merge," and serve as "guideposts" as to whether the plaintiff's claims are "so interrelated" with those of absent class members. *Gen. Tel. Co.*, 457 U.S. at 157 n.13. "The central inquiry in determining whether a proposed class has 'typicality' is whether the class representatives' claims have the same essential characteristics as the claims of the other members of the class." *Schonton v. MPA Granada Highlands,* No. 16-cv-12151-DJC, 2019 WL 1455197, at *7 (D. Mass. April 2,

[20] The only allegedly "common" questions Plaintiffs have fashioned for this case are relate to (i) whether Plaintiffs' alleged "terminations" "violate" the EmPact Agreement (which does ***not*** prohibit employee terminations), and (ii) the alleged requirement to provide "multiple" WARN Act notices (which are ***not*** required under the statutes). Pls.' Mem. at 11.

2019).  Put another way, a proposed class representative is "typical" only if in presenting her case she will be presenting the claims of all absent class members as well.  *Id*. ("In evaluating typicality, the Court seeks to ensure that the named plaintiff[s], in presenting [their] case, will necessarily present the claims of the absent plaintiffs.") (citations omitted).

As a threshold matter, Plaintiffs cannot satisfy the typicality requirement because they are not even members of the proposed classes they seek to certify.  To satisfy typicality, "a class representative must be part of the class" that he or she purports to represent.  *Gen. Tel. Co.*¸ 457 U.S. at 156.  As explained above, the proposed classes are defined to only include "former non-union employees," and Staley, Holmes and Ivey are current Hotel 57 Services, LLC employees.

But just as importantly, Plaintiffs have not proven, and cannot prove, that their individual claims and the purported bases for them are "typical" of each and every class member.  Indeed, Plaintiffs are not even typical of one another.  Each has a different history with respect to their employment after the Hotel closed to outside guests in March 2020.  Holmes continued to work for a period of months, while Staley and Ivey did not.  Holmes Dep. 155:6-156:8; Staley Dep. 204:10-13, 207:22-208:2; Ivey Dep. 168:25-170:7.  Ivey was given the opportunity to continue to work, but declined for personal reasons.  Ivey Dep. 170-8-19.  Staley and Holmes qualified for continued payments to furloughed (*i.e.*, ***not*** permanently laid off or terminated) employees under the New York City statute and received those payments from October 2021 forward (after they say they were terminated or laid off), while Ivey did not.  Ortiz Decl. ¶¶ 30-32.  Staley continues to receive those payments to this day, while Holmes does not.  *Id*. at ¶¶ 33, 35.  Ivey worked at other Four Seasons properties in 2021 or 2022 as allowed by the EmPact Agreement (again, after her claimed "termination"), Ivey Dep. 12:6-13:6, 108:17-109:21, while Staley and Holmes did not.

These differences multiply exponentially over the purported classes.  As Plaintiffs admit, the Hotel reopened shortly after initially closing to house medical personnel fighting the COVID-

19 pandemic and there were employees working there during that period. Plaintiffs do not know who those individuals were, nor do they know how many employees, like Ivey, may have been given the opportunity to work at the Hotel during that period but declined – all of which is relevant to ***whether and when, if at all,*** any particular employee may have been subject to a required notice under the federal and New York WARN Acts.

Plaintiffs' motion does not even acknowledge these facts, much less address them. Plaintiffs also ignore that Staley, Holmes and Ivey do not even agree on what allegedly happened to them that would allow them to claim No-Fault Separation Pay in the first instance. Staley testified that she was "terminated," but does ***not*** claim that she was terminated ***for no-fault***, which is required for No-Fault Separation Pay. In contrast, Holmes testified that she was permanently laid off, but does ***not*** claim that she was permanently laid off ***with no right of recall*** – again, which is required for No-Fault Separation Pay.

Moreover, Plaintiffs all admit that no person associated with the Hotel 57 Services, LLC or the Hotel ever told them that they were terminated or permanently laid off (because these things never happened). But even if a party's subjective beliefs could form the basis for a breach of contact claim – and they clearly cannot – Plaintiffs have not proven, and cannot prove, that any other purported class member had the same experiences or beliefs. Typicality is not satisfied.

In addition, typicality is not satisfied because Plaintiffs are each subject to significant individual defenses. *In re LIBOR-Based Financial Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 460 (S.D.N.Y. 2018) ("typicality is not satisfied where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation") (citations omitted). FSR asserted sixteen defenses to Plaintiffs' claims, Dkt. 42¸ and the Warner Defendants

have asserted ten. Dkt. 80. Plaintiffs' motion does not acknowledge a single one, let alone address any of them.[21]

And with good reason. There are serious defenses asserted against each of the three Plaintiffs' claims that will consume this lawsuit. *See e.g.* Dkt. 80 at 43-53. For example, all three Plaintiffs failed to follow the contractual condition precedent prior to filing suit in the first instance, the C.A.R.E. steps. Whether that bars their respective breach of contract claims outright (sixth defense), is a major issue for their claims in this case. *See* Brown Decl. ¶ 4. In addition, Holmes and Staley each were paid $500 per week as current employees on furlough from October 2021 forward – long after they now claim in this lawsuit to have been "terminated" (Staley, Ivey) or "permanently laid off" (Holmes) in June 2021. Yet, they pocketed that money without complaint, and Staley continues to pocket that money to this day. Whether their conduct estops Staley and Holmes from now claiming they were no longer employees after June 2021 (first defense), worked a fraud on Hotel 57 Services, LLC, which paid them in good faith (second defense), or operates as a waiver of their claims (fourth defense), are issues that will consume these Plaintiffs' case going forward. So, too, are issues relating to the effect of these payments on any damages that Holmes and Ivey may seek under the EmPact Agreement (third defense).

"The defendant need not show at the certification stage that a unique defense will prevail, only that it is meritorious enough to require the plaintiff to devote considerable time to rebut the unique defense." *In re LIBOR-Based Financial Instruments Antitrust Litig*., 299 F. Supp. 3d at 460-61; *see also Bowling v. Johnson & Johnson*, No. 17 Civ. 3982 (AJN), 2019 WL 1760162, at *4 S.D.N.Y. April 22, 2019) ("relevant inquiry" for class certification "is whether any unique

[21] Plaintiffs argue in their introduction (and not in their discussion of typicality) that "the defenses being raised for each class member are the same." Pls.' Mem. at 4. But Plaintiffs cite only fact witness testimony, *see id*., not any defense that either FSR or the Warner Defendants asserted.

defenses will unacceptably detract from the focus of the litigation to the detriment of absent class members"). That is the case here, and typicality is not satisfied.

**D. Plaintiffs Are Not Adequate Class Representatives**

"The adequacy of the class representative is widely considered the most important of the Rule 23(a) factors because it directly implicates the due process rights of absent class members who will be bound by the judgment." *In re LIBOR-Based Financial Instruments Antitrust Litig.*, 299 F. Supp. 3d at 567 (citations omitted); *Wexler v. AT&T Corp.*, No. 15-cv-686 (FB)(PK), 2019 WL 5694028, at *3 (E.D.N.Y. Aug. 5, 2019) ("It is widely agreed that adequacy is the most important factor to be considered when addressing requests for class certification.") (citations omitted). "Because class members do not, by nature, participate except through the class representative, the Court's obligation to examine a proposed representative's adequacy is even more significant in light of the constitutional defect that attaches to the choice of an inadequate class representative." *Wexler*, 2019 WL 5694028, at *3 (citations omitted). To satisfy this requirement, Plaintiffs are required to prove (i) their adequacy as representatives, including that there are no conflicts between them and absent class members and that they will vigorously prosecute the case, and (ii) the experience and adequacy of proposed class counsel. *Schonton*, 2019 WL 1455197, at *8. Plaintiffs have not done so.

1. Plaintiffs Are Not Adequate Class Representatives

Although all are much-valued employees whom Hotel 57 Services, LLC intends to recall and hopes will return when the Hotel reopens, Staley, Holmes and Ivey are not adequate representatives to assert claims on behalf of their proposed classes.

"An essential element of adequacy of representation is that the class representative be sufficiently familiar with the case as to exercise independent control over the attorney." *Scott v. New York City Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 355 (S.D.N.Y. 2004).

A class representative must therefore not only "possess a minimal degree of knowledge regarding the action," by must also "have a general understanding of the nature of class-action litigation." *Id.* "Knowledge of issues central to the case and of the role of class representatives is crucial since not even the presence of competent class counsel can make up for an utter lack of familiarity with the action on the part of named plaintiffs." *Id.* at 356.

As their depositions confirm, Plaintiffs lack an understanding of the nature of this lawsuit, the claims made on their behalf, the bases for them, or the defendants they have filed claims against or the bases for suing those parties. Indeed, there is significant doubt that any of these three Plaintiffs can competently testify about even the facts of their own claims. Each admits that she lacks memory of the key facts, events and documents that are set forth in and form the basis of their allegations in the First Amended Complaint. Indeed, with respect to documents, not only do these Plaintiffs lack memory of the key documents in their complaint, but they cannot even identify or authenticate many of the documents that purportedly came from their own files.

Plaintiffs are also largely unaware of the proceedings that have taken place in the case. At their depositions, Plaintiffs were shown and questioned about the significant filings that had been made in the case, including the complaints, material filings such as motions to dismiss the case in its entirety or to compel arbitration, and discovery responses, including their own verifications (deposition exhibits 5-28). Staley Dep. 30:15-194:25; Holmes Dep. 30:14-137:13; Ivey Dep. 38:5-97:20, 236:25-238:18. Over and over again Plaintiffs testified that they did not recall even seeing significant filings and pleadings that have been made or having any understanding of what they are or their significance. *See id*.

Staley's testimony about the Warner Defendants' motion to dismiss is typical. After admitting she cannot even recall that significant filing or event, Staley Dep. 123:4-22, Staley tellingly testified as follows:

Q. Do you think that whether the defendants have filed a motion to ask the judge to throw your case out right away is an important thing for you, as a plaintiff, to know?

ATTORNEY BRUSTEIN:· Objection.

A. I don't remember.

Q. You don't remember whether it's an important thing for you to know?

A. I don't remember.

Q.· I am trying to understand what you mean by you don't remember, ma'am. Because I'm asking you a different question. I'm not asking you if you remember something. I'm asking whether you, sitting here today as a plaintiff in this lawsuit think that knowing whether the defendants have filed a motion to throw your entire lawsuit out is an important thing for you to know?

ATTORNEY BRUSTEIN: Objection.

A. I don't understand the question.

Q. Can you help me out and tell me what you don't understand?

A. I don't know.

*Id.* at 124:4-25. Holmes' testimony about this lawsuit was similar. *See e.g.*, Holmes Dep. 66:5-21 (Holmes only keeps herself informed about filings "sometimes").

In addition, no Plaintiff made any tangible effort to learn what her obligations as a class representative might be. Holmes Dep. 11-41:22; Ivey Dep. 49:18-50:4; Staley Dep. 49:50:4. Nor is there any evidence that any Plaintiff supervises, monitors or directs the work of proposed class counsel – indeed, proposed class counsel refused to allow the first Plaintiff to answer questions on that topic. *See* Holmes Dep. 53:5-25 (counsel directing Holmes not to answer). Plaintiffs are not adequate class representatives for these reasons alone. *See Scott*, 224 F.R.D. at 356-57 (and cases cited).

More significantly, there are serious conflicts between Plaintiffs and absent class members. *Denny v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) (class representatives "must have

no interests antagonistic to the interests of other class members). Chief among these is the very finding and sole relief that Plaintiffs seek for themselves for their breach of contract claim under the EmPact Agreement – a payment of No-Fault Separation Pay.

As Plaintiffs admit (but their brief conspicuously ignores), to receive No-Fault Separation Pay an employee must either be permanently laid off with no right of recall or terminated for no-fault. Boland Decl. ¶ 8. Ex. 58 at 57. Although the three Plaintiffs testified that they were subject to different actions (permanent layoff versus termination) and although no Plaintiff can or will confirm under oath that she was, in fact, subject to either of the actions that would result in No-Fault Separation Pay, they can only prevail on their third cause of action if the jury finds that they were permanently laid off with no right of recall or terminated for no-fault. The consequence of that finding is significant; it would formally end Plaintiffs' employment as of a specific date. It would also eliminate any right that Plaintiffs now have to be recalled to their current jobs – with the seniority and associated benefits such as pay level, vacation days and personal days – when the Hotel reopens.

No-Fault Separation Pay is not some financial benefit paid to current employees under the EmPact Agreement; it is ***severance***. It is ***only*** paid to an employee who is ***terminated for no-fault*** or ***permanently laid off with no right of recall***. If Plaintiffs prevail on their third cause of action to recover No-Fault Separation Pay, the jury must find that one of those two things happened to them, and as a result, their employment at the Four Seasons Hotel New York is finished.[22]

[22] As each Plaintiff admitted, no one from Hotel 57 Services, LLC or the Four Seasons Hotel New York ever formally permanently laid them off with no right of recall or terminated their employment for no-fault. This is simply the subjective beliefs that these three people harbor, which their third cause of action seeks to have a jury find as a matter of fact in order for them to recover No-Fault Separation Pay. 1st Am. Compl. ¶¶ 348-349.

It is one thing for Staley, Holmes and Ivey to seek to have their own employment permanently ended in this lawsuit with no right of recall in exchange for a damages award of No-Fault Separation Pay (to the extent they have not already been paid post-alleged termination). It is quite another for these three Plaintiffs to make that same trade-off for every other employee who would be a member of their purported class, many of whom currently are and long have been reaching out to Hotel 57 Services, LLC to be recalled when the Hotel reopens. Ortiz Decl. ¶ 25.

Plaintiffs' motion ignores this fundamental conflict entirely. But as Plaintiffs themselves admit, the conflict is very real. *See e.g.*, Ivey Dep. 240:4-25 (admitting that she does not know whether anyone else would be willing to give up the right to be recalled to recover No-Fault Separation Pay and that there are other employees who would like to be recalled when the Hotel reopens). The conflict is evident among the three Plaintiffs. Staley, for example, is not sure that she wants to return to work at the Hotel and testified that she is willing to forego her right to be recalled in exchange for the Court finding that she has, in fact, been terminated and entitled to No-Fault Separation Pay:

> Q. . . . One of the things that you are seeking in this case is no-fault separation pay, correct?
>
> A. Yes.
>
> Q. And that requires under the EmPact agreement for you to either have been permanently laid off with no right of recall or to have been terminated without fault right?
>
> A. Yes.
>
> Q. And you are willing to have a court declare that to be the case so that you can get that no-fault separation pay, true?
>
> ATTORNEY BRUSTEIN: Objection.
>
> A. Yes.

SGR/56201433.15

Staley Dep. 45:2-14. The same is true for Ivey. Like Staley, Ivey is willing to forego the right to recall in order to recover No-Fault Separation Pay. Ivey Dep. 241:2-12.

In contrast, Holmes testified that she very much wants to be recalled when the Hotel reopens and believes that she should be recalled, Holmes Dep. 141:5-19, 363:17-20, 372:7-18, for which maintaining her right of recall (allowing her to work with the seniority, pay, and benefits that she has accrued and continues to accrue) is critical. That right of recall will be eliminated if she is found to have been terminated for no-fault or permanently laid off with no right of recall and thus entitled to the No-Fault Separation Pay she seeks in this lawsuit.

"Courts in the Second Circuit are concerned not only with actual conflicts of interest but also with the *appearance* of impropriety and *potential* conflicts of interest." *Wexler*, 2019 WL 5694028, at *4 (citing cases) (emphasis in original). Giving up the right to be recalled with the Hotel reopens in order to recover No-Fault Separation Pay presents a real, irreconcilable conflict between and among Plaintiffs and other purported class members (even Ivey admits that she is not authorized to make that choice for everyone else, Ivey Dep. 241:13-14).

2. Proposed Counsel is Not Adequate

"[A]n essential concomitant of adequate representation is that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968). Plaintiffs fail to prove that their proposed class counsel is adequate. The only "evidence" Plaintiffs offer on this requirement are the declarations of their three lawyers attesting to their own experience– only one of whom, a lawyer added long after this class action was filed, claims to have class action experience. That is insufficient.

Indeed, for as many years of experience that proposed counsel collectively possess, their performance as counsel for Plaintiffs in this lawsuit belies any suggestion that they are qualified and adequate to protect the interests of absent class members. *See* Fed. R. Civ. P. 23(g). That

begins with counsel's failure to investigate and understand the various entities and individual named in the complaints before filing suit. The First Amended Complaint, for example, has 109 allegations made "upon information and belief." Of these, 65 allegations relate to the named defendants, including ***every*** allegation about Ty Warner Hotels & Resorts, LLC and H. Ty Warner. 1st Am. Compl. ¶¶ 42-43, 47-49, 51, 67-76, 78-85, 93-94, 96, 99-105, 108-133, 135-139. Sue first, investigate later, was apparently counsel's approach.

Counsel also failed to reconcile the allegations in the complaints with the facts known to Staley, Holmes and Ivey at the time suit was filed. The WARN Act notices are a prime example. The complaints allege that no WARN Act notices were provided even though each Plaintiff knew prior to filing suit that a WARN Act notice had been sent to her (even if Holmes did not recall receiving it at the time it was sent). Fed. R. Civ. P. 23(g)(1)(A(i). The complaints also alleged – and Plaintiffs' brief continues to proclaim – that Staley, Holmes and Ivey were also "told" by someone that if they obtained another job they would not be eligible for No-Fault Separation Pay.[23] A simple review of the EmPact Agreement reveals that Hotel 57 Services, LLC employees were always allowed to secure additional outside employment. Boland Decl. ¶ 8, Ex. 58 at 27. Evidently, counsel either never sufficiently reviewed the contract or discovered this provision or, if they did, failed to inform the Plaintiffs. Either way, it is a failure that demonstrates they are not adequate counsel for absent class members.[24]

---

[23] For this contention, Plaintiffs cite the deposition "[t]ranscript" of Elizabeth Ortiz at pages 249:22 - 250:12. Pls.' Mem. at 3, n.6. Plaintiffs fail to tell the Court that what they cite from the "transcript" is actually the transcription of an illegal recording that Plaintiffs' counsel played for Ms. Ortiz at her deposition, for which Plaintiffs have failed to either authenticate or provide any testimony establishing its admissibility. And Plaintiffs further fail to tell the Court that Ms. Ortiz did ***not*** testify that Plaintiffs or other employees would forfeit No-Fault Separation Pay if they obtained other employment on furlough, which they were ***always*** allowed to do, but only that they would not qualify for that pay if they resigned. Ortiz Dep. at 270:14-271:8.

[24] Counsel's failure was a huge disservice to Plaintiffs, who believed at the time of their 2023 depositions that they could not secure outside employment (although Staley admitted that she does

But more importantly, counsel's performance since the complaints were filed – including the current motion – prove that they cannot be found adequate. Despite having the obligation to establish that common questions exist, predominate over individual questions, etc. with admissible class-wide "evidentiary proof," Plaintiffs submit virtually no evidence whatsoever. Plaintiffs make a lot of bald accusations about "Defendants" as if they are some undifferentiated group. But the only defendant that employed Plaintiffs and is a party to the EmPact Agreement is Hotel 57 Services, LLC. Plaintiffs offer nothing to show that they can prove any of their remaining claims against each defendant individually with class-wide proof.[25]

Moreover, Plaintiffs have completely failed to develop admissible calculation of damages in discovery. As noted above, no Plaintiff can even calculate to testify as to the amount of her claimed damages, much less the amount of damages for other class members. Simply put, the calculation of damages in this case, either for the three Plaintiffs individually or for class members on a class-wide basis (amounts, interest, etc.), requires expert testimony.

Under the Court's scheduling order, Plaintiffs were required to identify experts by March 10, 2023. Dkt. 32. Plaintiffs never did so, and discovery is over. As a result, neither Staley, Holmes or Ivey have any admissible calculation of damages for either their WARN Act or breach of contract claims in this lawsuit, and there is no admissible calculation of class-wide damages for the proposed classes (or admissible evidence that those damages can be calculated on a class-wide basis). This, too, disqualifies counsel from serving as counsel for any proposed classes.

---

not know what anyone else believed, Staley Dep. 289:14-290:16). Tellingly, Ivey's LinkedIn profile suggests that after being shown the provisions at her March 31, 2023 deposition, Ivey promptly secured other employment the following month (as she was always able to do). https://www.linkedin.com/in/olive-ivey-40b58741/ (accessed 5/28/2024).

[25] Ty Warner Hotels & Resorts, LLC, Hotel 57, LLC and H. Ty Warner are prime examples. Plaintiffs offer no evidentiary proof to demonstrate that they can establish liability for these parties (two Delaware limited liability companies and one officer) under governing Delaware law.

## III. PLAINTIFFS' CLASSES CANNOT BE CERTIFIED UNDER RULE 23(b)(3)

Certification under Rule 23(b)(3) is permissible only if, in addition to finding that the requirements of Rule 23(a) are satisfied, "the court finds that the questions of law common to class members predominate over any questions affecting only individual class members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As with all Rule 23 requirements, Plaintiffs bear the burden of proving that common questions, in fact, predominate over individual questions and that a class action is a superior method of adjudicating the controversy. *Comcast*, 569 U.S. at 33. Plaintiffs have not met their burden.

### A. Individual Issues Predominate

Contrary to Plaintiffs' conclusory assertions, *see* Pls.' Mem. at 17-19, the claims they have asserted in this case are inherently individual. "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 William B. Rubenstein, *Newberg on Class Actions* § 4:50, at 196–97 (5th ed. 2012)). Accordingly, a Court must "probe behind the pleadings" to understand the parties' claims and defenses and determine whether they are subject to proof by common evidence. *See Gen. Tel. Co.*, 457 U.S. at 160; *see also Castano*, 84 F.3d at 744. If liability questions are not subject to class-wide proof but, rather, would require both individual and fact intensive determinations, common issues do not predominate. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 291, 625 (1997). As probing behind the pleadings reveals, that is the case here.

Plaintiffs have three remaining causes of action, two for violations of the federal and New York State WARN Acts and one for breach of contract. As for the WARN Acts, these are "notice"

statutes. They require certain "employers" to provide notice in advance (60 or 90 days) of a plant closure or mass layoff to "affected employees". 20 C.F.R. § 639.1(a); 12 N.Y.C.R.R. § 921-2.1. Affected employees are those who, at the time, are expected to suffer an "employment loss," meaning a termination or layoff/significant reduction in hours for a period of more than 6 months as a result of the closure or layoff. 20 C.F.R. § 639.3; 12 N.Y.C.R.R. § 921-1.1. Although 60- or 90-days' notice is required, there are exceptions. Both the federal and New York WARN Acts recognize that advance notice is excused when the anticipated employment loss for an affected employee results from events outside of the employer's control, such as national emergencies and unforeseeable business circumstances. 29 U.S.C. § 2102(b)(2)(A); 12 N.Y.C.R.R. § 921-6.3.

This is ***not*** a case where WARN Act notices were never provided to affected employees. Hotel 57 Services, LLC sent WARN Act notices to union employees on March 26, 2020, when their contracts dictated notice be provided at least two weeks in advance of a schedule change. Despite initially defining their classes to include both union and non-union employees, Plaintiffs have now dropped union employees from their class and do purport to complain about WARN Act notices those employees were sent– including, for example, that those notices were not accompanied by some "payment" or that they were not provided 60 and 90 days before COVID-19 forced the Hotel's closure.

Non-union employees, including Staley, Holmes and Ivey, were also sent WARN Act notices. These were sent on August 5, 2020, when it was reasonably foreseeable that the furloughs that began in March, but were not completed for months because employees continued to work, would last longer than 6 months. Although Plaintiffs seem to believe that WARN Act notices must be accompanied by some payment, that is simply false. The payment Plaintiffs focus on is a civil penalty for failing to provide notice; it is not a payment that must accompany notice. If WARN Act notices are timely, of if the advance notice requirement is excused for statutory reasons, no

payment (*i.e.* civil penalty) would be imposed. Thus, the issue for Staley's, Holmes' and Ivey's WARN Act claims is whether their notices were timely given the circumstances surrounding COVID-19 at the time and when it was reasonably foreseeable that each of them would suffer an "employment loss" as a result.

As the record demonstrates, that is an inherently individual question. Ivey and Staley were furloughed in March 2020 around the time the Hotel stopped taking outside guests, while Holmes continued to work from home on a reduced basis. At the time, however, the Hotel was targeted to resume normal operations in less than four weeks, on April 15, 2020. While that re-opening did not happen because COVID-19 was still evolving, the Hotel did re-open shortly after to house medical personnel. Holmes continued to work from home and other employees were called back to work at the property. Ivey was given the chance to return to work but declined. The Hotel finally closed to all guests after medical staff departed at the end of June 2020, but certain staff continued to work after that closure.

As the above demonstrates, this case does not involve a simple fact pattern where a plant or business shut down permanently one day, leaving all employees terminated and out of work in the same position. That facts here are far more individualized and nuanced. All of the above facts and circumstances will have to be presented and considered for each of the three Plaintiffs to determine whether and when each became an "affected employee" – *i.e.*, one whose furlough was expected to exceed 6 months or work significantly reduced for that period – and whether, given the circumstances, their individual August 5, 2020 WARN Act notices were timely.

A similar collection of individual facts and circumstances would have to be presented and considered for each and every other purported class member. And Hotel 57 Services, LLC and the other defendants have a due process right to put each Plaintiff to his or her proof and defend

against their timeliness claims.[26] These individual issues predominate for Plaintiffs' federal and New York WARN Act claims.

Individual issues also predominate for Plaintiffs' breach of contract claim based on the EmPact Agreement. Again, this case does not present a typical fact pattern. Plaintiffs' breach of contract claim is not based on Hotel 57 Services, LLC formally terminating Staley, Holmes or Ivey for no fault or permanently laying them off with no right of recall and then refusing to pay them no-Fault Separation Pay. That never happened, and Staley, Holmes and Ivey remain Hotel 57 Services, LLC employees to this day. Instead, Staley, Holmes and Ivey seek to be ***declared*** "terminated" from their employments given the length of their furloughs and their subjected beliefs about what that period of time means and what things allegedly said to each of them mean. Ivey Dep. 240:4-10 (admitting that lawsuit is asking court to "determine that you were terminated from your employment").

Putting aside the bizarre nature of Plaintiffs' breach of contract claim, it presents an overwhelming and inherently individual issue: whether every other non-union employee and purported class member has the same beliefs and contentions about his or her employment and whether all of those employees want the same "termination" declaration and payment. As explained below, this is not only an individual issue of fact that precludes certification, but the importance of this issue is so significant to each purported EmPact Class member that a class action is not superior to allowing employees to litigate their own breach of contract claim, if ending their employment at the Hotel in exchange for No-Fault Separation Pay, is indeed what they want.

---

[26] For example, Ivey declined to resume work shortly after furlough for personal reasons. She cannot now use her own self-imposed "layoff" during that period to complain, for example, about the timeliness of her WARN Act notice. Similar facts will be present for numerous other members of the proposed WARN Class.

Other individual issues exist for Plaintiffs' claim. Not only must each Plaintiff and class member choose to pursue the claim in the first instance given the consequences for their individual employment status, but each Plaintiff and class member will have to prove that, in fact, they were terminated for no-fault or permanently laid off with no right of recall. Staley will have to testify and prove that happened to her, as will Holmes and Ivey – and they tell different stories. Each class member would have to do the same, and Hotel 57 Services, LLC will have the right to defend against each of these Plaintiff's and class member's claim.

As detailed above, there is already evidence relating to Staley, Ivey and Holmes that contradicts their claims of having been "terminated" – including substantial payments made to each of them as current employees long after their alleged terminations and other facts (LinkedIn profiles, continued receipt of employee communications, etc.) – that undermine their claims. In addition, neither Staley, Holmes nor Ivey satisfied their obligations to follow the pre-suit C.A.R.E. process in the EmPact Agreement, which may bar their breach of contract claim outright.

Just as Hotel 57 Services, LLC is entitled to present this evidence to defend Staley's, Holmes and Ivey's individual claims, it is entitled – indeed, has a due process right – to present evidence to defend the individual claims of each and every class member. These individual issues predominate and make class certification inappropriate.

**B. A Class Action is Neither Manageable Nor Superior**

Finally, a class action for the claims Plaintiffs assert is not "superior to other available methods for fairly and efficiently adjudicating the controversy," if any, between Hotel 57 Services, LLC (or any other defendant) and purported class members. Fed. R. Civ. P. 23(b)(3). For one, a class action is simply not manageable. Plaintiffs have submitted no trial plan, and as demonstrated above, there are a host of individual issues of fact involved in Plaintiffs' two WARN Act claims and their uniquely fashioned breach of contract claim under the EmPact Agreement, including

individual issues relating to the defenses against those claims. These issues of fact render a class action unmanageable and not superior. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001) ("If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.').

A class action is not superior to other methods of resolving any purported class member's claims for other reasons as well. For one, Plaintiffs have no expert calculation of damages for any purported classes and have no admissible evidence of damages to present at trial. While Staley, Holmes and Ivey must live with the consequences of this failure, absent class members should not be forced to do so. A class action is not superior to other methods for these class members to assert their claims, if any, for this reason alone.

But just as importantly, absent class members have obvious and serious "interests in individually controlling the prosecution" of any action asserting their individual claims. Fed. R. Civ. P 23(b)(3)(A). This case does not involve some alleged consumer fraud or other misconduct affecting hundreds or thousands (or more) individuals, each of whom may suffered a modest, but real, economic damage for which a class action may be the only viable option to recover. This case, under Plaintiffs' theory, involves serious claims that have equally serious consequences for absent class members – the final termination of their employment at the Hotel just as it is on the cusp of reopening and recalling employees. Ortiz Decl. ¶ 26. No class action can, or should, override each class member's interest in so fundamentally controlling his or her own destiny.

**CONCLUSION**

For all of the foregoing reasons, Plaintiffs have failed to prove by a preponderance of the evidence that the requirements for class certification under Fed. R. Civ. P. 23(a) and 23(b)(3) are satisfied. Plaintiffs' motion for class certification and appointment of class counsel should be denied.

Dated: New York, NY
May 31, 2024

Respectfully submitted,

*/s/ Paul Wagner*
Paul Wagner
STOKES WAGNER ALC
903 Henshaw Road
Ithaca, NY 14850
(607) 677-6801

John R. Hunt
STOKES WAGNER ALC
1201 W. Peachtree Street, NW, St. 2615
Atlanta, GA 30309
(404) 766-0076

*Attorneys for Defendant FSR International Hotel, Inc.*

*/s/ James J. Boland*
Marc B. Zimmerman
James J. Boland
SMITH, GAMBRELL & RUSSELL, LLP
1301 Avenue of the Americas, 21st Floor
New York, NY 10019
(212) 907-9700

Kathryn T. Lundy
VENABLE LLP
151 West 42nd Street, 49th Floor
New York, NY 10036
(212) 307-5500

*Attorneys for Defendants Hotel 57 Services, LLC, Hotel 57, LLC, Ty Warner Hotels & Resorts, LLC and H. Ty Warner*