UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SELENA STALEY, VIVIAN HOLMES, and
OLIVE IVEY, on behalf of themselves and
all others similarly situated,

        Plaintiffs,                          COMPLAINT Docket No. 22-cv-6781

        -against-

FOUR SEASONS HOTELS AND RESORTS,
HOTEL 57 SERVICES, LLC, HOTEL 57, LLC,
TY WARNER HOTELS & RESORTS LLC,
and H. TY WARNER,

                                               Jury Trial Demanded

        Defendants.
-------------------------------------------------------------X

## COMPLAINT

        Plaintiffs Selena Staley, Vivian Holmes, and Olive Ivey (hereinafter referred to collectively as "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, Risman & Risman, P.C. and Brustein Law PLLC, as and for their Complaint in this action against Defendants Four Seasons Hotels and Resorts ("Four Seasons"), Hotel 57 Services, LLC ("Hotel 57 Services, LLC"), Hotel 57 LLC ("Hotel 57 LLC") (Hotel 57 Services LLC and Hotel 57 LLC collectively referred to as "Hotel 57"), Ty Warner Hotels & Resorts LLC ("Ty Warner Hotels") and H. Ty Warner ("Ty Warner") (Hotel 57, Ty Warner Hotels, and Ty Warner collectively referred to as "Warner Defendants") (Four Seasons and Warner Defendants collectively referred to as "Defendants"), respectfully allege as follows:



1

## NATURE OF THE ACTION

1.      This action is brought against the Defendants to remedy violations of the federal Worker Adjustment and Retraining Notification ("WARN") Act, the New York State Worker Adjustment and Retraining Notification ("NY WARN") Act, breach of contract, breach of implied covenant of good faith and fair dealing, and tortious interference with a contract.

2.      Beginning approximately March 20, 2020, and continuing for thirty days thereafter ("the Furlough Date"), Plaintiffs and other similarly situated employees that were working at the hotel, located at 57 East 57th Street, New York, New York, known as Four Seasons Hotel New York and/or Four Seasons New York ("The Hotel") were placed on furlough for an indefinite period of time.

3.      Because the furloughs/layoffs extended more than six months and proper notice for extension was never provided by any of the Defendants, Plaintiffs and the other similarly situated employees were effectively terminated from their employment when their furloughs began.

4.      Defendants failed to provide Plaintiffs as well as other employees similarly situated with 90 days' advance written notice of their terminations of employment, as required under the NY WARN Act when there is a plant closing or mass layoff.

5.      Defendants also failed to provide Plaintiffs as well as other employees similarly situated  and terminated from their employment at that time, with 60 days' advance written notice of their terminations of employment, as required under the federal WARN Act when there is a plant closing or mass layoff.

6.      By reason of Defendants' unlawful conduct, Plaintiffs and those similarly situated have suffered monetary damages, and other resulting injury and loss.

7.      Despite terminating the employment of the Plaintiffs and other similarly situated employees in New York and making their layoffs permanent, Defendants have not paid them the No-Fault Separation Pay owed to them as per their contracts.

8.      Initially, Defendants claimed that there was a decision to suspend the operations of The Hotel due to Covid-19, but thereafter Defendants claimed that the decision to continue to shut down the operations of The Hotel was the result of other factors.

9.      To avoid paying Plaintiffs and other similarly situated employees in New York what they are contractually obligated to pay them, Defendants have instead shut down The Hotel claiming that it was undergo renovations, and therefore could not be opened for business.

10.     Upon information and belief, the reason provided to the Plaintiffs and other employees similarly situated by the Defendants was false, and the real reason was that Defendants wanted to save millions of dollars instead of paying Plaintiffs and other similarly situated employees either their salaries or their No-Fault Separation Pay.

11.     Rather than pay the Plaintiffs and other similarly situated employees their contractually obligated salaries, or provide them the required WARN Act payments and No-Fault Separation Pay, Defendants have concocted an indefinite furlough to avoid their legal obligations.


**JURISDICTION AND VENUE**

12.     Plaintiffs bring this action pursuant to the federal WARN Act and 20 CFR Part 639. This Court has subject matter jurisdiction over Plaintiffs' pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

13.     In addition, this Court has supplemental jurisdiction over the NY WARN Act, Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Tortious

Interference with a Contract and Alter Ego claims under 28 U.S.C. § 1367, because these claims arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as part of the same case or controversy under Article III of the United States Constitution.

14.     Venue is proper in this district under 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this district.

15.     Venue is also proper in this judicial district under 28 U.S.C. § I 39l(b)-(c) because Defendants conduct business and can be found in this district and a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district, and because the alleged unlawful employment practice was committed here and employment records relevant to that practice are maintained and administered here.

## JURY TRIAL DEMAND

16.     Plaintiffs demand a trial by jury in this action.

## PARTIES

17.     Plaintiff Selena Staley (hereinafter referred to as "Ms. Staley" or "Plaintiff Staley") is a resident of the State of New York, who at all times material to this action has resided in New York County, New York. She is a Citizen of the United States. Ms. Staley was working at The Hotel for approximately twelve (12) years and was most recently working as a Reserving Agent until Defendants placed Ms. Staley on indefinite furlough of her employment on or about March 20, 2020, resulting in her permanent layoff.

18.     Plaintiff Vivian Holmes (hereinafter "Ms. Holmes" or "Plaintiff Holmes") is a resident of the State of New York, who at all times material to this action has resided in Westchester County, New York. She is a citizen of the United States. Ms. Holmes was working at The Hotel for approximately twenty-four (24) years and most recently was a Rooms Division Administrative Assistant, a position that she held until Defendants placed Ms. Holmes on indefinite furlough of her employment on or about March 20, 2020, resulting in her permanent layoff.

19.     Plaintiff Olive Ivey (hereinafter referred to as "Ms. Ivey" or "Plaintiff Ivey") is a resident of the State of New York, who at all times material to this action has resided in Kings County, New York. She is a citizen of the United States. Ms. Ivey was working at The Hotel for approximately twenty-four (24) years, and most recently as Senior Housekeeping Manager, a position she held until Defendants placed Ms. Ivey on indefinite furlough of her employment on or about March 20, 2020, resulting in her permanent layoff.

20.     Upon information and belief Plaintiffs along with other similarly situated employees were employed by Defendants Four Seasons and/or Hotel 57 Services, LLC and were paid their salaries by Hotel 57 Services, LLC.

21.     Upon information and belief, Warner Defendants were also joint employers of Plaintiffs and other similarly situated employees.

FOUR SEASONS:

22.     Upon information and belief Four Seasons, is a foreign corporation existing under the laws of the State of New York, doing business in New York, with its principal place of business located at 1165 Leslie Street, Toronto, ON M3C 2K8, Canada.

23.     Upon information and belief, Four Seasons, is authorized to conduct business and does conduct business in the State of New York, and operates hotels all over the world and all over the United States,  including New York, and maintains a place of business at least two locations in the State of New York.

24.     Four Seasons is registered and authorized to do business and to work in New York State as well as other States in the United States, including California.

25.     Four Seasons also transacts significant business in New York.

26.     Upon information and belief, Four Seasons does conduct business and is authorized to do business in the State of New York.

27.     Upon information and belief Four Seasons also contracts to supply services in the State of New York.

28.     Upon information and belief Four Seasons regularly does or solicits business, or engages in other persistent course of conduct, or derives substantial revenue from services rendered in the State of New York.

29.     Four Seasons employs workers in the State of New York, and regularly conducts business in the State of New York.

30.     Upon information and belief, as of March 1, 2020, Four Seasons employed approximately 500 employees in New York State at The Hotel.

31.     Four Seasons employed Plaintiff and those similarly situated.

32.     Four Seasons managed The Hotel.

33.     Four Seasons operated The Hotel.

34.     Four Seasons made the decision to furlough the Plaintiffs on or about the Furlough date and those similarly situated.

35.     Four Seasons agreed to furlough the Plaintiffs and those similarly situated on or about the Furlough date.

36.     Four Season permanently laid off the Plaintiffs and those similarly situated.

37.     Four Seasons entered into a contractual agreement with Plaintiffs and those similarly situated.

HOTEL 57 SERVICES, LLC:

38.     Upon information and belief, Hotel 57 Services, LLC is a foreign corporation, existing under the laws of the State of New York, doing business in New York, with its principal place of business located at 57 East 57th Street, New York, New York.

39.     Upon information and belief, Hotel 57 Services, LLC is a domestic corporation, existing under the laws of the State of New York, doing business in New York, with its principal place of business located at 57 East 57th Street, New York, New York.

40.     Upon information and belief, Hotel 57 Services, LLC owns The Hotel.

41.     Upon information and belief, Hotel 57 Services, LLC operates The Hotel.

42.     Upon information and belief, at all relevant times, Hotel 57 Services, LLC employed the Plaintiffs and those similarly situated working at The Hotel.

43.     Upon information and belief, Hotel 57 Services, LLC is one of the owners of The Hotel.

44.     Upon information and belief, Hotel 57 Services, LLC transacts significant business in New York.

45.     Upon information and belief, Hotel 57 Services, LLC, is authorized to conduct business and does conduct business in the State of New York, and maintains a place of business at 57 East 57th Street, New York, New York.

46.     Upon information and belief, Hotel 57 Services, LLC is registered and authorized to do business and to work in New York State and transacts significant business in New York.

47.     Upon information and belief, Hotel 57 Services, LLC does conduct business and is authorized to do business in the State of New York.

48.     Upon information and belief Hotel 57 Services, LLC contracts to supply services in the State of New York.

49.     Upon information and belief Hotel 57 Services, LLC enters into contracts in the State of New York.

50.     Upon information and belief Hotel 57 Services, LLC regularly does or solicits business, or engages in other persistent course of conduct, or derives substantial revenue from services rendered in the State of New York.

51.     Upon information and belief, at all relevant times, Hotel 57 Services, LLC was and is an employer that regularly employs employees in the State of New York.

52.     Upon information and belief, at all relevant times, Hotel 57 Services, LLC employed Plaintiffs and those similarly situated working at the Hotel.

53.     Hotel 57 Services, LLC managed the Hotel.

54.     Hotel 57 Services, LLC operated the Hotel.

55.     Hotel 57 Services, LLC made the decision to furlough the Plaintiffs and those similarly situated on the Furlough date.

56.     Hotel 57 Services, LLC agreed to furlough the Plaintiffs and those similarly situated on the Furlough date.

57.     Hotel 57 Services, LLC permanently laid off the Plaintiffs and those similarly situated.

HOTEL 57 LLC:

58.     Upon information and belief, Hotel 57 LLC is a foreign corporation, existing under

the laws of the State of New York, doing business in New York, with its principal place of business

located at 57 East 57th Street, New York, New York.

59.     Upon information and belief, Hotel 57 LLC is a domestic corporation, existing

under the laws of the State of New York, doing business in New York, with its principal place of

business located at 57 East 57th Street, New York, New York.

60.     Upon information and belief, Hotel 57 LLC works to generate income for The

Hotel.

61.     Upon information and belief, Hotel 57 LLC, is authorized to conduct business and

does conduct business in the State of New York, and maintains a place of business at 57 East 57th

Street, New York, New York.

62.     Upon information and belief, Hotel 57 LLC is registered and authorized to do

business and to work in New York State and transacts significant business in New York.

63.     Upon information and belief, Hotel 57 LLC does conduct business and is authorized

to do business in the State of New York.

64.     Upon information and belief Hotel 57 LLC contracts to supply services in the State

of New York.

65.     Upon information and belief Hotel 57 LLC enters into contracts regularly in the

State of New York.

66.     Upon information and belief Hotel 57 LLC regularly does or solicits business, or

engages in other persistent course of conduct, or derives substantial revenue from services

rendered in the State of New York.

67.     Upon information and belief Hotel 57 LLC is an employer that regularly employs employees in the State of New York.

TY WARNER HOTELS:

68.     Upon information and belief Ty Warner Hotels is a foreign corporation, existing under the laws of the State of New York, doing business in New York, with its principal place of business located at 280 Chestnut Avenue, Westmont, IL 60559.

69.     Upon information and belief Ty Warner Hotels is a domestic corporation existing under the laws of the State of New York, doing business in New York, with its principal place of business located at 280 Chestnut Avenue, Westmont, IL 60559.

70.     Upon information and belief, Ty Warner Hotels, is authorized to conduct business and does conduct business in the State of New York.

71.     Upon information and belief, Ty Warner Hotels operates The Hotel.

72.     Upon information and belief, Ty Warner Hotels owns The Hotel.

73.     Upon information and belief, Ty Warner Hotels maintains The Hotel.

74.     Upon information and belief Ty Warner Hotels also owns and operates a hotel in California.

75.     Upon information and belief Ty Warner Hotels is registered and authorized to do business and to work in New York State and also transacts significant business in New York.

76.     Upon information and belief, Ty Warner Hotels does conduct business and is authorized to do business in the State of New York.

77.     Upon information and belief Ty Warner Hotels contracts to supply services in the State of New York.

78.     Upon information and belief Ty Warner Hotels regularly does or solicits business, or engages in other persistent course of conduct, or derives substantial revenue from services rendered in the State of New York.

79.     Upon information and belief, at all relevant times herein, Ty Warner Hotels employed workers and conducted business in the State of New York.

TY WARNER:

80.     Upon information and belief Ty Warner is a citizen of Illinois and resides in Oak Brook, Illinois.

81.     Upon information and belief Ty Warner is the Chief Executive Officer of Defendants, Ty Warner Hotels, Hotel 57 Services, LLC, and Hotel 57 LLC.

82.     Upon information and belief Ty Warner is an Executive Officer of Ty Warner Hotels, Hotel 57 Services, LLC, and Hotel 57 LLC.

83.     Upon information and belief Ty Warner is the owner of The Hotel.

84.     Upon information and belief, Ty Warner conducts business in the State of New York.

85.     Upon information and belief, Ty Warner operates The Hotel.

86.     Upon information and belief, Ty Warner maintains The Hotel.

87.     Upon information and belief, Ty Warner generates substantial revenue from The Hotel.

88.     Upon information and belief Ty Warner also owns and operates a hotel in California.

89.     Upon information and belief Ty Warner transacts significant business in New York.

90.     Upon information and belief, Ty Warner does conduct business in the State of New York.

DEFENDANTS JOINTLY EMPLOYED PLAINTIFFS AND THOSE SIMILARLY SITUATED:

91.     Upon information and belief, as of February 2020, Defendants employed approximately 500 employees, including Plaintiffs and those similarly situated, at The Hotel.

92.     Four Seasons is an "employer" within the meaning of the WARN Act and NY WARN Act.

93.     Hotel 57 Services, LLC is an "employer" within the meaning of the WARN Act and NY WARN Act.

94.     Ty Warner Hotels is an "employer" within the meaning of the WARN Act and NY WARN Act.

95.     Ty Warner is an "employer" within the meaning of the WARN Act and NY WARN Act.

96.     Hotel 57 LLC is an "employer" within the meaning of the WARN Act and NY WARN Act.

97.     Upon information and belief, Defendants collectively controlled the operations of The Hotel, through their interrelation of operations; control over the employment opportunities and the employment characteristics of the employees of The Hotel, and control of hiring and/or firing of the employees of The Hotel, and most notably the hiring and/or selection of the general manager of The Hotel.

98.     Upon information and belief, Defendants collectively controlled the terms and conditions of employment of the employees working at The Hotel, supervised or controlled work schedules, and set pay rates for employees working at The Hotel.

99.     At all relevant times, Defendants collectively also had and have control over day-to-day operations at The Hotel and as such are a single employer and have an interrelation of operations,  had direct control over the employees of The Hotel, authority over management, supervision, and oversight of the affairs, operation, and control of The Hotel, and had and have an active role in decision making at The Hotel.

100.    The Hotel also has a "Suite in the Sky" known as the "Ty Warner Penthouse" as well as the "Ty Bar" serving cocktails and rare spirits collection, as advertised on the Four Seasons website, displaying collective control over day-to-day operations of Defendants at The Hotel as well as the control that Defendant Ty Warner had in The Hotel.

101.    Further, in the Ty Warner Hotels and Resorts website, under the section Ty Warner properties lists, it lists The Hotel as a "Ty Warner property."

102.    Upon information and belief, Defendants collectively had de facto control of the decision to pay the No-Fault Separation Pay and were responsible for the employment practices at The Hotel, made the decision relating to the personnel policies, made the decision to refuse to open The Hotel so that Plaintiffs and those similarly situated could continue with their employment with The Hotel, and instead chose to place Plaintiffs and those similarly situated on indefinite furlough leading to the termination of employment of the Plaintiffs and similarly situated employees of The Hotel.

103.     Defendants collectively were the decision-makers responsible for the employment practice giving rise to the decision to keep the Plaintiffs and similarly situated employees furloughed since the Furlough Date, resulting in their permanent layoff.

104.     Defendants collectively were the decision-makers responsible for the employment practice giving rise to the decision to keep the Plaintiffs and similarly situated employees furloughed since the Furlough Date resulting in the termination of their employment. '

## STATEMENT OF FACTS:

105.     On or about the Furlough Date, Four Seasons notified Selena Staley that she and her similarly situated coworkers would be placed on unpaid furlough.

106.     On or about the Furlough Date Four Seasons notified Vivian Holmes that she and her similarly situated coworkers would be placed on unpaid furlough.

107.      On or about the Furlough Date, Four Seasons notified Olive Ivey that that she and her similarly situated coworkers would be placed on unpaid furlough.

108.     The Hotel is located at 57 East 57th Street, New York, New York 10022.

109.     On the Furlough Date, there was a mass layoff of at least 25 employees, excluding part-time employees, constituting at least 33% of the employees at the single site of The Hotel.

110.     On the Furlough Date, there was a plant closing, which was the permanent or temporary shut-down of a single site of employment where the shutdown resulted in an employment loss during a 30-day period where 25 or more employees, excluding any part time employees, wherein there was an effective cessation of production or of the work performed by a unit.

111.    On the Furlough Date, there was a mass layoff of at least 50 employees, excluding part-time employees, constituting at least 33% of the employees at the single site of The Hotel.

112.    On the Furlough Date, there was a plant closing, which was the permanent or temporary shut-down of a single site of employment where the shutdown resulted in an employment loss during a 30-day period where 50 or more employees, excluding any part time employees, wherein there was an effective cessation of production or of the work performed by a unit.

113.    The Hotel's temporary shutdown triggered the notice requirement because the minimum number of terminations and/or layoffs were exceeding six months or reductions in work hours constituted an employment loss under both the New York WARN Act and the Federal WARN Act.

114.    Even though the notice requirement was triggered, Defendants failed to provide the required notice.

115.    By keeping the Plaintiffs Staley, Holmes, and Ivey on furlough for more than six months, along with their similarly situated co-workers, Defendants effectively permanently laid off the Plaintiffs and those similarly situated.

116.    Defendants placed Plaintiffs and those similarly situated on temporary layoffs which exceeded six months, which is an employment loss under the WARN Act.

117.    Defendants placed Plaintiffs and those similarly situated on temporary layoffs which exceeded six months, which is an employment loss under the NY WARN Act.

118.    Contrary to both the WARN Act and the NY WARN Act, Defendants have incredibly claimed that Plaintiffs and those employees similarly situated, were somehow

furloughed for years, and in the case of at least the Plaintiffs, are somehow still on furlough, years after the Furlough date.

119.    Prior to their terminations of employment, Defendants did not provide any notice to any of the Plaintiffs, or to any of the other similarly situated employees that their employment would be terminated.

120.    Defendants have not provided any of the Plaintiffs the ability to go back to work and receive pay and benefits that they had prior to the Furlough date.

121.    Thus, Plaintiffs and other similarly situated employees were effectively permanently laid off on the Furlough Date.

122.    In addition, Defendants provided no information to any of the Plaintiffs or their co-workers concerning job training or re-employment services for which the employees might have been eligible, as is required under the WARN Act and NY WARN Act.

123.    None of the Plaintiffs or similarly situated employees received 90 days' advance written notice of their terminations of employment, as required under the NY WARN Act.

124.    None of the Plaintiffs or similarly situated employees received 60 days' advance written notice of their terminations of employment, as required under the WARN Act.

125.    Defendants have failed to comply with either the WARN Act or the NY WARN Act by not providing any of the required notice under the Acts to the Plaintiffs or those similarly situated

126.    Defendants claimed in December 2020 that The Hotel would reopen by the end of April 2021, but that did not happen.

127.    In December 2020, Defendants made no mention of the need for any repairs or maintenance which would preclude The Hotel from reopening.

128.     Then in February 2021, Defendants sent Plaintiffs and other similarly situated employees a memo informing them that due to local and state restrictions and the lack of demand, reopening in April 2021 was not feasible.

129.     In the February 2021 memo, Defendants further stated that re-opening The Hotel needed to be financially viable.

130.     In the February 2021 memo, Four Seasons assured Plaintiffs and those similarly situated that "… we will continue to closely monitor the market and demand situation.  We also will continue to monitor developments with the vaccines and overall pandemic.  Once the pandemic conditions improve and demand increases, our goal is to confirm a re-opening date with you approximately 60 – 90 days in advance of reopening the hotel."

131.     Defendants stated that the Plaintiffs and those similarly situated would be back at work when the consumer demand reached a certain threshold in order to reopen, but that did not happen.

132.     The February 2021 memo further stated that once the pandemic conditions improved and demand increased, their goal was to confirm a reopening date, but that did not happen.

133.     At no point in the February 2021 memo did Defendants mention a need for any infrastructure or maintenance work delaying the re-opening.

134.     The memo noted that other hotels in their competitive set in New York City were also postponing their re-opening dates.

135.     By June 2021, the other hotels in The Hotel's competitive set had all reopened.

136.     Then on June 25, 2021, Elizabeth Ortiz, Director of People and Culture for The Hotel sent a memo to Plaintiffs and other similarly situated employees announcing that The Hotel

would be undergoing substantial infrastructure and maintenance work which was expected to last well into 2022 and they would reassess reopening plans in early Spring 2022.

137. The June 25, 2021 memo stated that recalling employees would be directly tied to the business rebounding.

138. Notably the June 25, 2021 memo did not guarantee that all of the employees would have employment upon reopening. Despite that, Defendants still failed to provide any notice under either the WARN Act or the NY WARN Act that they would continue on furlough for more than six months, which constituted an unexcused extension, and as such was considered a termination of employment under both laws.

139. However, no exception to NY WARN or the federal WARN Act applies and Defendants were required to provide adequate notice to those employees who were terminated from their employment.

140. Further, exception applies or absolves Defendants of their obligation to provide notice of termination of employment under NY WARN Act and the WARN Act.

141. In addition, no unforeseeable business exception applies or absolves Defendants of their obligation to provide notice of termination of employment under NY WARN Act and the WARN Act.

142. Defendants cannot claim that the circumstances that led to the termination of employment of their New York employees was not reasonably foreseeable.

143. Despite claiming that the Plaintiffs and those similarly situated employees were still on an indefinite furlough, Defendants did not permit the Plaintiffs or other similarly situated employees from seeking temporary employment to mitigate their hardship caused by Defendants

without waiving their right to the No-Fault Separation Pay or the ability to maintain their jobs upon the reopening of The Hotel.

144.    Upon information and belief, Defendants have purposefully stalled the reopening of The Hotel to their own financial benefit while simultaneously causing Plaintiffs and other similarly situated employees to choose between their own economic survival in the short term versus receiving their jobs back or their No-Fault Separation Pay at some unknown date in the future.

145.    Other Four Seasons have undergone complete renovations without shutting down the hotel.  As a matter of fact, The Hotel has undergone various renovations and has never before shut down the hotel to guests.

146.    According to a 2017 celebritynetworth.com article written about the "Ty Warner Penthouse at Four Seasons Hotel New York," the cost of the Ty Warner Penthouse was $50,000 a night for the penthouse and the entire hotel property of The Hotel had just undergone a $120 million dollar renovation, wherein "All 368 studios and suites were carefully curated by Ty Warner himself . . ."

147.    Upon information and belief, The Hotel finished a five-year renovation which included the guest rooms and business meeting rooms, and did not cause The Hotel to shut down at all.

148.    Upon information and belief, during that five-year renovation The Hotel also renovated a substantial part of the hotel, including but not limited to the front and back doors to the hotel, the spa, the banquet kitchen, room service kitchen, loading dock, lobby lounge, and elevators.

149.    Other hotels, including other Four Seasons hotels often undergo renovations, while staying open, sometimes undergoing renovations for years at a time.

150.    Upon information and belief, Defendants are refusing to open The Hotel for reasons other than what they are presenting to the Plaintiffs or other similarly situated employees.

151.    Upon information and belief, except for The Hotel and the Biltmore in Santa Barbara, which at least in part are owned and controlled by the Warner Defendants, all of the Four Seasons hotels have reopened since the pandemic began.

152.    Upon information and belief, the excuse given for not opening The Hotel and Four Seasons Santa Barbara hotel was that each of these hotels was to undergo renovations necessitating the shutdown of those hotels.

153.    Upon information and belief, Defendants have refused to provide Plaintiffs and others similarly situated with those benefits and/or No-Fault Separation Pay promised and required by the U.S. EmPact Employee Handbook for Four Seasons.

154.    Upon information and belief, Defendant Four Seasons had a contractual agreement wherein they shared financial responsibility for the salaries and benefits for each of the Plaintiffs and each of the members of the similarly situated proposed Class.

155.    Upon information and belief, Defendants had been trying to terminate the employment of workers from The Hotel in the past in order to reduce financial obligations.

156.    Upon information and belief, Defendants refused to allow Plaintiffs and those similarly situated to get their jobs back, instead, continuing to keep them on furlough, resulting in their permanent layoffs, claiming that The Hotel could not be opened first due to COVID, then consumer demand and financial viability, and then for the first time because The Hotel had to undergo substantial renovations.

157.    Upon information and belief, that is not the actual reason for not reopening The Hotel, and the real reason was to save Defendants money by avoiding their contractual obligations to either pay the salaries of Plaintiffs and other similarly situated employees or pay their No-Fault Separation Pay.

158.    Upon information and belief, Defendants used the pandemic as an excuse to stop paying Plaintiffs and others similarly situated their salaries, referring to their permanent layoffs as a furlough in order to avoid providing the Plaintiffs and others similarly situated with benefits and pay that they are entitled to under their EmPact Agreement and the law.

159.    Upon information and belief, Defendants used the pandemic as an excuse to stop paying Plaintiffs and each of the members of the proposed Class, hoping that they would find new jobs before The Hotel reopened, to avoid ever paying them the required No-Fault Separation Pay.

160.    Upon information and belief, the cost of paying the salaries or No-Fault Separation Pay for all the Plaintiffs and other similarly situated employees would have been millions of dollars, which is the motivation behind Defendants' aforementioned conduct.

## CLASS ALLEGATIONS:

161.    All Plaintiffs bring the federal WARN Act Claim (First Cause of Action), the NY WARN Act Claim (Second Cause of Action), the Breach of Contract Claim (Third Cause of Action), the Breach of Implied Covenant of Good Faith and Fair Dealing Claim (Fourth Cause of Action), the Tortious Interference with a Contract Claim (Fifth Cause of Action) and the Alter Ego Claim (Sixth Cause of Action)  on behalf of themselves and all others similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3).

162.    The "Class" is defined as all former employees of Defendants who worked for Defendants at The Hotel, and whose employment was furloughed on the Furlough Date, and as such whose employment was permanently laid off from Defendants as part of, or as the result of, being furloughed for more than six months and/or laid off as a result of a mass layoff and/or plant closing carried out by Defendants on the Furlough Date.

163.    All Plaintiffs are members of the Class and all Plaintiffs seek to act as representatives of the proposed Class.

164.    Plaintiffs reserve the right to modify the definition of the Class based on information that they or class counsel learn through discovery.

165.    The proposed Class meets all of the requirements of Federal Rule of Civil Procedure 23, as follows:

Numerosity:

166.    The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants. Upon information and belief, Defendants terminated the employment of at least 200 full-time employees, on the Furlough Date from The Hotel.

167.    Upon information and belief, the identity of all the members of the Class and the recent residence address of each of the Class members is contained in Defendants' books and records.

Commonality:

168.    There are common questions of law and fact affecting the rights of the members of the Class, including, without limitation:

22

a.  Whether the members of the Class were employees of Defendants who worked in a covered site of employment of Defendants;

b.  Whether Defendants unlawfully terminated the employment of the members of the Class without cause on their part and without giving them 90 days advance written notice in violation of the NY WARN Act; and

c.  Whether Defendants unlawfully terminated the employment of the members of the Class without cause on their part and without giving them 60 days advance written notice in violation of the federal WARN Act; and

d.  Whether Defendants unlawfully failed to pay the Class members 60 days wages and benefits as required by the NY WARN Act and the federal WARN Act.

e.  Whether Defendants unlawfully failed to pay the Class members and those similarly situated their No-Fault Separation Pay benefits as required by their contracts.

Typicality:

169.    The claims of Plaintiffs Staley, Holmes, and Ivey – the Named Plaintiffs – are typical of the claims of the Class members because they arise from the same course of conduct, *i.e.* Defendants' mass layoff and/or plant closure(s). Plaintiffs and the members of the proposed Class sustained the same or similar injuries arising out of and caused by Defendants' common course of conduct in violation of these claims. Plaintiffs' claims are thereby representative of, and co-extensive with, the claims of the proposed Class members.

Adequacy:

170.    The named representatives will fairly and adequately protect the interests of the proposed Class. There are no conflicts between the interests of the Plaintiffs and the other members of the proposed Class.

Rule 23(b)(3) Requirements:

171.    This action is maintainable as a class action under Rule 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Class, because a class action is superior to other available methods for the fair and efficient adjudication of this litigation, where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant, and damages suffered by individual Class members are small compared to the expense and burden of individual prosecution of this litigation.

172.    Concentrating all potential litigation concerning the rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the rights of all the members of the Class.

**AS AND FOR A FIRST CAUSE OF ACTION**
**Violation of Federal Worker Adjustment and Retraining Notification Act**
**(20 CFR Part 639)**
**(On Behalf of All Plaintiffs and the Class Against Defendants.)**

173.    Plaintiffs incorporate by reference the allegations set forth in the foregoing paragraphs of the Complaint as though set forth at length herein.

174.    Plaintiffs bring this action on behalf of themselves and the proposed Class against Defendants.

175.   Defendants employed 100 or more employees, excluding part-time employees.

176.   Plaintiffs and those similar situated were laid off for more than six months since the Furlough Date.

177.   Plaintiffs and those similarly situated were laid off for more than six months, resulting in their layoffs becoming permanent.

178.   Pursuant to the WARN Act, the employment of Plaintiffs and those similarly situated was retroactively terminated on the Furlough Date.

179.   Defendants were required by the WARN Act to give the Plaintiffs and the Class at least 60 days advance written notice of the terminations of their employments pursuant to the WARN Act, §§ 639.4 and 639.5 of the CFR.

180.   Defendants also failed to provide notice of:

    i.   The name and address of the employment site where the plant closing or mass layoff will occur, and the name and telephone number of a company official to contact for further information;

    ii.   A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;

    iii.   The expected date of the first separation and the anticipated schedule for making separations; and,

    iv.   The job titles of positions to be affected and the names of the workers currently holding affected jobs.

181.   Defendants terminated the employment of Plaintiffs and at least approximately 200 similarly situated employees as part of, or as the foreseeable result of, mass layoffs or plant closings ordered by Defendants on the Furlough Date by placing Plaintiffs on indefinite furlough

along with approximately 200 similarly situated employees on the Furlough Date, resulting in the employment loss of Plaintiffs and those similarly situated.

182.    Because none of these employees were provided with their job back since the Furlough Date, Defendants effectively terminated the employment of all on the Furlough Date, without the required WARN Act notice.

183.    At all relevant times, Defendants were each an individual or private business entity defined as "employer" under the WARN Act.

184.    Defendants ordered a mass layoff or plant closing at the Facilities as defined by § 639.3 of the WARN Act, causing the termination of the employment of Plaintiffs and the Class.

185.    Defendants are economically intertwined and are a single employer under the WARN Act.

186.    Defendants failed to give the requisite notice required by the applicable law. The terminations of employment failed to give Plaintiffs and other similarly situated employees of The Hotel at least 60 days' advance notice, as required by the WARN Act.

187.    Plaintiffs and the Class members suffered terminations of employment as defined by § 639.3 of the CFR, having their employment terminated by Defendants without cause on their part.

188.    As a result of this violation, Plaintiffs and the Class members seek the payment of statutory remedies by Defendants under the WARN Act in the form of 60 days salary, commissions, bonuses, benefits, and health insurance premiums for 60 days following their respective terminations of employment.

189.    Defendants failed to pay the Plaintiffs and each of the Class members their respective wages, salary, commissions, bonuses, and health insurance premiums for 60 days following their respective terminations.

190.    Based upon the foregoing facts, Plaintiffs and each of the members of the proposed class were injured by Defendants' failure to give notice of the intended terminations of employment.

191.    Based upon the foregoing facts, Plaintiffs and each of the members of the proposed Class have sustained damages including but not limited to those damages afforded by the WARN Act, including but not limited to those damages listed above and costs and attorneys' fees.

**AS AND FOR A SECOND CAUSE OF ACTION**
**Violation of New York State Worker Adjustment and Retraining Notification Act**
**(New York Labor Law § 860 et seq.)**
**(On Behalf of All Plaintiffs and the Class Against Defendants.)**

192.    Plaintiffs incorporate by reference the allegations set forth in the foregoing paragraphs of the Complaint as though set forth at length herein.

193.    Plaintiffs bring this action on behalf of themselves and the proposed Class against Defendants.

194.    Defendants were required by the NY WARN Act to give the Plaintiffs and the Class members at least 90 days advance written notice of their terminations pursuant to § 860-B of the NY WARN Act.

195.    Defendants terminated Plaintiffs' employment along with at least approximately 200 similarly situated employees as part of, or as the foreseeable result of, mass layoffs or plant closings ordered by Defendants on the Furlough Date.

196.    Defendants terminated Plaintiffs' employment along with at least approximately 200 similarly situated employees as part of, or as the foreseeable result of, mass layoffs or plant closings ordered by Defendants from in March 2020.

197.     On the Furlough Date, Defendants terminated the employment of at least approximately 200 employees working at The Hotel, including Plaintiffs Staley, Holmes, and Ivey.

198.     Because none of the Plaintiffs or those similarly situated employees were given their jobs back since the Furlough date, Defendants effectively terminated the employment of at least approximately 200 individuals as of the Furlough Date without any notice of termination of employment.

199.     At all relevant times, Defendants were individuals or private business entities defined as "employer" under the NY WARN Act and continued to operate as a business until Four Seasons decided to order a mass layoff or plant closing at the Facilities as defined by § 860-A(3),(4).

200.     Defendants failed to give the requisite notice required by the applicable law. The terminations failed to give Plaintiffs and other similarly situated employees of Defendants at least 90 days' advance notice of termination, as required by the NY WARN Act.

201.     Pursuant to the NY WARN Act, the employment of Plaintiffs and those similarly situated was retroactively terminated on the Furlough Date.

202.     Defendants were required by the NY WARN Act to give the Plaintiffs and the Class at least 90 days advance written notice of the mass layoff or employment loss pursuant to the NY WARN Act.

203.     Plaintiffs and the Class members suffered terminations of employment as defined by § 860-A(2) of the NY WARN Act, having their employment terminated by Defendants without cause on their part.

204.     As a result of this violation, Plaintiffs and the Class members seek the payment of statutory remedies by Defendants under the NY WARN Act in the form of salary, commissions,

bonuses, benefits, and health insurance premiums for 60 days following their respective terminations.

205.   Defendants failed to pay the Plaintiffs and each of the Class members their respective wages, salary, commissions, bonuses, and health insurance premiums and any other benefits that they were entitled to under the NY WARN Act for 60 days following their respective terminations of employment.

206.   Based upon the foregoing facts, Plaintiffs and the Class members were injured by Defendants' failure to give notice of the intended terminations of employment.

207.   Based upon the foregoing facts, Plaintiffs and each of the members of the proposed Class have sustained damages including but not limited to those damages afforded by the NY WARN Act, including but not limited to those damages listed above and costs and attorneys' fees.

## AS AND FOR A THIRD CAUSE OF ACTION
### Breach of Contract
### (On Behalf of All Plaintiffs and the Class Against Four Seasons)

208.   Plaintiffs incorporate by reference the allegations set forth in the foregoing paragraphs of the Complaint as though set forth at length herein.

209.   Plaintiffs bring this action on behalf of themselves and the proposed Class against Defendants, Four Seasons.

210.   Prior to the Furlough Date, Plaintiffs and each of the members of the proposed Class had entered into valid contracts with Four Seasons and those contracts were still valid on the Furlough Date.

211.   The U.S. EmPact Employee Handbook was a valid contract between the Four Seasons and each of the Plaintiffs and each of the members of the proposed Class.

212.    Plaintiffs and each of the members of the proposed Class had materially performed their contractual obligations.

213.    Plaintiffs and each of the members of the proposed Class were each terminated from their employment for no-fault.

214.    Plaintiffs and each of the members of the proposed Class are entitled to No-Fault Separation Pay.

215.    Defendants Four Seasons have failed to pay Plaintiffs and each of the members of the proposed Class their No-Fault Separation Pay.

216.    Defendants Four Seasons have materially failed to perform its commitments under the contract with each of the Plaintiffs and each of the members of the proposed Class.

217.    Based upon the foregoing facts, Plaintiffs and the Class members were injured by Defendants Four Seasons.

218.    Based upon the foregoing facts, Plaintiffs and each of the members of the proposed Class have sustained damages including but not limited to their No-Fault Separation Pay and the natural and probable consequences of the breach.

### AS AND FOR A FOURTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of All Plaintiffs and the Class Against Four Seasons)

219.    Plaintiffs incorporate by reference the allegations set forth in the foregoing paragraphs of the Complaint as though set forth at length herein.

220.    Plaintiffs bring this action on behalf of themselves and the proposed Class against Defendants Four Seasons.

221.    Plaintiffs and each of the members of the proposed Class had valid contracts with Defendant Four Seasons.

222.    The U.S. EmPact Employee Handbook was a valid contract between the Four Seasons and each of the Plaintiffs and each of the members of the proposed Class.

223.    Plaintiffs and each of the members of the proposed Class had materially performed their contractual obligations.

224.    The employment of Plaintiffs and each of the members of the proposed Class were each terminated for no-fault.

225.    Plaintiffs and each of the members of the proposed Class are entitled to No-Fault Separation Pay.

226.    Defendant Four Seasons have failed to pay Plaintiffs and each of the members of the proposed Class their No-Fault Separation Pay.

227.    Defendant Four Seasons have materially failed to perform its commitments under the contract with each of the Plaintiffs and each of the members of the proposed Class.

228.    Defendant Four Seasons have advised each of the Plaintiffs and each of the members of the proposed Class that The Hotel intends to continue to furlough them.

229.    By claiming that the Plaintiffs and the members of the proposed Class will continue to be on furlough, and have already been on furlough since the Furlough Date, more than two years from now, Defendant Four Seasons is acting in bad faith.

230.    Defendant Four Seasons is refusing to call these multi-year periods of not paying Plaintiffs and the members of the proposed Class permanent layoffs to avoid their contractual obligations.

231.    Defendants Four Seasons has not performed their obligations under its contract with each of the Plaintiffs and the members of the proposed Class.

232.    Based upon the foregoing facts, Plaintiffs and the Class members were injured by Defendant Four Seasons.

233.    Based upon the foregoing facts, Plaintiffs and each of the members of the proposed Class have sustained damages including but not limited to their No-Fault Separation Pay and the natural and probable consequences of the breach.

### AS AND FOR A FIFTH CAUSE OF ACTION
### Tortious Interference with Contract
### (On Behalf of All Plaintiffs and the Class Against the Warner Defendants)

234.    Plaintiffs incorporate by reference the allegations set forth in the foregoing paragraphs of the Complaint as though set forth at length herein.

235.    Plaintiffs bring this action on behalf of themselves and the proposed Class against the Warner Defendants.

236.    Plaintiffs and each of the members of the proposed Class had valid contracts with Four Seasons.

237.    The U.S. EmPact Employee Handbook was a valid contract between the Four Seasons and each of the Plaintiffs and each of the members of the proposed Class.

238.    Plaintiffs and each of the members of the proposed Class had materially performed their contractual obligations.

239.    The employment of Plaintiffs and each of the members of the proposed Class were each terminated for no-fault.

240.    Plaintiffs and each of the members of the proposed Class are entitled to No-Fault Separation Pay.

241.    The Warner Defendants had knowledge of these contracts.

242.    Upon information and belief, the Warner Defendants intentionally delayed opening The Hotel to avoid paying the salaries of Plaintiffs and each of the proposed members of the Class.

243.    Upon information and belief, the Warner Defendants delayed opening The Hotel because this was financially beneficial for them.

244.    Upon information and belief, the Warner Defendants caused the Plaintiffs and the proposed members of the Class to be permanently laid off from their employment at The Hotel.

245.    Upon information and belief, the Warner Defendants also prevented the payment to the Plaintiffs and each of the proposed members of the Class their No-Fault Separation Pay.

246.    Upon information and belief, the Warner Defendants intentionally procured Four Seasons' breach of their contracts with Plaintiffs and each of the members of the proposed Class.

247.    Four Seasons breached their contracts with Plaintiffs and each of the members of the proposed Class.

248.    Plaintiffs and each of the members of the proposed Class were damaged as a result of the breach.

249.    Upon information and belief, the Warner Defendants' conduct caused Plaintiffs and the Class Members' harm.

250.    Based upon the foregoing facts, Plaintiffs and each of the members of the proposed Class have sustained damages including but not limited to their No-Fault Separation Pay and the natural and probable consequences of the Warner Defendants tortious interference with contract.

## AS AND FOR A SIXTH CAUSE OF ACTION
### Alter Ego
### (On Behalf of All Plaintiffs and the Class Against Defendant Ty Warner)

251.    Plaintiffs incorporate by reference the allegations set forth in the foregoing paragraphs of the Complaint as though set forth at length herein.

252.    Ty Warner exercised complete domination of The Hotel.

253.    Ty Warner used his control of The Hotel to commit a wrong against Plaintiffs and each of the members of the proposed Class.

254.    Defendant Ty Warner was the alter-ego of each the Warner Defendants and was the instrumentality or conduit of one or more of the other Defendants in the pursuit of a single business venture such that disregard of the separate nature of the Defendants' corporate organization, or other association, is necessary to prevent an injustice upon Plaintiffs and each member of the class they seek to represent.

255.    Plaintiffs and each of the members of the proposed Class were injured as a result.

256.    By reason of the foregoing, Ty Warner and the Warner Defendants are jointly and severally responsible for the aforesaid indebtedness to Plaintiffs and each of the members of the proposed Class, and are, therefore, personally liable to Plaintiffs and each of the members of the proposed Class in an amount to be proven at trial.


## ALLEGATIONS REGARDING RELIEF


257.    Plaintiffs and the class they seek to represent have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief they seek in this action is the only means of securing complete and adequate relief. Plaintiffs and the

class they seek to represent are now suffering, and will continue to suffer, irreparable injury from Defendants' conduct, acts, and omissions.

258. Defendants' actions have caused and continue to cause Plaintiffs and all members of the class they seek to represent substantial losses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

a.   Certify the Class under Federal Rule of Civil Procedure 23; appoint Plaintiffs as representatives of the Class; and appoint their attorneys as Class Counsel to represent the members of the Class.

b.   Declare that the practices complained of herein violate the Federal WARN Act, 20 CFR Part 639.

c.   Declare that the practices complained of herein violate the NY WARN Act, NYLL § 860 *et seq.*

d.   Award all damages permitted under the Federal WARN Act.

e.   Award all damages permitted under the NY WARN Act.

f.   Award all damages permitted under the Breach of Contract Claim against Defendant Four Seasons.

g.   Award all damages permitted under the Breach of Implied Covenant of Good Faith and Fair Dealing Claim against Defendant Four Seasons.

h.   Award all damages permitted under the Tortious Interference With Contract Claim against the Warner Defendants.

i.   Award Plaintiffs reasonable attorneys' fees and costs.

j.   Award such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action for all claims.

PLAINTIFFS REQUEST TRIAL TO A JURY ON ALL CLAIMS ALLOWED BY LAW.

Dated: New York, New York
      August 9, 2022

_/s/ Maya Risman_
Maya Risman, Esq.,
Risman & Risman, P.C.
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-6400
mrisman@risman-law.com

Evan Brustein, Esq.
Brustein Law PLLC
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-3900
evan@brusteinlaw.com

_Counsel for Plaintiffs and the proposed Class_
