Marc B. Zimmerman
Kathryn T. Lundy
FREEBORN & PETERS LLP
1155 Avenue of Americas, 26th Floor
New York, NY 10036
(212) 218-8760
*Attorneys for Defendants Hotel 57 Services, LLC*
*Hotel 57, LLC, Ty Warner Hotels & Resorts, LLC*
*and H. Ty Warner*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

SELENA STALEY, VIVIAN HOLMES, and OLIVE
IVEY, on behalf of themselves and all others similarly
situated,

            Plaintiffs,

      v.

FOUR SEASONS HOTELS AND RESORTS,
HOTEL 57 SERVICES, LLC, HOTEL 57, LLC, TY
WARNER HOTELS & RESORTS, LLC, and H. TY
WARNER,

            Defendants.

-------------------------------------------------------------- X

Case No.: 22-CV-6781 (JSR)

**NOTICE OF MOTION TO
COMPEL ARBITRATION,
DISMISS CLASS CLAIMS
AND STAY ACTION**

      **PLEASE TAKE NOTICE** that Defendants Hotel 57 Services, LLC, Hotel 57, LLC, Ty

Warner Hotels & Resorts, LLC, and H. Ty Warner (the "Warner Defendants"), by and through

their undersigned counsel, Freeborn & Peters LLP, respectfully will move this Court before Hon.

Jed S. Rakoff, U.S.D.J., at the United States Courthouse, Southern District of New York, 500

Pearl Street, New York, New York 10007 for an Order: (1) compelling Plaintiffs Selena Staley,

Vivian Holmes and Olive Ivey (collectively the "Plaintiffs") to arbitrate their claims alleged in

the Complaint against the Warner Defendants; (2) dismissing the class claims alleged in the

Complaint; (3) staying this action pending the completion of arbitration; and (4) for such other

and further relief as the Court deems just and proper.

**EXHIBIT 7**

As set forth in the Court's November 7, 2022 e-mail to counsel for all parties, the schedule for service and filing of the parties' papers in connection with this motion is as follows: (1) the Warner Defendants' moving papers shall be served and filed by November 15, 2022; (2) Plaintiffs' answering papers shall be served and filed by December 6, 2022; and (3) the Warner Defendants' reply papers to be served and filed by December 13, 2022.  A date for a hearing on the motion will be determined by the Court.

Dated: New York, New York
        November 9, 2022

                                           **FREEBORN & PETERS LLP**

                                           By: */s/ Marc B. Zimmerman*
                                                Marc B. Zimmerman
                                                Kathryn T. Lundy
                                      1155 Avenue of the Americas, 26th Floor
                                      New York, NY 10036
                                      (212) 218-8760

                                      *Attorneys for Defendants Hotel 57 Services, LLC*
                                      *Hotel 57, LLC, Ty Warner Hotels & Resorts, LLC*
                                      *and H. Ty Warner*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

SELENA STALEY, VIVIAN HOLMES, and OLIVE
IVEY, on behalf of themselves and all others similarly
situated,

                           Plaintiffs,

       v.

                                       Case No.: 22-CV-6781 (JSR)

FOUR SEASONS HOTELS AND RESORTS,
HOTEL 57 SERVICES, LLC, HOTEL 57, LLC, TY
WARNER HOTELS & RESORTS, LLC, and H. TY
WARNER

                         Defendants.

-------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF
## THE WARNER DEFENDANTS' MOTION TO COMPEL ARBITRATION,
## DISMISS CLASS CLAIMS AND STAY ACTION

**FREEBORN & PETERS, LLP**
Marc B. Zimmerman
Kathryn T. Lundy
1155 Avenue of the Americas, 26th Floor
New York, NY 10036
(212) 218-8760

*Attorneys for Defendants*
*Hotel 57 Services, LLC, Hotel 57, LLC, Ty*
*Warner Hotels & Resorts, LLC and*
*H. Ty Warner*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS ................................................................................................................................... 2

ARGUMENT .......................................................................................................................... 6

    POINT I ........................................................................................................................... 6

        PLAINTIFFS SHOULD BE COMPELLED TO ARBITRATE THE
        CLAIMS ALLEGED IN THE COMPLAINT ................................................................ 6

        A.    The EmPact Agreement is valid and enforceable ................................................. 8

             1.    Plaintiffs concede the EmPact Agreement is a valid contract ........................... 8

             2.    The EmPact Agreement is valid and enforceable under
                  New York law ................................................................................................. 9

        B.    The EmPact Agreement requires Plaintiffs to submit all claims
             in this action to the C.A.R.E. claims resolution procedure therein ..................... 10

        C.    All Warner Defendants are entitled to enforcement of the
             EmPact Agreement .......................................................................................... 14

    POINT II ......................................................................................................................... 17

        PLAINTIFFS' CLASS CLAIMS MUST BE DISMISSED ............................................ 17

    POINT III ........................................................................................................................ 18

        THE COURT SHOULD STAY THIS ACTION PENDING COMPLETION OF
        ARBITRATION OF PLAINTIFFS' CLAIMS ............................................................... 18

CONCLUSION ...................................................................................................................... 20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Acquaire v. Canada Dry Bottling,*
    906 F. Supp. 819 (S.D.N.Y. 1995) ...............................................................................19

*Application of Whitehaven S.F., LLC v. Spangler,*
    45 F. Supp. 3d 333 (S.D.N.Y. 2014)..............................................................................9

*AT & T Techs., Inc. v. Commc'ns Workers of Am.,*
    475 U.S. 643 (1986).................................................................................................7, 11

*Brum v. City of Niagara Falls,*
    145 A.D.2d 928, 535 N.Y.S.2d 856 (4th Dept. 1988) ....................................................9

*Bulkenstein v. Taptu, Inc.,*
    No. 14 Civ. 1812, 2014 WL 5089385 (S.D.N.Y. Oct. 9, 2014) ...................................11

*Bynum v. Maplebear Inc.,*
    166 F. Supp. 3d 527 (S.D.N.Y. 2016)............................................................................7

*Centocor, Inc. v. The Kennedy Inst. of Rheumatology,*
    No. 8 Civ 8824 (DC), 2008 WL 4726036 (S.D.N.Y. Oct. 29, 2008) ..........................14

*Chen-Oster v. Goldman, Sachs & Co.,*
    449 F. Supp.3d 216 (S.D.N.Y. 2020)...........................................................................17

*Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.,*
    271 F.3d 403 (2d Cir. 2001).........................................................................................15

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.,*
    58 F.3d 16 (2d Cir. 1995).........................................................................................7, 11

*Contec Corp v. Remote Sols., Ltd.,*
    398 F.3d 205 (2d Cir. 2005).........................................................................................12

*David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London),*
    923 F.2d 245 (2d Cir. 1991)...........................................................................................8

*General Media, Inc. v. Shooker,*
    No. 97 Civ. 510 (DAB), 1998 WL 401530 (S.D.N.Y. July 16, 1998) ........................19

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,*
    815 F.2d 840 (2d. Cir. 1987)..................................................................................12, 18

*Gillman v. Chase Manhattan Bank, N.A.*,
    534 N.E.2d 824, 537 N.Y.S.2d 787 (1988)........................................................................10

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
    ___ F. Supp. 3d ___, 2022 WL 6994507 (S.D.N.Y. Oct. 12, 2022)....................................17

*Holt v. Ty Warner Hotels & Resorts, LLC*,
    2022 WL 2304179 (C.D. Cal. June 27, 2022) ....................................................................16

*Isaacs v. OCE Bus. Servs., Inc.*,
    968 F. Supp. 2d 564 (S.D.N.Y. 2013)................................................................................10

*Lismore v. Societe Gen. Energy Corp.*,
    No. 11 Civ 6705, 2012 WL 3577833 (S.D.N.Y. Aug. 17, 2012) ........................................12

*Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. NRG Energy, Inc.*,
    561 F. Supp. 3d 322 (S.D.N.Y. 2021)..................................................................................7

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
    252 F.3d 218 (2d Cir. 2011)..........................................................................................11, 12

*Medidata Sols., Inc. v. Veeva Sys. Inc.*,
    748 F. App'x 363 (2d Cir. 2018) ........................................................................................15

*Meridian Autonomous Inc. v. Coast Autonomous LLC*,
    2020 WL 496078 (S.D.N.Y. Jan. 30, 2020) ......................................................................15

*Merrick v. UnitedHealth Grp., Inc.*,
    127 F. Supp. 3d 138 (S.D.N.Y. 2015)..................................................................................7

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ..........................................................................................................12

*Molina v. Kaleo, Inc.*,
    363 F. Supp. 3d 344 (S.D.N.Y. 2019)................................................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)..........................................................................................................6, 18

*Nayal v. HIP Network Servs. IPA, Inc.*,
    620 F. Supp. 2d 566 (S.D.N.Y. 2009)................................................................................10

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016)............................................................................................7, 18

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech, Inc.*,
    369 F.3d 645 (2d Cir. 2004)................................................................................................6

*Ragone v. Atl. Video*,
    595 F.3d 115 (2d Cir. 2010)...................................................................................10

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012)....................................................................................9

*Sierra Rutile Ltd v. Katz*,
    937 F.2d 743 (2d Cir. 1991)...................................................................................19

*Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*,
    198 F.3d 88 (2d Cir. 1999).....................................................................................14

*Steelworkers v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960)...............................................................................................11

*WorldCrisa Corp. v. Armstrong*,
    129 F.3d 71 (2d Cir. 1997).....................................................................................18

*WTA Tour, Inc. v. Super Slam Ltd.*,
    339 F. Supp. 3d 390 (S.D.N.Y. 2018)......................................................................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(b)(2) and (3) ...................................................................................17

U.S. Code Title 9

    § 2........................................................................................................................7, 17

    § 3...........................................................................................................................18

Worker Adjustment and Retraining Notification ("WARN") Acts..................................12, 13, 19

Defendants Hotel 57 Services, LLC, Hotel 57, LLC, Ty Warner Hotels & Resorts, LLC, and H. Ty Warner (collectively, the "Warner Defendants"), by and through their undersigned counsel, Freeborn & Peters LLP, respectfully submit this memorandum of law in support of their motion to compel arbitration, dismiss class claims and stay this action pending arbitration.

## PRELIMINARY STATEMENT

Plaintiffs Selena Staley ("Staley"), Vivian Holmes ("Holmes") and Olive Ivey ("Ivey") (collectively, "Plaintiffs") commenced the instant action (purportedly on behalf of themselves and all others similarly situated) asserting claims against FSR International Hotels Inc. (incorrectly pled as Four Seasons Hotels and Resorts) ("FSR") and the Warner Defendants (FSR and the Warner Defendants collectively, the "Defendants") relating to the alleged termination of Plaintiffs' employment resulting from the temporary suspension of operations of the Four Seasons Hotel New York after the onset of the COVID-19 pandemic.

Plaintiffs each signed an agreement with Hotel 57 Services, LLC (the U.S EmPact[SM] Employee Handbook (the "EmPact Agreement")) containing a broad arbitration agreement *and* a class and collective action waiver. Notwithstanding Plaintiffs' express acknowledgement that the EmPact Agreement is valid, Plaintiffs still commenced the instant lawsuit alleging claims against the Warner Defendants that expressly fall within the scope of the parties' arbitration agreement. As set forth herein, Plaintiffs' claims against the Warner Defendants are subject to the EmPact Agreement, and Plaintiffs therefore should be held both to their agreement to arbitrate and their waiver of any right to pursue their claims on a class basis.

Accordingly, and for all the reasons set forth below, the Warner Defendants' Motion to compel arbitration, dismiss class claims and stay litigation pending the outcome of arbitration should be granted, in its entirety.

## FACTS

This action arises from the temporary suspension of operations of the Four Seasons Hotel New York (the "Hotel") after the onset of the COVID-19 pandemic. *See* Compl. at ¶ 8.[1] Plaintiffs allege such temporary suspension of operations was "due to COVID, then consumer demand and financial viability, and … because the Hotel had to undergo substantial renovations." *Id. at* ¶ 156. As a result of such temporary suspension of operations, Plaintiffs allege their employment at the Hotel was terminated by Defendants (*Id.* at ¶¶ 139, 140, 141, 142, 166, 168(b), 168(c), 178, 179, 181, 182, 184, 186, 187, 188, 189, 190, 194, 195, 196, 197, 198, 200, 201, 203, 204, 205, 206).

**Parties**

Plaintiffs have been employed at the Hotel for many years -- Staley for approximately 12 years and Holmes and Ivey each for approximately 24 years. *See* Compl. at ¶¶ 17-19. Each of the Plaintiffs executed and entered into the EmPact Agreement, which sets forth the terms and conditions of their employment -- which agreement specifically contains both a class and collective action waiver *and* an arbitration agreement. Staley signed the EmPact Agreement on or about June 8, 2011, and updated versions in or about 2015 and 2018 (*see* Affidavit of Cathy Hwang, dated November 15, 2022 ("Hwang Decl.") at ¶ 5, Exhibit B (Staley's signature pages of the EmPact Agreement). Holmes signed the EmPact Agreement in or about March 1998, and an updated

---

[1] References to the Complaint in this action, dated and filed on August 9, 2022 and annexed to the Declaration of Kathryn T. Lundy, dated November 15, 2022 ("Lundy Decl."), as Exhibit A are denoted herein as "Compl. ¶ __".

version in 2018 (*see* Hwang Decl. at ¶ 7, Exhibit C (Holmes' signature pages of the EmPact

Agreement). Ivey signed the EmPact Agreement in or about October 1997, and an updated version

in 2018 (*see* Hwang Decl. at ¶ 9, Exhibit D (Ivey's signature pages of the EmPact Agreement).

Plaintiffs allege the Warner Defendants, along with FSR, are joint employers of Plaintiffs

and other similarly situated employees because the Warner Defendants purportedly "controlled the

operations of the Hotel, through their interrelation of operations; control over the employment

opportunities and the employment characteristics of the employees of the Hotel, and control of

hiring and/or firing of the employees of the Hotel". *See* Compl. at ¶¶ 21, 97.

**The EmPact Agreement contains an exclusive dispute resolution procedure**
**and a waiver of employee rights to bring class and/or collective claims**

The EmPact Agreement between Hotel 57 Services, LLC and each of Plaintiffs provides

for a detailed employee complaint resolution procedure titled "Complaint, Arbitration & Review

for Employees" ("C.A.R.E." or the "Arbitration Agreement"), which provides for *both* mandatory

mediation/arbitration of Plaintiffs' claims *and* an explicit waiver of any right each Plaintiff might

have to submit claims as part of a class or collective action in court or at arbitration. *See* Hwang

Decl. at ¶ 4, Exhibit A, pp. 4, 55-62.[2]

The EmPact Agreement requires employees to follow C.A.R.E. for employment-related

claims and the following Plaintiffs' acknowledgements:

> Although I am aware that most problems and complaints can be settled
> promptly by discussion of the facts between my supervisor and me, the
> Hotel and I recognize the need for a system that will ensure that more
> substantial disputes are fully heard and fairly decided.

---

[2] Plaintiffs erroneously allege the EmPact Agreements are between Plaintiffs and Defendant Four
Seasons Hotels and Resorts as opposed to Defendant Hotel 57 Services, LLC. *See* Hwang Decl.
at ¶¶ 3-4, 5, 7, 9.

\* \* \*

> [T]he Four Seasons Hotel New York has developed a procedure to assure
> that problems and complaints are resolved in this fashion.

*See* Hwang Decl. at ¶ 11, Exhibit A, p. 55. The C.A.R.E. procedure requires that an employee

complete certain initial steps, including a discussion with a supervisor, a written complaint to the

Human Resources Officer, and an appeal to the General Manager, before submitting a claim to

mandatory mediation/arbitration:

> **MEDIATION/ARBITRATION**. If I am not satisfied with [prior
> resolution of a written complaint] and the complaint is based on one of the
> following types of claims as defined by law:
> a.     employment discrimination;
> b.     harassment as it related to my employment;
> c.     a wage or hour violation;
> d.     or termination of my employment from the Hotel (including
> "constructive discharge", but not a permanent layoff;
> then I must submit my complaint to be heard by an independent
> mediator/arbitrator unless I have chosen to opt out of the
> mediation/arbitration provisions.

*See* Hwang Decl. at ¶ 12, Exhibit A, p. 55.

**C.A.R.E. requires mediation/arbitration to resolve**
**<u>all disputes relating to termination of Plaintiffs' employment</u>**

The EmPact Agreement provided each Plaintiff with an opportunity to opt out of the

agreement's mediation/arbitration provision by executing an "Opt-Out Verification" form attached

to, and referenced in, the agreement. *See* Hwang Decl. at ¶¶ 6, 8, 10. The EmPact Agreement

made clear that, if an employee did not opt out, he or she was agreeing to arbitrate all disputes

relating to termination of his or her employment. Specifically, the agreement stated:

> Unless I have exercised my right to opt out, use the mediation/arbitration
> procedure described in C.A.R.E. as the **exclusive method of resolving any
> dispute I may have relating to termination of my employment** (including
> constructive discharge) and/or claims of employment discrimination,
> harassment, or wage/hour violations.

4

*See* Hwang Decl. at ¶ 13, Exhibits B (Staley), C (Holmes) and D (Ivey) (emphasis added).

Consistent with the express terms of the EmPact Agreement, each of the Plaintiffs were given an opportunity to opt of C.A.R.E. But none did so. *See* Hwang Decl. at ¶¶ 6, 8, 10, 13, 14, Exhibit A, P. 62, Exhibits B (Staley), C (Holmes) and D (Ivey) (emphasis added). Accordingly, each of the Plaintiffs irrevocably agreed to arbitrate all disputes pertaining to termination of their employment. *Id.*

**The EmPact Agreement contains a class/collective action waiver**

Additionally, by signing, and not opting out of, the EmPact Agreement, Plaintiffs separately agreed to waive their right to bring, or participate in, a class or collective action (in court or arbitration) for claims concerning their employment with the Hotel. The agreement expressly provides:

> Waiver of Right to Submit Claim as Part of Class or Collective Action. To the extent permitted by law, I understand that if I do not opt out of the mediation/arbitration provision of CARE, I waive my right to have my claims submitted as part of a class or collective action in court (whether I initiate a claim or I am invited to join a class or collective action), and I waive my right to have my claims submitted as part of a class arbitration. This waiver shall not affect or diminish the substantive remedies that I may be awarded by an arbitrator.

*See* Hwang Decl. at ¶ 14, Exhibit A, pp. 56-57.

**Plaintiffs' claims relate to their alleged termination of their employment**

Each of Plaintiffs' claims in this lawsuit explicitly allege that Plaintiffs' employment with the Hotel has been terminated.

In support of their first and second causes of action pursuant to federal and New York State Worker Adjustment and Retraining Notification ("WARN") acts, Plaintiffs repeatedly allege that: (a) their employment at the Hotel was terminated (*Id.* at ¶¶ 139, 140, 141, 142, 166, 168(b), 168(c),

178, 179, 181, 182, 184, 186, 187, 188, 189, 190, 194, 195, 196, 197, 198, 200, 201, 203, 204, 205, 206); and (b) Defendants failed to provide Plaintiffs and others similarly situated "advance written notice of their termination of employment" (*Id.* at ¶¶ 4-5, 123-124) or "any notice ... that their employment would be terminated" (*Id.* at ¶ 119).

In support of their fifth cause of action for "Tortious Interference with Contract" and sixth cause of action for "Alter Ego", Plaintiffs allege that they, and others similarly situated, are entitled to "No-Fault Separation Pay" pursuant to the EmPact Agreement. Those claims rely on allegations that Defendants allegedly terminat[ed] the employment of the Plaintiffs and other similarly situated employees" (*Id.* at ¶ 7), that "Plaintiffs and each of the members of the proposed class were each terminated from their employment for no-fault" (*Id.* at ¶¶ 213, 224, 239) and that Plaintiffs are therefore entitled to "No-Fault Separation Pay" under the EmPact Agreement (*Id.* at ¶¶ 214, 225, 240).

**Plaintiffs have declined to comply with their contractual obligations to arbitrate**

Before filing this motion, counsel for the Warner Defendants asked Plaintiffs to withdraw the instant action in favor of binding mediation/arbitration, as required by the EmPact Agreement. Plaintiffs refused that request, thereby requiring the Warner Defendants to proceed with the instant Motion. *See* Lundy Decl. at ¶ 4.

## ARGUMENT

### POINT I

**PLAINTIFFS SHOULD BE COMPELLED TO ARBITRATE
THE CLAIMS ALLEGED IN THE COMPLAINT**

"Federal policy strongly favors the enforcement of arbitration agreements." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 653 (2d Cir.

2004) (*citing* 9 U.S.C. § 2; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).  Because of this strong federal policy, courts should construe arbitration clauses "as broadly as possible."  *Merrick v. UnitedHealth Grp., Inc.*, 127 F. Supp. 3d 138, 146–47 (S.D.N.Y. 2015) (*quoting Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995)).  "[W]hen contracts contain an arbitration clause, 'there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"  *Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. NRG Energy, Inc.*, 561 F. Supp. 3d 322, 328 (S.D.N.Y. 2021) (*quoting AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).

The Federal Arbitration Act ("FAA") provides that "[a] written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable...."  9 U.S.C. § 2.  A party to an arbitration agreement may seek a court order compelling the parties to arbitrate a dispute covered by the agreement.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229–30 (2d Cir. 2016) ("Under the FAA, parties can petition the district court for an order directing that 'arbitration proceed in the manner provided for in such agreement.'")  (*quoting* 9 U.S.C. § 4).  Once invoked, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Bynum v. Maplebear Inc.*, 166 F. Supp. 3d 527, 534 (S.D.N.Y. 2016) (*quoting Green Tree Fin. Cor.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)).

**A.      The EmPact Agreement is valid and enforceable**

"A court faced with a petition to compel arbitration must decide two questions: Whether

the parties agreed to arbitrate, and whether the claims fall within the scope of the arbitration

agreement." *WTA Tour, Inc. v. Super Slam Ltd.*, 339 F. Supp. 3d 390, 399 (S.D.N.Y. 2018) (*citing*

*David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 249 (2d Cir.

1991)).  Here, the answer to both questions are plainly "yes," and the Court therefore should

compel Plaintiffs to arbitrate their claims against the Warner Defendants.

**1.      Plaintiffs concede the EmPact Agreement is a valid contract**

Plaintiffs' allegations irrefutably demonstrate the parties agreed to arbitrate.  Plaintiffs

repeatedly acknowledge the terms and conditions of their employment (and the employment of

each of the members of the proposed class) are subject to the EmPact Agreement, which they

concede to be "valid contracts" (*see* Compl. at ¶¶ 210-211, 221-222, 236-237).

Plaintiffs (like all other Hotel employees) were permitted to spend as much time as they

wanted to review the EmPact Agreement prior to signing it and agreeing to its terms, and each

"had the opportunity to ask questions of, and clarify points contained in C.A.R.E. and in all of the

other provisions of EmPact$^{SM}$."  *See* Hwang Decl. at ¶¶ 6, 8, 10, Exhibit A, p. 62.  Additionally,

each of the Plaintiffs had the opportunity to "opt-out" of C.A.R.E. -- including the arbitration

agreement and class action waiver -- by signing and returning a written C.A.R.E. "Opt-Out

Verification" but none of Plaintiffs did so.  *Id.*  Having signed the EmPact Agreement and not

opted out of C.A.R.E., Plaintiffs clearly and indisputably agreed to arbitrate all claims relating to

termination of their employment. Indeed, through the agreement, each Plaintiff confirmed:

> To the extent permitted by law, I understand that if I do not opt out of the
> mediation/arbitration provisions of C.A.R.E., I waive my right to have my
> case submitted to a court of law and decided by a judge or jury.  In that

> event, I understand that the arbitrator will have the same authority and may
> issue the same relief as a judge or jury would if they were deciding
> the case. *Id.* at ¶ 14, Exhibit A, pp. 56-57;

and promised:

> Unless I have exercised my right to opt out, use the mediation/arbitration
> procedure described in C.A.R.E. as the exclusive method of resolving any
> dispute I may have relating to termination of my employment (including
> constructive discharge) and/or claims of employment discrimination,
> harassment, or wage/hour violations. *Id.* at ¶ 13, Exhibits B (Staley),
> C (Holmes) and D (Ivey).

### 2.     The EmPact Agreement is valid and enforceable under New York law

The EmPact Agreement is a valid and enforceable contract requiring Plaintiffs to arbitrate

the claims asserted in this litigation.  "Under New York law, the starting presumption is that

contracts are legal and enforceable." *Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp.

3d 333, 344 (S.D.N.Y. 2014) (citing *Brum v. City of Niagara Falls*, 145 A.D.2d 928, 535 N.Y.S.2d

856, 857 (4th Dept. 1988)).[3]

Plaintiffs were given the choice whether to agree to, or opt out of, the arbitration agreement.

Each chose to sign, agree and not opt out.  The arbitration agreement specifically provides for

submission to, and administration by, the American Arbitration Association in accordance with its

"National Rules for the Resolution of Employment Disputes", the selection of a neutral arbitrator,

the use of legal counsel and that the Hotel will "pay all of the arbitrator's expenses".  *See* Hwang

Decl. at ¶¶ 4, 6, 8, 10, Exhibit A, p. 55-57, 62.  Additionally, the procedure is bilateral, similarly

requiring "the Hotel…to submit to final and binding arbitration any claims it has against [an

employee] arising from [the employee's] termination …." *Id.*  "When both an employer and its

---

[3] Whether the parties have agreed to arbitrate is a question of state contract law. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012).  Consistent with the allegations in the Complaint, New York contract law applies to the instant dispute. *See* Compl. at ¶¶ 14-19.

9

employees are bound to an agreement to arbitrate, when the terms of the agreement are equally

applicable to both parties, and when the employer bears any unreasonable cost of the arbitration,

the arbitration agreement is not unreasonably favorable to the employer." *Isaacs v. OCE Bus.*

*Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013).   For all these reasons (in addition to

Plaintiffs' express acknowledgment that they are bound by its terms), the EmPact Agreement, and

the arbitration agreement contained therein, is valid and enforceable.[4]

**B.      The EmPact Agreement requires Plaintiffs to submit all claims in this action to the C.A.R.E. claims resolution procedure therein**

The C.A.R.E. dispute resolution procedure in the EmPact Agreement is very broad and

entirely uncomplicated -- it applies to all employee disputes relating to a termination of

employment with the Hotel *unless* an employee affirmatively opts out of C.A.R.E.  As reflected

on the EmPact Agreement's signature page, Plaintiffs each acknowledged the EmPact

Agreement to be "My complete personal contract with Four Seasons Hotel New York" and

specifically acknowledged and agreed to use "the mediation/arbitration procedure described in

C.A.R.E. as *the exclusive method of resolving any dispute I may have relating to termination of*

*employment.*"  *See* Hwang Decl., Exhibit A, at p. 61 (emphasis added).  The instant motion is

---

[4] Based on the above, there exists no basis under New York law upon which enforcement of the terms of the EmPact Agreement could be invalidated as unconscionable. *See Ragone v. Atl. Video*, 595 F.3d 115, 121 (2d Cir. 2010) (a contract is unconscionable when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable [sic] according to its literal terms") (*quoting Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009), *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828, 537 N.Y.S.2d 787, 791 (1988) ("A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made."). The EmPact Agreement neither lacks for procedural consciability (in the "contract formation process and the alleged lack of meaningful choice," (*see Gillman*, 534 N.E.2d at 828, 537 N.Y.S.2d at 791) or substantive conscionability (where the "terms of an agreement are 'grossly unreasonable' by favoring the party seeking to enforce the contract"). *See Molina v. Kaleo, Inc.*, 363 F. Supp. 3d 344, 349–50 (S.D.N.Y. 2019) (*quoting Isaacs*, 968 F. Supp. 2d at 569).

necessary because Plaintiffs have refused to comply with their agreement to arbitrate the claims asserted in this action.

Regardless of Plaintiffs' desire to (and reasons for trying to) avoid arbitration, it is well-established that, where a "contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT & T Techs, supra*, 475 U.S. at 650 (*quoting, Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–583 (1960); *see also id.* at 584–585 ("In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.").

The EmPact Agreement requires each Plaintiff to arbitrate "*any dispute*" he or she has "*relating to termination of [Plaintiff's] employment*". Hwang Decl. at ¶¶ 5, 7, 9, 13, Exhibits B (Staley), C (Holmes) and D (Ivey). The "relating to" language is "the paradigm of a broad clause" which creates "a presumption of arbitrability of claims." *Bulkenstein v. Taptu, Inc.*, No. 14 Civ. 1812, 2014 WL 5089385, *3 (S.D.N.Y. Oct. 9, 2014) *quoting Collins, supra*, 58 F.3d at 20. ("Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2011) (internal quotation omitted)).[5]

---

[5] Additionally, the EmPact Agreement specifically references the American Arbitration Association's "National Rules for the Resolution of Employment Disputes." *See* Hwang Decl. at ¶ 4, Exhibit A, p. 56. "[A] party who signs a contract containing an arbitration clause and incorporating by reference the AAA rules … cannot [later] disown its agreed-to obligation to

When examining the scope of the arbitration clause, the Court must determine whether "the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause, or if, on the other hand, arbitration was designed to play a more limited role in any future dispute." *Louis Dreyfus*, 252 F.3d at 225 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, [the Court] focus[es] on the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d. Cir. 1987).

Here, the Complaint's allegations leave no doubt that Plaintiffs' claims are related to the alleged termination of their employment and therefore subject to arbitration pursuant to C.A.R.E.

First, in support of their alleged claims against the Warner Defendants under federal and New York State WARN Acts (*see* Compl., First and Second Cause of Action, respectively), Plaintiffs expressly and repeatedly allege that: their employment was terminated; that liability exists because Defendants failed to provide Plaintiffs and others similarly situated "advance written notice *of their termination of employment*" (*Id.* at ¶¶ 4-5) and/or "any notice ... *that their employment would be terminated*" (*Id.* at ¶ 119); and that, as a result, Plaintiffs did not receive "advance written notice *of their terminations of employment*" (*Id.* at ¶¶ 123, 124) (emphasis

---

arbitrate *all* disputes, including the question of arbitrability." *Lismore v. Societe Gen. Energy Corp.*, No. 11 Civ 6705, 2012 WL 3577833, *5 (S.D.N.Y. Aug. 17, 2012) (*quoting Contec Corp v. Remote Sols., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005)).

added).  Indeed, Plaintiffs' federal and New York State WARN Act claims in the Complaint are

overflowing with direct allegations that their employment was terminated.[6]

    Second, Plaintiffs' claims against the Warner Defendants for "Tortious Interference With

Contract" and "Alter Ego" (*see* Compl. fifth and sixth cause of action, respectively) are solely

based upon Plaintiffs' allegations of Defendants' failure to pay them "No-Fault Separation Pay"

---

[6] *See e.g.*, Compl. at ¶ 139 (alleging "Defendants were required to provide adequate notice to those
employees who were terminated from their employment"), ¶¶ 140, 141 (alleging no exception to
Defendants "obligation to provide notice of termination of employment"), ¶ 142 (alleging the
"circumstances that led to the termination of employment of [Defendants] New York employees
was not reasonably foreseeable"), ¶ 166 (alleging "Defendants terminated the employment of at
least 200 full-time employees"), ¶ 168(b) (alleging a common question of law and fact as to
"[w]hether Defendants unlawfully terminated the employment of the members of the Class without
cause"), ¶ 178 (alleging "the employment of Plaintiffs and those similarly situated were
retroactively terminated"), ¶ 179 (alleging Defendants were required to give "at least 60 days
advance written notice of the terminations of their employment pursuant to the WARN Act"), ¶
181 (alleging "Defendants terminated the employment of Plaintiffs and at least approximately 200
similarly situated employees"), ¶ 182 (alleging Defendants "effectively terminated the
employment" of Plaintiffs and 200 similarly situated employees), ¶ 184 (alleging Defendants
"caus[ed] the termination of the employment of Plaintiffs and the Class"), ¶ 186 (alleging
Defendants failed to give requisite notice in advance of the "terminations of [Plaintiffs']
employment"), ¶ 187 (alleging "Plaintiffs and the Class members suffered terminations of
employment ... without cause" by Defendants), ¶¶ 188, 189 (alleging Plaintiffs seek payment of
statutory remedies for the 60-day period "following their respective terminations" of employment),
¶ 190 (alleging Plaintiffs "were injured by Defendants' failure to give notice of the intended
terminations of [Plaintiffs' employment"), ¶ 194 (alleging Defendants were required to provide at
least "90 days advance written notice of their terminations"), ¶¶ 195, 196 (alleging "Defendants
terminated Plaintiffs' employment along with at least approximately 200 similarly situated
employees"), ¶ 197 (alleging "Defendants terminated the employment of at least approximately
200 employees working at the Hotel, including Plaintiffs Staley, Holmes, and Ivey"), ¶ 198
(alleging "Defendants effectively terminated the employment of at least approximately 200
individuals ... without any notice of termination of employment"), ¶ 200 (alleging "[t]he
terminations failed to give Plaintiffs and other similarly situated employees of Defendants at least
90 days' advance notice of termination"), ¶ 201 (alleging "the employment of Plaintiffs and those
similarly situated was retroactively terminated"), ¶ 203 (alleging "Plaintiffs and the Class members
suffered terminates of employment ... having their employment terminated by Defendants without
cause on their part"), ¶¶ 204, 205 (alleging Plaintiffs seek payment of statutory remedies "for 60
days following their respective terminations" of employment), ¶ 206 (alleging "Plaintiffs and the
Class members were injured by Defendants' failure to give notice of the intended terminations of
employment").

under the EmPact Agreement -- which payment (based upon the employee's continuous service) would be required only in the event an employee "receive[s] a permanent layoff with no right of recall or [the employee is] terminated for no fault." *See* Hwang Decl., Exhibit A at pp. 57-58 (emphasis added). Accordingly, Plaintiffs allege that Defendants "terminat[ed] the employment of the Plaintiffs and other similarly situated employees" (*Id.* at ¶ 7), that "Plaintiffs and each of the members of the proposed class were each terminated from their employment for no-fault" (*Id.* at ¶¶ 213, 224, 239) and accordingly that Plaintiffs are entitled to "No-Fault Separation Pay" under the EmPact Agreement (*Id.* at ¶¶ 214, 225, 240).[7]

**C.**     **All Warner Defendants are entitled to enforcement of the EmPact Agreement**

Hotel 57 Services, LLC is entitled to enforce the provisions of the EmPact Agreement, including the arbitration agreement provided therein, as a signatory thereto. *See* Hwang Decl., Exhibit A at p. 61.

Likewise, the three other Warner Defendants (Hotel 57, LLC, Ty Warner Hotels & Resorts and H. Ty Warner) are entitled on the basis of equitable estoppel to enforcement of the EmPact Agreement concerning the identical claims asserted by Plaintiffs against them. *See Centocor, Inc. v. The Kennedy Inst. of Rheumatology*, No. 8 Civ. 8824 (DC), 2008 WL 4726036, *3 (S.D.N.Y.

---

[7] A dispute concerning whether a particular event (such as alleged herein) triggers "No-Fault Separation Pay" is covered by the EmPact Agreement's arbitration procedure as it relates to termination of Plaintiffs' employment. The *only* circumstance in which a termination of Plaintiffs' employment would fall outside the scope of the EmPact Agreement's broad dispute resolution procedure is where a Hotel employee actually was paid "No-Fault Separation Pay" -- thereby ending the employee's employment and rendering the employee ineligible to challenge such "permanent lay-off" or "no-fault" termination by mediation or arbitration under the C.A.R.E. claims resolution procedure. *See* Hwang Decl., Exhibit A at pp. 57-58. Indeed, by the express terms of the EmPact Agreement, payment of the "No-Fault Separation Pay" results in a waiver of claims in connection with the employee's separation of employment. By Plaintiffs' admissions, they were not paid "No-Fault Separation Pay." Therefore, any claim related to the termination of Plaintiffs' employment is subject to mandatory arbitration under the EmPact Agreement.

Oct. 29, 2008) (*quoting Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999) (when a non-signatory seeks to compel "a signatory to arbitrate a dispute, the Second Circuit has 'been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'").

Under a theory of estoppel, a non-signatory is entitled to enforce an agreement to arbitrate when:

> (1) the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed, and (2) the relationship among the parties … justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the [non-signatory].

*Meridian Autonomous Inc. v. Coast Autonomous LLC*, 2020 WL 496078, *2 (S.D.N.Y. Jan. 30, 2020) (*quoting Medidata Sols., Inc. v. Veeva Sys. Inc.*, 748 F. App'x 363, 366 (2d Cir. 2018)) (internal quotation marks omitted). The "tight relatedness of the parties, contracts and controversies" between signatories a non-signatory can make "an order of arbitration . . . clearly appropriate." *Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.*, 271 F.3d 403, 406–08 (2d Cir. 2001).

Each of Plaintiffs' claims against the three non-signatory Warner Defendants (Hotel 57, LLC, Ty Warner Hotels & Resorts and H. Ty Warner) are allegedly founded on such parties' respective roles as "joint employers" (along with Defendant FSR) with the signatory Warner Defendant Hotel 57 Services, LLC concerning *the identical event(s)* Plaintiffs allege constituted termination of their employment at the Hotel.  Specifically, Plaintiffs expressly allege all the Warner Defendants (whether or not signatories to the EmPact Agreement) are "joint employers" and purportedly "controlled the operations of the Hotel, through their interrelation of operations;

control over the employment opportunities and the employment characteristics of the employees of the Hotel, and control of hiring and/or firing of the employees of the Hotel". *See* Compl. at ¶¶ 21, 97. Moreover, Plaintiffs explicitly rely on the EmPact Agreement as a gateway to each of their claims against all Defendants for "No-Fault Separation Pay" (*see* Compl., Third, Fourth, Fifth and Sixth Causes of Action), demonstrating the complete interrelatedness of all underlying issues for purposes of equitable estoppel. Accordingly, the Court should permit all the Warner Defendants to enforce the arbitration agreement and compel Plaintiffs to arbitrate all claims against them.[8]

In a recent factually similar case concerning the temporary cessation of operations of the Four Seasons Resort The Biltmore Santa Barbara ("The Biltmore") after the onset of the COVID-19 pandemic,[9] a different set of employee-plaintiffs filed an action in the U.S. District Court for the Central District of California against two of the Warner Defendants (Ty Warner Hotels & Resorts, LLC and H. Ty Warner). *See Holt v. Ty Warner Hotels & Resorts, LLC*, 2022 WL 2304179, *6–7 (C.D. Cal. June 27, 2022). In that case, the employee-plaintiffs of The Biltmore likewise alleged defendants failed to pay them "No-Fault Separation Pay" pursuant to a substantively identical version of the EmPact Agreement herein for The Biltmore employees. Unlike Plaintiffs herein, the *Holt* plaintiffs did not dispute the applicability of the arbitration agreement contained in the C.A.R.E. dispute resolution procedure of their EmPact Agreement (*see id.* at *3 n. 4). But the *Holt* plaintiffs did assert that defendants Ty Warner Hotels & Resorts, LLC

---

[8] Notably, Plaintiffs' allegations against Defendant FSR are similarly intertwined with (and identical to) claims against the Hotel 57 Services, LLC and/or the other Warner Defendants so as to similarly provide that entity with the right to arbitrate the claims against it under the EmPact Agreement.

[9] The temporary cessation of operations at The Biltmore is referenced by Plaintiffs in the Complaint (*see* Compl. ¶¶ 151-152.

and H. Ty Warner were not entitled to enforce the arbitration agreement because they were non-signatories. *Id. at* \*3.   The district court rejected that argument.   As the district court noted, "[a]ll three of [the alleged] claims relied on, referred to, and presumed the existence of the Empact Agreement" (*Id.* at \*5).   That interrelatedness, the district court held, entitled even the non-signatory Warner defendants to enforce the arbitration agreement under the principle of equitable estoppel.   And the district court thus compelled the *Holt* plaintiffs to arbitrate their claims against the non-signatory entities and stayed the action.   The same result is warranted here.

## POINT II

### PLAINTIFFS' CLASS CLAIMS MUST BE DISMISSED

Plaintiffs purport to fashion each of their claims for relief in this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) (*see* Compl. at ¶¶ 161-172, "PRAYER FOR RELIEF" p. 34, subparagraph (a)).   However, Plaintiffs have explicitly waived their right to pursue claims as part of a class or collective action.   Specifically, the EmPact Agreement provides:

> <u>Waiver of Right to Submit Claim as Part of Class or Collective Action.</u>   To the extent permitted by law, I understand that if I do not opt out of the mediation/arbitration provision of CARE, *I waive my right to have my claims submitted as part of a class or collective action in court (whether I initiate a claim or I am invited to join a class or collective action), and I waive my right to have my claims submitted as part of a class arbitration.* This waiver shall not affect or diminish the substantive remedies that I may be awarded by an arbitrator.

*See* Hwang Decl. at ¶ 14, Exhibit A, pp. 56-57 (emphasis added).

Class action waivers are enforceable under both the FAA and New York law.   *See Haymount Urgent Care PC v. GoFund Advance, LLC*, ___ F. Supp. 3d ___, 2022 WL 6994507, \*6–7 (S.D.N.Y. Oct. 12, 2022); *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp.3d 216, 222

n.28 (S.D.N.Y. 2020) (noting that "New York courts . . . have upheld class action waivers in arbitration agreements against challenges that they are unconscionable").

In the Complaint, Plaintiffs repeatedly and unmistakably concede the EmPact Agreement, which they each signed, is a "valid contract[]" (*see* Compl. at ¶¶ 210-211, 221-222, 236-237). Plaintiffs therefore are bound by their explicit agreement to waive any right they might have to bring their claims on a class-wide basis, either as a class representative or participant, whether in this action or in arbitration. Accordingly, the class claims should be dismissed, in their entirety.

## POINT III

### THE COURT SHOULD STAY THIS ACTION
### PENDING COMPLETION OF ARBITRATION OF PLAINTIFFS' CLAIMS

The FAA provides, in relevant part:

> "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement...."

9 U.S.C. § 3. This action should be stayed once the Court is "satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." *Nicosia*, *supra* 834 F.3d at 229, *quoting WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (internal citation omitted).

Here, and as set forth in detail in Point I, *supra*, all Plaintiffs' claims are subject to the C.A.R.E. grievance resolution procedure in the EmPact Agreement, which Plaintiffs each concede to be a "valid contract" (*see* Hwang Decl., Exhibit A at p. 61, Compl. at ¶¶ 210-211, 221-222, 236-237). Accordingly, the Court should stay this action pending the outcome of arbitration of such claims as agreed to by Plaintiffs.

Further, even if the Court were to determine that some, but not all, of Plaintiffs' claims herein are subject to arbitration under the EmPact Agreement, the Court nonetheless should still stay this action, in its entirety, pending arbitration of such claims.   "Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit."  *Genesco, supra*, 815 F.2d at 856 (*citing Moses H. Cone, supra*, 460 U.S. at 20, n. 23).   Moreover, a global stay is appropriate where issues in the case may be resolved by the underlying arbitration.   *See Sierra Rutile Ltd v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991).

Arbitration under the EmPact Agreement will conclusively determine Plaintiffs' employment status, and thereby Plaintiffs' claims predicated on the alleged termination of their employment -- more specifically, whether the Warner Defendants' actions triggered alleged liability under the EmPact Agreement and federal and New York State WARN acts.   Permitting some claims to proceed in this action while others move forward at arbitration, will, at best, cause costly and duplicative proceedings, and at worst, cause inconsistent results.   Conversely, staying the entire action would "'promote judicial economy, avoidance of confusion and possible inconsistent results and would not work undue hardship or prejudice' against the parties."   *General Media, Inc. v. Shooker*, No. 97 Civ. 510 (DAB), 1998 WL 401530, *11 (S.D.N.Y. July 16, 1998) (*quoting Acquaire v. Canada Dry Bottling*, 906 F. Supp. 819, 838 (S.D.N.Y. 1995)).

Accordingly, the Warner Defendants respectfully request the Court stay this action, in its entirety, pending the outcome of arbitration under the EmPact Agreement.

## CONCLUSION

For all the reasons set forth herein, the Warner Defendants respectfully request the Court grant their Motion, in its entirety, and compel Plaintiffs to arbitrate the claims in the Complaint on an individual basis respectively, dismiss class claims, and stay this action pending arbitration.

Dated: New York, New York
        November 15, 2022

                        **FREEBORN & PETERS LLP**

                        By:*/s/ Marc B. Zimmerman*
                            Marc B. Zimmerman
                            Kathryn T. Lundy
                        1155 Avenue of the Americas, 26th Floor
                        New York, NY 10036
                        (212) 218-8760

                        *Attorneys for Defendants Hotel 57 Services, LLC,*
                        *Hotel 57, LLC, Ty Warner Hotels & Resorts, LLC*
                        *and H. Ty Warner*

6125781v2/35022-0001