AUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SELENA STALEY, VIVIAN HOLMES, and
OLIVE IVEY, on behalf of themselves and
all others similarly situated,

                    Plaintiff,

                 -- against --

FOUR SEASONS HOTELS AND RESORTS,
HOTEL 57 SERVICES LLC,
HOTEL 57 LLC, TY WARNER HOTELS &
RESORTS LLC, and H. TY WARNER,

                 Defendants,

Civil Action No.
22-CV-6781 (JSR)

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

**Risman & Risman, P.C.**
**299 Broadway, 17th Floor**
**New York, New York 10007**
**(212) 233-6400**

**BRUSTEIN LAW PLLC**
**299 Broadway, 17th Floor**
**New York, New York 10007**
**(212) 233-3900**



EXHIBIT
9

1

TABLE OF CONTENTS

*TABLE OF AUTHORITIES* ................................................................................................. *3*

*PRELIMINARY STATEMENT* ........................................................................................ *4*

*STATEMENT OF FACTS* ................................................................................................. *6*

*ARGUMENT* ................................................................................................................... *10*

   I.     STANDARD ON MOTION TO COMPEL ARBITRATION ........................................ 10

   II.   CLAIMS RELATED TO NO-FAULT TERMINATIONS ARE EXCLUDED FROM MANDATORY ARBITRATION AND ARE INELIGIBLE FOR ARBITRATION .............. 11

   III.  THE CLAIMS IN THIS ACTION ARE RELATED TO PLAINTIFFS' PERMANENT LAYOFFS AND NO-FAULT TERMINATIONS .................................................... 14

       A.  No-Fault Separation Pay Claims ....................................................... 15

       B.  WARN Act Claims Are Related to No-Fault Termination and/or Permanent Layoffs .. 17

   IV.  PLAINTIFFS NEVER WAIVED THEIR RIGHT TO BRING OR PARTICIPATE IN CLASS CLAIMS RELATED TO THEIR PERMANENT LAYOFFS OR NO-FAULT TERMINATIONS ............................................................................................ 17

   V. DEFENDANTS EQUITABLE ESTOPPEL CLAIM IS PREMATURE BECAUSE THE COURT HAS NOT COMPELLED ARBITRATION ............................................... 19

*CONCLUSION* ............................................................................................................... 22

## TABLE OF AUTHORITIES

### CASES

*Boucher v Alliance Title Company,* 25 Cal. Rptr. 3d 440, 447 [2d Dist. Court of Appeal, Div. 5, California]..................................................................................................................................20

*CBF Industria de Gusa S/A v AMCI Holdings, Inc.,* 850 F3d 58, 78 [2d Cir 2017]....................20

*Dreyfuss v. Etelecare Glob. Sols.-U.S. Inc.,* 349 F. App'x 551, 555 [2d Cir. 2009] ....................13

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F2d 840, 846 [2d. Cir. 1987] ...............................14

*Hines v. Overstock.com, Inc.,* 668 F Supp 2d 362, 366 [EDNY. 2009], *aff'd,* 380 Fed. Appx. 22 [2d Cir. 2010] ...........................................................................................................................10

*Holt v Ty Warner Hotels & Resorts, LLC,* 2022 WL 2304179 fn 7 [US Dist. Court, C.D. California, 2022]....................................................................................................................20

*Johnson v. Parts Auth., LLC,* No. 16-CV-6852 (DLI) (RML), 2017 WL 9511079, at *3 [EDNY. Aug. 17, 2017] ......................................................................................................................10

*McCarthy v. Am. Int'l Grp., Inc.,* 283 F.3d 121, 124 [2d Cir. 2002].............................................13

*Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 229 [2d Cir. 2016] ...........................................10, 15

*PenneCom B.V. v Merrill Lynch & Co., Inc.,* 372 F.3d 488 [2d Cir 2004]....................................19

*Pictet Funds [Eur.] S.A. v. Emerging Managers Grp., L.P.,* No. 14-CV-6854 SAS, 2014 WL 6766011, at *8 [SDNY Dec. 1, 2014] ..................................................................................14

*Red Mountain Medical Holdings v Brill,* 563 F.Supp.3d 159, fn 15 [S.D.N.Y 2021] .................20

*Revson v. Cinque & Cinque, P.C.,* 221 F.3d 59, 67 [2d Cir.2000] ...............................................13

*Schnabel v. Trilegiant Corp.,* 697 F3d 110, 119 [2d Cir. 2012] .................................................14

*U.S. v D'Amico,* 734. F.Supp.2d 321, 352 [S.D.N.Y. 2010] ........................................................20

*United Paperworkers Int'l Union & its local 340 v Specialty Paperboard, Inc.,* 999 F.2d 51, 52 [2d Cir 1993] ............................................................................................................................17

*Westchester Resco Co., L.P. v. New England Reins. Corp.,* 818 F.2d 2, 3 [2d Cir.1987] .....13, 16

### STATUTES

29 USC 21010[a][6][c]............................................................................................................4, 9, 17

N.Y. Comp. Codes R. & Regs. tit. 12, § 921 .........................................................................4, 9, 17

## PRELIMINARY STATEMENT

Plaintiffs Selena Staley, Vivian Holmes, and Olive Ivey (hereinafter, collectively referred to as "Plaintiffs") brought this action on behalf of themselves and those similarly situated, who once worked at the Four Seasons Hotel, located at 57 East 57th Street, New York, New York, known as the "Four Seasons Hotel New York" and/or "Four Seasons New York" ("The Hotel") against the Defendants, for Defendants': (1) failure to provide notice prior to permanently laying off the Plaintiffs alleging violations of the Federal Worker Adjustment and Retraining Notification ("WARN") Act and the New York State Worker Adjustment and Retraining Notification ("NY WARN") Act (collectively referred to as "WARN Acts"); and (2) failure to pay No-Fault Separation Pay, alleging, *inter alia*, breach of contract, breach of implied covenant of good faith and fair dealing, tortious interference with a contract related to Defendants' failure to pay them their No-Fault Separation Pay, and Alter Ego against Defendant H. Ty Warner.

Defendants Hotel 57 Services LLC, Hotel 57 LLC, TY Warner Hotels & Resorts LLC., and H. Ty Warner (hereinafter referred to collectively as "Warner Defendants") and Defendant Four Seasons Hotel and Resorts ("FSR"), (hereinafter, collectively referred to as "Defendants"), move to compel arbitration, to dismiss the class claims, and to stay this matter.[1]

---

[1] While Defendants have filed two separate motions, Warner Defendants' Motion, dated November 15, 2022, and Defendant FSR's Motion, dated November 28, 2022, in the interest of judicial economy, Plaintiffs were granted permission by the Court to file one opposition to both motions as the arguments raised by Defendant FSR in its motion is duplicative of the arguments raised in the Warner Defendants' motion.

First, Defendants, in support of their motion, rely on the EmPact Agreement that they claim that Plaintiffs signed.[2]  However, the EmPact Agreement specifically excluded from arbitration claims related to No-Fault termination and permanent layoffs, like the ones brought in this action. Moreover, in their respective motions, Defendants do not dispute Plaintiffs' allegations in the Complaint that their employment ended because of either a "permanent layoff" or a No-Fault termination.

Rather than a mandatory arbitration agreement, the EmPact Agreement has a mandatory *non-arbitration clause* for claims related to permanent lay-offs or 'no-fault' termination.  As the Court has received no evidence contradicting Plaintiffs' assertions that their furloughs of more

---

[2] While both Defendants' motions have cited to the "EmPact Agreement," attached to the Declaration of Cathy Hwang, dated November 15, 2022 ("Hwang Decl.") as Exhibit A ("Exhibit A" or "'EmPact Agreement'"), that document is not a true and accurate copy of the EmPact Agreement signed by Plaintiffs.  Notably, Exhibit A is 62 pages long, but the true and accurate copy of the EmPact Agreement signed by Plaintiffs is only 61 pages long.  *See* Declaration of Selena Staley, dated December 5, 2022, annexed to the Declaration of Evan Brustein, dated December 5, 2022 ("Brustein Decl."), as Exhibit B; *see also* Declaration Vivian Holmes, dated December 5, 2022, annexed to the Brustein Decl., as Exhibit C; *see also* Declaration of Olive Ivey, dated December 5, 2022, annexed to the Brustein Decl., as Exhibit D.  Additionally, the EmPact Agreement Plaintiffs signed had a Welcome Letter on Page 6 signed by Mehdi Eftekari, the Four Seasons Hotel New York General Manager in February 2018, not his successor, Rudy Tauscher.  *Id.*

The Court need not rely only on Plaintiffs' Declarations to determine that Exhibit A of the Hwang Decl. is not a true and accurate copy of the EmPact Agreement signed by Plaintiffs.  Despite submitting a Declaration under the penalty of perjury that the "EmPact Agreement" attached to the Hwang Declaration as Exhibit A was a "true and accurate copy of the EmPact Agreement, Last Revised February 2018," Exhibit A was clearly not effective in February 2018.  *See* Hwang Decl., at ¶ 3.  Exhibit A references the "New York City Earned Safe and Sick Time Act," which did not become law until May 5, 2018.  *See* Exhibit A, at p. 39;  *see* https://www.jacksonlewis.com/publication/safe-time-amendments-new-york-city-paid-sick-leave-effective-may-5-2018.  The EmPact Agreement signed by Plaintiffs references the "New York City Earned Sick Time Act," which was still in effect when each of the Plaintiffs signed their acknowledgements of the February 2018 revision to the EmPact Agreement.  *See* Hwang Declaration, at Exhibits B, C, and D.  (Each of the Plaintiffs signed the revision acknowledgement prior to May 5, 2018); *see* https://www.littler.com/revised-new-york-city-earned-sick-time-act-effective-april-1-2014.

than two and a half years were "permanent layoffs" and no-fault terminations, the Court should find that the claims are related to their permanent layoffs and/or their no-fault terminations, and thus are excluded from arbitration.

Further, the Class Action Waiver that Defendants reference is not a standalone provision in the EmPact Agreement, but rather refers to those claims proceeding to arbitration under the C.A.R.E. section of the EmPact Agreement, that specifically exclude the claims asserted in the instant Complaint.

Accordingly, and for all the reasons set forth below, the Plaintiffs respectfully request that this Court deny Defendants' Motions in their entirety.

## STATEMENT OF FACTS

From March 2020, Plaintiffs and those similarly situated who once worked at the Hotel were placed on furlough for an indefinite period. *See* Complaint, annexed to the Declaration of Kathryn Lundy, dated November 15, 2022 ("Lundy Decl."), as Exhibit A ("Compl."), at ¶ 2.  To date, none of the named Plaintiffs and those similarly situated have been brought back to work at the Hotel. *Id.,* at ¶¶ 120 - 121.

Plaintiffs entered into the EmPact Agreement with the Hotel.  *See* EmPact Agreement, annexed to Brustein Decl., as Exhibit A ("EmPact Agreement"). The EmPact Agreement constitutes a valid contract between Plaintiffs and Defendants, and, notably, contains a mandatory arbitration provision for only four categories of claims:

> **MEDIATION/ARBITRATION**. If I am not satisfied with [prior resolution of a written complaint] and the complaint is based on one of the following types of claims as defined by law:
>
> a.    employment discrimination;
> b.    harassment as it related to my employment;
> c.    a wage or hour violation;
> d.    or termination of my employment from the Hotel (including "constructive discharge", **but not a permanent layoff;** then I must submit my complaint to be heard by an independent mediator/arbitrator unless I have chosen to opt out of the mediation/arbitration provisions.

See EmPact Agreement, at p. 54 (*emphasis added*).

Within the mandatory arbitration section of the EmPact Agreement are 14 subsections, that detail the terms of the arbitration agreement: (1) Mediation/Arbitration Demand; (2) What is Mediation/Arbitration; (3) Selection of the Mediator/Arbitrator; (4) Arbitration Will Be Final and Binding; (5) Use of Legal Counsel; (6) Arbitration Fees and Expenses; (7) Award of Costs; (8) Waiver of Right to Go to Court; (9) Waiver of Right to Submit Claim as Part of Class or Collective Action; (10) My Part of the Arbitration Fee; (11) Effect of Filing with EEOC or Other Governmental Agency; (12) Application of Discrimination Laws; (13) Consideration; and (14) Discovery and Judicial Review. See EmPact, at pp. 54 – 56. None of these subsections appear in the EmPact Agreement's Table of Contents, but rather in the section of the EmPact Agreement relating to C.A.R.E. See Empact Agreement, at pp. 3 – 4.

The section of the EmPact Agreement discussing the C.A.R.E. claims[3], define which claims are and are not covered by C.A.R.E. The Agreement further states in referring to the C.A.R.E. claims: "To the extent permitted by law, I understand that if I do not opt out **of the**

---

[3] According to the EmPact Agreement, C.A.R.E. stands for Complaint, Arbitration & Review for Employees. *See* EmPact, at p. 4.

**mediation/arbitration provisions of C.A.R.E.**, I waive my right to have my claims submitted as part of a class or collective action in court . . ." *See* EmPact Agreement, at p. 56.

In addition to the mandatory arbitration section in the EmPact Agreement, the Table of Contents also lists a separate and distinct section titled "No-Fault Separation Pay." *See* Empact Agreement, at p. 4. The No-Fault section states, "If I receive a permanent layoff with no right of recall or I am terminated for no fault, my termination will be considered 'no-fault.'" **It is undisputed** that the EmPact Agreement states, **I understand that I *may not seek mediation or arbitration* of a permanent layoff or 'no-fault' termination under Step 6 of C.A.R.E.** *See* EmPact Agreement, at p. 54 (*emphasis added*). This provision in the EmPact Agreement specifically prohibits Plaintiffs from seeking arbitration for no-fault terminations.

The EmPact Agreement also states in another section of the Agreement "[h]owever, in the event of a permanent layoff or 'no-fault' termination, I will be eligible for separation pay in accordance with the 'No-Fault Separation Pay Schedule' in effect at the time of my separation unless I have opted out…," which is what Plaintiffs and those similarly situated have not been paid, but are demanding in the case herein. *See* EmPact Agreement, at p. 56 (*emphasis added*).

Plaintiff Staley worked at the Hotel for approximately 12 years, and Plaintiffs Holmes and Ivey each worked for the Hotel for approximately 24 years. *See* Compl., at ¶¶ 17 – 19. On or about March 2020, Defendants placed Plaintiffs and those similarly situated on unpaid furlough. *See* Compl., at ¶¶ 105 -107. Unfortunately, Defendants placed Plaintiffs on an indefinite furlough to avoid their legal obligations and have not reopened the Hotel to avoid Defendants' contractual obligations to either pay the salaries of Plaintiffs and other similarly situated employees, or pay their No-Fault Separation Pay. *See* Compl., at ¶¶ 11, 157. First, Defendants told Plaintiffs that

8

the Hotel could not open because of COVID. *See* Compl., at ¶ 156. Then, Defendants blamed consumer demand and financial viability for not reopening. *See* Compl., at ¶ 156. Finally, Defendants told Plaintiffs that the Hotel would not reopen because the Hotel had to undergo substantial renovations. *See* Compl., at ¶ 156.

On August 9, 2022, Plaintiffs brought this action, alleging that their furloughs of more than six months amounted to "permanent layoffs," and, therefore, entitled them to both proper WARN Notice payments (under both the WARN Act and New York WARN Act) and No-Fault Separation Pay under their EmPact Agreement. *See* Compl., at ¶¶ 188 – 191, 204 – 207, 215, 218, 233, 250.

Both the Federal WARN Act and the New York WARN Act define layoffs extending more than six months as a "permanent layoff" or job termination. Despite terminating the employment of the Plaintiffs and other similarly situated employees in New York, and making their layoffs permanent, Defendants have not paid Plaintiffs the No-Fault Separation Pay owed to them as per the EmPact Agreement. *See* Compl., ¶ 7. While Plaintiffs' layoffs may have initially been referred to as "temporary," once the layoffs exceeded six months, the layoffs became "permanent layoffs," and required compliance with the WARN Acts. *See* Compl., ¶¶ 116 - 117.[4]  The Hotel had previously claimed that it would reopen once pandemic conditions improved, and demand increased. *See* Compl., ¶¶ 130 - 132. However, more than two and half years later, Plaintiffs and those similarly situated have not been brought back to work, and the Hotel remains closed, with no notice from the Defendants as to when and if the Hotel will ever reopen. *See* Compl. at ¶ 196.

---

[4] Of note, the actual WARN Notices are missing from both Defendants' Moving Papers and supporting documents.

## ARGUMENT

The Defendants admit that the EmPact Agreement controls.  However, even though it provides a clear and objective exclusion from arbitration, Defendants, in blatant disregard of the EmPact Agreement, move to compel arbitration, even though Plaintiffs' asserted claims in the Complaint that are explicitly exempt from mandatory arbitration.

## I.   STANDARD ON MOTION TO COMPEL ARBITRATION

"In deciding motions to compel, courts apply a standard like that applicable for a motion for summary judgment." *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 [2d Cir. 2016]). The summary judgment standard requires a court to consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with … affidavits.  Courts must draw all reasonable inferences in favor of the non-moving party…. If there is an issue of fact as to the making of arbitration agreement for arbitration, then a trial is necessary." *Id.*

Further, "a court must begin by answering two questions: (1) whether the parties agreed to arbitrate, and if so, (2) whether the scope of that agreement encompasses the asserted claims." *See Hines v. Overstock.com, Inc.,* 668 F Supp 2d 362, 366 (EDNY. 2009), *aff'd,* 380 Fed. Appx. 22 [2d Cir. 2010] [internal citations and quotation marks omitted].  "The party seeking arbitration has the burden of establishing an agreement to arbitrate. *See Johnson v. Parts Auth., LLC,* No. 16-CV-6852 (DLI) (RML), 2017 WL 9511079, at *3 [EDNY. Aug. 17, 2017] *report and recommendation adopted as modified,* No. 16-CV-6852 (DLI) (RML), 2017 WL 4402463 [EDNY. Sept. 30, 2017] [internal citations and quotation marks omitted])."  Here, it is apparent that an agreement to arbitrate does not apply to those claims asserted in Plaintiffs' Complaint.

II.    **CLAIMS RELATED TO NO-FAULT TERMINATIONS ARE EXCLUDED FROM MANDATORY ARBITRATION AND ARE INELIGIBLE FOR ARBITRATION**

While Defendants seek the enforcement of the EmPact Agreement, doing so requires that the Court deny Defendants' motion to compel arbitration.  The EmPact Agreement bars arbitration for the types of claims brought by Plaintiffs in this action.  Defendants attempt to obfuscate this issue by ignoring the sections of the EmPact Agreement that explicitly state that the Plaintiffs and those similarly situated "may not seek mediation or arbitration of a permanent layoff or 'no-fault' termination under Step 6 of C.A.R.E." *See generally* Memorandum of Law in Support of the Warner Defendants' Motion to Compel Arbitration, Dismiss Class Claims and Stay Action, dated November 15, 2022 (hereinafter "Warner Def. Memo"); *See generally* Memorandum of Law in Support of Defendant FSR International Hotels Inc.'s Motion to Compel Arbitration, Dismiss Class Claims, and Stay Action (hereinafter "Def FSR Memo"); *See* Empact Agreement, at p. 56. While the Warner Defendants at the very least quote the language from C.A.R.E. in their statement of facts section that arbitration is mandated for claims related to "termination of my employment from the Hotel (including 'constructive discharge,' but not a permanent layoff;" the Warner Defendants fail to acknowledge that exception to mandatory arbitration in their legal argument. *See* Warner Def. Memo, at pp. 4, 6-19.

The Defendants have provided no basis for the Court to conclude that language on the unsigned signature pages in the EmPact Agreement negates the terms of the Agreement that specifically exclude those claims asserted in the instant Complaint from proceeding to arbitration. Even the signature page refers back to the rest of the Agreement, and reiterates that a permanent layoff is not subject to C.A.R.E.  *See* EmPact Agreement at p. 56.[5]

---

[5] The EmPact Agreement is not just the signature page, but rather the entire 61 pages of the EmPact Agreement, stating "the conditions contained in EmPact may be modified in writing from time to

Of note, Defendants appear to take the word "termination" out of context, claiming that any termination of employment mandates that all claims proceed to arbitration.  That is patently false.  Neither of Defendants' Motions provide a plausible explanation for why the Court should disregard the EmPact Agreement's clear statement that the Plaintiffs "may not seek mediation or arbitration of a permanent layoff or 'no-fault' **TERMINATION** under Step 6 of C.A.R.E." *See* Empact Agreement, at p. 56 (*Emphasis added*).  Further, Defendants' Reply papers will undoubtedly fail to address the specific exclusion of these claims.

The carve out of claims related to 'no-fault' terminations and permanent layoffs is not an accidental oversight or a mistaken one-off.  The carve out is clear, unambiguous, and repeated in the EmPact Agreement in multiple sections and on multiple pages.  *See* Empact Agreement, at pp. 54, 56, 57).

The C.A.R.E. section of the EmPact Agreement specifically excludes claims related to "permanent layoffs" from arbitration.  Then, under the No-Fault Separation Pay provision, the exclusion is reinforced.  Plaintiffs "may not seek mediation or arbitration of a permanent layoff or 'no-fault' termination under Step 6 of C.A.R.E." *See* EmPact Agreement, at p. 56.

Contrary to Defendants' assertions, the EmPact Agreement does not mandate that "if an employee did not opt out, he or she was agreeing to arbitrate all disputes relating to termination of his or her employment," or that "[t]he *only* circumstance in which a termination of Plaintiffs' employment would fall outside the scope of the EmPact Agreement's broad dispute resolution procedure is where a Hotel employee actually was paid "No-Fault Separation Pay." *See* Warner Def Memo at p. 7, fn. 7, p. 14 *citing to* Hwang Decl., Exhibit A at pp. 57 - 58 and Def. FSR Memo

---

time by the Four Seasons Hotel New York as contemplated on page 2 of this contract" (*See* Empact Agreement, at pp. 2, 60).

at p. 5.  These are complete misrepresentations of the EmPact Agreement that, on its face, excludes various claims from mandatory arbitration.

The EmPact Agreement clearly states that an employment termination resulting from permanent layoff is not subject to arbitration under C.A.R.E. and an employee "may not seek mediation or arbitration of a permanent lay-off or "no-fault" termination under Step 6 of C.A.R.E." *See* EmPact Agreement at 54 and 56.  To avoid any misinterpretation or confusion about claims related to permanent layoff, the EmPact Agreement also explicitly states that "I may not seek mediation or arbitration of a permanent layoff or 'no-fault' termination."  *See* EmPact Agreement, at p. 56.  As such, the EmPact Agreement clearly prohibits certain claims, like the very ones alleged in the instant Complaint, from being arbitrated.

In addition, "New York follows the well-established *contra proferentem* principle which requires that "equivocal contract provisions are generally to be construed against the drafter." *See Revson v. Cinque & Cinque, P.C.,* 221 F.3d 59, 67 [2d Cir.2000]; *see also, accord Westchester Resco Co., L.P. v. New England Reins. Corp.,* 818 F.2d 2, 3 [2d Cir.1987] [per curiam];" *McCarthy v. Am. Int'l Grp., Inc.,* 283 F.3d 121, 124 [2d Cir. 2002].  It cannot be disputed that Defendants drafted the agreement. "Moreover, under New York law a party seeking to enforce a contract must prove not only the existence of the contract, but also its terms."  *See Dreyfuss v. Etelecare Glob. Sols.-U.S. Inc.,* 349 F. App'x 551, 555 [2d Cir. 2009]. A reasonable, and objective, interpretation of the EmPact Agreement would find that those claims alleged in the Complaint are excluded from arbitration.

"New York courts like the Supreme Court and Second Circuit in the FAA context follow " 'the rule ... that unless the agreement to arbitrate expressly and unequivocally encompasses the subject matter of the particular dispute, a party cannot be compelled to forego the right to seek

judicial relief and instead submit to arbitration." *See Pictet Funds [Eur.] S.A. v. Emerging Managers Grp., L.P.*, No. 14-CV-6854 SAS, 2014 WL 6766011, at *8 [SDNY Dec. 1, 2014].  As the burden of proof is on the party seeking arbitration, Defendants have not satisfied their burden to establish that Plaintiffs agreed to arbitrate those claims alleged in the Complaint.

The Warner Defendants concede in their motion that whether the parties have agreed to arbitrate is a question of state contract law.  *See Schnabel v. Trilegiant Corp.*, 697 F3d 110, 119 [2d Cir. 2012]; *see* Warner Def. Memo, at fn. 3, p. 9.  As such, consistent with the allegations in the Complaint, New York contract law applies to the instant dispute .  While Defendants claim that "The EmPact Agreement requires each Plaintiff to arbitrate *"any dispute"* he or she has *"relating to termination of [Plaintiff's] employment,"* Defendants refuse to address the multiple portions of the EmPact Agreement that prohibit mediation/arbitration for permanent layoffs and No-fault terminations – the very claims Defendants are seeking to compel the parties to arbitrate.  *See* Hwang Decl. at ¶¶ 5, 7, 9, 13; *See* EmPact Agreement at p. 54, 56.

### III.   THE CLAIMS IN THIS ACTION ARE RELATED TO PLAINTIFFS' PERMANENT LAYOFFS AND NO-FAULT TERMINATIONS

"In determining whether a particular claim falls within the scope of the parties' arbitration agreement, [the Court] focus[es] on the factual allegations in the complaint rather than the legal causes of action asserted." *See Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F2d 840, 846 [2d Cir. 1987].  Here, the Plaintiffs' allegations are related to their alleged terminations of employment, however, those terminations are specifically "permanent layoffs" that are excluded under the EmPact Agreement's mediation/arbitration provision pursuant to C.A.R.E, and separation pay as a result of a "no-fault" termination.

As the EmPact Agreement clearly excludes claims related to "permanent layoffs" and "no-fault terminations," the question for the Court is if the claims brought in this action fall in either of those categories.  This is an issue of fact under the motion to compel, which has a similar standard like that of a summary judgment motion.  *See Nicosia v. Amazon.com, Inc.*, 834 F3d 220, 229 [2d Cir. 2016].  If any issue of fact exists, the court must deny Defendants' Motion to Compel in its entirety.


## A.  <u>NO-FAULT SEPERATION PAY CLAIMS</u>

Plaintiffs have alleged three claims related to Defendants' failure and/or refusal to pay Plaintiffs and those similarly situated No-Fault Separation Pay: (1) breach of contract; (2) tortious interference with a contract; and (3) alter-ego. The No-Fault Separation Pay section of the EmPact Agreement states:

> If I receive a permanent layoff with no right of recall or I am terminated for no fault, my termination will be considered 'no-fault.' I understand that I may not seek mediation or arbitration of a permanent lay-off or 'no fault' termination under Step 6 of C.A.R.E. However, in the event of a permanent layoff or 'no-fault' termination, I will be eligible for separation pay in accordance with the 'No-Fault Separation Pay Schedule' in effect at the time of my separation unless I have opted out by signing the 'Opt-Out Verification' attached to my EmPact.  By accepting No-Fault Separation Pay, I am acknowledging that my termination was 'no-fault' and that I am not entitled to challenge my termination through the mediation/arbitration provisions of C.A.R.E.

See EmPact Agreement, at p. 56.

While Defendants can argue about whether Plaintiffs and those similarly situated are entitled to No-Fault Separation Pay, there can be no dispute that the EmPact Agreement bars claims related to No-Fault Separation Pay from arbitration.

The language in this section clearly precludes arbitration of the claims alleged in the

15

Complaint. Ironically, despite Defendants' false claim that the express terms of the EmPact Agreement support their position, they tellingly choose to ignore it. The Warner Defendants cite to the Hwang Declaration's inaccurate interpretation of the above section in a footnote. *See* Warner Defendants' Motion, pg. 14 at FN7.[6] A reading of the No-Fault Separation Pay section of the EmPact Agreement alongside Defendants' footnote reveals the absurdity of their argument.

The EmPact Agreement is clear that the No-Fault Separation Pay section does not condition the exclusion of arbitration on the acceptance of No-Fault Separation Pay. It plainly states: "I may not seek mediation or arbitration of a permanent lay-off or 'no fault' termination under Step 6 of C.A.R.E." *See* EmPact Agreement, at p. 56. This sentence does not condition the exclusion of arbitration on the acceptance of No-Fault Separation Pay. Even the reference to No-Fault Separation Pay does not claim that the payment is what constitutes a waiver. "By accepting No-Fault Separation Pay, I am acknowledging that my termination was 'no-fault' and that I am not entitled to challenge my termination through the mediation/arbitration provisions of C.A.R.E." *See* EmPact Agreement, at p. 57. Rather, the acceptance of the payment acknowledges that the termination was "no-fault." *See* EmPact Agreement, at pp. 56 - 57. By accepting that the termination was no-fault, the individual is not waiving arbitration, but acknowledging that their claims would be related to a no-fault termination, which is exempt from arbitration.

As Defendants cannot dispute that the claims for breach of contract, tortious interference with a contract, and alter-ego, are related to the No-Fault Separation Pay section of the EmPact

---

[6] The Warner Defendants' footnote incorrectly claims that "the only circumstance in which a termination of Plaintiffs' employment would fall outside the scope of the EmPact Agreement's broad dispute resolution procedure is where a Hotel employee actually was paid 'No-Fault Separation Pay' – thereby ending the employee's employment and rendering the employee ineligible to challenge such 'permanent lay-off' or 'no-fault' termination by mediation or arbitration under the C.A.R.E. claims resolution procedure." *See* Warner Def. Motion, at FN7, p. 14.

Agreement, there is no basis to compel the arbitration of these claims. In fact, the EmPact Agreement requires that the Court find these claims cannot proceed to arbitration, but rather must proceed in Court.

### B. WARN ACT CLAIMS ARE RELATED TO NO-FAULT TERMINATION AND/OR PERMANENT LAYOFFS

The federal WARN Act and the New York WARN Act define furloughs of six months or more as a permanent layoff. *See United Paperworkers Int'l Union & its local 340 v Specialty Paperboard, Inc.,* 999 F.2d 51, 52 [2d Cir 1993] [a "lay off" must exceed six months in duration, and equals an "employment loss" under a the WARN Act]; *see also,* 29 USC 21010[a][6][c] [the term "employment loss" means a reduction in hours of work of more than 50 percent during each month of any 6-month period], under both the WARN Act and New York's WARN Act. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 921. As these claims relate to no-fault terminations and/or permanent layoffs, they also are excluded from arbitration.

Accordingly, the Court should deny Defendants' motion to compel arbitration for these claims as well. There is no basis to compel arbitration for any of the claims alleged in the Complaint.

### IV. PLAINTIFFS NEVER WAIVED THEIR RIGHT TO BRING OR PARTICIPATE IN CLASS CLAIMS RELATED TO THEIR PERMANENT LAYOFFS OR NO-FAULT TERMINATIONS

The EmPact Agreement's class/collective action waiver is only for those claims covered by C.A.R.E. Significantly, the class waiver is not a standalone clause like No-Fault Separation Pay, but a subsection of the C.A.R.E. arbitration agreement. Each one of the subsections in the

arbitration agreement explains the rules and procedures for arbitration. The subsection directly before the class claim waiver is the waiver of the right to go to Court, related only to those claims mandated to go to arbitration as per the C.A.R.E. provision of the EmPact Agreement. That section states: "To the extent permitted by law, I understand that if I do not opt out of the mediation/arbitration provisions of C.A.R.E., I waive my right to have my case submitted to a court of law and decided by a judge or jury." Even though the Court waiver subsection does not reiterate the four categories of claims covered by the arbitration agreement, it is clearly referencing those specific claims. As this subsection is explaining the arbitration process, it would be redundant to list the four categories of claims covered by the arbitration agreement set out in the previous page. Further, the following section, No-Fault Separation Pay also makes clear that claims for permanent lay-off or "no-fault" termination cannot be arbitrated under Step 6 of C.A.R.E. Therefore, the waiver of the right to go to Court subsection is only referencing those claims mandated to proceed to arbitration under C.A.R.E. The very next subsection, Waiver of Right to Submit Claim as Part of Class or Collective Action mirrors the language of the court waiver subsection. The subsection states:

> To the extent permitted by law, I understand that if I do not opt out of the mediation/arbitration provision of CARE, I waive my right to have my claims submitted as part of a class or collective action in court (whether I initiate a claim or I am invited to join a class or collective action), and I waive my right to have my claims submitted as part of a class arbitration. This waiver shall not affect or diminish the substantive remedies that I may be awarded by an arbitrator.

*See* EmPact Agreement, at pp. 56 – 57.

This waiver not only reflects the language in the Court access waiver, but specifically references an arbitrator. Indeed, a logical reading of this clause shows that by agreeing to arbitrate those claims that mandate arbitration under C.A.R.E., the individual also waives their right to

participate in a class action for those claims.

Defendants' interpretation of the class waiver cannot be accurate, and Defendants cannot possibly suggest that hundreds of the Hotel's terminated employees would be required to proceed as Plaintiffs individually in Court.  If the Court found that the class action waiver applied to Plaintiffs' non-arbitrable claims, the Court would be required to unnecessarily spend countless resources deciding hundreds of individual cases instead of pursuing a more efficient class action. If the Court denies Defendants' motion to compel arbitration, surely, even Defendants would be seeking to defend the hundreds of potential cases in a single class action as opposed to paying attorneys to defend hundreds of individual cases on their behalf.  As the class action waiver was contained in the mandatory arbitration clause not on its own, and the logical interpretation of the class action waiver is only as part of the arbitration process, the Court should deny Defendants' motion to dismiss the class claims.

V.     <u>**DEFENDANTS EQUITABLE ESTOPPEL CLAIM IS PREMATURE BECAUSE THE COURT HAS NOT COMPELLED ARBITRATION**</u>

Equitable estoppel only applies *if, and when,* this Court makes a ruling as to whether arbitration applies in this matter.  Defendants' argument that the signatory party is equitably estopped from refusing to arbitrate with the non-signatory moving party when the issue the non-signatory seek to resolve in arbitration are intertwined with the Agreement is, at best, premature. *See* FSR Defendants' Motion p.4.  But, this Court should not consider equitable estoppel claims to arbitrate before deciding whether to compel arbitration in the first place.  Defendants' motion to compel arbitration is pending before the Court, and, until it is decided, the equitable estoppel claims are premature (*see, cf. PenneCom B.V. v Merrill Lynch & Co., Inc.,* 372 F.3d 488 [2d Cir 2004] [equitable estoppel argument was premature prior to taking discovery to dismiss suit on

collateral estoppel grounds, and subsequently, the Court vacated the lower court's judgment and remanded for discovery and further proceedings]; *see also, CBF Industria de Gusa S/A v AMCI Holdings, Inc.,* 850 F3d 58, 78 [2d Cir 2017] [Brazilian Companies not required to bring action to confirm their foreign arbitral award before they could seek to enforce it]; *Red Mountain Medical Holdings v Brill,* 563 F.Supp.3d 159, fn 15 [S.D.N.Y 2021] [court held it is appropriate to reject a claim for equitable estoppel or equitable tolling but granting a motion to dismiss at this procedural state was appropriate]; *U.S. v D'Amico,* 734. F.Supp.2d 321, 352 [S.D.N.Y. 2010] [parties' estoppel argument fails because it is premature where procedurally the parties were only litigating a pre-trial motion]).

The Warner Defendants compare this case to an action in California, wherein H. Ty Warner and Warner Hotels & Resorts were also named as Defendants in that case by former employees of the Four Seasons Resort The Biltmore Santa Barbara. However, in that California case, the Warner Defendants concede that those employees/Plaintiffs ***voluntarily*** proceeded to arbitrate their claims. *See* Warner Defendants' Memo at p.16, *referring to Holt v Ty Warner Hotels & Resorts, LLC,* 2022 WL 2304179 fn 7 [US Dist. Court, C.D. California, 2022]). In contrast, in this case, Plaintiffs do not willingly agree to arbitrate their claims, and, in fact, oppose Defendants' motion to compel arbitration in its entirety. Notably, the Court in *Holt v Ty Warner Hotels & Resorts, LLC* held that the "the fundamental point is that a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate by defining the forum in which the dispute will be resolved. *Holt v Ty Warner Hotels & Resorts, LLC,* 2022 WL 2304179 fn 7 [US Dist. Court, C.D. California, 2022], *citing to, Boucher v Alliance Title Company,* 25 Cal. Rptr. 3d 440, 447 [2d Dist. Court of Appeal, Div. 5, California].

20

Defendant FSR also argues that "[p]laintiffs cannot avoid arbitrating their claims against FSR in compliance with the arbitration provision in EmPact.  They cannot pick and choose which elements of the EmPact Agreement they want to abide by; it is a valid contract, or it is not." *See* Wagner Memo to FSR's Motion to Compel, p.7.  However, FSR fails to recognize that Plaintiffs have always maintained that the EmPact Agreement governs, and specifically excludes arbitration from proceeding in this matter.

None of the cases that the Defendants cite are applicable to this case.  In those cases, the parties *agreed* to arbitration.  In this case, Plaintiffs ***oppose*** arbitration, and the relevant contract provision in the EmPact Agreement excludes claims for No-Fault Separation Pay and permanent layoffs.

Accordingly, Plaintiffs respectfully request the Court deny Defendants' motion by Defendants Hotel 57, LLC, Ty Warner Hotels & Resorts, H. Ty Warner and FSR on the basis of equitable estoppel to seek arbitration in this matter, since the issue of arbitrability has not yet been decided by the Court.

21

## CONCLUSION

Respectfully, this Court should deny, in its entirety, the relief sought in Defendants' Motion to Compel Arbitration, including, *inter alia,* to dismiss the Class Claims and stay this action, as Plaintiffs' claims are not subject to arbitration or class waiver.  Accordingly, this Court should allow Plaintiffs and those similarly situated to pursue their claims in Court, and grant such other or further relief as the Court deems appropriate.


Dated: December 6, 2022
      New York, New York

                                    Respectfully Submitted,


                                    */s/ Maya Risman*
                                    Maya Risman, Esq.
                                    Risman & Risman, P.C.
                                    299 Broadway, 17th Floor
                                    New York, New York 10007
                                    (212) 233-6400

                                    Evan Brustein, Esq.
                                    BRUSTEIN LAW PLLC
                                    299 Broadway, 17th Floor
                                    New York, New York 10007
                                    (212) 233-3900