Marc B. Zimmerman
Kathryn T. Lundy
FREEBORN & PETERS LLP
1155 Avenue of Americas, 26th Floor
New York, NY 10036
(212) 218-8760
*Attorneys for Defendants Hotel 57 Services, LLC*
*Hotel 57, LLC, Ty Warner Hotels & Resorts, LLC*
*and H. Ty Warner*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X

SELENA STALEY, VIVIAN HOLMES, and OLIVE  :
IVEY, on behalf of themselves and all others similarly  :
situated,  :

                                  :  Case No.: 22-CV-6781 (JSR)

             Plaintiffs,  :

                               :

      v.  :  **NOTICE OF MOTION**
                                    :  **TO DISMISS**

FOUR SEASONS HOTELS AND RESORTS,  :
HOTEL 57 SERVICES, LLC, HOTEL 57, LLC, TY  :
WARNER HOTELS & RESORTS, LLC, and H. TY  :
WARNER,  :

            Defendants.  :

----------------------------------------------------------------- X

     **PLEASE TAKE NOTICE** that Defendants Hotel 57 Services, LLC, Hotel 57, LLC, Ty

Warner Hotels & Resorts, LLC, and H. Ty Warner (collectively the "Warner Defendants"), by

and through their undersigned counsel, Freeborn & Peters LLP, respectfully will move this Court

before Hon. Jed S. Rakoff, U.S.D.J., at the United States Courthouse, Southern District of New

York, 500 Pearl Street, New York, New York 10007, for an Order, pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure: (1) dismissing the Complaint against the Warner

Defendants, in its entirety, with prejudice; and (2) for such other and further relief as the Court

deems just and proper. By this Motion, the Warner Defendants expressly reserve, and do not

hereby waive, any rights (including without limitation, to have Plaintiffs' claims in this action



determined in arbitration) in connection with their Notice of Motion to Compel Arbitration, Dismiss Class Claims and Stay Action, dated November 9, 2022.

As set forth in the Court's November 7, 2022 e-mail to counsel for all parties, the schedule for service and filing of the parties' papers in connection with this motion is as follows: (1) the Warner Defendants' moving papers shall be served and filed by December 5, 2022; (2) Plaintiffs' answering papers shall be served and filed by December 19, 2022; and (3) the Warner Defendants' reply papers shall be served and filed by December 28, 2022.  A date for a hearing on the motion will be determined by the Court.

Dated: New York, New York
       November 9, 2022

FREEBORN & PETERS LLP

By: */s/ Marc B. Zimmerman*
       Marc B. Zimmerman
       Kathryn T. Lundy
1155 Avenue of the Americas, 26th Floor
New York, NY 10036
(212) 218-8760

*Attorneys for Defendants Hotel 57 Services, LLC*
*Hotel 57, LLC, Ty Warner Hotels & Resorts, LLC*
*and H. Ty Warner*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X

SELENA STALEY, VIVIAN HOLMES, and OLIVE : 
IVEY, on behalf of themselves and all others similarly :
situated, :
                                                :

                       Plaintiffs, :     Case No.: 22-CV-6781 (JSR)

               :

       v. :

FOUR SEASONS HOTELS AND RESORTS, HOTEL :
57 SERVICES, LLC, HOTEL 57, LLC, TY WARNER :
HOTELS & RESORTS, LLC, and H. TY WARNER :

                     Defendants. :

----------------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF THE WARNER DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT**

**FREEBORN & PETERS, LLP**
Marc B. Zimmerman
Kathryn T. Lundy
1155 Avenue of the Americas, 26th Floor
New York, NY 10036
(212) 218-8760

*Attorneys for Defendants*
*Hotel 57 Services, LLC, Hotel 57, LLC, Ty*
*Warner Hotels & Resorts, LLC and*
*H. Ty Warner*

## TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ................................................................................. 1

FACTS ........................................................................................................................ 3

ARGUMENT .............................................................................................................. 6

POINT I ...................................................................................................................... 6

    PLAINTIFFS' FIRST AND SECOND CAUSES OF ACTION SHOULD BE
    DISMISSED AS AGAINST THE WARNER DEFENDANTS ............................... 6

    A.  The Hotel provided Plaintiffs with appropriate written notice in
        compliance with federal and New York State WARN Acts ........................... 8

        1. The August 5, 2020 WARN Notice was provided to Plaintiffs ................. 8

        2. COVID-19 caused business circumstances that were not foreseeable ...... 10

    B.  H. Ty Warner is not an "employer" under federal or New York
        State WARN Acts ......................................................................................... 11

POINT II .................................................................................................................. 12

    PLAINTIFFS' FIFTH CAUSE OF ACTION SHOULD BE DISMISSED
    AGAINST THE WARNER DEFENDANTS ....................................................... 12

    A.  Defendant Hotel 57 Services is a party to the contract ................................. 12

    B.  The Warner Defendants are not "strangers" to the EmPact Agreement ........ 13

    C.  Plaintiffs fail to allege malice, fraud or illegality against the
        Warner Defendants ...................................................................................... 14

    D.  Plaintiffs fail to sufficiently allege a breach of the EmPact Agreement ........ 15

        1. Plaintiffs are not eligible for No Fault Separation Pay pursuant to the
        terms of the EmPact Agreement ............................................................. 16

        2. Plaintiffs failed to comply with the C.A.R.E. dispute resolution
        procedure in the EmPact Agreement ...................................................... 17

POINT III ................................................................................................................. 18

    PLAINTIFFS' SIXTH CAUSE OF ACTION SHOULD BE DISMISSED AGAINST
    DEFENDANT H. TY WARNER ......................................................................... 18

CONCLUSION ........................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*34-06 73, LLC v. Seneca Insurance Co.*,
    No. 81, 2022 WL 14914085 (N.Y. Oct. 27, 2022) ................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................................6

*Barnett v. Jamesway Corp. (In re Jamesway Corp.)*,
    235 B.R. 329 (Bankr. S.D.N.Y. 1999) ...............................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................................6

*Brass v. American Film Technologies, Inc.*,
    987 F. 2d 142 (2d Cir. 1993) ...............................................................................................6

*Castle Restoration, LLC v. Castle Restoration & Constr., Inc.*,
    129 N.Y.S.3d 265 (N.Y. Sup. Ct. 2020) ...........................................................................14

*Cruz v. Robert Abbey, Inc.*,
    778 F. Supp. 605 (E.D.N.Y. 1991) ....................................................................................12

*Felsen v. Sol Café Mfg. Corp.*,
    24 N.Y.2d 682 (1969) .........................................................................................................14

*Finley v. Giacobbe*,
    79 F.3d 1285 (2d Cir. 1996) ...............................................................................................13

*Foster v. Churchill*,
    87 N.Y.2d 744 (1996) .........................................................................................................15

*Heckman v. Town of Hempstead*,
    568 Fed. App'x 41 (2d Cir. 2014) .......................................................................................9

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
    679 F. Supp. 2d 395 (S.D.N.Y. 2009) ...............................................................................13

*In re KG Winddown, LLC*,
    632 B.R. 448 (Bankr. S.D.N.Y. 2021) ...............................................................................14

*In re TransCare Corp.*,
    611 B.R. 160 (Bankr. S.D.N.Y. 2020) .................................................................................7

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995) ........................................................................6

*Kasson v. Algaze*,
    203 A.D.2d 112 (1st Dept. 1994)............................................................13

*Koret, Inc. v. Christian Dior, S.A.*,
    161 A.D.2d 156 (1st Dept. 1990) ............................................................13

*Lama Holding Co. v. Smith Barney, Inc.*,
    88 N.Y.2d 413 (N.Y. 1996) ...............................................................12, 15

*Manley v. Utzinger*,
    No. 1:10-CV-2210, 2011 WL 2947008 ......................................................9

*MDC Corp. v. John H. Harland Co.*,
    228 F. Supp. 2d 387 (S.D.N.Y. 2002)......................................................14

*Minetos v. City Univ. of N.Y.*,
    925 F. Supp. 177 (S.D.N.Y. 1996)...........................................................13

*Monterosa v. Decker*,
    No. 1:20-CV-02653-MKV, 2020 WL 1847771 (S.D.N.Y. Apr. 11, 2020)............................16

*Morris v. New York State Dept. of Tax'n & Fin.*,
    82 N.Y.2d 135 (1993) ...........................................................................18

*Network Enters., Inc. v. Realty Racing, Inc.*,
    No. 09-cv-4664, 2010 WL 3529237 (S.D.N.Y. Aug. 24, 2010).............................18

*Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*,
    86 N.Y.2d 685 (1996) ...........................................................................17

*Rooney v. Slomowitz*,
    11 A.D.3d 864 (3d Dept. 2004) ...............................................................17

*Scuderi v. Springer*,
    No. 03-CV-2098, 2004 WL 2711048 (S.D.N.Y. Nov. 29, 2004)...........................13

*Shandler v. Bauz*,
    121 A.D.2d 619 (2d Dept. 1986) .............................................................17

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure

    § 12(b)(6) ...................................................................................2, 6

New York State Code of Rules and Regulations

12 N.Y.C.R.R. § 921-2.1(f)(1) ..................................................................7

12 N.Y.C.R.R. § 921-2.3 ..........................................................................7

12 N.Y.C.R.R. § 921-6.3 ........................................................................10

New York State Labor Law

§ 860-a(3) ...............................................................................................12

§ 860-b ....................................................................................................7

§ 860-b(2) ...............................................................................................7

United States Code

29 U.S.C. § 2101(a) ..................................................................................6

29 U.S.C. § 2101(a)(1)(A) ......................................................................12

29 U.S.C. § 2102(b)(2)(A) ......................................................................10

29 U.S.C. § 2102(b)(3) ...........................................................................10

United States Code of Federal Regulations

20 C.F.R. § 639.7 ...................................................................................10

20 C.F.R. § 639.7(a)(4) ............................................................................7

20 C.F.R. § 639.7(d) .................................................................................7

20 C.F.R. § 639.8 .....................................................................................7

20 C.F.R. § 639.9 ...................................................................................10

20 C.F.R. § 639.9(b)(1) ..........................................................................10

Defendants Hotel 57 Services, LLC ("Hotel 57 Services"), Hotel 57, LLC, Ty Warner Hotels & Resorts, LLC, and H. Ty Warner ("Warner") (collectively, the "Warner Defendants"), by and through their undersigned counsel, Freeborn & Peters LLP, respectfully submit this memorandum of law in support of their motion to dismiss the Complaint against the Warner Defendants, in its entirety, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6).[1]

## PRELIMINARY STATEMENT

This action arises from the temporary suspension of operations of the Four Seasons Hotel New York (the "Hotel") after the onset of the COVID-19 pandemic. *See* Compl. at ¶ 8.[2] Plaintiffs Selena Staley ("Staley"), Vivian Holmes ("Holmes") and Olive Ivey ("Ivey" and collectively with Staley and Holmes, "Plaintiffs") allege that their employment at the Hotel was terminated[3] and: (1) Defendants failed to provide Plaintiffs advance written notice of their termination of employment as required under the federal and New York State Workers Adjustment and Retraining Notification ("WARN") Acts (*see* Compl. at First and Second Causes of Action, ¶¶ 1, 4-5, 173-207); (2) the Warner Defendants tortiously interfered with Plaintiffs' employment contract, thereby preventing Defendant FSR International Hotels Inc.'s ("FSR") payment of No-Fault Separation Pay to Plaintiffs thereunder thereunder (*see* Compl. at Fifth Cause of Action, ¶¶

---

[1] By bringing this motion, the Warner Defendants do not waive, and expressly reserve, all rights, in connection with their pending Motion to Compel Arbitration, Dismiss Class Claims and Stay Action, filed on November 15, 2022 (*see* Dkt. No. 27), including without limitation, their right to compel arbitration of Plaintiffs' claims herein.

[2] References to the Complaint in this action, dated and filed on August 9, 2022 and annexed to the Declaration of Kathryn T. Lundy, dated December 5, 2022 ("Lundy Decl."), as Exh A are denoted herein as "Compl. ¶ __".

[3] *Id.* at ¶¶ 139, 140, 141, 142, 166, 168(b), 168(c), 178, 179, 181, 182, 184, 186, 187, 188, 189, 190, 194, 195, 196, 197, 198, 200, 201, 203, 204, 205, 206.

234-250); and (3) a non-cognizable claim of "alter ego" against H. Ty Warner, individually (*see* Compl. at Sixth Cause of Action, ¶¶ 251-256).  As set forth herein, the Complaint fails to state a claim against the Warner Defendants and should be dismissed in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

*First*, the First and Second Causes of Action in the Complaint for alleged violations of federal and New York State WARN Acts should be dismissed because, the Hotel provided valid notice of employment loss to Plaintiffs in compliance with applicable WARN Acts on August 5, 2020.  Additionally, such claims should be dismissed against H. Ty Warner, individually, because an individual is not an "employer," and cannot be liable for purported violations of either federal or New York State WARN Acts.

*Second*, the Fifth Cause of Action in the Complaint based upon the Warner Defendants' alleged tortious interference with Plaintiffs employment contract fails because: (a) Hotel 57 Services is a party to such contract (the "EmPact Agreement") and cannot, therefore, "interfere" with its own contract; (b) Plaintiffs do not state a claim for tortious interference against all the other Warner Defendants who maintain an economic interest in the EmPact Agreement (and therefore are not strangers to the contract) as Plaintiffs do not sufficiently allege the Warner Defendants acted maliciously, fraudulently or illegally; and (c) Plaintiffs cannot establish an actual breach of the EmPact Agreement with respect to their claim for No-Fault Separation Pay based on the plain language of the contract and because Plaintiffs themselves have not satisfied a condition precedent to the contract.

*Third*, the Sixth Cause of Action for "Alter Ego" against Defendant H. Ty Warner should be dismissed as "Alter Ego" is not a cognizable legal claim under New York law.

Accordingly, the Complaint should be dismissed, in its entirety, against the Warner Defendants, with prejudice.

## FACTS

### Parties

Plaintiffs have been employed at the Hotel for many years -- Staley for approximately 12 years and Holmes and Ivey each for approximately 24 years. *See* Compl. at ¶¶ 17-19.

Plaintiffs allege the Warner Defendants, along with FSR, are joint employers of Plaintiffs and other similarly situated employees because the Warner Defendants purportedly "controlled the operations of the Hotel, through their interrelation of operations; control over the employment opportunities and the employment characteristics of the employees of the Hotel, and control of hiring and/or firing of the employees of the Hotel". *See* Compl. at ¶¶ 21, 97.

### The EmPact Agreement

Plaintiffs' terms and conditions of employment at the Hotel are set forth in an employment contract between Plaintiffs and Hotel 57 Services known as the U.S EmPact$^{SM}$ Employee Handbook (the "EmPact Agreement"). *See* Declaration of Elizabeth Ortiz, dated December 2, 2022 ("Ortiz Decl.") at ¶ 4, Exh. D (EmPact Agreement).

The EmPact Agreement is a valid contract between Hotel 57 Services and Plaintiffs (*see* Compl. at ¶¶ 210-211, 221-222, 236-237). Each of the Plaintiffs executed and entered into the EmPact Agreement. Staley signed the EmPact Agreement on or about June 8, 2011, and updated versions in or about 2015 and 2018 (*see* Ortiz Decl. at ¶ 5, Exh. E (Staley's signature pages of the EmPact Agreement)). Holmes signed the EmPact Agreement in or about March 1998, and an updated version in 2018 (*see* Ortiz Decl. at ¶ 6, Exh. F (Holmes' signature pages of the EmPact

Agreement)).  Ivey signed the EmPact Agreement in or about October 1997, and an updated version in 2018 (*see* Ortiz Decl. at ¶ 7, Exh. G (Ivey's signature pages of the EmPact Agreement)).

The EmPact Agreement contains a section titled "No-Fault Separation Pay," which provides for payment to employees whose employment at the Hotel terminates under certain circumstances.  However, the EmPact Agreement specifically carves out, and excludes, certain circumstances from the No-Fault Severance Pay obligation, providing, in relevant part: "I will not be entitled to No-Fault Separation Pay if my permanent layoff results from…national emergencies…acts of God…disasters…and any other cause beyond the control of Four Seasons." *See* Ortiz Decl. at ¶ 4, Exh. D.

**The COVID-19 pandemic significantly impacted the Hotel's business operations**

As of February 2020, Defendants employed approximately 500 employees at the Hotel, including Plaintiffs.  *See* Compl. at ¶ 91.  The Hotel's normal business operations were significantly impacted by the COVID-19 pandemic, which decimated the hospitality industry generally, and hotels specifically.

Due to the uncertain and unprecedented conditions at play during the early stage of the COVID-19 pandemic, Hotel 57 Services was utterly (and understandably) unaware when the COVID-19 pandemic and the restrictions and challenges it created on business operations would ease. *See* Compl. at ¶¶ 8, 128 and 130.  Once it became apparent the Hotel would not be able to resume its regular, normal business operations in the reasonably foreseeable future due to the grave concerns and business restrictions created by the COVID-19 pandemic, Hotel 57 Services promptly issued WARN Act notices to its employees, including Plaintiffs. *See* Ortiz Decl. at ¶ 3, Exhs. A - C.

**The Hotel provided WARN Act notices to its employees, including Plaintiffs**

On August 5, 2020 -- less than four months following onset of the COVID-19 pandemic,

the Hotel provided WARN Act notices to its employees (including Plaintiffs), which provided:

> This is to inform you that due to unforeseen business circumstances and the continued major economic downtown stemming from the COVID-19 virus pandemic and consequent travel and tourism disruptions outside of the employer's control the Four Seasons Hotel New York will continue your temporary layoff which began on 7/14/2020 for an as yet undetermined number of months.  The layoffs included approximately 464 employees, including yourself and are still expected to be temporary.

> You are also hereby notified that, as a result of your employment loss, you may be eligible to receive job retraining, re-employment services, or other assistance with obtaining new employment from the New York Department of Labor or its workforce partners upon your termination.  You may also be eligible for unemployment insurance benefits after your last day of employment. Whenever possible, the New York State Department of Labor will contact your employer to arrange to provide additional information regarding these benefits and services to you through workshops, interviews, and other activities that will be scheduled prior to the time your employment ends.  If your job has already ended, you can also access reemployment information and apply for unemployment insurance benefits on the Department's website or you may use the contact information provided on the website or visit one of the Department's local offices for further information and assistance.

> This notice is supplied to you pursuant to the WARN Act as well and has been supplied to the appropriate governmental agencies.

> If you have any questions concerning anything contained in this letter, please contact me at 212-350-6604.

The WARN Act notices were signed by Rudolf ("Rudy") Tauscher, the Hotel's General Manager.

Ortiz Decl. at ¶ 3; Exh. A (August 5, 2020 WARN Act notice to Holmes).[4]

---

[4] The date of the temporary layoff referenced in the WARN Act notice was specific to each employee: for Ivey, it was "3/14/2020" and for Staley, it was "3/21/2020".  *See* Ortiz Decl. at ¶ 3, Exhs. B and C, respectively).

## ARGUMENT

On a motion to dismiss pursuant to Fed. R. Civ. P 12(b)(6), the Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing to*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, "[t]hreadbare recitals of the elements of a cause of action" and conclusory allegations are not presumed true. *Ashcroft*, 556 U.S. at 678. A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [its] claims across the line from conceivable to plausible" dismissal is required. *Bell Atl. Corp.*, 550 U.S. at 570. A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is limited to the factual allegations in the complaint, to documents attached to the complaint as exhibits or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in Plaintiff's possession or of which Plaintiff had knowledge and relied on in bringing suit. *See Brass v. American Film Technologies, Inc.*, 987 F. 2d 142 (2d Cir. 1993); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.").

### POINT I

### PLAINTIFFS' FIRST AND SECOND CAUSES OF ACTION SHOULD BE DISMISSED AS AGAINST THE WARNER DEFENDANTS

Generally, the federal WARN Act requires "employers" (defined below) of more than 100 employees to provide sixty calendar days' advance notice of certain "plant closings" or "mass layoffs" (*see* 29 U.S.C. § 2101(a)). The New York State WARN Act similarly requires employers

with 50 or more full-time employees in New York State to provide ninety calendar days' advance notice of such actions (*see* N.Y. Lab. L. § 860-b).

A federal WARN notice to employees must be written in language understandable to the employees and contain a: "(1) [a] statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect; (2) [t]he expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (3) [a]n indication whether or not bumping rights exist; and (4) [t]he name and telephone number of a company official to contact for further information." 20 C.F.R. § 639.7(d). The notice may include additional information useful to the employees such as information on available dislocated worker assistance, and, if the planned action is expected to be temporary, the estimated duration, if known. *Id.* The notice must be "based on the best information available to the employer at the time the notice is served," (20 C.F.R. § 639.7(a)(4)) and delivered in a manner "which is designed to ensure receipt" (20 C.F.R. § 639.8).

The New York WARN Act and regulations largely mirror the federal WARN Act and regulations and are analyzed collectively herein.[5]

---

[5] *See In re TransCare Corp.,* 611 B.R. 160, 167 (Bankr. S.D.N.Y. 2020), *citing to* New York Labor Law ("NYLL") § 860-b(2) ("An employer required to give notice of any mass layoff relocation or employment loss under this article shall include in its notice the elements required by the federal Worker Adjustment and Retraining Notification Act…"). New York State WARN Act "[n]otice must be specific" and "based on the best information available to the employer at the time the notice is served" (12 N.Y.C.R.R. § 921-2.1(f)(1)), and "in a language understandable to the employee". 12 N.Y.C.R.R. § 921-2.3. The Warner Defendants' arguments herein therefore are applicable to Plaintiffs' claims under federal and New York State WARN.

A.     **The Hotel provided Plaintiffs with appropriate written notice in compliance with federal and New York State WARN Acts.**

1.     **The August 5, 2020 WARN Notice was provided to Plaintiffs.**

Plaintiffs' First and Second Claims for relief are based upon their contention that they were not provided advance written notice of their terminations of employment, as required under federal and New York State WARN Acts (*see* Compl. ¶¶ 4, 5, 114, 119, 123-125, 139-141, 173-191, 192-207). Tellingly, Plaintiffs do not allege they were not provided *any* notice of termination at all, but that they were not provided "required," "adequate" or timely notice. *Id.* In fact, the Hotel provided its employees, including each of Plaintiffs, such notice on August 5, 2022 (the "August 5, 2020 WARN Notice"), which set forth all required information concerning a plant closing or mass layoff pursuant to the federal and New York State WARN Acts, as follows:

- A statement as to whether the planned action is expected to be permanent or temporary.

    The August 5, 2020 WARN Notice provided: "This is to inform you that due to unforeseen business circumstances and the continued major economic downtown stemming from the COVID-19 virus pandemic and consequent travel and tourism disruptions outside of the employer's control ***the Four Seasons Hotel New York will continue your temporary layoff which began on 7/14/2020 for an as yet undetermined number of months.  The layoffs included approximately 464 employees, including yourself and are still expected to be temporary.***" [Emphasis added]

- The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated.

    The August 5, 2020 WARN Notice provided: "the Four Seasons Hotel New York will continue your temporary layoff ***which began on 7/14/2020*** for an as yet undetermined number of months." [Emphasis added]

- The name and telephone number of a company official to contact for further information.

    The August 5, 2020 WARN Notice provided: "If you have any questions concerning anything contained in this letter, please contact me at 212-350-6604."

8

The document was signed by Rudolf ("Rudy") Tauscher, the Hotel's General Manager.

*See* Ortiz Decl. at ¶ 3, Exhs. A - C.[6]   Notably, the August 5, 2020 WARN Notice does not specifically indicate whether "bumping rights" exist, as such concept is inapplicable to Plaintiffs as non-union employees.[7]

Indisputably, the Hotel provided Plaintiffs with WARN notices containing all required information, leaving the Court to determine only whether the August 5, 2020 WARN Notice was timely provided, concerning the dire circumstances presented by the COVID-19 pandemic.  As discussed in Point I(A)(2), *infra*, such notice was appropriate in light of the business circumstances created by the global pandemic.

---

[6] The August 5, 2020 WARN Notice may be considered by the Court as it is known to Plaintiffs and integral to the Complaint. *See, e.g., Heckman v. Town of Hempstead*, 568 Fed. App'x 41, 43 (2d Cir. 2014) ("the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, [as well as] documents 'integral' to the complaint and relied upon in it."); *Manley v. Utzinger*, No. 1:10-CV-2210, 2011 WL 2947008 (S.D.N.Y. July 21, ("The Court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit").

[7] In addition, a New York State WARN notice must contain: "Information concerning unemployment insurance, job training, and re-employment services for which affected employees may be eligible. Such information shall, at a minimum, include the following notice: 'You are also hereby notified that, as a result of your employment loss, you may be eligible to receive job retraining, re-employment services, or other assistance with obtaining new employment from the New York State Department of Labor or its workforce partners upon your termination. You may also be eligible for unemployment insurance benefits after your last day of employment. Whenever possible, the New York State Department of Labor will contact your employer to arrange to provide additional information regarding these benefits and services to you through workshops, interviews, and other activities that will be scheduled prior to the time your employment ends. If your job has already ended, you can also access reemployment information and apply for unemployment insurance benefits on the Department's website or you may use the contact information provided on the website or visit one of the Department's local offices for further information and assistance.'" *See* N.Y.C.R.R. § 921-2.3(b)(5).   Such statement is contained verbatim on the August 5, 2020 WARN Notice. *See* Ortiz Decl. at ¶ 3, Exhs. A - C.

2.       **COVID-19 caused business circumstances that were not foreseeable.**

Employers are relieved from the full sixty-day notice requirement under the federal WARN

Act notice under certain circumstances, including when a covered plant closing or mass layoff "is

caused by business circumstances that were not reasonably foreseeable as of the time that notice

would have been required." 29 U.S.C. § 2102(b)(2)(A); s*ee Barnett v. Jamesway Corp. (In re

Jamesway Corp.),* 235 B.R. 329, 342 (Bankr. S.D.N.Y. 1999) ("[W]hen an employer ceases

operating due to 'not reasonably foreseeable business circumstances'… the employer can give less

than 60 days' WARN notice, provided the notice contains certain 'basic' information (*see* 20

C.F.R. § 639.7), and an explanation why the employer could not provide the full 60 days' notice."),

including, where appropriate, "notice after the fact." *See* 20 C.F.R. § 639.9.  The WARN Act

regulations clarify that "an important indicator of a business circumstance that is not reasonably

foreseeable is that the circumstance is caused by some sudden, dramatic and unexpected action or

condition outside the employer's control" (20 C.F.R. § 639.9(b)(1)) and, where such circumstance

exists, an employer relying on such statutory exception nonetheless "shall give as much notice as

is practicable" (*Id.* 29 U.S.C. § 2102(b)(3)).[8]

The COVID-19 pandemic was, of course, unforeseeable, sudden and unpredictable,

particularly during the early months of March through August 2020, when New York City

businesses were, at best, completely disrupted, and at worst, forced to shutter to ensure compliance

with applicable laws, rules and regulations.   The Hotel, like other businesses, wholly lacked

---

[8] New York State WARN Act similarly provides for an exception to the 90-day notice period
where "the plant closing, mass layoff, relocation or covered reduction in work hours was caused
by business circumstances that were not reasonably foreseeable when the 90-day notice would
have been required." 12 N.Y.C.R.R. § 921-6.3.  Such unforeseeable business circumstance "may
be established by the occurrence of some sudden, dramatic and unexpected action or condition
outside the employer's control" determined by the employer exercising "commercially reasonable
business judgment." *Id.*

reliable information concerning the duration and impact of the COVID-19 pandemic on its regular business operations. Simply put, like nearly all employers in New York City, and through no fault of its own, the Hotel was woefully unaware of when it would be able to resume its normal business operations.

Unfortunately, in August 2020 -- only four months into the COVID-19 pandemic -- at a time when New York City, its residents and businesses were on edge and overwhelmed with its associated health and economic crises, when travel and tourism essentially halted and without any indication or "crystal ball" to determine that, or when, the debilitating effects of the pandemic would ease, the Hotel reasonably determined it was unlikely to be able to resume its regular business operations in the near future. Accordingly, on August 5, 2020, the Hotel issued the August 5, 2020 WARN Notice, which specifically advised its employees that its decision to continue their temporary layoff was "due to unforeseen business circumstances and the continued major economic downturn stemming from the COVID-19 virus pandemic and consequent travel and tourism disruptions outside the employer's control". *See* Ortiz Decl. at ¶ 3, Exhs. A - C.

The August 5, 2020 WARN Notice provided the Hotel's employees with as much notice as was practicable, based on the best information available to the employer as of that date. Accordingly, as the August 5, 2020 WARN Notice was timely provided to employees and contained all required information under federal and New York State WARN Acts, and therefore the First and Second Causes of Action should be dismissed as against the Warner Defendants.

**B.     H. Ty Warner is not an "employer" under federal or New York State WARN Acts.**

Assuming, *arguendo*, the Court does not dismiss the First and Second Causes of Action against all the Warner Defendants as set forth in Point I(A), *supra*, it should dismiss such claims

as against H. Ty Warner individually, on the alternative ground that an individual cannot be held liable for alleged WARN Act violations

The federal WARN Act defines "employer" to mean any business enterprise that employs 100 or more employees…." 29 U.S.C. § 2101(a)(1)(A).  Similarly, the New York State WARN Act defines an "employer" as a business enterprise with 50 or more full time employees.  N.Y. Lab L. § 860-a(3).  A business enterprise under the WARN Act is limited to business enterprises, including corporate entities.  Indeed, "business enterprise" is intended to be synonymous with "company", "firm or "business" -- not individuals.  *See Cruz v. Robert Abbey, Inc.,* 778 F. Supp. 605, 608 (E.D.N.Y. 1991) ("A review of the statute, its applicable regulations and its legislative history indicate that "employer" does not include individual persons.").  Accordingly, as a matter of law, Plaintiffs cannot maintain their claims under the WARN Acts against H. Ty Warner, individually.

## POINT II

## PLAINTIFFS' FIFTH CAUSE OF ACTION
## <u>SHOULD BE DISMISSED AGAINST THE WARNER DEFENDANTS</u>

To state a claim for tortious interference with contract, Plaintiffs must allege: (1) the existence of a valid contract between Plaintiffs and a third party; (2) Defendants' knowledge of that contract; (3) Defendants' intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages.  *See Lama Holding Co. v. Smith Barney, Inc.,* 88 N.Y.2d 413, 424 (N.Y. 1996) (complaint did not state claim for tortious interference because there was no allegation the defendant intentionally procured the breach).

**A.    Defendant Hotel 57 Services is a party to the contract.**

Hotel 57 Services is a party to the EmPact Agreement (*see* Ortiz Decl. at ¶ 4, Exh. D) and therefore cannot, as a matter of law, tortiously interfere with its own contract.  "[O]nly a stranger

to a contract, such as a third party, can be liable for tortious interference with a contract." *Minetos v. City Univ. of N.Y.*, 925 F. Supp. 177, 187 (S.D.N.Y. 1996).  Accordingly, the Fifth Cause of Action should be dismissed as against defendant Hotel 57 Services.

**B.      The Warner Defendants are not "strangers" to the EmPact Agreement.**

Likewise, Plaintiffs cannot establish a claim for tortious interference with contract against the Warner Defendants, as none of the Warner Defendants are strangers to the EmPact Agreement. Under New York law, "[a] claim for tortious interference with a contract "must be based on a *non-party* improperly interfering with a contract between two contracting parties." *Scuderi v. Springer*, No. 03-CV-2098, 2004 WL 2711048, at *2 (S.D.N.Y. Nov. 29, 2004); *see also Koret, Inc. v. Christian Dior, S.A.*, 161 A.D.2d 156, 157 (1st Dept. 1990) ("stranger rule" barred claim against related entity because overlapping management member negotiated and executed the contract); *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 407 (S.D.N.Y. 2009) ("[T]he general rule is that a claim for tortious interference will lie only against a stranger who improperly interferes with a contract between two contracting parties."). "This principle holds in the employment context as well." *Finley v. Giacobbe,* 79 F.3d 1285, 1295 (2d Cir. 1996) (citation omitted) (tortious interference with contract claim properly dismissed where defendants were charged with responsibilities relating to the terms and conditions of plaintiff's employment); *see also Kasson v. Algaze*, 203 A.D.2d 112 (1st Dept. 1994) (tortious interference with contract claim properly dismissed where individual defendants, as agents to the employer, did not act outside the scope of their authority).

In the Complaint, Plaintiffs allege that H. Ty Warner is the "Executive Officer of Ty Warner Hotels, Hotel 57 Services, LLC, and Hotel 57 LLC" (Compl. ¶ 82); that all the Warner Defendants "collectively controlled the terms and conditions of employment of the employees

13

working at The Hotel" (Compl. ¶ 98); that all Warner Defendants jointly employed Plaintiffs
(Compl. ¶ 91); and specifically incorporate all such allegations into their claim for tortious
interference with contract against the Warner Defendants (*see* Compl. ¶ 234, Fifth Cause of Action,
¶¶ 234-250).

Plaintiffs do not, and cannot, allege the Warner Defendants are strangers to the EmPact
Agreement, much less that they were acting outside the scope of their respective authority. To the
contrary, the allegations in the Complaint demonstrate the Warner Defendants are inextricably
intertwined with the Hotel's operations and therefore, cannot possibly be strangers to the EmPact
Agreement which sets forth terms and conditions of their employment -- including their claim to
No-Fault Separation Pay thereunder. *See In re KG Winddown, LLC*, 632 B.R. 448, 492 (Bankr.
S.D.N.Y. 2021) (dismissing tortious interference with contract claim because the manager of the
LLC was not a stranger to the contract); *Castle Restoration, LLC v. Castle Restoration & Constr.,
Inc.*, 129 N.Y.S.3d 265, 265 (N.Y. Sup. Ct. 2020) (company's president and sole shareholder were
not "strangers" to its asset-sale agreement). Accordingly, the Fifth Cause of Action should be
dismissed against the Warner Defendants.

**C.      Plaintiffs fail to allege malice, fraud or illegality against the Warner Defendants.**

"Where the defendants have an economic interest in the contract between a plaintiff and a
third party, proving the elements [of a tortious interference with contract claim] is not sufficient.
Rather, under New York law, liability will be imposed only where plaintiff can make a showing
of malice on the one hand or fraudulent or illegal means on the other." *MDC Corp. v. John H.
Harland Co.*, 228 F. Supp. 2d 387, 397 (S.D.N.Y. 2002) (citations omitted); *see also, Felsen v. Sol
Café Mfg. Corp.*, 24 N.Y.2d 682 (1969) (dismissing claim where sole stockholder of plaintiff's

employer had economic interest in affairs of employer and plaintiff failed to show stockholder was motivated by malice or employed illegal means to protect economic interest).

As set forth in Point II(B), *supra*, Plaintiffs concede in the Complaint that the Warner Defendants are interrelated parties and purportedly joint employers (with FSR) of Plaintiffs (*see* Compl. ¶¶ 82, 98, 91, 97-99); that all Defendants have interrelated economic interests and all acted for their "own financial benefit" (Compl. ¶ 144); and that "Defendants are economically intertwined and are a single employer" of the Plaintiffs (Compl. ¶ 185).  Plaintiff's allegations demonstrate the Warner Defendants have an actual economic interest concerning the EmPact Agreement they claim the Warner Defendants "tortiously interfered" with.  Therefore, to survive a motion to dismiss their tortious interference claim, Plaintiffs must, but fail to, "adequately allege that the defendant[s] either acted maliciously, fraudulently, or illegally." *Foster v. Churchill*, 87 N.Y.2d 744, 750 (1996) (affirming dismissal of tortious interference claim where there was no evidence of independent torts and defendants acted to preserve economic health of company).  Accordingly, the Fifth Cause of Action should be dismissed against the Warner Defendants.

**D.      Plaintiffs fail to sufficiently allege a breach of the EmPact Agreement.**

To establish a tortious interference with contract claim, a complaint must sufficiently allege a contract has been breached. *See Lama, supra,* 88 N.Y.2d at 424.  To establish a breach of contract to support such claim, Plaintiffs must also allege, in part, that they satisfied their obligations in accordance with the contract. *See 34-06 73, LLC v. Seneca Insurance Co.,* No. 81, 2022 WL 14914085, *4 (N.Y. Oct. 27, 2022).  Plaintiffs' claim should be dismissed against the Warner Defendants because: (1) Plaintiffs cannot demonstrate any Defendants breached the EmPact Agreement by failing to pay them No-Fault Separation Pay; and (2) Plaintiffs have not complied

with the EmPact Agreement by submitting their claim to the C.A.R.E. dispute resolution procedure required therein.

**1.  Plaintiffs are not eligible for No Fault Separation Pay pursuant to the terms of the EmPact Agreement.**

Plaintiffs' tortious interference with contract claim hinges on the alleged failure to pay them No-Fault Separation Pay under the EmPact Agreement. However, Plaintiffs cannot sufficiently allege a breach of contract because the EmPact contract specifically provides Plaintiffs are ineligible for No-Fault Separation Pay where, as here, a termination of employment results from, in relevant part, "national emergencies." The EmPact Agreement provides:

> I will not be entitled to No-Fault Separation Pay if my permanent layoff results from … national emergencies … and any other cause beyond the control of Four Seasons.

*See* Ortiz Decl. at ¶ 4, Exh. D, p. 59.[9]

Plaintiffs allege they were terminated from their employment on March 20, 2020, due to COVID-19 (Compl. at ¶¶ 2, 8). COVID-19 was declared a national emergency on March 13, 2020. *See Monterosa v. Decker*, No. 1:20-CV-02653-MKV, 2020 WL 1847771, at *6 (S.D.N.Y. Apr. 11, 2020), *citing to,* World Health Organization, "Timeline - COVID-19," last updated Apr. 11, 2020, available at https://www.who.int/news-room/detail/08-04-2020-who-timeline---covid-19; The White House, Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, issued Mar. 13, 2020, available at https://www.whitehouse.gov/presidential-actions/proclamation-declaring-a-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak. Consequently, as Plaintiffs themselves

---

[9] Plaintiffs similarly would not be entitled to No-Fault Separation Pay under the EmPact Agreement because their termination of employment was the result of "acts of God", "disasters" and "any other cause beyond the control of Four Seasons". *Id.*

allege their employment terminated due to a national emergency, the express terms of the EmPact

Agreement provide they are not entitled to No-Fault Separation Pay.  Accordingly, as Plaintiffs

cannot, as a matter of law, demonstrate an actual breach of the EmPact Agreement resulting from

a failure to pay them such No-Fault Separation Pay, they cannot state a claim for tortious

interference and the Court should dismiss the Fifth Cause of Action against the Warner

Defendants.

### 2. Plaintiffs failed to comply with the C.A.R.E. dispute resolution procedure in the EmPact Agreement.

Plaintiffs have not alleged, nor can they allege, they satisfied a condition precedent to their

breach of contract claim -- compliance with any of the six-step C.A.R.E. claims resolution

procedure set forth in the EmPact Agreement.

Plaintiffs cannot establish a claim for breach of the EmPact Agreement where they have

failed to perform a condition precedent under that contract.  Such condition precedent is an act that

unless the condition is excused, must occur before a duty to perform under an agreement arises.

*Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.,* 86 N.Y.2d 685 (1996) (quotation

omitted).  An express condition precedent must be literally and exactly performed (*Id.*) and if a

party fails to satisfy a condition precedent, it is barred from claiming a breach of contract.  *See*

*Rooney v. Slomowitz,* 11 A.D.3d 864, 865 (3d Dept. 2004) (an obligation to perform under a

contract can be conditioned on the performance of a condition precedent); *Shandler v. Bauz,* 121

A.D.2d 619, 620 (2d Dept. 1986) (Plaintiff's failure "to satisfy a condition precedent precluded a

finding that the defendants breached the contract").

Notwithstanding Plaintiffs' Complaint allegations that they "materially performed their

contractual obligations" (Compl. at ¶ 212), they have not adhered to the detailed C.A.R.E. dispute

resolution procedure expressly required by the EmPact Agreement.  *See* Ortiz Decl. at ¶ 4, Exh.

D, pp. 4, 55-62.  In fact, Plaintiffs failed to comply with their contractual requirement to follow
*any* of the required steps of such procedure, including the arbitration agreement contained
therein.[10]   Accordingly, as Plaintiffs fail (and are unable) to allege they satisfied such condition
precedent under the EmPact Agreement, they cannot state a claim for breach of the EmPact
Agreement, and therefore, their tortious interference claim set forth in the Fifth Cause of Action
should be dismissed against the Warner Defendants.


## POINT III

### PLAINTIFFS' SIXTH CAUSE OF ACTION
### <u>SHOULD BE DISMISSED AGAINST DEFENDANT H. TY WARNER</u>

Plaintiffs' "alter ego" claim against H. Ty Warner should be dismissed because New York
does not recognize an "alter ego" claim as a separate, stand-alone cause of action.  *See Morris v.
New York State Dept. of Tax'n & Fin.*, 82 N.Y.2d 135, 141 (1993) ("an attempt of a third party to
pierce the corporate veil does not constitute a cause of action independent of that against the
corporation…."); *Network Enters., Inc. v. Realty Racing, Inc.*, No. 09-cv-4664, 2010 WL 3529237
at *4 (S.D.N.Y. Aug. 24, 2010) ("to the extent Plaintiff attempts to allege alter ego liability as an
*independent* cause of action, the claim fails without any need for further analysis") (emphasis in
original).

---

[10] Quite to the contrary, despite their contractual requirements, Plaintiffs brought their claims
relating to the termination of their employment in the instant lawsuit.  As the Court is aware, the
Warner Defendants and FSR separately have filed pending motions to compel arbitration, dismiss
class claims and stay this action.  *See* Dkt. Nos. 27 and 35.

## CONCLUSION

For all the reasons set forth herein, it is respectfully submitted the Warner Defendants' motion to dismiss the Complaint against the Warner Defendants, should be granted, in its entirety.

Dated: New York, New York
       December 5, 2022

                    **FREEBORN & PETERS LLP**

                    By:   */s/ Marc B. Zimmerman*
                       Marc B. Zimmerman
                       Kathryn T. Lundy
                    1155 Avenue of the Americas, 26th Floor
                    New York, NY 10036
                    (212) 218-8760

                    *Attorneys for Defendants Hotel 57 Services, LLC,*
                    *Hotel 57, LLC, Ty Warner Hotels & Resorts, LLC*
                    *and H. Ty Warner*

19