UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SELENA STALEY, VIVIAN HOLMES, and      Case No. 22-CV-6781 (JSR)
OLIVE IVEY, on behalf of themselves and
all others similarly situated,

         Plaintiffs,

     -- against --

FOUR SEASONS HOTELS AND RESORTS,
HOTEL 57 SERVICES, LLC, HOTEL 57, LLC,
TY WARNER HOTELS & RESORTS LLC,
and H. TY WARNER,

         Defendants,

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
HOTEL 57 SERVICES, LLC, HOTEL 57, LLC,
TY WARNER HOTELS & RESORTS LLC, and H. TY WARNER'S,
MOTION TO DISMISS THE AMENDED COMPLAINT**

RISMAN & RISMAN, P.C.
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-6400

BRUSTEIN LAW PLLC
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-3900

BROMBERG LAW OFFICE, P.C.
352 Rutland Road, #1
Brooklyn, New York 11225
(212) 248-7906



EXHIBIT
6

**TABLE OF CONTENTS**

*TABLE OF AUTHORITIES*.................................................................................................*ii*

*PRELIMINARY STATEMENT*.........................................................................................*1*

*STATEMENT OF FACTS*..................................................................................................*2*

*ARGUMENT*.......................................................................................................................*8*

   I.    LEGAL STANDARD ON MOTION TO DISMISS ..............................................8

   II.   PLAINTIFFS HAVE PROPERLY PLED CLAIMS FOR VIOLATIONS OF THE WARN ACTS..........................................................................................................9

      A.   No Exceptions to WARN Acts Apply ........................................................11

      B.   The Business Exception Does Not Apply ...................................................12

      C.   Individual Liability for Defendant H. Ty Warner ......................................14

   III.  PLAINTIFFS HAVE PROPERLY PLED A CLAIM FOR BREACH OF CONTRACT ...................................................................................................15

      A.   Plaintiffs have sufficiently alleged that the EmPact Agreement is between Plaintiffs and all Defendants ......................................................................15

      B.   Defendants frustrated and prevented Plaintiffs from complying with the C.A.R.E. resolution procedure in the EmPact.................................................18

      C.   Plaintiffs have adequately pleaded compliance with all conditions precedent ...........21

   IV.  PLAINTIFFS AGREE THAT THE CLAIM FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING IS SUBSUMED BY THE BREACH OF CONTRACT CLAIM..................................................................23

   V.   PLAINTIFFS HAVE PROPERLY PLED A CLAIM FOR ALTER-EGO LIABILITY AGAINST DEFENDANT H. TY WARNER ...............................................23

*CONCLUSION* ....................................................................................................................*26*

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H.A. Gen. Constr., Inc. v. N.Y. City Housing Auth.,*
    92 N.Y.2d 20 (1998) ........................................................................... 18

*Absolute Resols. Invs., LLC v. Citibank, N.A.,*
    No. 22 CIV. 2079 (VM), 2022 WL 17992199 (S.D.N.Y. Dec. 29, 2022) ............................ 23

*Arnold v. LME, Inc.,*
    537 F. Supp. 3d 1050 (D. Minn. 2021) ....................................................... 25

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................... 8, 21

*Barua v. Barua,*
    No. 14-CV-5107 MKB, 2015 WL 4925028 (E.D.N.Y. Aug. 18, 2015) ................................ 8

*Bell Atlantic Co. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................... 8

*Benson v. Enterprise Leasing Company of Florida,*
    6:20-CV-891 (M.D.Fla., Jan. 4, 2021) .................................................... 11, 12

Bolt Elec. v. City of New York, 53 F.3d 465, 469 (2d Cir.1995) ................................... 9

*Brass v. Am. Film Techs., Inc.,*
    987 F.2d 142 (2d Cir. 1993) ................................................................. 8

*Cummins Law Office, P.A. v. Norman Graphic Printing Co. Ltd.,*
    826 F.Supp.2d 1127 (D. Minn. 2011) ........................................................ 22

*In re Dewey & LeBoeuf LLP,*
    487 B.R. 169 (Bankr.S.D.N.Y. 2013) ........................................................ 13

*In re Dewey & LeBoeuf LLP,*
    507 B.R. 522 (Bankr. S.D.N.Y. 2014) ....................................................... 13

*Easom v. US Well Services, Incorporated,*
    37 F.4th 238 (2022) ........................................................................ 11

*Freeman v. Complex Computing Co.,*
    119 F.3d 1044 (2d Cir. 1997) .............................................................. 25

*Goldman v. Belden,*
    754 F.2d 1059 (2d Cir.1985) ................................................................. 9

*Hollowell v. Orleans Reg'l Hosp.*,
   217 F.3d 379 (5th Cir.2000) ............................................................................. 15, 25

*In re Jamesway Corp.*,
   235 B.R. 329 (Bankr. S.D.N.Y. 1999) ................................................................... 12

*Javier v. Beck*, 2014 WL 3058456, at *9 (S.D.N.Y. July 3, 2014) ............................ 26

*Jones v. Bock*,
   549 U.S. 199 (2007) ............................................................................................. 11

*Keiler v. Harlequin Ent.*,
   751 F. 3d 64 (2d Cir.2014) ..................................................................................... 9

*Kiernan v. Zurich Companies*,
   150 F.3d 1120 (9th Cir. 1998) ............................................................................. 21

*Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87 (1933) ...................... 18

*Kooleraire Serv. & Installation Corp. v. Bd. of Educ. of the City of N.Y.*,
   28 N.Y.2d 101, 320 N.Y.S.2d 46, 268 N.E.2d 782 (1971) .................................. 18

*Mendez v. Bank of America Home Loans Servicing, LP*,
   840 F.Supp.2d 639 (E.D.N.Y. 2012) .................................................................... 21

*Metra Industries, Inc. v. Rivanna Water & Sewer Authority, Inc.*,
   No. 3:12cv00049, 2013 WL 596064 (W.D. Va. Feb. 15, 2013) .......................... 21

*Mirage Ent., Inc. v. FEG Entretenimientos S.A.*,
   326 F. Supp. 3d 26 (S.D.N.Y. 2018) .................................................................... 26

*Morris v. New York State Dept. Tax'n & Fin.*,
   82 N.Y. 2d 135 ................................................................................................... 24

*Network Enterprises, Inc. v. Reality Racing, Inc.*,
   No. 09 CIV 4664 RJS, 2010 WL 3529237 (S.D.N.Y. Aug. 24, 2010) .................. 24

*Plasticsource Workers Comm. v. Coburn*,
   283 F. App'x 181 (5th Cir. 2008) ........................................................................ 25

*Scaffidi v. I.W. Indus., Inc.*,
   No. 05-CV-5746(JS) (WDW), 2007 WL 9706909 (E.D.N.Y. Apr. 16, 2007) ........ 25

*Spanos v. Skouras Theatres Corp.*,
   364 F.2d 161 (2d Cir.1966) (en banc) (Friendly, J.) .............................................. 18

*Sviridyuk v. BAC Home Loan Servicing, LP*,
   No. 3:11–cv–01107–SI, 2012 WL 174791 (D. Or. Jan. 20, 2012) ........................ 21

*In re Transcare Corp.*,
   614 B.R. 187 (Bankr. S.D.N.Y. 2020) .................................................................. 14

*Thielmann v. MF Global Holdings Ltd. (In re MF Global Holdings Ltd.)*, 481
   B.R. 268, 278 (Bankr.S.D.N.Y.2012) ................................................................. 14

*Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*,
   609 Fed. Appx. 972 (11th Cir. 2015) ................................................................. 11

*U.S. Bank, N.A. for Registered Holders of ML-CFC Commercial Mortgage Trust
   2007-7 v. Miller*, No. CV 12-5632, 2013 WL 12183652 (C.D. Cal. May 8,
   2013) ........................................................................................................................ 22

*Young v. Hunter*, 6 N.Y. 203, 207 (1852) ................................................................. 18

**Statutes**

N.Y. Worker Adjustment and Retraining Notification (WARN) Act, N.Y. Labor
   Law § 860, *et seq.* ................................................................................... *passim*

Worker Adjustment and Retraining Notification (WARN) Act, 29 U.S.C. §§
   2101–2109 ......................................................................................................... *passim*

**Other Authorities**

20 C.F.R. § 639.7(d) ................................................................................................. 12

20 C.F.R. § 639.9 ...................................................................................................... 12

20 C.F.R. § 639.4 (b) ................................................................................................ 10

12 N.Y.C.R.R. §921-1.1(f) ........................................................................... 10, 12, 13

29 U.S.C. §§ 2101–2109 ........................................................................................... 13

*Corbin on Contracts* § 947 ....................................................................................... 18

Fed. R. Civ. P. 9(c) ............................................................................................. 21, 22

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 25

Lord, Richard A., *Williston on Contracts* § 63:26 (4th ed. 2006) ............................ 18

**PRELIMINARY STATEMENT**

After working as loyal employees of the Four Seasons Hotel New York (the "Hotel") for many years, Plaintiffs, Selena Staley, Vivian Holmes and Olive Ivey, were dismayed to be furloughed, although they believed they would be brought back to work as quickly as possible with the Hotel reopening. Little did they know, Defendants would string them along for years, with representatives telling them that the Hotel would reopen as soon as possible, then providing them with various excuses for why the Hotel was not reopening claiming that Plaintiffs and those similarly situated are on an indefinite furlough to date, while simultaneously engaging in secret negotiations over whether the Hotel would reopen at all. *See Hotel 57 L.L.C., et al. v. FSR International Hotels Inc., et al.*, 22-CV-9331 (LLS), at Document 19,[1] annexed to the Declaration of Evan Brustein ("Brustein Decl."), as Exhibit 1.  Not only did Defendants fail to provide proper notice and payment under the WARN Act and the New York WARN Act (collectively, the "WARN Acts"), but Defendants incredibly maintained that the furloughs could last indefinitely without the Hotel owing the Plaintiffs and those similarly situated their contractually mandated No-Fault Separation Pay. Plaintiffs have plausibly alleged claims under the WARN Acts, breach of contract, and alter-ego liability, and accordingly, respectfully submit that Defendants' Hotel 57

---

[1]  In a filing on behalf of FSR International Hotels Inc., it is alleged that "Ty Warner ("Warner"), through his wholly owned companies, Hotel 57 L.L.C. ("Hotel 57") and 1260 BB Property, LLC … is attempting to avoid his commitment with respect to an arbitration selection process. Warner claims that Four Seasons Hotels Limited ("FSHL") and its affiliate, FSR International Hotels Inc. ("FSR" and collectively with FSHL, "Four Seasons"), "were terminated as managers of the Four Seasons Hotel New York ("FSNY") and the Four Seasons Resort The Biltmore Santa Barbara ("FSSB" and collectively with FSNY, the "Hotels") in March 2021 but have refused to vacate the Hotels. Warner's claims are false. Four Seasons properly disputed Warner's claims, and Warner has no contractual right to terminate the management agreements in light of that ongoing dispute." *See* Civil Docket Sheet 22-CV-9331, Document Number 19, at p. 5, annexed to the Declaration of Evan Brustein, at Exhibit 1.

Services LLC, Hotel 57 LLC, Ty Warner Hotels & Resorts LLC, and H. Ty Warner ("Defendants")[2] Motion to Dismiss Plaintiffs' Amended Complaint("Motion") should be denied.[3]

## STATEMENT OF FACTS

Beginning in approximately March 20, 2020, and continuing for 30 days thereafter ("the Furlough Date"), Plaintiffs and other similarly situated employees who were working at the Hotel were placed on furlough for an indefinite period of time and the furloughs/layoffs have extended for almost three years. Defendants failed to provide Plaintiffs and others similarly situated with proper and timely notices under the WARN Acts *See* FAC, ¶¶ 3, 4. Despite not complying with the WARN Acts, Defendants continued to prevent the Plaintiffs and others similarly situated from seeking other employment, stating that if they secured other jobs, they would no longer be entitled to their hard-earned No-Fault Separation Pay *See* FAC, ¶ 6. According to the EmPact Agreement between Defendants and each of the Plaintiffs and others similarly situated, the Agreement was for a duration of only one year, which automatically renewed as long as certain benchmarks did not occur, but if a permanent layoff occurred the EmPact Agreement would not be automatically renewed *See* FAC, ¶¶ 8, 9.

"On May 22, 2020, on Four Seasons Hotel New York letterhead, Rudy Tauscher, then general manager of the Hotel, wrote, "In the last communication, which came from People and Culture on May 1, 2020, we indicated that we were looking at a potential re-open date of June 15, 2020. Since that time, our owner, Ty Warner, has agreed to extend the complimentary housing for

---

[2] While Plaintiffs submit that Defendant FSR International Hotels Inc. ("FSR") is also liable for the claims at issue in the Complaint, as FSR has not moved to dismiss, Plaintiffs are not addressing FSR's underlying liability for these claims in this opposition.

[3] Having considered the arguments raised by Defendants with respect to the promissory estoppel claim, Plaintiffs agree to withdraw that claim.

the Health Care Professionals through June 30, 2020. In addition to that extension the social distancing guidelines and the stay-at-home orders still in place. Therefore, it is necessary to extend the suspension of regular hotel operations until July 15, 2020. We will advise if this date is to be revised or extended." *See* FAC, ¶ 198.

"On June 22, 2020, on Four Seasons Hotel New York letterhead, Rudy Tauscher, then general manager of the Hotel, wrote, "Dear Four Seasons Family...my last communication to you on May 22, 2020 indicated that we would be extending the Health Care Professionals complimentary housing through June 30, 2020. With June 30th right around the corner, I wanted to let you know that all Health Care Professionals will be leaving by June 30, 2020 and the program will discontinue. Upon departure of the Health Care Professionals, we will temporarily be suspending most of our hotel operations... Unfortunately, we will NOT be resuming normal hotel operations on July 15, 2020 as we had hoped." *See* FAC, ¶ 199.

"On December 24, 2020, on Four Seasons Hotel New York letterhead, Antoine Chajwan, then President Hotel Operations, America East for Four Seasons Hotels and Resorts, sent a letter to Plaintiffs and others similarly situated that Rudy Tauscher was resigning as General Manager of Four Seasons Hotel New York, effective January 23, 2021." *See* FAC, ¶ 202.

On June 25, 2021, the Hotel sent a memo to Plaintiffs and others similarly situated announcing that the Hotel would continue to remain closed as it would be undergoing substantial infrastructure and maintenance work, which was expected to last well into 2022 and they would not reassess reopening plans until early Spring 2022 and there was no timeline for completing the renovations and the work could take up to a year and a half. *See* FAC, ¶¶ 10, 11.

On June 25, 2021, no date was set for reopening the Hotel, but Defendants knew that it would not reopen within six months from that date *See* FAC, ¶ 13. On June 25, 2021, Elizabeth

Ortiz, the then Director of People & Culture for the Hotel led a Zoom meeting with the Plaintiffs and others similarly situated wherein the furloughed employees wrote complaints in the Zoom chat box about not being paid their No-Fault Separation Pay and their never-ending furlough status. *See* FAC, ¶¶ 226 – 228, 232 - 237. Rather than investigate the complaints, Ms. Ortiz responded that "we wouldn't be paying out that severance at this juncture, only because we do consider you to be furloughed, we do anticipate reopening, and we do anticipate recalling you to work once we do reopen." *See* FAC, ¶¶ 228. When Ms. Ortiz was questioned by the furloughed employees if what the Hotel was doing was legal, Ms. Ortiz responded "There is no limitations on how long employees can be on furlough. There are thoughts that there are timeframes on that, but from a legal perspective, there isn't a length of time." *See* FAC, ¶ 232. The furloughed employees tried to go over Ms. Ortiz's head by requesting a meeting be scheduled with ownership present, but Defendants refused to schedule such a meeting to hear the furloughed employees' complaints. *See* FAC, ¶ 238.

As Defendants announced on June 25, 2021 that Plaintiffs and others similarly situated would be laid off for over six months and at least an entire year, those layoffs were permanent with no right of recall since it was known that the furloughs would continue for more than a year and there was no ability to return to work for the duration of the EmPact Agreement *See* FAC, ¶ 14. Pursuant to the EmPact Agreement, Defendants placed Plaintiffs and others similarly situated on a permanent layoff with no right of recall on June 25, 2021, resulting in the termination of their employment *See* FAC, ¶ 15. Since June 25, 2021, in the approximately 18 months that have followed, Defendants have neither brought Plaintiffs and others similarly situated back to work, nor given any indication that the Hotel would be reopening ever, or that Plaintiffs or others similarly situated would be offered their jobs back *See* FAC, ¶ 17. Defendants failed to provide

4

Plaintiffs as well as others similarly situated with 90 days' advance written notice of their terminations of employment, as required under the NY WARN Act when there is a plant closing or mass layoff *See* FAC, ¶ 21. Defendants also failed to provide Plaintiffs as well as others similarly situated and terminated from their employment at that time, with 60 days' advance written notice of their terminations of employment, as required under the WARN Act when there is a plant closing or mass layoff *See* FAC, ¶ 22. Even though Defendants furloughed Plaintiffs in March 2020, the first time they claim to have provided a notice to their own employees was August 5, 2020. Staley "WARN" Notice attached to Elizabeth Ortiz Declaration, as Exhibit A, Civil Docket Sheet 22-CV-6781, at Document Number 52-1 ("Staley 'WARN' Notice").

Upon information and belief, Ty Warner made the decision to furlough the Plaintiffs for an indefinite period of time, leading to their no-fault termination, he made the decision to keep the Hotel from reopening since the furlough date, and he made the decision to tell the Plaintiffs and others similarly situated that the Hotel could not reopen because it was undergoing maintenance and renovations *See* FAC, ¶¶ 131, 132, 133.

Upon information and belief, Defendants Hotel 57 LLC, Hotel 57 Services LLC, Ty Warner Hotels & Resorts are controlled by Ty Warner, are dominated by Ty Warner, he exercises complete domination of the Warner Defendants, and he treated the Warner Defendants interchangeably, for example, allowing Hotel 57 Services LLC to operate under the assumed name for Hotel 57 LLC, Four Seasons Hotel, New York. FAC, ¶¶ 137, 138, 139, 140.

Upon information and belief, Defendants collectively had de-facto control of the decision to pay the No-Fault Separation Pay, were responsible for the employment practices at the Hotel, made the decision relating to the personnel policies, made the decision to refuse to open the Hotel so that Plaintiffs and others similarly situated could continue with their employment with the Hotel,

and instead chose to place Plaintiffs and others similarly situated on indefinite furlough leading to

the termination of employment of the Plaintiffs and others similarly situated FAC, ¶ 154.[4] Upon

information and belief, Defendants collectively were the decision-makers responsible for the

employment practice giving rise to the decision to keep the Plaintiffs and similarly situated

employees furloughed since the Furlough Date, resulting in their permanent layoff.  FAC, ¶ 155.

Upon information and belief, Defendants collectively were the decision-makers

responsible for the employment practice giving rise to the decision to keep the Plaintiffs and

similarly situated furloughed since the Furlough Date resulting in the termination of their

employment. FAC, ¶ 156. Upon information and belief, Defendants collectively were the decision-

makers responsible for failing to provide the Plaintiffs and others similarly situated with No-Fault

separation pay FAC, ¶ 157. Upon information and belief, Defendants collectively were the

decision-makers responsible for telling the Plaintiffs and others similarly situated that if they went

to work elsewhere during their furlough, they would be forfeiting their No-Fault separation pay

FAC, ¶ 170.

Under the WARN Acts, based upon Defendants repeated representations that Plaintiffs and

others similarly situated would be brought back to work, Defendants were required to give new

timely and proper WARN notices each time Defendants reasonably foresaw that an additional six-

month extension would be required FAC, ¶ 172. Even though the notice requirement was triggered,

Defendants failed to provide the required timely notice under the WARN Acts. FAC, ¶ 173.

As such, the extension of the furloughs by more than another six months required

Defendants to provide an additional 60-days' pay in damages, to compensate Plaintiffs and others

---

[4] Although alleged only upon information and belief in the Complaint, Defendant FSR
International Hotel Inc. LLC alleges in its dispute with Hotel 57 LLC that Ty Warner has refused
to reopen the Hotel.  See Exhibit 1, at pp. 5 - 6.

similarly situated for not giving them adequate time to look for other employment. FAC, ¶ 178.

On or about September 21, 2020, Plaintiffs and others similarly situated suffered an employment

loss under the WARN Acts and were owed 60-days' pay in damages under the WARN Acts. FAC,

¶ 179. Despite the extended furloughs, Defendants continued to maintain to Plaintiffs and others

similarly situated that their layoffs were only temporary. FAC, ¶ 180.  Defendants continued to

maintain to Plaintiffs and others similarly situated that they still had a right to recall and that their

layoffs were only temporary. FAC, ¶ 181. Despite these representations, the layoffs continued for

more than another six months. FAC, ¶ 182.

Defendants continued to fail to provide timely and proper WARN Notices in compliance

with the WARN Acts on or about March 20, 2020, on or about September 21, 2020, and on or

about March 22, 2021.  FAC, ¶ 185.  On or about March 20, 2020, on or about September 21,

2020, and on about March 22, 2021, pursuant to the WARN Acts, there were mass layoffs of at

least 25 employees, excluding part-time employees, constituting at least 33% of the employees at

the single site of the Hotel FAC, ¶ 186.  On or about March 20, 2020, on or about September 21,

2020, and on or about March 22, 2021, pursuant to the WARN Acts, there were plant closings,

which were the permanent or temporary shut-down of a single site of employment where the

shutdown resulted in an employment loss during a 30-day period where 25 or more employees,

excluding any part time employees, wherein there was an effective cessation of production or of

the work performed by a unit FAC, ¶ 187.

On or about March 20, 2020, on or about September 21, 2020, and on or about March 22,

2021, there were mass layoffs of at least 50 employees, excluding part-time employees,

constituting at least 33% of the employees at the single site of the Hotel.  FAC, ¶ 188. On or about

March 20, 2020, on or about September 21, 2020, and on or about March 22, 2021, there were

plant closings, which were the permanent or temporary shut-down of a single site of employment where the shutdown resulted in an employment loss during a 30-day period where 50 or more employees, excluding any part time employees, wherein there was an effective cessation of production or of the work performed by a unit. FAC, ¶ 189. The Hotel's temporary shutdowns triggered the notice requirement because the minimum number of terminations of employment and/or layoffs were exceeding six months or reductions in work hours constituted an employment loss under the WARN Acts. FAC, ¶ 190. Defendants were mandated to provide WARN Notices pursuant to the WARN Acts to Plaintiffs and others similarly situated. FAC, ¶ 191. None of the Plaintiffs or similarly situated employees received 90 days' advance written notice of their terminations of employment, as required under the NY WARN Act. FAC, ¶ 192. None of the Plaintiffs or similarly situated employees received 60 days' advance written notice of their terminations of employment, as required under the WARN Act. FAC, ¶ 193.

## ARGUMENT

### I.   LEGAL STANDARD ON MOTION TO DISMISS

To survive a motion to dismiss, a complaint must contain enough factual matter that, if taken as true, states a claim to relief that is plausible on its face. *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, a court must accept as true all factual allegations in the complaint, as well as in documents attached to the complaint, and it must draw inferences in the light most favorable to the plaintiff. *Barua v. Barua*, No. 14-CV-5107 MKB, 2015 WL 4925028, at *2 (E.D.N.Y. Aug. 18, 2015); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). The Court's function

8

on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). To survive a motion to dismiss, a complaint need not contain detailed or elaborate factual allegations, and instead requires only allegations sufficient to raise entitlement to relief above a speculative level. *Keiler v. Harlequin Ent.*, 751 F. 3d 64, 68 (2d Cir.2014). Construing, as the Court must, all facts presented by Plaintiffs in a light most favorable to them, the Court cannot say that Plaintiffs "can prove no set of facts in support of [their] claim which would entitle [them] to relief." Bolt Elec. v. City of New York, 53 F.3d 465, 469 (2d Cir.1995). Accordingly, Defendants' Motion should be denied in its entirety.

## II.   PLAINTIFFS HAVE PROPERLY PLED CLAIMS FOR VIOLATIONS OF THE WARN ACTS

As an initial matter, Plaintiffs alleged multiple violations of the WARN Acts, based upon the furloughs extending beyond 6 months, beyond 12 months, and beyond 18 months. In their Motion to Dismiss, Defendants have not claimed that Plaintiffs have not properly pled multiple violations of the WARN Acts. *See generally* Def. Motion.  Rather, Defendants have claimed that their August 5, 2020 single notice was sufficient.  As Defendants have made no argument with respect to WARN Notices beyond the first 6-month period, at a minimum, Plaintiffs claims for violations of the WARN Acts for the furloughs extending more than 12 months and more than 18 months must survive Defendants' Motion to Dismiss. *See* FAC ¶¶ 169 – 172.[5]

---

[5] Defendants did the opposite of what the WARN Acts are supposed to protect workers and communities from—and instead fed more uncertainty to the lives of the employees of the Hotel. Beginning in March 20, 2020, the Plaintiffs and those similarly situated were placed on furlough for an indefinite period of time, and have not been brought back to work since that time. *See* FAC, ¶ 3.  Initially, Defendants claimed that there was a decision to suspend the operations of the Hotel due to Covid-19, but thereafter Defendants claimed that the decision to continue to shut down the operations of the Hotel was the result of other factors, although Defendants failed to provide the mandated notice to the Plaintiffs and others similarly situated in compliance with the WARN Acts.

Defendants claim that the August 5, 2020 "WARN" notice states that the "layoffs include approximately 464 employees, including yourself and **are still expected to be temporary**. . ." (Staley "WARN" Notice; emphasis added), however, Defendants fail to acknowledge that after this alleged notice, no other WARN Notice has ever been provided.

The WARN Act mandates that "An employer who has previously announced and carried out a short-term layoff (6 months or less) which is being extended beyond 6 months due to business circumstances (including unforeseeable changes in price or cost) not reasonably foreseeable at the time of the initial layoff is required to give notice when it becomes reasonably foreseeable that the extension is required. . ." 20 C.F.R. § 639.4 (b) (emphasis added). Similarly, under the New York WARN Act,   An employer that previously announced and carried out a short-term layoff of six (6) months or less which is being extended beyond six (6) months due to business circumstances (e.g., changes in price or cost) not reasonably foreseeable at the time of the initial layoff must give notice required under the Act and this Part as soon as it becomes reasonably foreseeable that an extension is required . . ." 12 N.Y.C.R.R. §921-3.1 (emphasis added).

As for the initial WARN notice, Plaintiffs submit that they have also properly pled those claims. *See* FAC, ¶¶ 1, 3-7, 10-14, 17-21, 23, 25-27, 29-31, 34, 36-38, 41, 141-156, 158-159, 167-

---

See FAC, ¶ 25. In a February 2021 memo, Defendants stated that once the pandemic conditions improved and demand increased, their goal was to confirm a reopening date, but that did not happen. See FAC, ¶ 211. By June 25, 2021, however, Defendants were no longer willing to confirm a reopening date and communicated to Plaintiffs and those similarly situated stating: "Good Afternoon Four Seasons New York Family... At this time we will continue to remain closed, as the Hotel will be undergoing substantial infrastructure and maintenance work that is expected to last well into 2022. We will reassess our reopening plans in the early Spring of 2022 based upon the progress of this work. Upon reopening, we are committed to recalling employees, as business levels rebound." FAC, ¶¶ 216, 217. The last time that Plaintiffs heard from Defendants was a memo sent in November 2021, referring back to the June 25, 2021 meeting, confirming that there was no information to provide as to when the Hotel would be reopening, and upon information and belief have sent no additional memos about their employment status or the status of the purported renovations. FAC, ¶ 26.

192, 194-232, 234, 238-246, 250, 260-263, 265, 279, 281, 283, 285-296. Defendants do not claim that they gave advance notice of the layoffs or that they provided the Plaintiffs and those similarly situated with required WARN payments. Rather, Defendants only argue that an exception to their notice requirements should apply based upon a purported unforeseen business circumstance. *See* Motion at 12-13. Such arguments are not only unsupported by the facts alleged in the Complaint, but they are also premature.

Defendants acknowledge in their Motion that the WARN Acts apply to the employees working at the Hotel who were placed on Furlough in March 2020. *See* Motion at 13. However, Defendants' arguments regarding the exception under the WARN Acts are premature because "generally, the existence of an affirmative defense will not support a motion to dismiss." *Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 609 Fed. Appx. 972, 976 (11th Cir. 2015) (not for publication; internal citations and quotes omitted). "Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract." *Jones v. Bock*, 549 U.S. 199, 215 (2007).

## A. No Exceptions to WARN Acts Apply[6]

---

[6] While Defendants have not alleged that the natural disaster exception applies, even if they had, such an argument would fail. *Easom v. US Well Services, Incorporated*, 37 F.4th 238 (2022) established that "COVID-19 does not qualify as a natural disaster under the WARN Act's natural-disaster exception." *See also Benson v. Enterprise Leasing Company of Florida*, at *4. ("Defendants' facilities or staff didn't disappear overnight, suddenly wiped out. Instead, COVID-19 caused changes in travel patterns and an economic downturn, which affected Defendants—so the natural disaster defense doesn't apply . . .")

Since the FAC does not establish facts sufficient to establish any of the exceptions under the WARN Acts, the Motion based upon any exception must be denied. "**[T]he employer bears the burden of proof** to show that the requirements for an exception have been met, i.e. when the employer asserts a defense in mitigation or exemption from the requirements of the Act or this part, **the employer must provide documentation in support of the claimed exception**. In all circumstances [including the unforeseen business circumstance], the employer must provide as much notice as possible in advance of the plant closing, mass layoff . . ." 12 N.Y.C.R.R. § 921-6.1 (emphasis added). The Defendants have the burden of proof to show that an exception under the WARN Acts has been met. 20 C.F.R. § 639.9.

In *Benson v. Enterprise Leasing Company of Florida,* 6:20-CV-891 (M.D.Fla., Jan. 4, 2021), the U.S. District Court for the Middle District of Florida denied defendants' motion to dismiss under the federal WARN Act, holding that the WARN Act does not waive the notice requirement [for the unforeseeable business circumstances], but merely softens it: employers must "give as much notice as is practicable…"

**B. The Business Exception Does Not Apply**

The only case cited by Defendants in support of their claim that the "business exception" applies does not support the Defendants' position. On the contrary, *In re Jamesway Corp.*, 235 B.R. 329 (Bankr. S.D.N.Y. 1999), the Court held that the Defendants violated the WARN Act, granted Summary Judgment to Plaintiffs, and denied Defendants motion for Summary Judgment because Defendants failed to provide proper notice under the WARN Act. An employer that fails to provide the brief statement for the shortened notice or the other information required by 20 C.F.R. § 639.7(d) cannot rely on the defenses afforded by the exceptions. *In re Jamesway Corp.*, 235 B.R. at 339-40.

12

According to Defendants, they claim they provided a WARN Notice that states in pertinent part: "This is to inform you that due to unforeseen business circumstances and the continued major economic downturn stemming from the COVID-19 virus pandemic and consequent travel and tourism disruptions outside the employer's control the Four Seasons Hotel New York will continue your temporary layoff which began on 3/21/2020 for an as yet undetermined number of months…." Staley "WARN" Notice. This notice fails to provide the brief statement for the shortened notice, and also fails to provide why this notice was provided months after the Plaintiffs and those similarly situated were placed on furlough.[7] Defendants have failed to explain why they waited more than four months from the March 2020 layoffs to provide their employees with notice. Whether that delay qualifies under the business exception, which Plaintiffs submit that it cannot, is at best, a factual question to be decided at trial, and not on a Motion to Dismiss.

Further, "[w]hen interpreting these Exceptions, the Court must construe the Exceptions narrowly because the Acts are remedial." *In re Dewey & LeBoeuf LLP*, 507 B.R. 522, 530 (Bankr. S.D.N.Y. 2014), citing *Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir.1997) (explaining that exceptions to remedial legislation such as the WARN Act are construed narrowly.)

The WARN Act, codified at 29 U.S.C. §§ 2101–2109, provides for three exceptions to the full sixty-day requirement, but employers must still provide notice as soon as practicable, and these defenses are fact intensive and are thus not conducive to the motion to dismiss stage. *In re Dewey*

---

[7] Notably, although Defendants attached the Staley "WARN" Notice, they chose to reference Vivian Holmes' "WARN" Notice, which misleadingly claims that she was furloughed on July 14, 2020. *See* Def. Motion, at p. 11. Under the WARN Acts, an employee suffers an employment loss when their layoff exceeds six months or they have had a reduction in hours of more than 50% during each month of any six-month period. *See* 29 U.S.C. §§ 2101(a)(6); *see also* 12 N.Y.C.R.R. §921-1.1(f) As Ms. Holmes had a reduction in hours of more than 50% beginning in March of 2020 and continued for more than six months, her WARN Notice was due at that same time as those other employees who were completely laid off in March 2020. *See* Declaration of Vivian Holmes, dated February 6, 2023, at ¶¶ 2 - 3.

*& LeBoeuf LLP*, 487 B.R. 169, 175 (Bankr.S.D.N.Y. 2013) (citing *Thielmann v. MF Global Holdings Ltd. (In re MF Global Holdings Ltd.)*, 481 B.R. 268, 278 (Bankr.S.D.N.Y.2012). Whether Defendants' decision to place their employees on indefinite furlough without the proper notice due to an "unforeseeable business circumstance" is a fact-specific inquiry and should not be decided in a motion to dismiss. *See In re Transcare Corp.*, 614 B.R. 187, 209 (Bankr. S.D.N.Y. 2020) (internal citations and quotes omitted).

These exceptions contained in the WARN Acts balance the feasibility of providing notice with the recognition that these employment decisions affecting such a large group of employees are rarely undertaken overnight without any discussion and planning. Although Defendants claim that they provided timely and sufficient notice to their employees on August 5, 2020,[8] Defendants have offered no explanation for their delay in providing notice to their employees from the March 2020 furloughs, until the August 5, 2020 notice. Plaintiffs submit that this fact alone would be sufficient for the Court to find in favor of Plaintiffs on a Motion to Dismiss.

Contrary to Defendants assertions, Plaintiffs have adequately stated a claim under both WARN Acts for Defendants' multiple violations of the WARN Acts. The allegations in the FAC, accepted as true for this Motion, do not support Defendants' position. As such, Defendants cannot meet its burden of establishing the unforeseen business circumstance exception as a matter of law.

### C.  Individual Liability for Defendant H. Ty Warner

Plaintiffs have alleged liability for Defendant H. Ty Warner for the WARN Acts Claims pursuant to alter-ego liability. Defendants have only moved to dismiss the WARN Acts claims against Defendant H. Ty Warner on the basis that the WARN Acts do not consider individuals to be an "employer." However, Defendants have made no arguments about Plaintiffs' claim that

---

[8] Plaintiffs do not concede that Defendants provided notice to each of the Plaintiffs and those similarly situated on August 5, 2020.

14

Defendant H. Ty Warner should be held liable for the WARN Acts claims pursuant to alter-ego liability. As discussed *infra* in in Point V, courts have held individuals liable for WARN Act violations pursuant to alter-ego liability. *See Hollowell v. Orleans Reg'l Hosp.,* 217 F.3d 379, 385 (5th Cir.2000). Since that is not even at issue in this motion, and Defendants cannot address it for the first time in their reply, the Court should also deny their motion to dismiss on this point as well.

### III. PLAINTIFFS HAVE PROPERLY PLED A CLAIM FOR BREACH OF CONTRACT

#### A. Plaintiffs have sufficiently alleged that the EmPact Agreement is between Plaintiffs and all Defendants

Defendants Hotel 57, LLC, Ty Warner Hotels & Resorts, LLC, and H. Ty Warner rely entirely upon the following paragraph on the stand-alone signature page on page 60 of a 61-page document, entitled "U.S Empact[SM] Employee Handbook," known as the "EmPact Agreement," for their claim that Plaintiffs are solely in privity with Defendant Hotel 57 Services, LLC:[9]

**EMPACT[SM]**

**My complete personal contract with Four Seasons Hotel New York**

The Hotel 57 Services, L.L.C (hereafter referred to as Four Seasons Hotel New York) recognizes my valuable services as an employee and agrees … to provide with the benefits described in my EmPactSM. In return, I … agree to abide by the principles, goals and policies in this EmPact[SM].

However, the contract is ambiguous, at best, as to whether Hotel 57 Services, LLC is Plaintiffs' sole employer and the contract itself and parol evidence demonstrate that Plaintiffs are in privity with and jointly employed by multiple defendants.

---

[9] Defendants actually point to a similar 62-page EmPact agreement, but as already indicated to this Court, *see* ECF # 44, at FN 2, p. 5, the 61-page version is the version that Plaintiffs were given and signed.

Here are just some of the indications in the contract that Plaintiffs were led to believe they were working directly not only for Hotel 57 Services, LLC, but for the Four Seasons Hotel New York, which according to Defendants is owned by Hotel 57, LLC:

- Each page of the EmPact Agreement bears a header referring to the document as a "**FOUR SEASONS HOTELS & RESORTS**" "**EMPACT**$^{SM}$";   See EmPact attached to Declaration of Evan Brustein, dated December 6, 2022, as Exhibit A ("EmPact").

- On the cover page of the EmPact, Defendants indicate that the contract is not with Hotel 57 Services, LLC, but with "**Four Seasons Hotel New York**" and nowhere is Four Seasons Hotel New York defined until page 60 of the document; See EmPact at p. 1;

- On page 2 of the EmPact, employees were introduced to "**OUR FOUR SEASONS TREE**" representing "the corporate graphic design of Four Seasons Hotels and Resorts"—the group of companies for which Plaintiffs were now working;

- On page 2, employees were also advised that "In no way should this contract be considered as the only source of information regarding your employment."

- On page 5, J. Allen Smith, the President and CEO of Four Seasons Hotels and Resorts welcomed employees to "Four Seasons Hotels and Resorts" "the best hospitality company in the world" and advised them that they were "now part of an elite group of more than 48,000 employees worldwide who are dedicated to and known for their pursuit of excellence";

- On page 6, Mehdi Eftekari, General Manager, welcomed each employee "as a member of the Four Seasons Hotel New York and the Four Seasons family!";

- On page 7, the EmPact advises that "Many years ago, Four Seasons set out to create a corporate mission statement that would guide the actions of everyone in the organization."

- Also on page 7: "We have chosen to specialize within the hospitality industry, by offering only experiences of exceptional quality. Our objective is to be recognized as the company that manages the finest hotels, resorts and residence clubs wherever we locate."

- On page 8, employees are advised that they "may visit www.fourseasons.com to learn more about the Company, hotel locations and Residences."

- On page 9, employees are introduced to the "Four Seasons Hotel New York," which is defined not as "Hotel 57 Services, LLC," but as "one of New York's tallest hotels offering travelers a distinctive hotel experience in the heart of mid-town Manhattan."

16

- ■ On pages 9-10, "Four Seasons Hotel New York" is further described as consisting of the building and its various rooms, fixtures, and furnishings.

- ■ On page 11, each employee is told: "**I AM A FOUR SEASONS EMPLOYEE**"; and

- ■ Also on page 11, employees are told that "Four Seasons takes great care to select the best person for every job. You have been chosen as an employee of the Four Seasons Hotel New York team because of your skills, knowledge and experience, and above all your desire to contribute positively to the working atmosphere and willingness to meet the needs of our guests, residents, partners and other employees."

Thus, for 59 pages, employees are told that they work for "Four Seasons" and "Four Seasons Hotel New York," the former of which is described as consisting of the international Four Seasons Company and the latter of which is described as consisting of the famous New York hotel and its various rooms, fixtures, and furnishings. It is only on page 60 of the EmPact that Defendants seek to change the definition of "Four Seasons Hotel New York" to consist not of the company that has title to the hotel, Hotel 57, LLC, but the similarly named company, Hotel 57 Services, LLC.

Parol evidence, which is in the public record and of which this Court may take judicial notice, further supports Plaintiffs' position that they were jointly employed by not only Hotel 57 Services, LLC, but by Hotel 57, LLC and FSR International Hotels Inc., as well. Records from the New York Secretary of State show that from 1996-2000, Defendant Hotel 57, LLC went by the assumed name "Four Seasons Hotel" and from 2000 to the present, Hotel 57, LLC has gone by the name "Four Seasons Hotel, New York" *See* New York State, Department of State, Division of Corporation, Entity Assumed Name Histories, annexed to Brustein Decl., as Exhibit 2 ("Assumed Name Histories"), at 2.  Similarly, since 1993, Defendant FSR International Hotels Inc. has also gone by the name "Four Seasons Hotel, New York" See Assumed Name Histories, at 1.  But the Secretary of State records indicate that Hotel 57 Services, LLC does not go by any assumed name. *See* Assumed Name Histories, at 3.

17

Moreover, Plaintiffs were assigned work emails with the domain name "FourSeasons.com," which is registered to "Four Seasons Hotels Limited." Thus, both the contract itself and the parol evidence demonstrate that Plaintiffs worked for and were in privity with Defendants and not solely with Hotel 57 Services, LLC. *See* Internet Corporation for Assigned Names and Numbers (ICANN) search results annexed to Brustein Decl. as Exhibit 3.

### B. Defendants frustrated and prevented Plaintiffs from complying with the C.A.R.E. resolution procedure in the EmPact

The doctrine of "prevention" stands for the general proposition that "a party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition." *Kooleraire Serv. & Installation Corp. v. Bd. of Educ. of the City of N.Y.*, 28 N.Y.2d 101, 106–07, 320 N.Y.S.2d 46, 268 N.E.2d 782 (1971); *see also Corbin on Contracts* § 947 ("To one who is sued for nonperformance of his promise it is a defense if he can prove that his performance was prevented or substantially hindered by the plaintiff."); Lord, Richard A., *Williston on Contracts* § 63:26 (4th ed. 2006) ("[T]here is generally in a contract subject to either an express or an implied condition an implied promise not to prevent or hinder performance of the contract."). The New York Court of Appeals has described prevention as follows:

> A condition precedent is linked to the implied obligation of a party not to "do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Thus, it is a "well-settled and salutary rule that a party cannot insist upon a condition precedent, when its non-performance has been caused by himself."

*A.H.A. Gen. Constr., Inc. v. N.Y. City Housing Auth.*, 92 N.Y.2d 20 (1998) (quoting *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87 (1933); *Young v. Hunter*, 6 N.Y. 203, 207 (1852)); *accord Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 169 (2d Cir.1966) (en banc)

(Friendly, J.) ("'One who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as such a condition. He will not be permitted to take advantage of his own wrong, and to escape from liability for not rendering his promised performance by preventing the happening of the condition on which it was promised.'" (quoting 3A Corbin, *Contracts* § 767, at 540 (1960))).

Defendants are falsely claiming that Plaintiffs "do not, and cannot, allege they adhered to the detailed C.A.R.E. dispute resolution procedure expressly required by the EmPact Agreement." This procedure appears in the EmPact as follows:

C.A.R.E. works as follows:

**STEP 1:** I will discuss the matter informally with my immediate supervisor.

**STEP 2:** If STEP 1 does not solve the problem, I will file a written complaint with the Human Resources Office within **14 days** after the event or problem occurred. At my request the Director of Human Resources may assist me in preparing my complaint.

**STEP 3:** The Director of Human Resources will conduct an investigation concerning my written complaint, including a meeting with me, within **7 days** after filing.

**STEP 4:** The Director of Human Resources will issue a written decision to me within **7 days** after the close of the investigation.

**STEP 5:** If I am dissatisfied with the written decision in STEP 4, I will appeal to the General Manager within **14 days** after STEP 4. The General Manager will meet with me and give me a written decision on my appeal within **14 days** after our meeting.

**STEP 6: MEDIATION/ARBITRATION.** If I am not satisfied with the General Manager's written decision in STEP 5, and the complaint is based on one of the following types of claims as defined by law:
**a.** employment discrimination;
**b.** harassment as it relates to my employment;
**c.** a wage or hour violation;

19

> **d.** or termination of my employment from the Hotel (including "constructive discharge", but not a permanent layoff); then I must submit my complaint to be heard by an independent mediator/arbitrator unless I have chosen to opt out of the mediation/arbitration provisions by following the opt-out procedure provided on page 61.

*Id.* at pg. 54.

Defendants' claims are contradicted by the Zoom meeting that is quoted in the Amended Complaint. The dispute procedures set forth above begin with a discussion with an immediate supervisor, and then the filing of a written complaint with the Human Resources Office, which then contemplates an investigation by the Director of Human Resources and elevation to the General Manager. But as set forth in the Complaint, most of the hotel operations were suspended, and the General Manager of the Hotel resigned in December 2020. *See* FAC, ¶¶ 199, 202.

On June 25, 2021, Ms. Ortiz, the Director of People & Culture for the Hotel led a Zoom meeting with the Plaintiffs and others similarly situated wherein the furloughed employees wrote complaints in the Zoom chat box about not being paid their No-Fault Separation Pay and their never-ending furlough status. *See* FAC, ¶¶ 226 – 228, 232 - 237. Rather than investigate the complaints, Ms. Ortiz responded that "we wouldn't be paying out that severance at this juncture, only because we do consider you to be furloughed, we do anticipate reopening, and we do anticipate recalling you to work once we do reopen." *See* FAC, ¶¶ 228. When Ms. Ortiz was questioned by the furloughed employees if what the Hotel was doing was legal, Ms. Ortiz responded "There is no limitations on how long employees can be on furlough. There are thoughts that there are timeframes on that, but from a legal perspective, there isn't a length of time." *See* FAC, ¶ 232. The furloughed employees tried to go over Ms. Ortiz's head by requesting a meeting be scheduled with ownership present, but Defendants refused to schedule such a meeting to hear the furloughed employees' complaints. *See* FAC, ¶ 238.

Either way, the evidence shows that Defendants frustrated and prevented Plaintiffs' use of the "C.A.R.E. dispute resolution procedure."

### C.  Plaintiffs have adequately pleaded compliance with all conditions precedent

Under Rule 9(c), "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." *See also Mendez v. Bank of America Home Loans Servicing, LP*, 840 F.Supp.2d 639, 647 (E.D.N.Y. 2012) (even in the wake of *Iqbal*, "[w]ith regard to contract claims in particular, Rule 9(c) of the Federal Rules of Civil Procedure provides that '[i]n pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred' "). This is a liberal pleading standard. *See Kiernan v. Zurich Companies*, 150 F.3d 1120, 1124 (9th Cir. 1998) ("[A]lthough Kiernan did not specifically allege that he signed a waiver, he did claim that the parasailing accident occurred 'while the policy was in full force and effect.' For the policy to be in 'full force and effect,' Kiernan must have satisfied all of the conditions precedent. This general statement is an adequate averment under the loose guidelines of Rule 9(c)"); *see also Metra Industries, Inc. v. Rivanna Water & Sewer Authority, Inc.*, No. 3:12cv00049, 2013 WL 596064, *3 (W.D. Va. Feb. 15, 2013) ("[The complaint] affirmatively states that '[a]ny and all applicable and enforceable conditions precedent under [Contracts A and B] and applicable law to ... commencing this action have occurred or been performed.' The court is convinced that such allegations are sufficient to satisfy Rule 9(c)'s liberal pleading standard and, thus, withstand a motion to dismiss"); *Sviridyuk v. BAC Home Loan Servicing, LP*, No. 3:11–cv–01107–SI, 2012 WL 174791, *3 (D. Or. Jan. 20, 2012) ("Defendants argue that Plaintiff's allegation that she 'performed all conditions precedent to Defendant BAC's obligations under the agreement,' is conclusory and should be disregarded. Rule 9(c), however, permits parties to plead conditions

precedent generally"); *Cummins Law Office, P.A. v. Norman Graphic Printing Co. Ltd.*, 826 F.Supp.2d 1127, 1129 (D. Minn. 2011) ("[T]he Federal Rules of Civil Procedure expressly permit generalized pleading of compliance with conditions precedent.... And here, Cummins has alleged that '[a]ny conditions precedent to [its] right to demand performance by [Norman] have been performed.' This will suffice" (internal citations omitted)).

In *U.S. Bank, N.A. for Registered Holders of ML-CFC Commercial Mortgage Trust 2007-7 v. Miller*, No. CV 12-5632, 2013 WL 12183652 (C.D. Cal. May 8, 2013), the plaintiff argued that in a counterclaim for breach of contract, the defendants had not alleged with specificity that a condition precedent had been fulfilled and had not used the language found in Rule 9(c) that "all conditions precedent have occurred or been performed." Instead, the defendants "alleged that they 'fully performed' their obligations under the Settlement Agreement, and that U.S. Bank's claims against them—predicated on alleged Settlement Defaults—are 'baseless' and 'frivolous.'" *Id.* at *4 (footnotes omitted). The court held that "While not as clear or direct as they might be, these allegations suffice to put U.S. Bank on notice of defendants' claim that they satisfied all conditions precedent to the release provision taking effect, and to state a plausible claim for relief. An allegation that defendants fully performed their obligations implies that they were not guilty of a Settlement Default, as one of their obligations was to refrain from engaging in conduct that constituted a default. This is sufficient under the liberal standard set forth in Rule 9(c). *See Kiernan*, 150 F.3d at 1124 (finding that a 'general statement [that the contract was in effect] is an adequate averment under the loose guidelines of Rule 9(c)')." *Id.* (footnotes omitted).

Here, similarly, Plaintiffs' allegation that they "materially performed their contractual obligations" (FAC at ¶ 347), coupled with the Defendants' frustration and prevention of making any internal complaints and disregard of the complaints made during the Zoom meeting that

Defendants themselves called, shows that Plaintiffs more than adequately pleaded the fulfillment of conditions precedent and the futility of following the "C.A.R.E. dispute resolution procedure." This is especially true, since Defendants had dismantled the very system that they are claiming that Plaintiffs should have used, by eliminating the very individuals to whom Plaintiffs were supposed to complain and from whom Plaintiffs were supposed to seek resolution. *See* FAC, ¶¶ 198, 199, 202, 226 – 228, 232 – 238.

## IV.   PLAINTIFFS AGREE THAT THE CLAIM FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING IS SUBSUMED BY THE BREACH OF CONTRACT CLAIM

Having considered Defendants' arguments with respect to the breach of implied covenant of good faith and fair dealing, Plaintiffs agree that the "implied covenant claim is subsumed within its breach of contract claim." *Absolute Resols. Invs., LLC v. Citibank, N.A.*, No. 22 CIV. 2079 (VM), 2022 WL 17992199, at *10 (S.D.N.Y. Dec. 29, 2022). Plaintiffs do not oppose the Court dismissing the breach of implied covenant of good faith and fair dealing cause of action as a separate claim. But as the facts alleged in breach-of-implied-covenant section of the complaint directly address the breach-of-contract cause of action, Plaintiffs respectfully request that the Court consider the two causes of action as one combined claim incorporating the factual allegations of the breach of implied covenant into the breach of contract claim, or in the alternative, permit Plaintiffs to amend the complaint to conform it as one unified cause of action.

## V.   PLAINTIFFS HAVE PROPERLY PLED A CLAIM FOR ALTER-EGO LIABILITY AGAINST DEFENDANT H. TY WARNER

Plaintiffs have properly pled a claim for alter-ego liability against Defendant H. Ty Warner. Defendants have only moved to dismiss the alter-ego claim based upon the argument that alter-ego liability is not an independent cause of action. While Plaintiffs agree that alter-ego can only

be alleged in conjunction with other causes of action, alter-ego has been brought as a form of liability for the other underlying causes of action in the Complaint.

In support of their motion to dismiss the alter-ego claim, Defendants have only cited to two cases, neither of which supports their argument.  First, *Morris v. New York State Dept. Tax'n & Fin.*, 82 N.Y. 2d 135, involved an attempt to tax an individual shareholder because there was no tax liability for the corporate entity.  In *Morris*, the Court found that where there was no underlying liability for the corporation, there could be no liability for its individual shareholder, which is not the case herein.    The other case relied on by Defendants, *Network Enterprises, Inc. v. Reality Racing, Inc.*, No. 09 CIV 4664 RJS, 2010 WL 3529237 (S.D.N.Y. Aug. 24, 2010), is quoted out of context.  While it does state that "to the extent Plaintiff attempts to allege alter ego liability as an *independent* cause of action, the claim fails without any need for further analysis. (*See* FAC ¶¶ 83–88 (stating that Plaintiff's "fourth claim for relief" is "alter ego" liability).)," the Court's analysis of alter ego liability does not end there.  Rather, the Court proceeds to assess "whether Plaintiff can successfully pierce the corporate veil in order to hold Defendants personally liable for the default judgment against Reality Racing". *Network Enterprises, Inc.*, 2010 WL 3529237, at *4. In fact, both cases relied upon by Defendants actually confirm that New York recognizes alter ego liability, just not when all other causes of actions are dismissed.  "Nevertheless, a court will pierce the corporate veil if the "facts and equities" of a situation justify doing so. *Morris,* 82 N.Y.2d at 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157." *Network Enterprises, Inc.*, 2010 WL 3529237, at *4.

Notably, Defendants have not moved to dismiss the alter-ego claim for failure to adequately plead the necessary elements, as Plaintiffs have sufficiently alleged that Defendant H. Ty Warner used the Hotel 57 LLC, Hotel 57 Services LLC and Ty Warner Hotels and Resorts

24

LLC as his alter-ego. *See* Defendants' Motion, at p. 21.[10]  "[T]o pierce the corporate veil under New York law, a plaintiff must prove that "(1) [the owner] ha[s] exercised such control that the [corporation] has become a mere instrumentality of the [owner], which is the real actor; (2) such control has been used to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff." *Id.* (internal quotation omitted). *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1052 (2d Cir. 1997).  Since it is not disputed by Defendants that the Complaint properly makes out the elements of alter-ego, the only question is if the Complaint has other claims, sufficiently pled, which allow alter-ego liability.  For the reasons argued, *supra*, Plaintiffs have properly pled the above-mentioned claims in the Complaint.

With respect to the WARN Act, Courts have found individuals can be liable for violations of the WARN Act pursuant to alter-ego liability. "[T]his Court has previously found that natural persons may be held indirectly liable for statutory WARN Act damages under an alter-ego theory." *See Hollowell,* 217 F.3d at 385 (affirming judgment imposing liability for WARN Act damages on three natural persons because jury found that the individuals were the alter egos of the employer under Louisiana law). *Plasticsource Workers Comm. v. Coburn*, 283 F. App'x 181, 186 (5th Cir. 2008); *see also Arnold v. LME, Inc.*, 537 F. Supp. 3d 1050 (D. Minn. 2021) ("To state claim against corporation's individual shareholder under veil-piercing theory, a plaintiff need only present allegations that, if true, would establish one or more factors of the applicable alter-ego test and that put defendant on notice that plaintiff plans to assert a veil-piercing theory. Fed. R. Civ. P. 12(b)(6).") A court in the Eastern District of New York has even applied the Tenth Circuit test for piercing the corporate veil when considering individual liability under the WARN Act. *Scaffidi v. I.W. Indus., Inc.*, No. 05-CV-5746(JS) (WDW), 2007 WL 9706909, at *3–4 (E.D.N.Y. Apr. 16,

---

[10] *See* FAC, at ¶¶ 134 – 140, 198, 369 – 390.

2007).  As the New York WARN Act was only created in 2009 and there is no case law directly on point, courts have often used similar analysis in comparing the WARN Act and the New York WARN Act.  Accordingly, Plaintiffs have properly pled alter-ego liability for the WARN Acts.

As for the breach of contract claim, "New York law permits a plaintiff to 'pierce the corporate veil' and sue a non-signatory for breach of contract when the non-party is an alter ego of one or more signatories." *Javier v. Beck*, 2014 WL 3058456, at \*9 (S.D.N.Y. July 3, 2014)." *Mirage Ent., Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 34 (S.D.N.Y. 2018).

As Plaintiffs have properly pled claims for the WARN Acts and the breach of contract, all of which allow alter-ego liability, alter-ego liability has not been alleged as a stand-alone claim, and the motion to dismiss it should be denied.

## CONCLUSION

Respectfully, this Court should deny Defendants' Motion to Dismiss the Amended Complaint, and grant such other or further relief as the Court deems appropriate.

Dated: February 7, 2023
New York, New York

Respectfully Submitted,

*/s/ Evan Brustein*
Evan Brustein
One of Plaintiffs' Attorneys

Attorneys for Plaintiffs
RISMAN & RISMAN, P.C.
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-6400

BRUSTEIN LAW PLLC
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-3900

BROMBERG LAW OFFICE, P.C.

26

352 Rutland Road, #1
Brooklyn, New York 11225
(212) 248-7906