O7BCstaO

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   SELENA STALEY, VIVIAN HOLMES,
     and OLIVE IVEY, on behalf of
 4   themselves and all others
     similarly situated,
 5
                    Plaintiffs,
 6
                v.                          22 Civ. 6781 (JSR)
 7
     FSR INTERNATIONAL HOTEL INC.
 8   d/b/a FOUR SEASONS HOTELS AND
     RESORTS, HOTEL 57 SERVICES,
 9   LLC, HOTEL 57, LLC, TY WARNER
     HOTELS & RESORTS LLC, and H.
10   TY WARNER,

11                  Defendants.

12   ------------------------------x
                                            New York, N.Y.
13                                          July 11, 2024
                                            2:30 p.m.
14
     Before:
15
                        HON. JED S. RAKOFF,
16
                                            District Judge
17

18

19

20

21

22

23

24

25
```

O7BCstaO

1                                    APPEARANCES

2    BRUSTEIN LAW PLLC
          Attorneys for Plaintiff
3    BY:   EVAN C. BRUSTEIN
          -and-
4    BROMBERG LAW OFFICE PC
     BY:   BRIAN L. BROMBERG
5          -and-
     RISMAN & RISMAN PC
6    BY:   MAYA RISMAN

7    SMITH GAMBRELL & RUSSELL LLP
          Attorneys for Defendants
8    BY:   JAMES J. BOLAND
          MARC ZIMMERMAN
9          -and-
     VENABLE LLP
10   BY:   KATHRYN LUNDY
          -and-
11   STOKES WAGNER ALC
     BY:   PAUL E. WAGNER

12

13

14

15

16

17

18

19

20

21

22

23

24

25

O7BCstaO

1          (Case called; appearances noted)

2          THE COURT:  Good afternoon.  We're here on the motion

3     for class certification.  Because a question was raised about

4     the adequacy of the individual plaintiffs, I requested that

5     they be here, and I have a few questions for them.  So we'll

6     call them up in order.

7          So Ms. Staley, if you would come to the witness box.

8      SELENA STALEY,

9          called as a witness by the Court,

10         having been duly sworn, testified as follows:

11         THE DEPUTY CLERK:  Can you state your name and spell

12    is it slowly for the record.

13         MS. STALEY:  Selena Staley, S-e-l-e-n-a S-t-a-l-e-y.

14         THE COURT:  Ms. Staley, you're one of the individual

15    plaintiffs in this case.  What's your understanding of what

16    this case is about?

17         MS. STALEY:  My understanding is that even though I'm

18    not a lawyer, the contract has --

19         THE COURT:  Don't brag.

20         MS. STALEY:  Our contract has been breached, and

21    there's been a violation of the WARN Act.

22         THE COURT:  You previously were actively working for

23    the Four Seasons.  In what capacity?

24         MS. STALEY:  I worked for the Four Seasons as a

25    reservations agent.

O7BCstaO

1          THE COURT:  What is your understanding of the role

2     that you're being asked to play in this lawsuit?

3          MS. STALEY:  My role would be as a class

4     representative and I will act on behalf of the class.

5          THE COURT:  You can step down.  Thank you very much.

6          (Witness excused)

7          Let's have Ms. Holmes.

8     VIVIAN HOLMES,

9          called as a witness by the Court,

10         having been duly sworn, testified as follows:

11         THE DEPUTY CLERK:  State your name and spell it for

12    the record.

13         MS. HOLMES:  Vivian Holmes.  V-i-v-i-a-n, Holmes,

14    H-o-l-m-e-s.

15         THE COURT:  So, one of the greatest American judges of

16    all times, who was Oliver Wendell Holmes.  Are you of relation?

17    No, okay.  Well, that's too bad.

18         So what's your understanding of this lawsuit?

19         MS. HOLMES:  My understanding of this lawsuit is our

20    WARN Act was violated and it was a breach of contract.  As far

21    as I feel that we're a good representative of a class action

22    and we want to -- well, I want to represent the class.

23         THE COURT:  What is your understanding of what is the

24    basis for saying that the WARN Act can be contract or violated?

25         MS. HOLMES:  Well, our EmPact that we signed -- being

O7BCstaO

```
1   that we've been permanently laid off, we were supposed to get

2   severance pay and that did not happen.

3           THE COURT:  And your position is you feel you've been

4   effectively terminated, even though it hasn't been couched in

5   that way?

6           MS. HOLMES:  Absolutely.

7           THE COURT:  Many of these cases wind up in settlement.

8   Supposing a proposal was made to your counsel by the defendant

9   as a possible settlement, what do you take to be your role in

10  evaluating that?

11          MS. HOLMES:  I'm not understanding that.  But would it

12  be -- it would be for the entire --

13          THE COURT:  This is purely hypothetical, but supposing

14  the defense said, look, we don't think we're liable, but we're

15  willing to settle this case for 20 cents on the dollar, and

16  your counsel came to you and they might say a hypothetical of

17  we think we can do a lot better than that, although there is a

18  risk that we won't succeed at all.  What do you understand to

19  be your role in evaluating that proposal?

20          MS. HOLMES:  Well, I want to represent the class, I

21  want to represent all.  So I guess counsel -- my attorneys

22  would explain to me what it is that's at hand and then I will

23  be able to make a proper decision.

24          THE COURT:  So you would make, even though they would

25  explain it and would undoubtedly have a recommendation one way
```

O7BCstaO

1    or the other, you understand that your role is to be the

2    ultimate decider of whether to agree or not to agree on the

3    settlement on behalf of the class as a whole?

4           MS. HOLMES:  Absolutely.

5           THE COURT:  Thank you.  You may step down.

6           MS. HOLMES:  Thank you, your Honor.

7           (Witness excused)

8           THE COURT:  Finally, Ms. Ivy.

9     OLIVE IVEY,

10        called as a witness by the Court,

11        having been duly sworn, testified as follows:

12          THE DEPUTY CLERK:  State your name and spell it for

13   the record.

14          MS. IVEY:  My name is Olive, O-l-i-v-e, Ivey, I-v-e-y.

15          THE COURT:  So there was a complaint filed on behalf

16   of you and your co-plaintiffs and the class as a whole.  Have

17   you read that complaint?

18          MS. IVEY:  I have, your Honor.

19          THE COURT:  And did you go over it with your lawyers?

20          MS. IVEY:  I did, your Honor.

21          THE COURT:  Have they kept you up to date on what's

22   been going on with the case?

23          MS. IVEY:  Yes, sir.

24          THE COURT:  Is there anything that has occurred so far

25   where you are in disagreement with your lawyers?  Don't tell me

O7BCstaO

```
 1    the substance, just say yes or no.

 2                MS. IVEY:  No, sir.

 3                THE COURT:  Let me put to you the question I put to

 4    Ms. Holmes, but let me change it slightly.

 5                So the other side makes a proposal for a settlement,

 6    your attorney says, well, it's not a great settlement, but I

 7    think, under all the facts and circumstances, I recommend you

 8    approve it.  In my hypothetical, Ms. Staley says, yeah, let's

 9    do it, and Ms. Holmes says, no.  What would you then do to

10    evaluate the situation?

11                MS. IVEY:  I would speak with counsel, I would have

12    them explain in details and in simple terms the pros, the cons,

13    and the probabilities --

14                THE COURT:  You're assuming, of course, that lawyers

15    can ever speak in simple terms.  Let's assume that

16    hypothetical.

17                MS. IVEY:  Yes, sir.

18                And I would weigh all those and then make an informed

19    decision that would benefit the -- that would be to the benefit

20    of the entire class.

21                THE COURT:  Okay.  Very good, you may step down.

22                MS. IVEY:  Thank you, sir.

23                (Witness excused)

24                THE COURT:  I am satisfied that these three ladies are

25    adequate class representatives.  I've looked at, of course, the
```

O7BCstaO

1    challenges that were raised by defense counsel, but judging not

2    only their responses to my questions, but also their demeanor

3    and their alertness, I think they are adequate.

4         So let's now turn to the many other issues that are

5    before the Court.  I think it makes sense, even though the

6    burden is on the plaintiff, to hear first from defense counsel.

7    I've read all your papers, so I don't want to hear all the

8    points you've raised.  Why don't you pick out maybe either one

9    or two points that you think are your strongest and/or ones

10   that you want to say more about that were in your papers,

11   things you want to elaborate further and I'll be happy to hear

12   you on that.

13        MR. BOLAND:  Thank you, Judge.  I do have, and I know

14   I don't want to repeat, I have about 20 slides.  Now, some of

15   them will be irrelevant at this stage, but I was wondering if I

16   have the Court's permission to show these in a Power Point to

17   the Court.

18        THE COURT:  Sure.

19        MR. BOLAND:  I'll give copies to plaintiffs' counsel.

20        THE COURT:  I would have been disappointed if you

21   didn't bring a Power Point.

22        MR. BOLAND:  Can't go anywhere without a Power Point,

23   your Honor.

24        Your Honor, there are a couple of things that I do

25   want to emphasize because they have either been, I think, ships

O7BCstaO

1    in the night passing between the parties in their briefs or I

2    would like to respond to things that plaintiffs have said in

3    their reply.

4              THE COURT:  And that's why I wanted to give you that

5    opportunity.

6              MR. BOLAND:  One of those is that -- and perhaps this

7    is not something that the Court necessarily is interested in,

8    but it has been consistent in what I've seen in their papers

9    and in their reply.  That's the idea, that issues relating to

10   class certification have somehow already been decided because

11   either your Honor denied the petition to compel arbitration,

12   which was affirmed by the Second Circuit, or you denied, for

13   example, a motion to strike class allegations.

14             THE COURT:  So the only thing that has been decided

15   that relates to class certification is some of your papers or

16   some parts of your papers could be read as re-raising, as a

17   matter of law, some of the standing issues that I've already

18   resolved.  But I think, overall, of course, you're absolutely

19   right, that deciding that there is sufficient allegations to

20   withstand a motion to dismiss is a totally separate

21   determination from determining whether class certification has

22   been shown sufficient to warrant certifying class.  So I accept

23   that point.

24             MR. BOLAND:  One of those points, Judge, that I want

25   to emphasize at the beginning is the idea that each of these

O7BCstaO

| | |
|---|---|
| 1 | plaintiffs are bound by a class action waiver.  This was raised |
| 2 | in the motion to compel arbitration and to dismiss the class |
| 3 | claims.  Your Honor, as I read the order, denied it without |
| 4 | prejudice to it being rated class certification. |
| 5 | THE COURT:  And that's exactly right, but I didn't see |
| 6 | anything on that point that you raised, other than sort of a |
| 7 | conclusory statement from the one of Four Seasons people saying |
| 8 | what his intent was or what he understood was the intent of the |
| 9 | relevant provision.  That's not particularly of any weight. |
| 10 | MR. BOLAND:  Judge, if I could submit that I think |
| 11 | that for the person who inserted this in and was involved with |
| 12 | the drafting of it, and your Honor wanted some further evidence |
| 13 | on that -- |
| 14 | THE COURT:  Yeah.  So let's get to the basic law.  To |
| 15 | the extent a contract provision is unambiguous, then what was |
| 16 | in the mind of either side in drafting it is, as a matter of |
| 17 | law, irrelevant.  It's only where there is sufficient ambiguity |
| 18 | that you must go to extrinsic evidence.  Even where you go to |
| 19 | extrinsic evidence, it's hard for this Court to see why much |
| 20 | weight should be attributed to a wholly conclusory statement |
| 21 | such as the one offered on this point by your declarant. |
| 22 | MR. BOLAND:  I will accept the Judge's conclusion, |
| 23 | obviously, the Court's conclusion.  I think that in the context |
| 24 | of the motion to strike where your Honor denied it without |
| 25 | prejudice, saying that benefit from discovery, plaintiffs never |

O7BCstaO

1    took that discovery and we went to the person who was actually

2    responsible for drafting it to provide the only evidence that

3    is now in the record about it.   Perhaps I'm wrong, Judge, but I

4    had read the denial of the motion to strike as saying, based on

5    the pleadings and the plain language, you weren't going to make

6    a definitive ruling on that.   I took that as a level of

7    ambiguity.   Perhaps that's my error.

8              THE COURT:   I don't exclude that.   I'm not saying

9    that's what I am bound by or intended I never said those words

10   about ambiguity, but I agree that that was an inference that

11   you could reasonably draw.

12             So now, am I right that the only evidence you've

13   brought on this point is the self-serving, after-the-fact

14   declaration of, in one sentence of your declarant, why should I

15   treat that as more than so obviously selfserving as not to be

16   entitled to any weight?

17             MR. BOLAND:   I would suggest, your Honor, that that's

18   testimony that's under oath --

19             THE COURT:   He never said something like, here's the

20   details of how we got there, I made clear orally to the other

21   side that this was not just for arbitration, we're talking

22   about the waiver of class actions and whether it applies across

23   the board; right?

24             MR. BOLAND:   Correct, and --

25             THE COURT:   And I didn't see anything in the way of

O7BCstaO

1    detail along this line.  He just said, oh, of course I meant it

2    to be across the board.  I'm not saying that's irrelevant.  I'm

3    saying, why should I give it any meaningful weight?

4         MR. BOLAND:  I won't belabor the issue, Judge.  I do

5    think there is a paragraph in there about why it was entered

6    into, what it was intended to do.  They asserted it for

7    everything that was in court.  I have that slide if you wanted

8    to see it again, I don't know if the Judge needs to see it

9    again, and I think that that evidence is testimony under oath.

10        THE COURT:  The fact that it's under oath, I'm not

11   saying that he's lying, I'm saying that I'm not sure it

12   provides me with much in the way of the detail.  For example,

13   if he were here, one might ask him, since it is commonplace to

14   have a waiver of class action in arbitration agreements, but

15   much rarer to have it in all purposes, unless that's specified,

16   why didn't you be more specific and write into the contract

17   this includes not only arbitration, but includes everything

18   else?  So I put that question and he might have an answer, he

19   might not have an answer, but it's not before the Court

20   presently.

21        MR. BOLAND:  Well, just very quickly, again, Judge, I

22   really don't want to belabor the issue, to be honest with you.

23        If we could pull up slide 4, please, and just show

24   what the declarant said.  Because she did state that it was

25   intended to be and why it was in court.  Maybe not to the

O7BCstaO

1    Court's satisfaction.  She would have been here, obviously.

2              THE COURT:  Again, just to make sure we understand the

3    legal issue here, and I'll take a look at this in just one

4    second, the ultimate question is not what anyone intended, the

5    ultimate question is:  What did the contract, reasonably read,

6    provide?  If the contract is unambiguous, we don't even reach

7    any extrinsic evidence, not just one you're offering, but any

8    extrinsic evidence.  But assuming, as I think you had a right

9    to infer, that the Court at least was contemplating the

10   possibility that there might be some ambiguity here, and I

11   surely reserve the issue until now, then the question still is:

12   So far as what the parties intended, did they reasonably

13   express that intention in the contract?  If they didn't, then

14   it's still irrelevant.

15              So, just to give a hypo off the top of my head, if the

16   contract said the following disputes will be submitted to

17   arbitration and will not be subject to any class claim, the one

18   possible reading of that is that because of the structure of

19   the hypothetical sentence I just gave, that it only applies in

20   arbitration, but in my hypothetical, someone says no, no, no, I

21   drafted this and maybe my grammar wasn't as perfect as it

22   should have been, but I meant the last part of that sentence to

23   apply across the board and not just to arbitration.  So

24   anything about X, Y, and Z was not subject to a class claim,

25   whether in arbitration or otherwise.

O7BCstaO

1          The issue for me is not whether that was the intent.

2     The question for me is whether that intention was sufficiently

3     expressed that, even though there is possible ambiguity, the

4     more reasonable reading is what the person intended.

5          So you see the distinction I'm making?

6          MR. BOLAND:  I do see the distinction you're making,

7     Judge.  To be honest with you, when I read the class action

8     waiver, because it says in court -- it specifically says

9     whether brought in court or in arbitration, I would have read

10    that as being fairly clear and unambiguous about that, but

11    obviously the Court has to read it the way the Court reads it.

12         THE COURT:  Let's take a look at your slide.

13         MR. BOLAND:  This was the statement of Debbie Brown,

14    who was the VP of human resources at the time, who actually was

15    the person who did the drafting.

16         We also can get probably the agreement, the provision

17    itself, which is in our brief.  I took the slide out with the

18    provision itself --

19         THE COURT:  Just tell me --

20         (Indiscernible crosstalk)

21         MR. BOLAND:  We quoted the provision on page 16 of our

22    brief.

23         THE COURT:  It reads:  "To the extent permitted by

24    law, I understand — I being the employee — that if I do not opt

25    out of the mediation arbitration provision of care, I waive my

O7BCstaO

 1  right to have my claim submitted as part of a class or

 2  collective action in court, whether I initiate a claim or I am

 3  invited to join a class or collective action, and I waive my

 4  right to have my claim submitted as part of a class

 5  arbitration."

 6          So your argument is that the placement of that first

 7  part of the sentence shows that it is of broader reach because,

 8  otherwise, it would just be a repetition of the second part of

 9  the sentence and a contract should be read to give meaning to

10  every part.

11          MR. BOLAND:  That would be part of it, Judge.  The

12  other part of it would be --

13          THE COURT:  So you notice that doesn't turn on the

14  intent.

15          MR. BOLAND:  That doesn't turn on the intent.  I don't

16  disagree with your Honor --

17          THE COURT:  -- perfectly good argument, but you see

18  why I'm not finding what you submitted particularly important

19  for that discussion.

20          MR. BOLAND:  Fair enough, Judge, because I will tell

21  you when I read it, as I first got it, I said it's pretty

22  clear, it's pretty clear.  It's court or an arbitration.  And

23  remember that the petition to compel arbitration, and

24  particularly the plaintiffs' resistance of that, is that that

25  care procedure had a delineation.  Some claims go to

O7BCstaO

```
1    arbitration, some claims don't and they have to go to court.
2    So when you go through that care procedure, those are the six
3    steps that go before you file a lawsuit or arbitration.  It's
4    talking about the care provision, which covers both.  Some
5    might go to court, some might go to arbitration.  You have this
6    following it that says whether it's in court or whether it's in
7    arbitration, it's not part of a class action.
8            THE COURT:  So I don't want to diminish that argument.
9    I was more narrowly focusing on I don't think this declaration
10   from Ms. Brown particularly adds anything to that, when I had
11   in my original opinion indicated there might be issues on
12   discovery.  What I had in mind more of would be things like,
13   and I specifically said to so and so -- let's say this was a
14   contract which was negotiated, this one really wasn't, but you
15   understand such and such is the case and, in my hypothetical,
16   the other person says, yes, I understand it.  That's the kind
17   of thing that would have been highly relevant, but I don't
18   think what you'd submitted is particularly weighty on the
19   issue, but I don't want you to think I don't think there's
20   still an issue here — there is.  Go ahead.
21           MR. BOLAND:  Another issue that I did want to talk
22   about, Judge, because you had mentioned something earlier about
23   you wanted to readdress standing issues.  I thought I heard
24   that.
25           THE COURT:  Yeah.
```

O7BCstaO

1          MR. BOLAND:  And I don't think there's been an

2     Article III standing issue raised in the case.  I mean, we just

3     had the motions --

4          THE COURT:  Right.  And I misunderstood.

5          MR. BOLAND:  Fair enough.  I do think Article III

6     standing is a threshold issue here because, as the Supreme

7     Court has held, standing is not dispensed in gross, you have to

8     have standing all through a case, and you have to have

9     Article III standing, every plaintiff, every class member for

10    every claim sought and every form of relief sought.

11          I wanted to highlight, because I think, Judge, there

12    are facts that the Court was not aware of.  One of the facts

13    that the Court wasn't aware of, it wasn't in the complaint and

14    there would have been no vehicle to raise it with the Court,

15    was the fact that Hotel 57 Services LLC, the party that employs

16    all these people — I know everybody says they work for the Four

17    Seasons, that's the hotel — they work for us.  They've been

18    paying people.  They've been paying people, post the date of

19    the alleged termination, significant sums of money.

20    Originally, because there was a New York City statute — city

21    rule or ordinance, I don't know how to best describe it here,

22    I'm from Chicago — that required them to pay --

23          THE COURT:  So, my wife's from Chicago.

24          MR. BOLAND:  Oh, really?

25          THE COURT:  Yeah, but I don't hold that against you.

O7BCstaO

1    Go ahead.

2             MR. BOLAND:  They were required to pay $500 per week

3    to currently furlough people, in other words, people who were

4    on furlough who hadn't been fired.  They were still employed,

5    but on furlough.  They started doing that in October 2021.

6    Now, that's four months after the plaintiffs say they were

7    terminated, that we terminated them, but we paid.  And then,

8    after those payments expired --

9             THE COURT:  Maybe we're talking about different

10   payments here, but at least some of the payments, weren't they

11   recorded as severance payments?

12            MR. BOLAND:  Yeah, ABP put in a code.  If we had

13   Ms. Ortiz here or somebody you wanted to hear from them, they

14   could explain, but they were only paid to currently employed

15   people.  They had to put in some code for the payment.  They

16   weren't --

17            THE COURT:  But why isn't that, in the absence of

18   someone who isn't here, why isn't that -- you say it was a

19   mistake, in effect, a typographical mistake.  Why isn't there a

20   genuine dispute of fact over whether or not it was a mistake or

21   whether it was a recognition that they were owed severance pay?

22            MR. BOLAND:  Not everybody got them, number one.  And

23   Ms. Ortiz did submit a declaration, Judge, where she explained

24   that they were paid to currently employed people on furlough,

25   first for a period of a year or so those people got $15,000.

O7BCstaO

Then the Hotel 57 Services LLC voluntarily extended that for a
whole bunch of people, including Ms. Staley, who continues to
get the $500 per week to this day, I think she's getting a
check today, another check today.

What I'm suggesting, Judge, is that there's a number
of reasons why --

THE COURT:  So you could take the subway home.

MR. BOLAND:  And the Court didn't know about this
earlier, it wasn't in the complaint, there wasn't a vehicle to
raise it.  We have raised it for purposes of class
certification because it has a lot of effects on a lot of
different requirements.  One of them is Article III standing.

What I want to suggest, Judge, is we should look at
this and see how it affects just Ms. Staley, let alone other
class members.  Let's remember, again, as you mentioned, Judge,
we don't bear a burden here, the defendants don't bear a
burden, the plaintiffs do, and that is to show everything,
including Article III standing.

So let's go to slide 6, if we could.

Now this was a supplemental interrogatory response
that is an exhibit that has been submitted to your Honor, it
was attached to my declaration, it was used at the plaintiffs'
depositions, exhibit 28 I'm told, and it was identifying the
damages.  Not that the plaintiffs calculated them, I don't know
who calculated this, but these were the damages identified for

O7BCstaO

```
1    Ms. Staley.  The no-fault separation pay at the time was
2    $22,000.  I think in the calculation that we don't think is
3    valid that was submitted with class certification, it might be
4    a little bit less than that, it might be a little bit more, but
5    it's around that amount.  And then they identified $17,667 WARN
6    Act damages.  They claim for some reason that you have to keep
7    giving WARN Act notices once you've given one — you don't.  We
8    have to probe behind the pleadings and see what the law is, but
9    let's take that.
10           So we have $22,000 and $17,667 in WARN Act.
11           If we could go to the next slide, if we could, slide
12    7, Eric.  It's on here.  I'm sorry.  I can't see.
13           THE COURT:  There are two different questions here, at
14    least if I understand what you're arguing.  To the extent
15    you're arguing that some of the plaintiffs in effect remain
16    current employees on furlough because they've been receiving,
17    even though it was denominated severance, it was really not
18    severance pay, that seems to me to be a question going to the
19    legal merits of their claim, whether they in fact have been
20    terminated or not.
21           So, for standing purposes, a merits question does not
22    deprive someone of standing, that the Supreme Court, as
23    recently as 2022 in the case of *Federal Election Commission v.*
24    *Cruz,* 596 U.S. 289, stated:  "For standing purposes, we accept
25    as valid the merits of plaintiffs' legal claims."
```

O7BCstaO

```
1          Now, the other point you may be making is that one of
2     the individual plaintiffs is not an adequate representative
3     because she no longer has any interest.  That's a different
4     issue.  But I don't think the first issue is one that is really
5     a standing issue.  I think whether or not they've been in fact
6     terminated or just furloughed is a central issue, maybe the
7     central issue in this case, but for standing purposes, they
8     assert that, as a matter of fact in law, they have been
9     terminated.  I think they've instated enough to give them
10    standing, even though they may not prevail on the merits.
11         MR. BOLAND:  So let me decouple two concepts there.  I
12    do agree with you that the fact that we have been paying them
13    as a current employee, and they've been accepting those
14    payments for, you know, a long time, is indeed a merits issue
15    or a fact that goes to the merits issue that the jury will have
16    to consider to determine whether their allegations of having
17    been terminated in June of 2021 are valid, I agree with you on
18    that, it's a merits issue.  This is a different issue.  This is
19    just the payments themselves, irrespective of why they got
20    them.  This is just the fact that they have been given money by
21    Hotel 57 Services LLC that in the case of Ms. Staley eliminates
22    her injury in fact.
23         THE COURT:  So I understand that distinction.  What
24    about the other two?
25         MR. BOLAND:  Ms. Ivey was an exempt employee who did
```

1    not get the payments.  She did not get them.  She didn't fall

2    under the original definition of the law and was not a person

3    who fell into the category of the folks that they continued to

4    pay for whatever reason.

5         Ms. Holmes got the payments for a year or so, up to

6    about $15,000.

7         So we have people with staggered -- Ms. Holmes is not

8    alone.  There's many people in her boat.

9         THE COURT:  For purposes of class certification, they

10   don't need to prove that there's more than one adequate

11   representative.  I'm not expressing any view on any issue

12   today, this is just exploring things.  But let's assume for the

13   sake of argument that Ms. Staley is no longer qualified as an

14   adequate representative because she had no interest.  So what?

15   So that still leaves two other class representatives.

16        MR. BOLAND:  I would suggest, your Honor, that this is

17   not an adequacy issue.  It is the requirement under *Spokeo* and

18   other cases that every member of the class, every plaintiff and

19   every member of the class has to have Article III standing for

20   each claim asserted and each form of damages --

21        THE COURT:  So why isn't that just a matter of how we

22   define the class?  So, for example, you make a point that I

23   think has some plausibility — although, I want to hear from

24   your adversary — that the request is the class's "former

25   employees," and that that raises problems as to who's covered

1    and who's not covered, et cetera.  But isn't that easily solved

2    just by taking out the word "former"?

3            MR. BOLAND:  And I have a slide on that, actually,

4    Judge.  And that had to do with the failsafe classes, which I

5    wasn't going to address --

6            THE COURT:  That's where it comes up.

7            MR. BOLAND:  Yeah.

8            THE COURT:  My only point is that I'm not bound by

9    their definition.  If they have shown that there is a legally

10   definable class, we can just divide it.

11           MR. BOLAND:  I don't disagree with the fact that the

12   Court can't modify a class definition.  The question is

13   whether -- and it's discretionary because you don't have to.

14           THE COURT:  So unless there was before me evidence

15   that the overwhelming punitive members of this class had

16   already been paid the full amount of what would have been their

17   severance pay, absent that, assuming I agree with you as to

18   Ms. Staley, why shouldn't I simply define the class as all

19   members of the class, all former employees who have not

20   received their full severance pay or something like that?

21           MR. BOLAND:  I think that raises an answer to

22   inability issue, Judge, I really do.  I don't know how anyone

23   could understand, any class member is going to understand,

24   "What is my no-fault separation payment?"

25           THE COURT:  Isn't that something that could be

O7BCstaO

1   determined?  We're talking here, this is unlike some class

2   actions where we don't know who are the employees or how much

3   they have or have not paid.  That's all a matter of your

4   records.  So, couldn't we just ascertain that fairly easily and

5   then eliminate any person who doesn't fit the criteria?  So the

6   class would consist of Mr. Jones, Ms. Jones, Mr. Smith,

7   Ms. Smith, Mr. Brown, Ms. Brown and so forth, all of whom could

8   be easily determined by your own records to fit the class

9   definition.  Then, if there were a Ms. Staley who didn't fit

10  it, she wouldn't get the notice.

11          MR. BOLAND:  And so, I think that raises a number of

12  questions.  What you're talking about hypothetically is

13  metaphysically possible, I assume.  I think there's a number of

14  issues here.  One is, plaintiffs don't have what I would say is

15  a credible or admissible calculation of the damages either for

16  no-fault separation pay or for the WARN Act violations.  They

17  never got an expert — we did — to rebut anything that they

18  said.

19          THE COURT:  I appreciate that fact, but I think a

20  related fact you mentioned is they offered an attorney's

21  declaration on that issue and there's an argument that that

22  attorney's declaration doesn't qualify for that kind of thing.

23          My question to you is — let's be practical about it —

24  isn't that simply a matter of looking at the relevant records?

25  Now, my law clerk could do that, even I could do it, although

O7BCstaO

 1    I'd much rather entrust it to my law clerk.

 2          MR. BOLAND:  So, the no-fault separation pay

 3    calculation is set forth in the EmPact agreement, and that is a

 4    formula from which I would presume data within the Hotel 57

 5    Services LLC owned by Four Seasons' system which could generate

 6    the data to do that.  Then there would be a calculation that

 7    would have to be done, someone would have to do that.

 8          The amount of money that has been paid to these

 9    people, absolutely.  We have that, and I believe we put

10    Ms. Ortiz -- it was Ms. Ortiz attached that and verified it to

11    her declaration that she submitted to you.  That is all there.

12          Then we have questions of when we get that done, do we

13    have numerosity, even have numerosity?

14          THE COURT:  So let's assume that if we did all that,

15    let's assume two possibilities.  Let's assume, one, that

16    there's still more than 40 people who have not been paid their

17    full severance pay, under prevailing Second Circuit law,

18    doesn't that satisfy the numerosity requirement?

19          MR. BOLAND:  It might.  It's not a hard-and-fast test,

20    Judge.

21          THE COURT:  It's a rule of thumb, so to speak.

22          MR. BOLAND:  I agree it's a rule of thumb, so --

23          THE COURT:  Let's say there were only two people

24    instead of 40 people, then probably they wouldn't have

25    satisfied numerosity.  So isn't this just a question of it

O7BCstaO

doesn't sound to me like -- it sounds to me like the

2  calculation we're talking about could be done in less than a

3  day based on the records that exist, and we would know the

4  answer.

5          MR. BOLAND:  As I said, I think that someone starting

6  from scratch in a lawsuit where discovery hadn't closed, all

7  that good stuff, right, probably could have taken the

8  discovery --

9          THE COURT:  I understand that if you're saying, and I

10  think it's not without force, A, it's their burden to satisfy

11  all of Rule 23; and B, they had the opportunity and chose not

12  to do it because they didn't do what I just described, it would

13  be so easy to do, and therefore they lose because they haven't

14  met that, and that's a possibility.  On the other hand, I like

15  to, in my selfserving way, think of myself as a practical

16  judge, and if it's something that could be done so easily, why

17  not do it and find out?

18          MR. BOLAND:  So, to be clear, the parameters, we'd

19  have to know the parameters, obviously, because despite their

20  testimony today — and they're all wonderful people, I like all

21  of them — their deposition testimony on the very questions you

22  asked them might be a little bit different, Judge.  And that's

23  why we gave the whole transcripts and exhibits to you --

24          THE COURT:  You're saying your adversaries are all

25  wonderful people?  Didn't you learn anything in law school?

O7BCstaO

1          MR. BOLAND:  I actually meant the three people sitting

2     at the end.

3          THE COURT:  Just the individuals --

4          (Indiscernible crosstalk)

5          MR. BOLAND:  I think that there had been testimony

6     about different dates, you know, they believe -- somebody said

7     that they were -- it was like in March they were fired,

8     somebody said it was another date they were fired, somebody

9     said it was another date they were fired.

10          I think the date they're settling on, if I understand

11     it in their papers, might be June, I think, 21st of 2021.  But,

12     you know, I don't know because the complaint said something

13     called furlough date, a single date.  And then, obviously, they

14     changed that in their class definition because the facts here —

15     and we'll get to this in a second about typicality and

16     predominance — the facts are very, very different for the

17     various people in the two classes that are defined.  Some went

18     on a furlough right away, some continued to work, some were on

19     a furlough right away, some were called back right away to

20     start working when the hotel reopened to house the first

21     responders, some continued to work after that, and then some

22     continued to work even beyond that because it ran as a

23     business.  There's been no attempt from them to take discovery

24     to differentiate amongst those people.  And those things are

25     relevant to whether anyone was actually terminated the way they

1    claim they were or under the WARN Act.  When, if ever, did they

2    become the affected employee to whom WARN notice was required

3    to be given?  Those are individual issues, right.

4            So, if you were to assume that everyone's got a WARN

5    Act violation — who knows what it is, right — I suppose that

6    amount could be calculated.  It's not calculated properly

7    insofar -- even in the declaration.  For example, one of the

8    things that they attach is an email where it was said that it

9    was -- it was pointed out that Hotel 57 Services LLC would

10    voluntarily continue to pay benefits for a period of time.

11    Voluntary payments of benefits reduce WARN Act violations, even

12    if there is a penalty, right.  That's not taken into account.

13    So there could be a calculation.

14            WARN Act is a little more difficult, right.  It

15    depends on when were you supposed to get the notice, when did

16    you get the notice, is there a period of violation.  If it's

17    five days, it's a five-day penalty.  If it's 20 days, it's a

18    20-day penalty.  It could be 100 days.  The maximum is a 60-day

19    penalty.  So that's an individual issue.  I don't know how we

20    could calculate that out for purposes of determining whether

21    the voluntary payments everyone got get rid of the Article III

22    standing for the WARN Act.

23            We could more easily calculate the things, I think,

24    for the EmPact class, the contract class if we have a

25    definitive date of termination, which may not be consistent for

1  everybody because people continued to work, but I think that

2  they settled on, at least for themselves, was June 21st of

3  2021.  I suppose we could calculate what the no-fault

4  separation pay would have been for folks as of that date if

5  indeed we had terminated them, which, of course, Ms. Ortiz has

6  testified in her declaration we didn't do, but I think we could

7  calculate that.  Then you could compare that, I suppose, to the

8  payments that have been made.  You can look at that.  The WARN

9  Act is a little dicier.

10       THE COURT:  So, with apologies only because we haven't

11  heard yet from your adversary and you've been quite fairly only

12  raising certain points, let me give you five more minutes,

13  we'll come back to you later for other points, but five more

14  minutes and then I want to hear from your adversary.

15       MR. BOLAND:  The one thing I do want to talk about,

16  Judge, and it goes to typicality, and it goes to both

17  typicality and predominance.  That is that these are very

18  individual claims, COVID hit, this was a national emergency.

19  The facts, which are set forth in our papers supported by

20  evidence, are that no one knew what was happening at any point

21  in time, people kept working, people went on furlough, people

22  kept on working after that.  This isn't a case, for example,

23  where a plant closed --

24       THE COURT:  My understanding, but correct me if I'm

25  wrong, is that although it was the pandemic and the effects of

O7BCstaO

1    the pandemic that originally caused the hotel to shut down,

2    that it's still shut down, and that the reason given is that

3    they're updating other things like that, not because of the

4    pandemic, because every other hotel has reopened.

5         MR. BOLAND:  Well, two parts of that, Judge.  It is

6    not the case that it remains shut down just to do renovations.

7    It remains shut down.  What they complained about is, in June

8    of 2021, and what was actually happening at the time is they

9    were using the time period of closure to continue to conduct

10   renovations, but that renovations are not relevant.  There was

11   still the national emergency in place and there is the issue,

12   post-COVID, of being able to reopen a hotel safely and

13   profitably.  Some hotels have done it in different stages.  The

14   Four Seasons stayed closed and is now going to reopen in the

15   fall.  As we speak, they are looking to send out recall

16   notices, and they want to start with the management people.

17   And this is a huge spectre because if all those people are

18   found to have been terminated in June of 2021 --

19        THE COURT:  Well, I'm glad they're starting with the

20   management team because my experience is that if you're a guest

21   at a hotel, the one person you could never get is the hotel

22   manager.  But we'll let that pass.

23        MR. BOLAND:  Management position roles would be like

24   Ms. Ivey.  They need the managers.  There are nonunion people

25   working there now and they need the managers to come in and

O7BCstaO

```
 1    manage them.  But the fall date is the targeted date as was
 2    publicly announced and they want to recall people.  There is a
 3    lot that goes into that to bring them back.  As Ms. Ortiz put
 4    in her declaration, they're all still on their books as
 5    employees, they all have their seniority, they've all got their
 6    accrued benefits, they have everything.  There is a lot of that
 7    that they would be losing if they're part of a class, and if
 8    then it's found that they were terminated in June of 2021 --
 9              THE COURT:  I think there are several aspects to this
10    point, but it's one I wanted to ask plaintiffs' counsel, so
11    we're going to get to him in a minute.  But just to flag it,
12    what about the members of the persons who otherwise meet the
13    class definition, however we play with it, who want to go back?
14    Are they part of this class?  Are they not part of this class?
15    How do we determine that?  And how and why doesn't that create
16    a serious problem?  I take it that's part of the problem you're
17    raising.
18              MR. BOLAND:  It is, Judge, if I could take two minutes
19    more or even under a minute, two things in the EmPact
20    agreement.
21              Slide 15, please, Eric.
22              These are the seniority benefits that non-management
23    people get over time from continuous employment.  Ms. Holmes
24    and Ms. Staley would fall within that.  There's a lot of things
25    that go over time, and a number of the people here are longtime
```

1    employees whom we value and want to come back.  As Ms. Ortiz

2    testified, they come back with their seniority, with their pay

3    level, with all of their accrued benefits.  I know from looking

4    on Travelocity, a number of nights at a Four Seasons hotel for

5    free is a very expensive benefit.  There's a lot of things that

6    these people would get.

7            The next -- if it's okay with the Court, I'd move to

8    the next one just to save time.  The next slide, please.

9            This is what the management people, Ms. Ivey and the

10   people like her, the people we're interested in calling back

11   now, this is what they would have.  If they're in a class found

12   to have been terminated back in June of 2021, we don't have

13   that seniority, we don't have that bridge of payments, we don't

14   have their accrued vacation that goes on, we don't have them

15   coming back at the level that they were at with all of the

16   benefits they have.  And this is a huge problem that creates,

17   and I think, a conflict between these three women who may not

18   want to come back.  Maybe perfectly happy with gone, maybe want

19   to get no-fault separation pay or whatever.  We see if that

20   they have any claim for that under Article III, but they may

21   want to.  But there's a lot of other people who may not agree

22   with that.  And that's conflict, I think, is something that not

23   only makes these three plaintiffs not typical of everyone

24   else --

25            THE COURT:  Let me just, because I'm not sure this is

O7BCstaO

1    covered in the papers, but just for my information.  Supposing

2    the hotel reopens in the fall, as you indicated is the likely,

3    and they invite back X, Y, and Z.  If the person wants to come

4    back, don't they have to say right then and there or within a

5    short period of time, yes, we want to come back, because

6    otherwise the hotel would have to fill their job with someone

7    else; right?

8              MR. BOLAND:  True.  Yeah.  They could say --

9              THE COURT:  So wouldn't we know if they are not

10   properly members of the class?  Wouldn't we know that before

11   this case goes to trial?

12             MR. BOLAND:  I think, Judge, you're coming up with my

13   sort of Catch 22, which is, what do we tell them?  We're not

14   the -- we don't want to interfere in their position as putative

15   class members.  We don't want to tell them, you got to opt out

16   of the class to come back.  We're not doing any of that, right.

17   At the same time, we don't want to be making false

18   representations to these people about their seniority levels

19   that they're coming back in, their pay grades, all of the

20   things, the benefits that they have.  If indeed they're going

21   to go and become a class member and then have a finding that,

22   no, they've been fired since June of 2021, you know, for

23   whatever it's worth to them because they might have gotten more

24   money since then than they would get, but they've been fired

25   and now what do we do?  We don't want to have any false

O7BCstaO

1    representations to them.

2            If the test was --

3            THE COURT:  I'm not sure you -- well, all right.  I

4    understand the issue.  I am going to cut you off.  We'll come

5    back to you shortly, but let me hear from plaintiffs' counsel.

6            MR. BOLAND:  Thank you, your Honor.

7            MR. BRUSTEIN:  Thank you, your Honor.

8            Your Honor, as indicated, we're not going to rehash

9    our arguments.  We do rely on the papers and reply papers.  So

10   I want to start by addressing the issues that have been raised

11   by defense counsel.

12           The first thing that was raised was the class action

13   waiver.  And so, I'd like to just address that head-on.  This

14   is in 86-4, the EmPact agreement.  If you look at where the

15   class action labor is listed, I think counsel did a nice job of

16   trying to direct the Court's attention away from what I think

17   is the most significant part of the class action waiver

18   section, which is the last line, which says, this waiver shall

19   not affect or diminish the substantive remedies that I may be

20   awarded by an arbitrator.  There's no reference to court

21   because it 100 percent and clearly refers to arbitration.

22           If you look at every one of the bullet points — that's

23   No. 9 — they're all about arbitration.  The first one is

24   mediation and arbitration demand.  Second, what is mediation

25   arbitration, selection of the mediator-arbitrator, arbitrator

O7BCstaO

1    will be final and binding and so on and so forth.  If you look

2    at No. 10, the one directly after it, my part of the

3    arbitration fee.  These were the rules that were crafted so

4    that people would understand their rights if they're engaging

5    in arbitration.  So we would submit the evidence submitted

6    actually supports the fact that this is not a class action

7    waiver.

8            With respect to the statement that was made by the

9    person they're representing was part of those negotiations,

10   Debbie Brown, that's not someone that was ever identified

11   during discovery.  And to quote Mr. Boland, if discovery hadn't

12   closed, that might be relevant.  I just submit it wouldn't be

13   relevant then anyway, but this isn't a witness they ever put

14   forth, and they can't after the close of discovery for the

15   first time submit a declaration from someone they don't intend

16   to rely on.  So I don't believe that should be given any merit.

17           THE COURT:  I understand your first point, I'm not

18   sure I understand the second point.  So if they did not

19   identify this person in their disclosures as a person with

20   knowledge — that's your first point — then they can't rely on

21   it now, but if they did identify the person as someone with

22   knowledge, the fact that the person was not deposed doesn't

23   preclude them from offering a declaration at this point, does

24   it?

25           MR. BRUSTEIN:  No, your Honor.  I apologize.  I was

O7BCstaO

1    trying to finish the thought, I did it inartfully.  The second

2    point was me stopping talking.  The point was this person

3    wasn't disclosed.  Thank you for that.

4           The next point that I believe was addressed was their

5    repeated use of the phrase --

6           THE COURT:  And you would say further the fact that

7    they were not disclosed was particularly telling since I made a

8    point of saying that this issue could be reraised as a factual

9    matter at the class certification stage.  So, even if they

10   hadn't yet thought about this, once that opinion came down and

11   of course was affirmed by the Second Circuit, then they could

12   have supplemented their statement of who are persons with

13   knowledge.  If I understand what you're saying, they did not do

14   that; is that right?

15          MR. BRUSTEIN:  Yes, your Honor.

16          THE COURT:  Okay.

17          MR. BRUSTEIN:  The second thing is there's been a

18   repeated reference to voluntary payments to suggest that the

19   amount of money that the defendants have paid to both our

20   clients and the putative class should be considered as an

21   offset that undercuts their ability to have standing.  And so,

22   for that, I would direct the Court to the transcript of

23   Elizabeth Ortiz, because I do believe evidence matters, which

24   is ECF 107-2.  The specific lines are found on page 203, lines

25   10 through 14.  And this is a conversation -- well, questions

O7BCstaO

```
 1    and answers.  I don't want to go through the three pages
 2    leading up to it, but essentially talking about these $500
 3    weekly payments.  Ms. Ortiz is asked the following question and
 4    gives the following answer:
 5    "Q.  And to your knowledge, you believe there is some sort of
 6    agreement where some of these nonunion employees are continuing
 7    to be paid $500 a week?
 8    "A.  Yes, there would be.  I wouldn't arbitrarily -- I wouldn't
 9    have arbitrarily made that decision."
10              MR. BRUSTEIN:  Payments that are made pursuant to an
11    agreement, pursuant to a law like the New York City severance
12    law cannot be an offset because there's another obligation that
13    they are fulfilling.  While the defendants have not produced
14    what that agreement is, they also have introduced no evidence
15    to say there is not an agreement.  And so, there's no basis for
16    this Court to consider these payments as a proper offset since
17    the only testimony we have about the payments being made is
18    that there was an agreement.  And so I don't --
19              THE COURT:  I'm not sure if I fully follow your point
20    here.  Let's take a couple different situations.  Let's take
21    the person who is asked to come back and do some work for the
22    Four Seasons organization and gets paid for it.  Is that an
23    offset or not to their claim in this case?
24              MR. BRUSTEIN:  It would not be an offset.
25              THE COURT:  Because?
```

O7BCstaO

1          MR. BRUSTEIN:  There would be another obligation that

2     the defendants would be paying for.  And so, the mere fact that

3     they have paid them money does not, without more, count as an

4     offset because in your Honor's example, they're paying them not

5     because of the EmPact agreement, not because of violating the

6     WARN Act, but because of the new work that they've done.

7          THE COURT:  That obviously leads to my alternative

8     question, which is, okay, now let's assume they haven't, they

9     just get these payments, they don't do any work, they don't go

10    back to work, they're not doing anything for Four Seasons, et

11    cetera, but they accept these payments.  Why should that not be

12    an offset?

13         MR. BRUSTEIN:  Well, I want to slightly change your

14    Honor's example or add more facts to it.

15         THE COURT:  Okay.

16         MR. BRUSTEIN:  Let's say in your Honor's example

17    there's an agreement between the defendants, let's pretend that

18    they talk about things behind the scenes and that this case is

19    one of the things that they're discussing, and one thing

20    they're trying to figure out is how to avoid the liability as

21    this case is going on.  So they say, okay, we're going to agree

22    because the press is bad and we don't want to admit that we

23    violated anything, we're just going to start paying the money,

24    and there's an agreement by one party to the other that they

25    have to do this obligation so they can try and win this case.

O7BCstaO

```
1    If there's an agreement between those parties, they're

2    fulfilling an obligation to each other.

3              THE COURT:  Well, that's an interesting thought.  I

4    doubt very much you would be able to develop evidence of that.

5    You certainly haven't presented evidence currently that I could

6    recall and it would involve, I would think, interesting

7    questions of attorney-client privilege.  But let's assume that

8    for unknown reasons, for whatever reason, good, bad,

9    indifferent, unknown, they make payments to someone who's no

10   longer working for them and the person accepts those payments

11   and cashes the check.  Why shouldn't that be an offset to that

12   person's claims in this case?

13             MR. BRUSTEIN:  Well, with respect to the city law for

14   one, there's an obligation under the city law, which is clear

15   and was widely known, that they were required to make these

16   payments.  Ironically, it was called a severance payment, the

17   law.  So I don't know that it was so much a --

18             THE COURT:  Where in the city ordinance, which I

19   haven't gone back and looked at, does it say that that is not a

20   setoff to the severance payments they're claiming here?

21             MR. BRUSTEIN:  So, I don't have that directly in front

22   of me, but, your Honor, I can tell you that that is explicitly

23   in the city law.  If your Honor wants to give me a moment to

24   come back to that, I certainly can.

25             THE COURT:  That's fine.  We have to give your
```

O7BCstaO

1    colleagues something to do.

2            MR. BRUSTEIN:  Yes.

3            With respect to your second point about the payments,

4    the defendants should not benefit from the fact that they have

5    not provided responsive discovery.  They've tried to cloak

6    themselves --

7            THE COURT:  But barring the ordinance, and I'm

8    interested to hear what the ordinance is in this respect, but

9    putting that aside for the moment, if I get a payment and

10   indeed it's even marked as severance, whether rightly or

11   wrongly, and I have a claim in my hypothetical for $10,000 in

12   severance pay and I get each month $500 and I accept that and

13   it's marked severance pay and I go and I accept it, why isn't

14   that a setoff, if I get hypothetically $5,000, I get this for

15   ten months, I still have a claim for $5,000, I don't understand

16   why I have a claim for $10,000.

17           MR. BRUSTEIN:  So I'm not saying that there's no

18   scenario where it could be, but I think the burden would be on

19   the person providing the money where they've admitted that

20   there is an agreement that is requiring them to pay the money,

21   that that agreement isn't such to bar an offset.

22           But the other point that I'd like to make, even if

23   your Honor has paused it with that argument, is if you look at

24   the --

25           THE COURT:  I thought the argument you would be making

O7BCstaO

```
1    is that shouldn't defeat class certification if one person is
2    owed $5,000, another person is owed $2,000, and another person
3    is owed $1,000, so what?  In many, many classes, the level of
4    damages are not identical.  And that's once a class action goes
5    to trial, to a verdict, or commonly a settlement, those
6    distinctions are made in the payout.  So I'm not sure.
7           The most extreme case, which your adversary says is he
8    claims that if we view this as a setoff, there's at least some
9    people, and he thinks Ms. Staley is one, who have now gotten
10   100 percent of what you claim they were owed, and therefore
11   they have no injury.
12          If we put that aside for one second, we'll get back to
13   that, if we put that aside for one second, I would have thought
14   that's not a sufficient basis for defeating class
15   certification, but if you disagree with me and you think your
16   adversary is right, please feel free to tell me.
17          MR. BRUSTEIN:  I don't, your Honor.  I do think it is
18   something that goes to the amount of damages as opposed to the
19   merits of the claims themselves.
20          THE COURT:  What about the person who, especially if
21   it's one of the lead plaintiffs?
22          MR. BRUSTEIN:  So, yes, but I would submit, your
23   Honor, that even in the drastic scenario that they have painted
24   with respect to Ms. Staley, she still certainly would have a
25   claim that she'd been damaged, even if the damages she was
```

O7BCstaO

suffering were *de minimus* because of the delay in payment,

potential interest and the like, the mere fact that they, after

the fact, after a lawsuit has been started, started getting

money.

THE COURT:  I agree with you that interest would be a

relevant calculation.  Maybe no one fits this category, but I

just want to see, are you saying if there is someone who, even

if we add interest, et cetera, has been paid 100 percent of

what that claim is, that person no longer has standing, right,

because they don't have an injury?

MR. BRUSTEIN:  So, it depends on what claims you're

talking about.  I would submit, your Honor, because I think

under the WARN Act, the mere fact that they weren't provided

proper notice would be standing.

I also would argue that in terms of the EmPact

agreement, and I know that they're lumping all of these into

one category and saying it's easy, this amount of dollars and

that amount of dollars, there's certainly damages from a

dollars amount as to the EmPact payment.  There's dollar amount

damages with respect to the --

THE COURT:  And if I understand that argument,

contrary to what was suggested by your adversary, the fact that

the individual plaintiffs, let alone individual members of the

class, don't all have 100 percent of all the claims being made

does not defeat class certification as long as, collectively,

O7BCstaO

1    the individual defendants meet all the claims and large members

2    of the class meet all the members of the claim.  Do I have your

3    argument right there?

4            MR. BRUSTEIN:  Yes, your Honor.

5            THE COURT:  Okay.  Go ahead.

6            MR. BRUSTEIN:  So in terms of the voluntary payment,

7    one thing I would point out is in terms of Ms. Staley's

8    calculations, they're completely dismissive with multiple WARN

9    Act violations, which I don't necessarily need to get into at

10   this point, but I would briefly state that the WARN Act deals

11   with job losses.  If you look at the language in their

12   purported WARN notice, it talks about a job loss for the

13   employees.  At the same time, they're telling them that they

14   have to stay in order to get their no-fault separation pay.

15           And so, the reason we submit that there are multiple

16   WARN Act violations is because this is essentially a catch and

17   release where they're continuing to keep them on furlough month

18   after month in violation of the WARN Act.  The purpose of the

19   WARN Act is to warn employees of massive layoffs so they can

20   make preparations for themselves, for their families, perhaps

21   retrain or apply for jobs, maybe not buy the new car because

22   they know hardships are coming.

23           In this instance, quite coldly, they did the opposite.

24   They allowed them to go more than six months, more than twelve

25   months, and then on June 25th, 2021, they told them you're

O7BCstaO

1    still employed -- I mean, standing here today, they're still

2    claiming that they're all employees.  We're more than four

3    years down the line and --

4           THE COURT:  Supposing there's a member of the class,

5    the putative class who says, I took them at their word and I'm

6    delighted if I'm invited back this fall to go back.  Can they

7    be a member of the class?

8           MR. BRUSTEIN:  I believe that they can, your Honor.

9           And to that point, I'd like to direct your Honor to

10    the EmPact agreement.  It's ECF 86-4.  This is page 27.

11    There's actually a section called the rehire practice, which

12    was different than the recall that the defendants are claiming.

13    I'd like to just read it into the record for your Honor.  I'll

14    do it slowly, I hope.

15           If my employment with the Four Seasons Hotel New York

16    is terminated voluntarily, I may be eligible for rehire with a

17    Four Seasons Hotel New York or another Four Seasons property.

18    I will be eligible only if I've consistently met my performance

19    expectations and provide two weeks' notice.  My eligibility for

20    rehire will be determined solely by the Four Seasons Hotel New

21    York.  Eligibility for rehire is not a guarantee of

22    reemployment.

23           THE COURT:  I'm not sure I see why that is applicable

24    because, in my hypothetical, we have an employee who says, I

25    was furloughed.  They say, I was furloughed, I took them at

O7BCstaO

1    their word, and now they're calling me back and I'm delighted

2    to go back, unlike someone who said, you're fired, and then

3    several years later asked to be rehired.  The latter person

4    would clearly fit within that section you're talking about.

5    But why is the former person within that section?

6            MR. BRUSTEIN:  I guess I apologize for not necessarily

7    understanding exactly the distinction.  I think it doesn't

8    matter if someone wants to go back to the hotel or not.  It's

9    whether --

10           THE COURT:  I thought you were going to say you didn't

11   understand what I said, but usually I only get that comment

12   from my wife.  But anyway, go ahead.

13           MR. BRUSTEIN:  So the EmPact agreement has a

14   contract -- the entire document actually is a contract.  If you

15   look at page 60, the Four Seasons Hotel New York promises to

16   comply with its obligations under EmPact.

17           THE COURT:  I'm sorry to say, I may have forgotten to

18   bring that with me, but go ahead, read it.

19           MR. BRUSTEIN:  I'll read it slowly, but it's very

20   short what I'm referencing.  Treating me with dignity and

21   respect, providing competitive compensation and benefits.  This

22   also references the fact that the term of EmPact is one year

23   and is automatically renewed unless the following occurs:  I

24   voluntarily resign; I'm permanently laid off.

25           I'm going to stop right there.

O7BCstaO

1          Our point is that these workers were all permanently

2     laid off.  The fact that the hotel says that they're reopening

3     is wonderful.  There is nothing that prevents them from

4     rehiring every one of their workers that stood by loyally after

5     decades of service to this hotel.  Frankly, it would be a smart

6     business decision for the hotel to say, we're reopening and we

7     want the people that made this hotel so successful to come

8     back.  And the mere fact that we paid them, they're saying now

9     is $500 a week in severance and that they're claiming it

10    offsets it --

11          THE COURT:  I think what you're saying, if I'm

12    understanding the argument correctly, is that this is a factual

13    dispute that, regardless of what they may have said, a

14    reasonable jury could conclude that in fact they were

15    terminated as a practical matter, and if it's the hotel's good

16    sense to bring them back now, terrific, but that doesn't mean

17    they weren't terminated in practical terms.  Is that the

18    argument you're making?

19          MR. BRUSTEIN:  Yes, your Honor.

20          THE COURT:  Now, I think we have the ordinance.

21          MR. BRUSTEIN:  Yes, your Honor.  So it's New York City

22    Severance Law Section 2B.  It says the payment of severance pay

23    pursuant to subdivision A of this section shall be in addition

24    to any severance or similar pay already paid or otherwise owed

25    for periods prior to October 11th, 2021.

O7BCstaO

1          THE COURT:  So you're saying it's, in effect, a

2     penalty?

3          MR. BRUSTEIN:  Yes, your Honor.

4          THE COURT:  I'm going to give you now just five more

5     minutes because we need to hear from your adversary and I have

6     another matter at 4:30.

7          MR. BRUSTEIN:  The next thing I wanted to address,

8     your Honor, was the idea that this hotel is still closed

9     because of COVID and that the renovations were something to

10    take advantage of, the fact that the hotel was shut down as

11    opposed to part of what we would submit is a clear ruse by the

12    hotel to avoid their obligations.

13         THE COURT:  Why isn't that, whether you're right or

14    wrong, a classic factual dispute and therefore not something

15    that I need to consider in more than a superficial way on a

16    class certification motion?

17         MR. BRUSTEIN:  I think you're right, your Honor.  So

18    I'm going to move on and I want to read you the quote.

19         So the last thing I want to speak to is just very

20    simply the elements that I believe that we've established.  The

21    chart which I created, your Honor, was created from their

22    documents.  I know that counsel for defendants is claiming that

23    we didn't hire an expert to compile these things.  The ironic

24    thing is that the defendants have seeded the argument, they've

25    taken an all-or-nothing approach to this and they're saying --

O7BCstaO

1          THE COURT:  Before we get to the underlying data, so

2    to speak, it is standard in say summary judgment and would be

3    the same in class certification for an attorney to put in an

4    affidavit or declaration saying attached are the following 14

5    documents that appear during discovery.  All he is really

6    attesting to here or she is attesting to there is authenticity,

7    but you went further, or that's what they claim, and you made

8    an analysis.  Why is that admissible on either summary judgment

9    or, here, class certification?

10          MR. BRUSTEIN:  So I think using the word "analysis" is

11    giving too much credit to the declaration itself.  It's

12    certainly a simplification and a much more synthesized version

13    of the documents that are attached.  But as your Honor

14    referenced, anyone with enough time could sift through the

15    documents not in discovery, but that were attached to the

16    declaration itself.  What I tried to do in the declaration was

17    making it so that it was easy to see exactly each document side

18    by side how the chart was made, because the chart literally

19    comes from the own exhibits and documents produced by the

20    defendants.  The only documents that were needed were the WARN

21    notices -- and I say that in quotation marks because we submit

22    that notices sent five months after the union employees are not

23    proper WARN notices without addressing other issues in them.

24          But it's a mail merge.  If you look at every single

25    WARN notice, they're the same except for the furlough date,

O7BCstaO

1    which they supplied, and the name and address for the

2    individual employees, which gets back to the main points of

3    certification, why we believe that this case is relevant.  If

4    you look at the number of WARN notices and you look at the

5    charts, there's certainly numerosity in terms of the numbers of

6    people who were laid off, there's well more than 40.  The WARN

7    Act itself lends itself as a classic example of the same

8    issues.  There's been much made by the defendants about minor

9    differences, I would submit, between our plaintiffs, but if you

10   look at their summary judgment motions, they're not addressing

11   it on an individualized basis because the issues are

12   predominantly the same.

13           In terms of the claims, they are typical of the class,

14   and we believe that that has also been established.  I'm

15   certainly not going to speak to my own adequacy, I'll rely on

16   the declarations that myself and cocounsel have submitted, but

17   we believe that we should be found adequate at least.

18           With respect to superiority, I think your Honor has

19   certainly seen through the litigation at this stage, as we're

20   now at the close and discovery has closed, how much effort and

21   time and motion practice and appellate practice has gone into

22   this case, to suggest that this should be replicated even two

23   times, let alone the 50 or 60 or more times does not seem to be

24   something that would be logical.

25           And I yield the rest of my time, your Honor.  Thank

O7BCstaO

1    you.

2                    THE COURT:  Thank you very much.

3                    Let me hear from defense counsel.

4                    MR. BOLAND:  Thank you, your Honor.

5                    Let me pick up with the last point about superiority.

6    I think that the reason why a class action is not superior here

7    has been the focus of all of the discussions we've been having

8    about individual plaintiffs.  Whether they want to come back or

9    they want to be in a class or they might be terminated and they

10   might come back or something else, what counsel has cited is

11   there is no contractual obligation that exists to take people

12   and rehire them at the same levels — that's number one.

13                   Number two, he talks about people who were voluntarily

14   terminated.  That's not what they allege.  They allege an

15   involuntary termination for no-fault.  So it wouldn't even

16   apply.  But this isn't superior.  These people should be

17   allowed to control their own destinies.  They really should.

18   And part of that goes to the fact that the recovery here may be

19   entirely illusory.

20                   And I want to separate that into two issues, Judge,

21   because I firmly agree with you that standing in and of its own

22   differences in damages amongst folks who still have a damage

23   may not preclude certification.  I think in this case it does

24   because it makes individual calculations and there's no

25   class-wide model that has been developed here because there's

O7BCstaO

no expert to develop a class-wide model, which is what you
would see in a class action.  So I would agree with you about
that.  I still think individual issues of damages predominate.

That said, I'm talking about a different issue in the
first instance.  I'm talking about whether they have
established that these people remain having Article III
standing.  And I would go to -- there's a Second Circuit case
on this, Judge, that we cited.  It's the *Denney v. Deutsche
Bank*, and the quotation is, no class may be certified that
contains members lacking Article III standing.  That's 443 F.3d
253, 263 (2d Cir. 2006).  And remember that since then, the
Supreme Court has decided *Spokeo*, right.  Every plaintiff and
every class member has to have Article III standing for each
claim asserted at each form of relief.  And I would suggest
that plaintiffs -- it's plaintiffs' obligation here, it's their
burden.  We could deal with the damages issues later for people
who remain injured if there are even enough people to be in a
class at that point, right, but we can deal with that.  I still
think it's a predominance issue, but we can deal with it.  But
we are talking about Article III standing in the first
instance.

I do want to talk about the payments that were made.
And there was the component that was under the ordinance and
then there was the component that was purely voluntary.  I
would agree with my friend that it's only the voluntary

O7BCstaO

1    payments that affect the WARN Act for sure.  There's a case

2    from the First Circuit, a recent case of I think -- let me pull

3    that up for you, Judge, just so you have the -- oh, we cited

4    it.  We cited it in the slide that we showed you and I can give

5    you a copy of the slides, Judge.

6            Voluntary payments reduce any WARN Act penalty that

7    applies.  So, for one, these people never took into account,

8    for example, the very document that they attached that show

9    that the benefits were being voluntarily extended, didn't take

10   into account.  Somebody, an expert would have to come in and do

11   that.  For another, though, there was an entire component of

12   these payments that was purely voluntary, purely voluntary.

13   And, look, we have Ms. Staley here.  You can ask her, did she

14   enter into an agreement with anyone at Hotel 57 Services LLC by

15   which they would pay her those voluntary payments from July '22

16   that continued.  Check's supposed to go in today, I'm informed.

17   The answer to that, Judge, is going to be no.  There is no

18   agreement, no requirement.  They are purely voluntary.

19           And I want to correct a little bit of some other

20   inaccuracies that were just minor things.  One was that we sent

21   a WARN Act and then told them that they had had to stick around

22   or they wouldn't get no-fault separation pay.  The WARN Act

23   notice went out in August of 2020.

24           Can we pull up exhibit C to Ms. Ortiz's declaration.

25           This is the WARN Act that went to Ms. Staley.  You can

O7BCstaO

1   disagree with me, she admits that she received it, and we

2   actually have a copy that she produced to us.  This is the WARN

3   Act that was provided to us.  We can scroll through it for as

4   much time as your Honor needs to read it.  There is nothing in

5   here that says, ever, that you can't get another job or you're

6   going to lose no-fault separation pay or anything like that.

7   Nothing in August of 2020.  What they're talking about is their

8   interpretation of what they think Ms. Ortiz was telling people

9   in 2021, June.  That's not what she said.  She said if you

10  quit, you're not getting no-fault separation pay.  But right

11  now, all these people are on our records, current employees.

12  If we were to terminate them for no-fault, we will pay them the

13  no-fault separation pay.  If we terminate them in December, if

14  we terminate somebody in next February, they come back, things

15  don't work out, whatever, they'll get it.  It just hasn't

16  happened and they were always allowed to go work, always, no

17  question whatsoever that's in the contract.  And we would have

18  expected that, too, in effect, they are, tons of people are.

19  The people who are contacting Ms. Ortiz, she'd be able to tell

20  you, they want to quit their other job and come back, and

21  they're going to come back at their same seniority level, all

22  of those things.

23          I want to make sure that that's absolutely clear that

24  we're talking about different concepts here.  We are talking

25  about the claims that they're asserting under the EmPact

O7BCstaO

```
1   agreement for no-fault separation pay and the WARN Act.

2            If we talk about the but-for world, the but-for world

3   here, Judge, is they say they were terminated in June of 2021.

4   Okay.  How do we recreate and put everybody in the position

5   they would be in in June of 2021?  They get no-fault separation

6   pay, sure enough, if their allegations are correct and they

7   prove it, but they never would have gotten the $500 per week

8   that they started getting.

9            And I want to correct something else because I think

10  counsel may have misspoke.  He said that was only done after a

11  lawsuit was filed.  No.  The payments began in October of 2021,

12  the original round ran through about June of 2022, the

13  voluntary payments started in July of 2022, this lawsuit wasn't

14  filed until August of 2022.  These things were going on.  I

15  think that what this is telling us, Judge, and given the

16  effects of the class certification on these people's lives and

17  the people who want to come back and they want to have a job,

18  they did like the Four Seasons.  I do think that this is not a

19  superior way to resolve the claims.  These plaintiffs are free

20  to go ahead and sue, no worries whatsoever, they can have their

21  day in court.  Your Honor has upheld their claims, we have

22  defenses, a jury will have to decide that, but we shouldn't put

23  absent class members in the same position.

24           Thank you.

25           THE COURT:  Thank you very much.
```

O7BCstaO

1          I'll give plaintiffs' counsel a few minutes since

2    plaintiffs bear the burden of proof to give a final response.

3          MR. BRUSTEIN:  Your Honor, very briefly, I want to

4    thank my colleague.  I did misspeak in terms of the timing of

5    those payments.

6          In terms of two things that my colleague said.  The

7    first is on the WARN notice.  I just wanted to direct your

8    Honor's attention to the first line of the second paragraph of

9    any one of them because, again, the WARN notices are all the

10   same.  It says, "You are also hereby notified that as a result

11   of your employment loss."  "Employment loss" is a legal term

12   and it's defined under the WARN Act as a job loss.  So, in

13   their purported notices, they're admitting that these people

14   suffered an employment loss.

15         The second thing that I want to address is the fact

16   that counsel also referenced in their slide show on page 15 and

17   16 the types of benefits that these employees would get if they

18   came back to the hotel, which skips over the obvious, which is

19   they're not getting these benefits because they're not current

20   employees.  And so, we can dance around all of it, but these

21   people are not being paid their salaries.  To the extent that

22   any offset has occurred, that's a factual issue that can be

23   decided at trial, but we submit that there's been no evidence

24   to support that the payments are voluntary, even though they

25   say voluntary.  And by "they," I mean counsel.  So that's a

O7BCstaO

 1    factual issue.  But more importantly, these former employees

 2    and these plaintiffs worked, did their obligations, and then

 3    were denied the benefits that they earned.

 4            And I believe that we satisfy certification, your

 5    Honor.

 6            Thank you.

 7            THE COURT:  Thank you very much.  And my thanks to

 8    counsel for both sides for a very helpful argument.

 9            It's my practice to set myself a deadline so we can

10    move this case on.  So I will get you at least a bottom line

11    ruling on this motion by no later than Friday, August 16th.

12    Either way, whether I grant it or deny it, I'll follow it up

13    with a full opinion, but if I deny it, we'll then convene a

14    telephone conference to set a schedule for trial and any other

15    summary judgment briefing or whatever.  If I deny

16    certification, then obviously we won't have the phone call,

17    we'll just wait for my opinion, but the final judgment won't be

18    issued until I write that opinion.  So those will be the two

19    alternatives.

20            So, again, many thanks for a very helpful argument.

21    That concludes this proceeding.

22                          *  *  *

23

24

25