UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SELENA STALEY, VIVIAN HOLMES, and          Case No. 22-CV-6781 (JSR)
OLIVE IVEY, on behalf of themselves and
all others similarly situated,

                Plaintiffs,

                -- against --

FOUR SEASONS HOTELS AND RESORTS,
HOTEL 57 SERVICES, LLC, HOTEL 57, LLC,
TY WARNER HOTELS & RESORTS LLC,
and H. TY WARNER,

                Defendants,

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS
HOTEL 57 SERVICES, LLC, HOTEL 57, LLC,
TY WARNER HOTELS & RESORTS LLC, and H. TY WARNER'S,
MOTION FOR SUMMARY JUDGMENT**

RISMAN & RISMAN, P.C.
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-6400

BRUSTEIN LAW PLLC
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-3900

BROMBERG LAW OFFICE,
P.C.
352 Rutland Road, #1
Brooklyn, New York 11225
(212) 248-7906

**Table of Contents**

Introduction.................................................................................................................... *1*

Argument........................................................................................................................ *1*

I.   Legal standard on motion for summary judgment ................................................. 1

II.   Summary judgment should be denied on Plaintiffs' WARN Acts claims......................... 2

   A.   Hotel 57 Services, LLC, Hotel 57, LLC, and Ty Warner Hotels & Resorts, LLC have not established that they are not liable as a "single employer" for violations of the Federal and New York WARN Acts ............................................................................................... 2

      1.   Common ownership and common directors and/or officers support a finding of "single employer" ......................................................................................................... 4

      2.   *De Facto* control supports a finding of a "single employer"..................................... 4

      3.   Unity of personnel policies supports a finding of a "single employer"................... 6

      4.   Dependency of operations supports a finding of a "single employer" ................... 6

      5.   The publicly filed portions of the HMA support a finding of single employer for Hotel 57 LLC ...................................................................................................................... 8

   B.   Proper notice under the WARN Acts was never given................................................. 9

      1.   Defendants have not established as a matter of law that the "unforeseen business exception" to the WARN Acts apply ....................................................................... 13

         a.   Defendants' failure to comply with the WARN Acts notice requirements precludes Defendants from claiming an exception to the WARN Acts applies ........... 13

         b.   Defendants' failure to provide a brief statement for the reduced notification period prevents them from claiming the unforeseen business exception applies ......... 13

         c.   The mass layoffs were foreseeable before they sent the August 5, 2020 communication to Plaintiffs ............................................................................................ 15

III.   Triable issues of fact exist for Plaintiffs' breach-of-contract claim ............................ 17

   A.   Disputed issue of fact exists as to if Plaintiffs' employment was terminated on June 25, 2021 under EmPact .................................................................................................... 17

   1.   The Warner Defendants' repeated representations that Plaintiffs still maintained their No Fault Separation Pay benefit as of June 25, 2021, and remain current employees of the Hotel with all their benefits intact precludes them from simultaneously arguing that Plaintiffs were permanently laid off because of a national emergency beyond their control and are not entitled to No Fault Separation Pay ............................................................ 18

   2.   The Warner Defendants have not established that Plaintiffs' no-fault terminations were beyond their control ............................................................................................... 19

   3.   C.A.R.E. is not a condition precedent to No Fault Separation Pay ............................. 20

      4.   Even if compliance with C.A.R.E. was a condition precedent, Defendants' actions prevented Plaintiffs from using the C.A.R.E. steps ...................................................... 21

Conclusion .................................................................................................................... *25*

i

## Table of Authorities

**Page(s)**

**Cases**

*A.H.A. Gen. Constr., Inc. v. N.Y. City Housing Auth.*,
  92 N.Y.2d 20 (1998) ...........................................................................................23

*Alarcon v. Keller Indus., Inc.*,
  27 F.3d 386 (9th Cir. 1994) ...........................................................................13, 15

*Amnesty Am. v. Town of W. Hartford*,
  361 F.3d 113 (2d Cir.2004)...................................................................................2

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).........................................2

*Barnett v. Jamesway Corp. (In re Jamesway Corp.)*,
  235 B.R. 329 (Bankr. S.D.N.Y. 1999) ................................................................13

*Carlberg v. Guam Indus. Servs.*,
  No. 14 Civ. 00002, 2017 WL 4381667 (D. Guam Sept. 30, 2017) .......................13

*Childress v. Darby Lumber Inc.*,
  126 F. Supp. 2d 1310 (D. Mont. 2001)................................................................15

*Conn v. Dewey & LeBoeuf LLP (In re Dewey & LeBoeuf LLP)*,
  507 B.R. 522 (Bankr. S.D.N.Y. 2014)...........................................................13, 15

*Farah v. Emirates & Emirates Severance Plan*,
  No. 21-CV-05786-LTS, 2024 WL 1374762 (S.D.N.Y. Mar. 31, 2024)...........10, 11

*Gonzalez v. City of Schenectady*,
  728 F.3d 149 (2d Cir. 2013).................................................................................1

*Greenfield v. Philles Records, Inc.*,
  98 N.Y.2d 562 (2002) .........................................................................................21

*Grimmer v. Lord Day & Lord*,
  937 F. Supp. 255 (S.D.N.Y. 1996).......................................................................13

*Guippone v. BH S&B Holdings LLC*,
  737 F3d 221 (2d Cir. 2013)......................................................................... *passim*

*Hampton v. Navigation Capital Partners, Inc.*,
  64 F.Supp.3d 622 (D. Del .2014).......................................................................5, 6

*Huminski v. Corsones*,
    396 F.3d 53 (2d Cir.2005)....................................................................................1

*Knipe v. Skinner*
    999 F.2d 708 (2d Cir. 1993)................................................................................1

*Kooleraire Serv. & Installation Corp. v. Bd. of Educ. of the City of N.Y.*,
    28 N.Y.2d 101, 320 N.Y.S.2d 46, 268 N.E.2d 782 (1971)..............................23

*In re Organogenesis Inc.*,
    316 B.R. 574 (Bankr. D. Mass. 2004), aff'd 331 B.R. 500 (D. Mass. 2005)..........13

*Pearson v. Component Tech. Corp.*,
    247 F.3d 471 (3d Cir.), *cert. denied*, 534 U.S. 950, 122 S.Ct. 345, 151 L.Ed.2d
    261 (2001).............................................................................................3, 4, 6, 7

*Presser v. Key Food Stores Co-Op.*,
    01-CV-8059, 2006 WL 2086346 (E.D.N.Y. July 25, 2006)..............................11

*Sides v. Macon Cnty. Greyhound Park, Inc.*,
    725 F.3d 1276 (11th Cir. 2013) ..........................................................................15

*Spanos v. Skouras Theatres Corp.*,
    364 F.2d 161 (2d Cir.1966) (en banc) (Friendly, J.).........................................23

*Staley v FSR International Hotel Inc.*,
    2024 WL 1704931 (S.D.N.Y. April 19, 2024) ....................................................1

*Staley v. Hotel 57 Services, LLC*,
    2024 WL 1090816 (2d Cir. Mar. 13, 2024).......................................................23

*In re Transcare Corp.*,
    614 B.R. 187 (Bankr. S.D.N.Y. 2020)..............................................................2, 3

*Varela v. AE Liquidation, Inc. (In re AE Liquidation, Inc.)*,
    866 F.3d 515 (3d Cir. 2017)...............................................................................13

*Young v. Fortis Plastics, LLC*,
    2013 WL 5406276 (N.D.Ind. Sept. 24, 2013) ....................................................6

**Statutes**

Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq.* .................. *passim*

N.Y. Labor Law § 860, *et seq.*..................................................................... *passim*

**Other Authorities**

*Corbin on Contracts* § 947 ......................................................................................23

Fed. R. Civ. P. 56(a) ...................................................................................................1

Lord, Richard A., *Williston on Contracts* § 63:26 (4th ed. 2006) ...................................................23

### Introduction[1]

Incredibly, the Warner Defendants have moved for summary judgment claiming that more than 52 months after being furloughed, the Plaintiffs' layoffs are still "temporary" and as such, Plaintiffs are not entitled to their No Fault Separation Pay and no damages are owed to them under the WARN Acts.  Not only is this defense illogical, but it is proven false by then Hotel General Manager, Rudy Tauscher's March 19, 2020 email which warned: "Because of legal issues, please use the term 'temporary' closing at all times and in any communication going forward. This can/should never...be misconstrued as a  permanent' closure."[2]  Accordingly, the Warner Defendants' motion for summary judgment should be denied.

Further, as the Warner Defendants have not moved for summary judgment with respect to alter-ego liability for Defendant H. Ty Warner ("Warner"), "[P]laintiffs are free to argue… at trial, that the corporate veil should be pierced…"[3]  Defendants cannot raise this issue on reply.[4]

### Argument

### I.    Legal standard on motion for summary judgment

A court may grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] The moving party bears the burden of showing that they are entitled to summary judgment.[6] The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of

---

[1] Plaintiffs direct the Court to their Counter 56.1 Statement in Response to Warner Defendants' 56.1 Statement ("Pl. 56.1") for a Recitation of the Relevant Facts.
[2] *Id.*, at ¶136.
[3] *Staley v FSR International Hotel Inc.*, 2024 WL 1704931, at *1 (S.D.N.Y. April 19, 2024).
[4] *Knipe v. Skinner* 999 F.2d 708, 711 (2d Cir. 1993).
[5] Fed. R. Civ. P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013).
[6] *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir.2005).

that party, and to eschew credibility assessments."[7]

**II.    Summary judgment should be denied on Plaintiffs' WARN Acts claims**

**A.  Hotel 57 Services, LLC, Hotel 57, LLC, and Ty Warner Hotels & Resorts, LLC have not established that they are not liable as a "single employer" for violations of the Federal and New York WARN Acts**

An entity that is not the employer of record of the affected employees in a layoff may be liable under WARN Acts as a "single employer" with the company conducting the layoff, typically when such entity acts as an employer or assumes control of the employer.[8] The U.S. Department of Labor ("DOL") has set out five factors to be considered when evaluating the "single employer" doctrine under WARN: (i) common ownership; (ii) common directors and/or officers; (iii) de facto exercise of control; (iv) unity of personnel policies emanating from a common source; and (v) dependency of operations.[9] Similarly, the New York WARN Act §921-1.1(e)(2) uses the same five factors as the DOL to determine a "single employer."[10]

In *Guippone v. BH S&B Holdings*,[11] the Second Circuit adopted the DOL's five-factor test, noting that "application of these factors requires a fact-specific inquiry, no one factor set out by the DOL is controlling, and all factors need not be present for liability to attach."[12] The single employer liability test is "an inquiry into whether the two nominally separate entities operated at

---

[7] *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir.2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir.1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

[8] *Guippone v. BH S&B Holdings LLC*, 737 F3d 221 (2d Cir. 2013).

[9] 20 CFR §639.3(a)(2).

[10] *In re Transcare Corp.*, 614 B.R. 187, 211 (Bankr. S.D.N.Y. 2020).

[11] *Guippone*, 737 F3d 221.

[12] *Guippone*, 737 F.3d at 226.

arm's length."[13] Although not necessary for liability, disputed issues of fact exist for each aspect five-factor test with respect to Hotel 57 Services LLC ("Hotel 57 Services"), Hotel 57, LLC ("Hotel 57"), and Ty Warner Hotels & Resorts, LLC ("TWHR") (collectively, the "Warner Entity Defendants").

Instead of addressing these five factors, the Warner Defendants generally dismiss the test and instead cite to four disputed issues of fact in support of their motion, without substantively addressing each of the factors. It is a disputed issue of fact as to whether Hotel 57 and/or TWHR are Plaintiffs' employer. For example, each of the Warner Entity Defendants were involved in decisions about shutting down the Hotel and furloughing the Plaintiffs and Elizabeth Ortiz ("Ortiz"), the Director of Human Resources for the Four Seasons Hotel New York (the "Hotel"), even admitted that all of the Warner Entity Defendants were "joint employers."[14]

It is also a disputed issue of fact that Hotel 57 and/or TWHR do not have a contractual responsibility to Plaintiffs' employment with Hotel 57 Services. For example, in EmPact itself, Hotel 57, the Owner of the Hotel, is referred to as being bound along with the employee to confidentiality of employee privacy. On page 27 of EmPact, it specifically reads: "The Four Seasons Hotel New York believes that each of us is entitled to keeping certain information private as between the Four Seasons Hotel New York, the owner(s) of the hotel, and me."[15]

Additionally, as discussed below, the Hotel Management Agreement ("HMA"), sets forth contractual obligations with respect to the Hotel and its operations, and Hotel 57 is a party to that

---

[13] *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 495 (3d Cir.), *cert. denied*, 534 U.S. 950, 122 S.Ct. 345, 151 L.Ed.2d 261 (2001); *In re Transcare Corp.*, 614 B.R. 187, 204 (Bankr. S.D.N.Y. 2020).
[14] Pl. 56.1, at ¶¶ 143, 204, 209, 223, 224
[15] *Id., at* ¶¶ 332-333

contract.[16]  TWHR sent notice to their co-defendant FSR International Hotels, Inc. ("FSR")

terminating the HMA with Hotel 57.[17]  Warner also admitted that the main barrier to reopening

the Hotel is the HMA dispute.[18]  Therefore, there is a clear issue of fact related to TWHR and

Hotel 57 concerning their interests in the Hotel and its business, operations, and labor relations.

The Warner Defendants' silence on the five-factor test is fatal to their motion.

> 1. **Common ownership and common directors and/or officers support a finding of "single employer"**

There is no disputed issue of fact that the Warner Entity Defendants were ultimately all

owned by H. Ty Warner.[19]  The Warner Entity Defendants each have Warner as president,

Cathy Hwang ("Hwang") as vice president, treasurer and secretary and Joseph Hicks ("Hicks")

as assistant secretary as the officers in the same roles.[20]  Hwang was appointed an officer in

more than 30 Warner entities simultaneously, including each of the Warner Entity Defendants.[21]

As such, under *Guippone*, both common ownership and common officers and directors support

a finding of single employer for the Warner Entity Defendants.

> 2. ***De Facto* control supports a finding of a "single employer"**

The *de facto* control factor can be established "if the [entity] was the decision-maker

responsible for the employment practice giving rise to the litigation."[22] As explained by the

Second Circuit in *Guippone*: "Thus, the 'de facto exercise of control' prong allows the factfinder

to consider whether the [entity] has specifically directed the allegedly illegal employment

---

[16] *Id.,* at ¶ 334
[17] *Id*., at ¶ 187
[18] *Id.,* at ¶ 245
[19] *Id.,* at ¶ 138
[20] *Id..,* at ¶ 157
[21] *Id.*, at ¶150
[22] *Pearson*, 247 F.3d at 503–04.

4

practice that forms the basis for the litigation."[23] Similarly, in *Hampton v. Navigation Capital Partners*,[24] the District of Delaware refused to dismiss a putative class action that former employees of a company brought against a private equity firm for mass layoffs finding *de facto* control, where the private equity firm had installed "the same executives in the same important positions in the other companies… including positions involving closely overseeing the operations, finances, and strategy," much like the Warner Entity Defendants have done here.[25] "In reaching this conclusion, the Court disagrees with Defendant's contention that facts which satisfy the first two prongs cannot also be relied on to show that the third prong, de facto control, is satisfied as well."[26]

Here, everything from shutting down the Hotel to furloughing the employees, to decisions about paying employee benefits, to keeping the Hotel closed were decided collaboratively with the Warner Entity Defendants.[27]  Ortiz and Rudy Tauscher ("Tauscher") reported to people outside Hotel 57 Services for decisions about the operation of the Hotel and the Hotel employees.  For example, Tauscher regularly emailed Hwang at her TWHR email address for the approval of Warner on employee matters confirming approval or denial of various decisions about the operations of the Hotel.[28]  Similarly, Antoine Chahwan ("Chahwan"), who oversaw the Hotel from FSR, testified that TWHR has the final decision

---

[23] *Guippone* citing *Pearson*, 247 F.3d at 491.
[24] *Hampton v. Navigation Capital Partners, Inc.*, 64 F.Supp.3d 622 (D. Del .2014).
[25] Pl. 56.1, at ¶629.
[26] *Id.,* at ¶628.
[27] *Id.*, at ¶¶177, 204, 208, 209, 223, 224, 233
[28] *Id.,* at ¶205

about paying employees of the Hotel.[29]  Warner's approval was also needed for decisions at the

Hotel on all scales, even for matters costing as little as 50 cents.[30]

### 3. Unity of personnel policies supports a finding of a "single employer"

The fourth factor cited in *Guippone* is "analogous to a determination of whether the

companies had a centralized control of labor operations."[31] As evidenced by the communications

between Hwang and Ortiz and Tauscher, personnel decisions were not made solely by Hotel 57

Services.[32]  "In the context of the WARN Act, the decision to effect a mass layoff is the single

most important personnel policy."[33] Here, the Warner Entity Defendants "collaboratively" made

the decisions with respect to laying off the employees, keeping the Hotel closed, and even

monitoring which former employees might return.[34]  Warner was also directly involved in

personnel decisions related to the funding of employee benefits and reducing headcount at the

Hotel.[35]  The Warner Defendants fail to establish that there is no disputed issue of fact as to

whether the Warner Entity Defendants shared a unity of personnel policies, and as such, this

factor supports a finding of "single employer" liability for the Warner Entity Defendants.

### 4. Dependency of operations supports a finding of a "single employer"

To establish the final factor in the *Guippone* test, Plaintiffs must prove that Defendants

had the right to direct and control the manner in which Hotel 57 Services undertook its duties.[36]

---

[29] *Id.,* at ¶206
[30] *Id.,* at ¶¶ 167-171
[31] *Young v. Fortis Plastics, LLC,* 2013 WL 5406276, at *6 (N.D.Ind. Sept. 24, 2013); *Hampton*, 64 F. Supp. 3d at 627.
[32] Pl. 56.1, at ¶¶177, 204, 208, 209, 223, 224, 233
[33] *Vogt,* 318 F. Supp.2d at 143; accord *Garner,* 260 F.Supp.3d at 377.
[34] Pl. 56.1, at ¶261.
[35] *Id.,* at ¶218.
[36] *See Pearson*, 247 F.3d at 501.

"In other words, for such an all-encompassing factor such as 'dependency of operations'—a factor, which, by its nature, looks to the daily functioning of the two companies—the plaintiffs must establish the existence of ... a 'master-servant' agency relationship."[37] In assessing whether such a relationship exists, courts look to whether the two companies shared administrative or purchasing services, interchanged employees or equipment, or commingled finances.[38]

Here, Hotel 57 and Hotel 57 Services both share the same business address as TWHR, TWHR funded the operations of the Hotel and the payment of the employees, and the profits from the bank accounts for the different entities were not clearly separate.[39][40]  Hotel 57 Services admitted that: (1) Hotel 57 Services generates no revenue and makes no profit; (2) when benefits are provided to furloughed employees and the employer gets a tax credit refund, that refund goes as a tax credit to Hotel 57; (3) Hotel 57 is the corporate entity that generates revenue from the Hotel; (4) Hotel 57 Services has no budget; (5) TWHR funds Hotel 57 Services;  (6)  Hwang did not know who Ortiz and Tauscher were employed by because of the "complicated legal entity structure"; and, (7) TWHR would fund any judgment in this lawsuit against Hotel 57 Services.[41]

In addition to sharing the same owner, officers, and directors, TWHR made decisions about the operations and management of the Hotel and negotiated and entered into contracts on behalf of the Hotel.[42]  While Hotel 57 LLC did not have its employees do work for the Hotel, that is simply because Hotel 57 LLC had NO employees.[43]  TWHR also provided funding to pay

---

[37] *Id.*
[38] *See Vogt*, 318 F. Supp. 2d at 143 (citing *Pearson*, 247 F.3d at 500).
[39] Pl. 56.1, at ¶¶ 148, 152, 163, 165, 182, 183, 193.
[40] Mr. Warner was pled guilty to tax evasion on October 2, 2013 for having people open a bank account for him under a different name in Switzerland, where Mr. Warner hid over $100 million to avoid his financial obligations.  Pl. 56.1*., at* ¶¶335, 336.
[41] *Id.*, at ¶¶189-195
[42] *Id.*, at ¶¶ 196, 198
[43] *Id.*, at ¶197

the employees of Hotel 57 Services - which is further proof of the interconnectedness and dependance of operations of the Warner Entity Defendants.[44]  As the Warner Defendant Entities shared resources and commingled funds for a common purpose, this factor also weighs in favor of a finding of "single employer" and denying summary judgment on this issue.

### 5. The publicly filed portions of the HMA support a finding of single employer for Hotel 57 LLC

To fully comprehend the dependance of operations of the Warner Entity Defendants, it is important to understand the controlling Hotel Management Agreement ("HMA"). Hotel 57 is the "owner" of the Hotel. Hotel 57 entered into a HMA with FSR and Four Seasons Hotels Limited to manage the Hotel.[45]  While the Warner Defendants attempt to argue that only Hotel 57 Services has liability, that is directly contradicted by the HMA.

Notably, the indemnification section of the publicly filed HMA includes the following: "Owner hereby indemnifies and holds Operator and its Affiliates and any of their respective… agents and representatives (collectively, the 'Indemnified Parties') harmless from and against any and all liabilities, fines, suits, claims, obligations, damages, penalties, demands, actions, costs and expenses of any kind or nature (including without limitation, legal fees …".[46]

In the publicly filed portion of the HMA, Hotel 57 agreed to indemnify FSR and any of its agents.  As such, at a minimum, FSR is covered by this indemnification-provision and it is a disputed issue of fact as to whether Hotel 57 Services and TWHR are also covered by the HMA indemnification provision since they are "agents" that would be covered under the agreement. This means that Hotel 57 could be responsible for all of the legal liabilities for FSR and the Warner Defendants, including Hotel 57 Services, which does not receive profits from the Hotel.

---

[44] *Id.*, at ¶197
[45] *Id.*, at ¶¶144, 145.
[46] *Id.*, at ¶146.

As such, to the extent "single employer" liability is established for TWHR and/or Hotel 57

Services, it remains a disputed issue of fact as to whether Hotel 57 should also be considered a

"single employer." The HMA agreement further supports a finding of single employer under

prongs three, four, and five of the *Guippone* test.

### B.  Proper notice under the WARN Acts was never given

The notice requirement, both in terms of timing and content, "provides protection to

workers, their families and communities" and "some transition time to adjust to the prospective

loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or

retraining that will allow these workers to successfully compete in the job market."[47]

The "Notice" must contain: (1) the name and address of the employment site where the

plant closing or mass layoff will occur, and the name and telephone number of a company

official to contact for further information; (2) a statement as to whether the planned action is

expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that

effect; (3) the expected date of the first separation and the anticipated schedule for making

separations; and (4) The job titles of positions to be affected and the names of the workers

currently holding affected jobs.[48]

Under the NY WARN Act, employers must provide 90-day written advance notice of

mass layoffs, relocation, or employment loss.[49]  Aside from the 90-day notice requirement, the

NY WARN Act largely mirror the US WARN Act and regulations.[50]  "At a minimum, under NY

---

[47] 20 C.F.R. § 639.1(a).
[48] *See* CFR 639.7; NY Labor Law § 860-B (2).
[49] NYLL § 860-b(1).
[50] See NYLL § 860-b(2) ("An employer required to give notice of any mass layoff, relocation, or employment loss under this article shall include in its notice the elements required by the federal Worker Adjustment and Retraining Notification Act (29 U.S.C. 2101 et seq.).").

WARN, "notice must be specific" and must meet certain enumerated requirements.[51] The August 5, 2020 letter clearly failed to meet NY WARN's strict notice requirements.[52]

Here, Defendants' purported "WARN Notices" do not satisfy the first requirement as no address is listed for the employment site; and after Tauscher (the Hotel general manager) resigned from the Hotel in January 2021, no supplemental "WARN Notice" was ever provided advising the furloughed workers of the name and telephone number of a company official to contact for further information.[53]  Defendants also failed to comply with the third requirement of the WARN Acts by not listing an anticipated schedule for making separations.[54]  They also failed to include the fourth requirement identifying the job titles and positions to be affected and the names of the workers currently holding the affected jobs.[55]  Defendants purported "WARN Notices" were also defective because they failed to comply with either the 60-day or 90-day advance notice requirement and instead provided "notice" more than 100 days after the furloughs had begun.[56]

Not only were the initial "WARN Notices" defective, but the Warner Entity Defendants were required to give proper "WARN Notices" any time their employees "may reasonably be expected to experience an employment loss."[57]  Similarly, employers are required to give additional notices each time layoff less than six months is "extended beyond six (6) months due to business circumstances (e.g., changes in price or cost) not reasonably foreseeable at the time

---

[51] N.Y.C.R.R. tit. 12 § 921-2.1, 2.3.
[52] *See Farah v. Emirates & Emirates Severance Plan*, No. 21-CV-05786-LTS, 2024 WL 1374762, at *8 (S.D.N.Y. Mar. 31, 2024).
[53] Pl. 56.1, at ¶¶337, 338
[54] *Id.*, at ¶ 339
[55] *Id.*, at ¶ 340
[56] *Id.*, at ¶ 341
[57] CFR 639.6 (B)

of the initial layoff … as it becomes reasonably foreseeable that an extension is required."[58]

Defendants' reliance on *Presser v. Key Food Stores Co-Op.,*[59] is totally misplaced, as that case does not rule out a requirement for multiple WARN Notices.  *Presser* actually provides support that multiple WARN notices should be provided pursuant to the WARN Acts.  Contrary to the Warner Defendants' argument, "[i]f an employer must extend temporary furloughs into permanent layoffs due to 'business circumstances . . . not reasonably foreseeable at the time of the initial layoff,' the employer is required to give notice 'as soon as it becomes foreseeable that an extension is required.' Id. § 921-31."[60]

Why would a company hold itself out as an employer, after an undeniable employment loss under the WARN Acts?  Tauscher explained it best back on March 19, 2020.  "Because of legal issues, please use the term 'temporary' closing at all times and in any communication going forward. This can/should never...be misconstrued as a  permanent' closure."  Admitting the layoffs were permanent would have not just entitled the Plaintiffs to WARN Act pay, but also No Fault Separation Pay under EmPact.  Thus, the Warner Defendants refused to call the layoffs permanent, even as they exceeded not just six months, but twelve months and longer.  So here we are, more than 52 months later, and the Warner Defendants still call the Plaintiffs "current employees."  Nothing in the WARN Acts precludes a company from remaining as the employer after an employment loss.  Similarly, nothing in the WARN Acts precludes a finding that an employee has suffered multiple employment losses at the hands of that same company.

Under the WARN Acts, layoffs exceeding six months are treated as an employment loss

---

[58] NYLL §921-3.1.
[59] *Presser v. Key Food Stores Co-Op.,* 01-CV-8059, 2006 WL 2086346  (E.D.N.Y. July 25, 2006).
[60] *Farah*, 2024 WL 1374762, at *8.

and require proper notice.  The Warner Defendants' claim that the Plaintiffs remain current employees, not just beyond the initial six-month layoff but even as of today, more than 52-months later, does not lessen their obligations under the WARN Acts.[61]   Rather, after each employment loss, the Warner Defendants' continued communication to the Plaintiffs that they were current employees, necessitated more paid notices under the WARN Acts.[62]  Their failure to comply with giving proper notice of the additional layoffs exceeding six months, subjects the Warner Defendants to additional damages.  The fact that Plaintiffs suffered multiple layoffs exceeding six months makes it reasonable for a jury to conclude that they are entitled to damages for multiple WARN Acts violations[63]

---

[61] See Warner Def. Mot., at p. 10.

[62] For example, on October 5, 2020, Tauscher sent a letter on Four Seasons Hotel New York letterhead to the Plaintiffs which began "Dear Four Seasons Family;" Pl. 56.1, at ¶277. Then on December 3, 2020, also on Four Seasons Hotel New York letterhead, Tauscher again wrote the Plaintiffs: "Dear Four Seasons New York Family…. Throughout this pandemic, we have worked hard to ensure we are communicating with you as transparently as possible.  We know this time of uncertainty is stressful and we appreciate your continued patience and support…. The Hotel will remain temporarily closed with an anticipated re-opening date of late April 2021… we will remain available to support you and will continue to be in touch with updates… please do not hesitate to contact People & Culture or me directly…".  *Id.*, at ¶278.  On March 25, 2021, Ortiz sent the Plaintiffs a letter on Four Seasons Hotel New York letterhead which read: "Dear Four Seasons New York Family… We look forward to connecting with next week at our Virtual Town Hall…. Although we still have not confirmed a reopening date, we do want to connect and share relevant updates with you…. We empathize with you on the hardship and impact this situation has had on all of our team members….we want to continue to be here for you." *Id.*, at ¶280; Then on June 25, 2021, Ortiz wrote the Plaintiffs on Four Seasons Hotel New York letterhead: "Good afternoon Four Seasons New York Family…We know everyone is keen to reopen the Hotel and begin welcoming back guests.  At this time we will remain closed, as the Hotel will be undergoing substantial infrastructure and maintenance work that is expected to last well into 2022.  We will reassess our reopening plans in the early Spring of 2022 based upon the progress of this work.  Upon reopening, we are committed to recalling employees, as business levels rebound…". *Id.*, at ¶281.  On June 11, 2024, Elizabeth Ortiz sent an email to Plaintiff Holmes to advise that "Ownership and Four Seasons have completed agreements with plans to reopen Four Seasons Hotel New York in September of 2024." *Id.*, at ¶322

[63] While Plaintiffs have claimed that they were terminated under EmPact on June 25, 2021, if a jury believed that Plaintiffs employment was not terminated under EmPact, Plaintiffs submit that

### 1. Defendants have not established as a matter of law that the "unforeseen business exception" to the WARN Acts apply

#### a. Defendants' failure to comply with the WARN Acts notice requirements precludes Defendants from claiming an exception to the WARN Acts applies

An employer relying on a WARN Acts exception bears the burden of persuasion.[64] To rely on the unforeseen business exception, the employer must still "give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period."[65] The statement must "give some indication of the factual circumstances that made an exception to the statutory notice requirement applicable, providing an adequate, specific explanation to affected workers."[66][67] The shortened notice must also be in writing.[68] An employer cannot rely on the defenses afforded by the exceptions if it failed to provide the brief statement for the shortened notice or the other information required by 20 C.F.R. § 639.7(d).

#### b. Defendants' failure to provide a brief statement for the reduced notification period prevents them from claiming the unforeseen business exception applies

---

the Warner Defendants would be liable for at least eight sets of WARN Act damages as of today, and potentially more by the time of trial, since their purported layoffs would have already exceeded 52 months.

[64] 20 C.F.R. § 639.9.

[65] 29 U.S.C. § 2102(b)(3).

[66] *Alarcon v. Keller Indus., Inc.*, 27 F.3d 386, 390 (9th Cir. 1994); accord *Grimmer v. Lord Day & Lord*, 937 F. Supp. 255, 257 (S.D.N.Y. 1996).

[67] See 20 C.F.R. § 639.9; *Varela v. AE Liquidation, Inc. (In re AE Liquidation, Inc.)*, 866 F.3d 515, 524 (3d Cir. 2017); *Alarcon*, 27 F.3d at 389; *Carlberg v. Guam Indus. Servs.*, No. 14 Civ. 00002, 2017 WL 4381667, at *3 (D. Guam Sept. 30, 2017).

[68] *Conn v. Dewey & LeBoeuf LLP (In re Dewey & LeBoeuf LLP)*, 507 B.R. 522, 531-34 (Bankr. S.D.N.Y. 2014); *In re Organogenesis Inc.*, 316 B.R. 574, 584 (Bankr. D. Mass. 2004) (employer that "admitted its failure to give any written notice whatsoever under the WARN Act to the Claimants" "cannot rely on the asserted defenses that require an employer to have given reduced notice as soon as practicable") (emphasis in original), aff'd 331 B.R. 500 (D. Mass. 2005); *Barnett v. Jamesway Corp. (In re Jamesway Corp.)*, 235 B.R. 329, 342 (Bankr. S.D.N.Y. 1999) ("[T]he statute and regulations clearly provide that an employer cannot invoke either exception without giving some written WARN notice.").

The "unforeseeable business circumstances exception" (the "Exception") provides:

> An employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required.[69]

Because Defendants' August 5, 2020 communication ("Purported WARN Notice"), which the Warner Defendants purport to be their "WARN Notice," did not comply with the requirements for notice under the WARN Acts, as described above, the Warner Defendants cannot claim the Exception.  Even if the Warner Defendants had complied with all of the other requirements of the WARN Acts, the Purported WARN Notice still failed to provide a sufficient basis for shortening the 60-day and/or 90-day notice period, as required for companies to qualify for the Exception.[70] The Purported WARN Notices did not provide "a brief statement of the basis for reducing the notification period" and no "indication of the factual circumstances that would make the unforeseeable business circumstances exception apply."[71]

The Warner Defendants claim they are entitled to summary judgment on this issue and claim an Exception because, in August 2020, they were "surprised" by the COVID-19 pandemic.[72] But the regulations make clear that "[a]n important indicator of a business circumstance that is not reasonably foreseeable is that the circumstance is caused by some ***sudden, dramatic, and unexpected action or condition outside the employer's control***."[73]

Here, not only did the Warner Defendants not provide: (1) advanced notice; (2) a basis for not providing advance; and (3) not satisfy all of the requirements for a WARN notice, but

---

[69] 29 U.S.C. § 2102(b)(2)(A).
[70] Pl. 56.1, at ¶342
[71] *Id.*, at ¶343
[72] *See* Warner Defendants' Motion, at pp. 18 – 19.
[73] 20 C.F.R. § 639.9(b)(1) (emphasis added).

incredibly, they also waited more than 100 days after the Hotel closed in March 2020 before sending the Purported WARN Notices.[74]  "Congress' purpose in requiring a brief statement must have been to provide employees with information that would assist them in determining whether the notice period was properly shortened."[75] The statement "must give some indication of the factual circumstances that made an exception to the statutory notice requirement applicable, providing an adequate specific explanation to affected workers."[76] The requirement also exists "to prohibit employers who have failed to provide the requisite 60-day notice from asserting litigation-convenient but factually post hoc justifications for their actions."[77]  An employer's failure to set forth the statutorily-required "brief statement of [that] basis for reducing the notification period,"[78] disqualifies it from protection under the "unforeseen business circumstance" exception,[79] and as such summary judgment must be denied.

### c.   The mass layoffs were foreseeable before they sent the August 5, 2020 communication to Plaintiffs

While the Warner Defendants claim that it was unforeseeable before August 5, 2020 that notice was required, Courts have held that although an exception may apply, at least some notice must be provided.[80] "An employer relying on this subsection shall give as much notice as is

---

[74] 29 U.S.C. § 2102(b)(3); Pl. 56.1, at ¶340.

[75] Alarcon v. Keller Industries, Inc., 27 F.3d 386, 389 (9th Cir. 1994).

[76] *Id*. at 390; *see, e.g.*, *Childress v. Darby Lumber Inc.*, 126 F. Supp. 2d 1310, 1318 (D. Mont. 2001) (holding that notice was inadequate since it only stated that the company had "sustained tremendous losses" and was forced to make "some serious decisions").

[77] *Sides*, 725 F.3d at 1285-86.

[78] 29 U.S.C. § 2102(b)(3).

[79] *See In re Dewey & LeBoeuf LLP*, 507 B.R. 522, 533 (Bankr. S.D.N.Y. 2014) ("even under dire circumstances, employers must deliver written WARN notices containing the necessary brief statements to qualify for the WARN Exceptions").

[80] *See, e.g.*, *Sides v. Macon Cnty. Greyhound Park, Inc.*, 725 F.3d 1276, 1284 (11th Cir. 2013) ("it is manifest that a WARN Act employer attempting to circumvent the 60–day notice requirement must still give some notice in accord with 29 U.S.C. § 2102(b)(3). The

practicable and at that time shall give a brief statement of the basis for reducing the notification

period."[81] The Warner Defendants failed to timely provide this required notice. While they claim

it was unforeseeable before August 5, 2020, this is refuted by a March 24, 2020 letter drafted by

the Warner Defendants, which was never sent, but read in relevant part:

> This is to inform you that due to unforeseen business
> circumstances and major economic downturn stemming from the
> COVID-19 virus pandemic and consequent travel and tourism
> disruptions outside the employer's control (and the mandated
> closures of bars and restaurants) causing the expedited time frame
> for this notice, the (Company), will temporarily layoff on
> 03/21/2020… approximately 398 employees, including yourself.
> The layoff of employees at the above employment site is expected
> to be temporary, and the date of your layoff will occur on or about
> March 21, 2020… This notice is supplied to you pursuant to the
> WARN Act as well and has been supplied to the appropriate
> governmental agencies.[82]

While that March 2020 Draft letter was never sent out, two days later, the Warner

Defendants sent the Union a detailed letter indicating that they were shortening the notice-period

because the COVID-19 pandemic "was not reasonably foreseeable at the time that notice would

have been required."[83]  Instead of sending the Plaintiffs a WARN notice in March 2020, the

Warner Defendants waited until August 5, 2020 to send letters, which as discussed above did not

satisfy the WARN Acts requirements.[84]

Moreover, the Warner Defendants offered no explanation for their delay in providing the

Purported WARN Notices months after the March 2020 furloughs.[85]  Even though the Warner

---

unforeseeable business circumstances defense does not jettison this absolute requirement under
the WARN Act; even where the defense is properly invoked, some notice must be given.").
[81] 29 U.S.C. § 2102(b)(3).
[82] Pl. 56.1, at ¶219
[83] *Id.*, at ¶220
[84] WarnerDEF_001100.
[85] *See generally* Warner Defendants' Motion

Defendants provided an explanation for the shortened the notice period in March 2020, they did not provide any excuse in the Purported WARN Notices.[86]

As less information, not more was included in the Purported WARN Notices as compared to the March 24, 2020 draft "notice," the Warner Defendants cannot argue that the information provided in the August 5, 2020 letters was not known to them back on March 24, 2020.  Not only is the Exception unavailable because the Warner Defendants did not provide proper notice, but the facts themselves also do not support the Exception. At a minimum, issues of material fact exist with respect to Plaintiffs' WARN Acts Claims, and summary judgment should be denied.

### III.    Triable issues of fact exist for Plaintiffs' breach-of-contract claim

#### A.  Disputed issue of fact exists as to if Plaintiffs' employment was terminated on June 25, 2021 under EmPact

"The term of EmPact is one year and is automatically renewed unless the following occurs:… I am permanently laid off…."[87]  At the June 25, 2021 Teams Meeting, Ortiz advised the Plaintiffs that the Hotel would remain closed for more than one year due to renovations.[88] One of the obligations in EmPact was that Four Seasons Hotel New York would pay compensation and benefits to the employees during the one-year term of their contracts.[89]  Prior to June 25, 2021, the Hotel had never told the Plaintiffs that their furloughs would be extended more than one year at a time, but rather had continuously extended their furlough  every few months.[90]  On June 25, 2021 that changed when the Hotel announced that it would remain closed for more than another year, and the Plaintiffs would remain on unpaid furlough for that time

---

[86] Pl. 56.1, at ¶¶219, 343
[87] *Id.*, at ¶275.
[88] *Id.*, at ¶284
[89] *Id.*, at ¶286
[90] *Id.*, at ¶¶276-280

period, which was longer than the one-year term of EmPact.[91]  As it was known by both the

Warner Defendants and the Plaintiffs on June 25, 2021 that for the next year, the Warner

Defendants had no intention of paying them their compensation and benefits, as EmPact

required, Plaintiffs' layoffs under EmPact became permanent and their employment was

effectively terminated for No Fault under EmPact.[92] Thus, on June 25, 2021, the layoffs became

permanent and No Fault Separation Pay was owed to the Plaintiffs.

It is undisputed that the Hotel announced on June 25, 2021 that it would remain closed

for more than one year and that the employees had not been paid their compensation and benefits

for the year prior, nor would they be paid compensation and benefits for the year ahead.[93]

Furthermore, Plaintiffs Staley and Holmes both received paystubs after June 25, 2021, which

categorized some of the payments as "severance."  As such, a disputed issue of fact exists as to

whether the Hotel's announcement on June 25, 2021 of its intention to not reopen within the

coming year constituted a No Fault termination of Plaintiffs' employment under EmPact.

1. **The Warner Defendants' repeated representations that Plaintiffs still maintained their No Fault Separation Pay benefit as of June 25, 2021, and remain current employees of the Hotel with all their benefits intact precludes them from simultaneously arguing that Plaintiffs were permanently laid off because of a national emergency beyond their control and are not entitled to No Fault Separation Pay**

The Warner Defendants and their counsel have repeatedly represented to this Court that

Plaintiffs are "current employees" of the Hotel and still maintain their employment benefits.[94]

During the June 25, 2021 call, Ortiz admitted that the employees still maintained their No Fault

Separation Pay benefit and the only reason it had not been paid to them was because they

---

[91] *Id.*, at ¶346
[92] *Id.*, at ¶347
[93] *Id.*, at ¶348
[94] *Id.*, at ¶243; Warner Defendants' Local Civil Rule 56.1 Statement, at ¶128.

intended to recall the employees and considered them to be on temporary layoffs.[95]  According to EmPact, in order to claim an exception from the No Fault Separation Pay, two things must occur: (1) the employee suffer a permanent layoff; and, (2) the permanent layoff must result from a cause beyond the control of Four Seasons, including a national emergency.[96]  As the Warner Defendants claim that Plaintiffs have not suffered a permanent layoff, they cannot also claim that it is undisputed that Plaintiffs' permanent layoff resulted from something beyond the Four Seasons control.[97]

To invoke this exception clause in EmPact, the Warner Defendants must concede or admit that Plaintiffs' employment suffered a permanent layoff.  The Warner Defendants cannot claim both that Plaintiffs were not permanently laid off and simultaneously argue that the reason Plaintiffs were permanently laid off was "beyond the Four Seasons' control."  Summary judgment is only appropriate when there are no material disputed facts. The Warner Defendants can either argue that it is undisputed that Plaintiffs suffered a permanent layoff but are not entitled to No Fault Separation Pay because of the exception, or that Plaintiffs did not suffer a permanent layoff. As the Warner Defendants have chosen to make both arguments simultaneously, both arguments must fail at the summary judgment stage.

### 2. The Warner Defendants have not established that Plaintiffs' no-fault terminations were beyond their control

Even if Defendants conceded that the Plaintiffs suffered a permanent layoff, it would still be a disputed issue of fact as to whether the permanent layoff was "beyond the Four Seasons control." First, Warner admitted that he had the power to open the Hotel when he wanted to.[98]

---

[95] *Id.*, at ¶287
[96] *Id.*, at ¶288
[97] *Id.*, at ¶288
[98] *Id.*, at ¶171

Second, Warner admitted that the reason the Hotel was closed was the management dispute.[99]

Third, the Hotel was exempt from the executive orders, which required other business to close, as

evidenced by the Hotel opening for the medical personnel.[100]   Fourth, the Warner Defendants

admitted that the Four Seasons could have paid the employees, including Plaintiffs if they wanted

to.[101]  Fifth, the Downtown Four Seasons was open by the summer of 2020.[102] Sixth, a reopening

plan existed for the Hotel during the summer of 2020, even though it was not implemented.[103]

 For each of these reasons, the Warner Defendants have not established that an exception

to No Fault Separation Pay applies, and summary judgment should be denied on this issue.

### 3.  C.A.R.E. is not a condition precedent to No Fault Separation Pay

 The Warner Defendants misleadingly claim that Plaintiffs have not complied with a

condition precedent, as there is no condition precedent for these claims. EmPact does not require

employees to complete steps 1 through 5 of C.A.R.E. prior to bringing a lawsuit for No Fault

Separation Pay. The Warner Defendants do not and cannot cite to anywhere in EmPact for the

proposition that Plaintiffs must comply with conditions precedent before bringing a lawsuit for

No Fault Separation Pay.[104]

 In fact, a plain reading of the contract makes clear that C.A.R.E. does not apply to

"permanent layoffs." On page 60 of EmPact, there are four different ways that EmPact does not

automatically renew: (1) voluntary resignation; (2) permanent layoff; (3) involuntary

termination; (4) choosing to remain an "At Will" employee.[105] Of those options, only

---

[99] *Id.*, at ¶351

[100] *Id.*, at ¶¶171, 249

[101] *Id.*, at ¶253

[102] *Id.*, at ¶255

[103] *Id.*, at ¶250

[104] *See* EmPact (ECF#43-1); Warner Defendants' Memorandum in Support (ECF#99).

[105] Pl. 56.1., at ¶312

involuntary termination states that an employee can "still pursue my rights under C.A.R.E."[106] The logical interpretation of EmPact's silence on an employee's right to use C.A.R.E. as a result of a permanent layoff is that C.A.R.E. does not apply to permanent layoffs.[107]

Further, the No Fault Separation Pay section of EmPact states that the "mediation/arbitration provisions of C.A.R.E." do not apply.[108] EmPact defines C.A.R.E. as Complaint, Arbitration & Review for Employees.[109] As such, the very title of C.A.R.E. is about complaints and arbitration, and each one of the steps in C.A.R.E. is part of the mediation and arbitration provisions.[110] Steps 1 through 5 involve mediating disputes at the hotel level before escalating the dispute in step 6 to an outside mediator or arbitrator.[111] Plaintiffs' claims for No Fault Separation Pay are specifically excluded from C.A.R.E. Arbitration and Mediation.[112] The Opt-Out specifically states: "I understand that if I should decide to opt out of C.A.R.E., I will continue to be subject to and fully obligated to comply with all of the other provisions of my EmPact."[113] According to the Opt-Out, the steps of C.A.R.E. are not separate from C.A.R.E. Arbitration. As claims for No Fault Separation Pay are excluded from C.A.R.E. arbitration, there is no condition precedent for Plaintiffs' to have complied with prior to going to Court.[114]

> **4. Even if compliance with C.A.R.E. was a condition precedent, Defendants' actions prevented Plaintiffs from using the C.A.R.E. steps**

---

[106] *Id.*, at ¶313

[107] *See Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002) ("[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.").

[108] Pl. 56.1, at ¶315

[109] *Id.*, at ¶316

[110] *Id.*, at ¶317

[111] *Id.*, at ¶318

[112] *Id.*, at ¶319

[113] *Id.*, at ¶320

[114] *Id.*, at ¶350

Even assuming, *arguendo,* that they were required to comply with Steps 1 through 5 prior to bringing this lawsuit, which Plaintiffs dispute, they nevertheless complied.  Ortiz, the Director of Human Resources, was responsible for facilitating and managing C.A.R.E.[115] After hundreds of employees were furloughed from the Hotel, neither the Warner Defendants nor Ortiz provided any updated information to employees about how to engage in C.A.R.E. or if they even had a direct supervisor while they were on unpaid furlough.[116]  Therefore, Plaintiffs had no ability to complete Step 1 as they did not have immediate supervisors.[117]  Further, once the Hotel General Manager Tauscher resigned, there was no Hotel General Manager to whom Plaintiffs could lodge a complaint.[118]  Again, assuming they would have been required to skip straight to Step 2, during the June 25, 2021 Teams meeting complaints had to be made in writing by using "chat" to message human resources, which Plaintiffs and their colleagues did during the June 25, 2021 Teams meeting.[119]  Some of the written complaints were read aloud including questions about the legality of the "furloughs," No Fault Separation Pay, and requests for a meeting with Ownership.[120]  While some questions were asked on an individual basis such as about "COBRA coverage," most of the questions were asked on behalf of the "employee team," as it was noted during the call that "there's just some general feedback that this doesn't sit well with the team on the call… can you please schedule a call with Ownership?" But Ortiz did not comply with Defendants' obligations under C.A.R.E.[121]  Ortiz refused to admit that complaints about not

---

[115] *Id.*, at ¶304
[116] *Id.*, at ¶305
[117] *Id.*, at ¶306
[118] *Id.* at ¶309
[119] *Id.*, at ¶289
[120] *Id.*, at ¶290
[121] *Id.*, at ¶349

receiving severance warranted any kind of investigation.[122]  Ortiz further admitted that "400-plus

employees that have had concerns over the last three years…" but no investigation into the non-

payment of No Fault Separation Pay was done because "they are eligible for recall, and we were

temporarily closed."[123] Nor did she do anything to escalate the written complaints.[124]

    New York law applies to EmPact.[125] The doctrine of "prevention" stands for the general

proposition that "a party to a contract cannot rely on the failure of another to perform a condition

precedent where he has frustrated or prevented the occurrence of the condition."[126] The New

York Court of Appeals has described prevention as follows:

> A condition precedent is linked to the implied obligation of a party
> not to "do anything which will have the effect of destroying or
> injuring the right of the other party to receive the fruits of the
> contract." Thus, it is a "well-settled and salutary rule that a party
> cannot insist upon a condition precedent, when its non-
> performance has been caused by himself."[127]

---

[122] *Id.*, at ¶292

[123] *Id.* at ¶¶ 293, 302

[124] *Id.*, at ¶294

[125] *See Staley v. Hotel 57 Services, LLC*, 2024 WL 1090816, at *2 (2d Cir. Mar. 13, 2024) (summary order).

[126] *Kooleraire Serv. & Installation Corp. v. Bd. of Educ. of the City of N.Y.*, 28 N.Y.2d 101, 106–07, 320 N.Y.S.2d 46, 268 N.E.2d 782 (1971); *see also Corbin on Contracts* § 947 ("To one who is sued for nonperformance of his promise it is a defense if he can prove that his performance was prevented or substantially hindered by the plaintiff."); Lord, Richard A., *Williston on Contracts* § 63:26 (4th ed. 2006) ("[T]here is generally in a contract subject to either an express or an implied condition an implied promise not to prevent or hinder performance of the contract.").

[127] *A.H.A. Gen. Constr., Inc. v. N.Y. City Housing Auth.*, 92 N.Y.2d 20 (1998) (quoting *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87 (1933); *Young v. Hunter*, 6 N.Y. 203, 207 (1852)); accord *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 169 (2d Cir.1966) (en banc) (Friendly, J.) ("'One who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as such a condition. He will not be permitted to take advantage of his own wrong, and to escape from liability for not rendering his promised performance by preventing the happening of the condition on which it was promised.'" (quoting 3A Corbin, *Contracts* § 767, at 540 (1960))).

The Warner Defendants' claims are contradicted by the June 25, 2021 Teams meeting, where employees complained to Ortiz about the legality of indefinite furloughs. During the Teams meeting, employees wrote complaints in the Teams chat box about not being paid their No-Fault Separation Pay and their never-ending furlough status.[128]  Rather than investigate the complaints, Ortiz responded that "we wouldn't be paying out that severance at this juncture, only because we do consider you to be furloughed, we do anticipate reopening, and we do anticipate recalling you to work once we do reopen."[129]  When Ortiz was questioned by the employees if what the Hotel was doing was legal, Ortiz responded "There is no limitations on how long employees can be on furlough. There are thoughts that there are timeframes on that, but from a legal perspective, there isn't a length of time."[130] The furloughed employees tried to go over Ortiz's head by requesting a meeting be scheduled with ownership present, but the Warner Defendants refused to schedule such a meeting to hear the employees' complaints.[131]  Either way, the evidence shows that the Warner Defendants frustrated and prevented Plaintiffs' use of the "C.A.R.E. dispute resolution procedure."

Accordingly, assuming that any conditions precedent ever existed for No Fault Separation Pay, which Plaintiffs submit they did not, through their actions, the Warner Defendants prevented Plaintiffs from complying or waived any requirement that Plaintiffs comply with the Steps.

---

[128] Pl. 56.1, at ¶¶290, 295.
[129] *Id.*, at ¶296
[130] *Id.*, at ¶297
[131] *Id.*, at ¶300

**Conclusion**

Respectfully, this Court should deny Defendants' Motion for Summary Judgment, and grant such other or further relief as the Court deems appropriate.

Dated:  August 8, 2024
       New York, New York

                              Respectfully Submitted,

                              */s/ Evan Brustein*
                              Evan Brustein
                              One of Plaintiffs' Attorneys

Attorneys for Plaintiffs
RISMAN & RISMAN, P.C.
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-6400

BRUSTEIN LAW PLLC
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-3900

BROMBERG LAW OFFICE, P.C.
352 Rutland Road, #1
Brooklyn, New York 11225
(212) 248-7906

**Certificate of Service**

I hereby certify that on this date a copy of the foregoing document was electronically filed using the Court's CM/ECF system, which will automatically send copies of same to counsel of record below:

Brian Lewis Bromberg, Esq.

Evan Craig Brustein, Esq.

Hayden R. Pace, Esq.

James J. Boland, Esq.

John R. Hunt, Esq.

Kathryn Lundy, Esq.

Marc Brian Zimmerman, Esq.

Maya Risman, Esq.

Paul Eric Wagner, Esq.

Dated: Brooklyn, New York
      August 8, 2024

                              /s/ Brian L. Bromberg
                              Brian L. Bromberg