**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
SELENA STALEY, VIVIAN HOLMES, and OLIVE IVEY,
on behalf of themselves and all others similarly situated,

                                          22-CV-6781 (JSR)

                Plaintiffs,

    - against-

HOTEL 57 SERVICES, LLC,                      **[PROPOSED]**

                    Defendant.      **JURY INSTRUCTIONS**
------------------------------------------------------------------------x

      PLEASE TAKE NOTICE that Plaintiff SELENA STALEY, VIVIAN HOLMES, and

OLIVE IVEY, on behalf of themselves and all others similarly situated, by and through their

attorneys, Brustein Law PLLC, Risman & Risman, P.C., and Bromberg Law Office, P.C.,

pursuant to Rule 51 of the Federal Rules of Civil Procedure, respectfully requests that the Court

give the following instructions to the jury, and such other instructions as may be submitted

hereafter in accordance with later proceedings in this action. With the Court's permission, the

parties wish to respectfully reserve the right to supplement these instructions at the close of the

evidence if unanticipated factual issues have arisen during the course of trial.

PROPOSED JURY INSTRUCTION NO. 1
INTRODUCTORY REMARKS

Ladies and gentlemen of the jury, I am now about to instruct you on the law that you will apply to the facts in this case. You will then perform your most important function. You will determine the facts in accordance with my instructions on the law. Before I begin, I repeat my thanks and that of the parties for your patience and attention. We recognize the personal inconvenience you undergo to serve and extend, again, our appreciation for the important service you render to the administration of justice.

You have now heard all of the evidence in this case as well as the final arguments of the lawyers for the parties. We have reached the point where you will undertake your final function as jurors. You have paid careful attention to the evidence, and I am confident that you will approach your deliberations with the same patience you have displayed thus far and that you will act with fairness and impartiality to reach a just verdict.

My duty, as the judge, is to now instruct you as to the law, and your duty, as the jury, is to accept my instructions and apply them to the facts as you determine them. You should not single out any instruction as alone stating the law. All of my instructions are equally important and you should consider them as a whole when you deliberate. You also should not be concerned about the wisdom of any rule that I state.

Regardless of any opinion that you may have as to what the law may be – or ought to be – it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you. If any attorney has stated a legal principle different from any that I state to you in these instructions, it is my instructions that you must follow. You must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you and according to the law, as you gave your oath to do

at the beginning of the case. The result of your work will be the verdict that you return. If we both perform our functions properly, then justice will have been served no matter what verdict you return.[1]

As members of the jury, you are the sole and exclusive judges of the facts. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw the reasonable inferences to be drawn from the evidence, or lack of evidence. In determining these issues, no one may invade your functions as jurors.

Because you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. During the trial, I have been called upon to make rulings on various questions. There may have been objections, or motions may have been made to strike answers. You are to disregard the reason for these matters. You are to disregard the fact that an objection was made and sustained or overruled or that conferences took place. The rulings I have made during the trial are not any indication of my views of what your decision should be. These are matters of law and, although you may have been curious about them, you should not consider them. Of course, if at any time I instructed you to disregard anything that was said, then you must follow that instruction and pay no attention to that question or answer in your deliberations.

I also ask you to draw no inference from the fact that upon occasion I made comments, asked questions of certain witnesses, or said something to any of the attorneys. These comments, questions and statements were only intended for clarification or to expedite matters, and certainly

---

[1] 3 Sand, Siffert, Reiss, Sexton & Thorpe, Modern Federal Jury Instructions (1990), Instruction 71-2, Modified [hereinafter "Sand"]; *The Patapsco Ins. Co. v. Southgate*, 30 U.S. 604, 621, 8 L.Ed. 243 (1831); *Franks v. United States Lines Co*., 324 F.2d 126 (2d Cir. 1963); Sand Instruction 71.01.

were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses. From time to time, the attorneys and I may also have had sidebar conferences and other conferences out of your hearing. None of these conferences should enter into your deliberations at all. You are expressly to understand that the court has no opinion as to the verdict you should render in this case.[2]

With regard to any factual matter, your recollection and your recollection alone governs. Anything that counsel for either party may have said with respect to matters in evidence, whether while questioning witnesses or in argument, is not to be substituted for your own recollection or evaluation of the evidence. So, too, anything that I may have said during the trial or may say during these instructions as to any factual matter is not to be taken in place of your own recollection or judgment.[3]

Outside research or communications about the case are prohibited. You are not permitted to use electronic devices to investigate the case. You may discuss the case only with your fellow jurors during deliberations.

---

[2] Sand Instruction 71-3 (Modified); Sand Instruction 71.01.
[3] Sand Instruction 71.0.

PROPOSED JURY INSTRUCTION NO. 2
CLASS ACTION[4]

As I mentioned at the beginning of the trial, this is a class action. The Court has certified a

class of individuals who were affected by the same conduct and damages alleged by the Plaintiffs.

This Court has appointed the Plaintiffs Selena Staley, Olive Ivey, and Vivian Holmes to serve as Class

Representatives on behalf of the Class.  A class action is a lawsuit that has been brought by one or

more plaintiffs on behalf of a larger group of people who have similar legal claims. All of these people

together are called a "class." The class representatives who are bringing this action are Selena Staley,

Vivian Holmes, and Olive Ivey.

In a class action, the claims of many individuals can be resolved at the same time instead of

requiring each member to sue separately. Here, Ms. Staley, Ms. Holmes, and Ms. Ivey are suing

defendant Hotel 57 Services, LLC on behalf of a class of 73 people. If you find it appropriate, you

may apply the evidence at this trial to all class members. All members of the class will be bound by the

result of this trial. The fact that this case is proceeding as a class action does not mean any decision has

been made about what your verdict should be.

The class in this case consists of all non-union employees of Hotel 57 Services, LLC who

worked for Hotel 57 Services, LLC at the Four Seasons New York Hotel, and whose employment was

furloughed on or after March 14, 2020, and whose employment at the Four Seasons New York Hotel

was furloughed for more than six months, commencing on or after March 14, 2020.  Some individuals

who were eligible to be part of the class have chosen to opt out.  These individuals are not part of the

case and will not receive any relief as a result of your verdict, and you are not to consider them in

determining liability or damages. You must not speculate about their reasons for opting out or consider

---

[4] *See Ramirez v. TransUnion, LLC*, N.D.Cal. Case No. 12-CV-00632-JSC, Final Jury Instructions
(ECF# 301) at 13.

them in any way when evaluating the claims or determining liability or damages.  Your deliberations should be limited solely to the claims of the 73 class members who remain in the case.

Your verdict in this case, whatever it may be, must be the same for every class member because I have already found that the important issues in the case are common to all class members.

<u>PROPOSED JURY INSTRUCTION NO. 3</u>
BURDEN OF PROOF

I will now describe to you what is called the "burden of proof." From television, books, or movies you may have heard of something called proof beyond a reasonable doubt. That is the standard, or burden, of proof in a criminal trial. Since this is a civil trial, that requirement does not apply. You should therefore put it entirely out of your mind. The burden of proof in this case is called a preponderance of the evidence.

A "preponderance of the evidence" means the greater weight of the evidence. The weight of evidence refers to the quality of the evidence, not to the number of witnesses, the number of documents, or the amount of time a particular side spent presenting its case. It is the weight the evidence carries in your mind. Put another way, to prove something by a "preponderance of the evidence" simply means to prove that it is more likely so than not so.[5]

To say that a party has the burden of proof on a particular issue means that, considering all the evidence in the case, the party's claim on that issue must be established by a preponderance of the evidence – the testimony, stipulations of fact, and documents – that you find worthy of belief. In order for a party to prevail on an issue on which it has the burden of proof, the evidence that supports its position on that issue must appeal to you as more nearly representing what happened than the evidence opposed to it.

When I say in these instructions that a party has the burden of proof on any proposition, or use expressions like "if you find," or "if you decide," I mean you must be persuaded, considering all the evidence in the case, that the proposition is more probably true than not true.

---

[5] Sand Instruction 73-2 (Modified); 3 Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions, §§ 72.02 (1987 & Supp. 1993) (hereinafter, "Devitt"); New York Pattern Jury Instructions, Second Edition ("PJI") 1:23.

In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of witnesses, regardless of who may have called them, the relevant exhibits received in evidence, regardless of which side may have produced them, and any stipulated facts, as I may have identified them to you.

You should also attach no significance to the fact that certain witnesses were called to testify by the Plaintiffs or by the Defendant. Nor should you attach any meaning to the fact that a document or other exhibit was introduced by one party rather than another. Every party is entitled to the benefit of any evidence tending to support its arguments, even if such evidence came from witnesses or documents introduced by the other party. This is true with respect to any contested issue of fact in the case.[6]

---

[6] *Larson v. Jo Ann Cab Corp.*, 209 F.2d 929 (2d Cir. 1954); Sand Instruction 73-2.

PROPOSED JURY INSTRUCTION NO. 4
WHAT IS, AND IS NOT, EVIDENCE GENERALLY

The evidence in this case is the sworn testimony of the witnesses, the documents, and other exhibits which have been received in evidence.

The questions asked by the attorneys are not evidence, nor are the statements the attorneys made in their openings and summations. Objections, my rulings on those objections, and the various other arguments and statements made by the attorneys, or by me, during the trial are also not evidence. Finally, testimony that has been stricken or excluded, and documents or other exhibits which have not been admitted into evidence are also not evidence, and are not to be considered by you in your deliberations or in reaching your verdict in this case.

The attorneys, on cross-examination, may have incorporated into a question a statement which assumed certain facts to be true. If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the attorney's question.

Also, if certain testimony was received for a limited purpose – such as for the purpose of showing a witness's state of mind – you must follow the limiting instructions I gave at the time that evidence was received.

What the attorneys said to you in their opening statements and in their summations was intended simply to help you understand the evidence, but was not evidence itself. If your recollection of the facts differs from what the attorneys said, you should rely upon your recollection, and not the attorney's statements.

Exhibits which were marked for identification, but were not actually admitted into evidence, also may not be considered nor may materials which were used solely to refresh a witness' recollection.

Finally, statements which I may have made concerning the quality of particular evidence do not constitute evidence. It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.[7]

---

[7] Sand Instruction 74-1 (Modified).

PROPOSED JURY INSTRUCTION NO. 5
DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two types of evidence which you may properly use in reaching your verdict. One type of evidence is direct evidence. Direct evidence is testimony by a witness about something he knows by virtue of his own senses something he himself has seen, felt, touched, or heard. Direct evidence may also be an exhibit where the fact to be proved is its present existence or condition.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts. A simple example of circumstantial evidence which is often used in this courthouse goes like this: Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Now assume that the courtroom blinds were drawn during the trial, so you could not see outside. As the trial proceeded, someone walked into the courtroom with a dripping wet umbrella. Then, a few minutes later, another person also entered with a wet umbrella. Now remember, the blinds on the windows are drawn, so you can't see whether or not it is raining outside. So you have no direct evidence of that fact. But because you saw two people walk into the courtroom with wet umbrellas, it would be reasonable and logical to conclude that it had indeed been raining outside. Those wet umbrellas are circumstantial evidence of the fact that it is, or was, raining outside. You infer on the basis of reason, your own experience, and common sense, from one established fact – that two people walked into the courtroom with wet umbrellas – the existence of another fact – that it is, or was, raining outside.

Circumstantial evidence is of equal value to direct evidence. The law generally makes no distinction between direct evidence and circumstantial evidence. It simply requires that your

verdict be based upon a preponderance of all the evidence, both direct and circumstantial, that has been presented.[8]

---

[8] Sand Instruction 74-2 (Modified).

PROPOSED JURY INSTRUCTION NO. 6
INFERENCES

During the trial, you may have heard the attorneys use the word "inference" in their opening statements or summations, or you may have heard them ask you to infer, on the basis of your own experience and common sense, one or more facts, with the assistance of some other fact.

An inference is not a suspicion or a guess. It is a reasonable, logical decision to conclude that a disputed fact exists based upon another fact which you know to exist. There are times when different inferences may be drawn from the same facts. Not all such inferences, though, would be equally fair or reasonable. It is for you, and you alone, to decide whether to draw any inferences from the evidence you have heard and seen during the trial, and if so, what inferences may reasonably be drawn from that evidence. You may not use your experience and common sense to fill in or create evidence that does not exist, but you may use them to draw reasonable inferences from proven facts, or to weigh and evaluate the evidence, or lack of evidence, provided during the trial.[9]

---

[9] Sand Instruction 74-1.

<u>PROPOSED JURY INSTRUCTION NO. 7</u>
WITNESS CREDIBILITY

You have now had the opportunity to observe all the witnesses, and it is time for you to decide how believable each witness was in his or her testimony. Since you are the sole judges of the facts in this case, you must judge the credibility of each witness, and the importance of his or her testimony in this case. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and importance of each witness's testimony.

How are you to appraise or weigh their testimony? There is no magic formula. When you walked into this courtroom as jurors, however, you did not leave your common sense, your good judgment, or your experiences in life behind you. You carried those experiences and common sense with you into the jury box, and you will carry them into the jury room during your deliberations, as well. Your determination of the credibility – by which I mean the believability – of a witness very largely depends upon the impression that witness made upon you. Did the witness's version appear straightforward and candid, or did the witness try to hide some of the facts? Was the witness' testimony consistent or self-conflicting? Is there a motive of any kind to testify falsely or to shade the testimony offered?

Everything a witness said or did on the witness stand counts in your determination. Indeed, often it is not what a person says but how he or she says it that moves us. What you should try to do, in other words, is to "size the person up," just as you would do in any important matter when you are undertaking to determine whether or not a person is being truthful, candid and straightforward.

You should consider the opportunity the witness had to see, hear, and know the things about which he testified, the accuracy of his memory, his candor or lack of candor, his intelligence, the reasonableness of his testimony and its consistency. You should also consider the probability or improbability of the witness's testimony when viewed in the light of all of the other evidence in the case. The witness's demeanor, his or her relationship, if any, to the dispute or to one or the other of the parties, and any other potential bias or partiality, are also all factors in determining the witness's credibility. You may also consider changes made to deposition testimony through an errata sheet when evaluating the credibility of a witness.  Such changes are permitted under the rules but the original answers remain part of the record and may be used for comparison or impeachment.  There may be yet additional factors, and you may consider any that you believe bear on the witness's credibility.

If it appears that there is a discrepancy in the evidence, you will have to consider whether the apparent discrepancy may be reconciled by fitting the two stories together. If that is not possible, you will then have to determine which of the conflicting versions you will accept. Use common sense and rely on your human experience.

In evaluating a witness's testimony, you should consider whether he or she has an interest, or lack of interest, in the outcome of the case. An interested witness is not necessarily less believable than a disinterested witness, and having an interest does not mean that the witness has not told the truth. It is for you to decide from the demeanor and testimony of each interested witness on the stand and such other tests as your experience dictates whether or not the testimony has been influenced, intentionally or unintentionally, by his or her interest.

PROPOSED JURY INSTRUCTION NO. 8
OPINION TESTIMONY[10][11]

You have heard testimony containing opinions from Joseph A. Krock.  In weighing this opinion testimony, you may consider his qualifications, the reasons for his opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness.  The opinion of Joseph A. Krock should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

In deciding whether to accept or rely upon the opinion of Joseph A. Krock, you may consider any bias that Joseph A. Krock may have, including any bias that may arise from evidence that Joseph A. Krock has been or will be paid for reviewing the case and testifying or from evidence that Joseph A. Krock testifies regularly and makes a large portion of his income from testifying in court.

---

[10] Third Circuit General Instructions for Civil Cases 2.11.   The instruction avoids labeling the witness as an "expert." If the court refrains from designating the witness as an "expert" this will "ensure[] that trial courts do not inadvertently put their stamp of authority" on a witness' opinion, and will protect against the jury's being "overwhelmed by the so-called 'experts'." Hon. Charles Richey, *Proposals to Eliminate the Prejudicial Effect of the Use of the Word "Expert" Under the Federal Rules of Evidence in Criminal and Civil Jury Trials,* 154 F.R.D. 537, 559 (1994). *See* Advisory Committee Note to Federal Rule of Evidence 702 (2000) (cautioning against instructing the jury that the witness is an "expert").

[11] This instruction is only to be given should the Court deny Plaintiffs' Motion *In Limine* to preclude the testimony of Dr. Krock.   Should the Court not deny Plaintiffs' Motion *In Limine* to preclude the testimony of attorney Paul Wagner, Esq., Plaintiffs submit that Paul Wagner's name should also be included in this instruction.

PLAINTIFFS' PROPOSED JURY INSTRUCTION #9
CORPORATE DEFENDANT

Under the Federal WARN Act, an "employer" is a business enterprise that employs 100 or more employees. Under the New York State WARN ACT, an "employer" is a business enterprise that employs 50 or more employees.  A corporation is considered a "business enterprise" and can be an employer for purposes of the WARN Act.

A corporation can act only through its officers, employees, or agents. Any act, omission, or failure to act by a corporation is legally considered the act, omission, or failure of the corporation itself if it occurred within the scope of an officer's, employee's, or agent's authority and in the regular course of the corporation's business.[12]

---

[12] Authority: Based off the 9th Circuit Model Civil Jury Instructions (2023)

PROPOSED JURY INSTRUCTION NO. 10
USE OF CERTAIN DEPOSITIONS[13]
(if any deposition testimony is read or shown by video to the jury)

Some of the testimony before you is in the form of depositions which have been received in evidence. A deposition is simply a procedure where the attorneys for one side may question a witness or an adversary party under oath before a court stenographer and/or videographer prior to trial. This is part of the pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition where a transcript is read or where a video is shown according to the same standards you would use to evaluate the testimony of a witness given at trial.  If the deposition testimony is being read, do not place any significance on the behavior or tone of voice of any person reading the questions or answers.[14]

---

[13] Authority: Sand, Siffert, Loughlin, Reiss, Allen and Rakoff, Modern Federal Jury Instructions (2012), Volume 4 (Civil), Instruction 74-14.
[14]  Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 2017 Edition, updated March 2025, at Instruction 2.4.

PROPOSED JURY INSTRUCTION NO. 11
IMPEACHMENT

A witness may be discredited, or "impeached," by a showing that at some earlier time the witness said or did something which is inconsistent with the witness's testimony here at trial. It is for you to determine, first, whether the prior statement or act was indeed inconsistent with the witness's trial testimony, and if so, whether the inconsistency is significant or inconsequential.

If you believe that a witness has been impeached, it is your exclusive province to give the testimony of that witness such credibility or weight, if any, as you may think it deserves. If you find that the witness made an earlier statement that now conflicts with the testimony that witness gave here at trial, you may accept, in part or in whole, the earlier testimony; you may accept, in part or in whole, the witness's testimony here at trial; or you may reject, in whole or part, both the prior and trial testimony.

In making this determination, you may consider whether the witness purposefully made a false statement now, or previously, or whether it was an innocent mistake; whether the inconsistency concerns an important fact or a small detail; and whether the witness had a credible explanation for the inconsistency.[15]

Evidence of the prior inconsistent statement was presented to you to help you decide whether to believe the trial testimony of that witness. It is not to be considered by you as affirmative evidence in determining liability.[16]

---

[15] Sand Instruction 76-5.
[16] Sand Instructions 76-4, 76-5 (Modified).

PROPOSED JURY INSTRUCTION NO. 12
DISCREPANCIES IN TESTIMONY, AND THE DOCTRINE OF *FALSUS IN UNO*

In considering the evidence presented to you at trial, you may find that there were discrepancies in a witness's testimony. If you do, that is a proper basis for you to disbelieve that witness. Such discrepancies, though, or differences between one witness's testimony and another's do not necessarily mean that that witness should be disbelieved completely.

Witnesses sometimes forget things, and even witnesses who are trying to be scrupulously truthful may be nervous or anxious when they testify and contradict themselves or misspeak unintentionally. Two people witnessing the same event may also see or hear it quite differently. That is where your role as the jury comes in; it is your job to judge from both what a witness says, and how he or he appears, whether his or her testimony should be believed, and how much weight it should be given.

In weighing the significance of a discrepancy in testimony, you may wish to consider whether it relates to an important fact or merely to a trivial detail. You should always remember, though, that a willful falsehood of any kind is a matter of importance, and should be considered seriously.

If you find that, during the trial, a witness has willfully testified falsely as to a material fact, the law permits you to disregard not only the testimony regarding that fact, but the testimony of that witness in its entirety. The law allows this on the principle that a person who testifies falsely about one material fact is likely to testify falsely about other facts, and possibly even about everything. You are not, however, required to disregard all of that witness's testimony. You may accept as much of the witness's testimony as you feel is true, and disregard as much of it as you feel is false.

PROPOSED JURY INSTRUCTION NO. 13
IMPEACHMENT OF WITNESS'S CHARACTER FOR TRUTHFULLNESS

You have heard evidence that a witness, has been convicted of a felony for tax evasion. You may use that evidence only to help you decide whether to believe the testimony of that witness and to determine how much weight to give it. That evidence does not mean that this witness engaged in any conduct alleged in this case, and you must not use that evidence as any proof that this witness engaged in that conduct.[17]

---

[17] Third Circuit Model Jury Instruction, General Instructions for Civil Cases, September 2024, at 2.1

<u>PROPOSED JURY INSTRUCTION NO. 14</u>
INTEREST IN THE OUTCOME AND OTHER BIAS

In evaluating a witness's testimony, you should consider whether he or she has an interest, or lack of interest, in the outcome of the case. The parties, including any former and present executives, officers, employees, affiliates and agents, all have interests in how this case is decided. As parties, or former officers, employees, affiliates or agents, they are all interested witnesses.

An interested witness is not necessarily less believable than a disinterested witness, and having an interest does not mean that the witness has not told the truth. It is for you to decide from the demeanor and testimony of each interested witness on the stand and such other tests as your experience dictates whether or not the testimony has been influenced, intentionally or unintentionally, by his or her interest.

You may, if you consider it proper under all of the circumstances, choose not to believe the testimony of an interested witness, even though it is not otherwise challenged or contradicted. However, you are not required to reject the testimony of such a witness, and you may accept all, or as much, of his or her testimony as you find reliable, and reject as much as you find unworthy of belief.[18]

For example, you may consider a current or former employment relationship as well as a current financial relationship between the Defendant, Hotel 57 Services, LLC, as well as any other interest a party or witness may have, in determining whether that witness's testimony was in any way influenced by that relationship or interest.[19]

---

[18] Sand Instruction 76-2 (Modified).
[19] PJI 1:92.

PROPOSED JURY INSTRUCTION NO. 15
SUMMARY OF PLAINTIFF'S CLAIMS

The Court has already found that Defendant violated the WARN Acts in March 2020 by not providing a proper WARN Notice. Now you must decide whether Defendant also violated the WARN Acts on any other occasions by failing to provide WARN Notices, if the reasons or circumstances for the layoff changed. Plaintiffs contend that the circumstances for extending the layoffs changed at least seven other times, and no WARN notices were given to its employees or the necessary government officials. Therefore, Plaintiffs contend that the Plaintiffs and the Class are entitled to be compensated not just for the initial violation but also for those additional seven violations.

PROPOSED JURY INSTRUCTION NO. 16
SUMMARY OF DEFENDANTS' DEFENSES


Here, the Defendant contends that it complied with the WARN Acts after the mass

layoff in March 2020 by providing letters to the Plaintiffs and the Class on August 5, 2020,

and that no other communication or notice was required.

PLAINTIFFS' PROPOSED JURY INSTRUCTION #17
INTRODUCTORY INSTRUCTION FOR THE FEDERAL
AND THE NEW YORK WARN ACTS

Congress passed the Federal WARN Act in response to "extensive worker dislocation that occurred in the 1970s and 1980s [when] companies were merged, acquired, or closed, causing many employees to lose their jobs, often without notice." Id. In some cases, employers actively concealed anticipated closures and furloughs from their employees. By enacting the WARN Act and requiring employers to give their employees advance notice of closures and furloughs, Congress sought to provide workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that would allow them to successfully compete in the job market.[20]

The New York WARN Act took effect on February 1, 2009. The New York WARN Act was enacted to address the significant personal, economic, and social consequences that can result from sudden and large-scale job losses, such as mass layoffs, plant closings, or relocations of substantial portions of a business. The New York Legislature recognized that when employers close facilities or reduce their workforce without warning, workers and their families are left vulnerable. The sudden loss of employment can leave individuals without income, health benefits, or adequate time to seek new work or training opportunities. It can also harm the broader community, particularly when many employees are affected at once.[21] New York had an interest in protecting individuals working in New York, and in 2009 the New York Warn Act went into effect to provide broader protections than the federal version.

---

[20] Staley v. FSR Int'l Hotels Inc., 775 F. Supp. 3d 720, 731 (S.D.N.Y. 2025)
[21] Authority based on New York WARN Act Fact Sheet,
https://dol.ny.gov/system/files/documents/2024/12/p483_warn-act-fact-sheet-10_24.pdf

The New York WARN Act was created to ensure that employees and communities are provided with advance notice of certain large-scale job losses. This allows workers time to prepare for the loss of employment, to secure new jobs, to obtain retraining or transition services if necessary, and to mitigate the disruption caused to their lives and families.  The law also enables local governments and workforce development agencies to prepare for potential economic impacts in their communities and to mobilize support services for displaced workers.[22]

As jurors, you are not to decide the wisdom of these laws. But you may consider their purpose as part of your interpretation of the evidence and any statutory requirements relevant to this case. Whether the defendant's conduct complied with or violated the federal WARN Act and/or the New York WARN Act is a question for you to decide based on the law and the facts presented.

---

[22] *Id.*

PLAINTIFFS'  PROPOSED  JURY  INSTRUCTION  #18

THE FEDERAL WARN ACT AND THE NEW YORK WARN ACT
HAVE MANY SIMILARITIES

The text of the New York WARN Act and the text of the Federal WARN Act have many similarities.  However, under the New York statute, "notice must be given in ninety, rather than sixty, days in advance."  Moreover, the New York statute applies to employers who employ fifty or more employees, rather than 100.  The New York WARN Act thus imposes higher standards on employers than the Federal WARN Act. Given the heightened standards set forth under the New York WARN Act, where there is liability under the Federal WARN Act, there is necessarily liability under the New York WARN Act.[23]  It is undisputed in this case that the Defendant employed more than 100 employees and did not give even 60 days advance proper notice under the WARN Acts, therefore unless I am referring to either the federal WARN Act or the New York WARN Act specifically, I will refer to them both collectively as the WARN Acts.

---

[23]  Authority from Staley v. FSR Int'l Hotels Inc., 775 F. Supp. 3d 720, 733 (S.D.N.Y. 2025).

PLAINTIFFS'  PROPOSED  JURY  INSTRUCTION  #19

REMEDIAL PURPOSE OF WARN ACTS TO BE CONSTUED LIBERALLY

The WARN Acts' primary purpose is remedial. That is, the WARN Acts are intended to correct, remove, or lessen a wrong.[24] Therefore, as with all remedial statutes, its terms must be construed in liberal fashion so that the Congressional purpose can be effectuated.  The WARN Acts aim to "provide workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market," and allows "the state to provide prompt assistance to displaced workers."[25]

To aid in providing warning, the WARN Acts define an 'affected employees' as any employee who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer."[26]  The WARN Acts define an employment loss as (1) a termination of employment (not including discharge for cause, voluntary departure, or retirement), (2) a layoff exceeding 6 months, or (3) a reduction in hours of work of more than 50% during each month of any 6-month period. [27]

---

[24] *Black's Law Dictionary* (12th ed. 2024), remedial.
[25] *See Staley*, 2025 WL 967369, at *6.
[26] 29 U.S.C. § 2101(a)(5); 12 NYCRR § 921-1.1(a)
[27] 29 U.S.C. § 2101(a)(6); 12 NYCRR § 921-1.1(f)

PLAINTIFFS' PROPOSED JURY INSTRUCTION #20

THE WARN ACTS APPLY IN THIS CASE

The WARN Acts apply when an employer with the required number of employees implements a "mass layoff" or "plant closing" that results in "employment losses" for affected employees. Here, it is undisputed that the closure of the Four Seasons Hotel New York in March 2020 constituted a mass layoff under both WARN Acts. The Court has already determined that that the events in this case triggered the WARN Acts' notice requirements for Defendant.

PLAINTIFFS' PROPOSED JURY INSTRUCTION #21

WHAT CONSTITUTES PROPER NOTICE UNDER THE FEDERAL WARN ACT

Under the federal WARN Act, an employer is required to provide written notice of a plant closing or mass layoff to affected employees or their representatives at least 60 days before the closing or layoff.  The notice must be:

1. In writing;

2. Delivered to each affected employee or their union representative, if applicable;

3. Delivered in a manner that ensures receipt (for example, by first-class mail, personal delivery, or another reliable method);

4. Issued at least 60 calendar days before the date of the layoff or plant closing (unless a legal exception applies).

5. Notice must also be given to the appropriate state dislocated worker unit.  This is typically the state's agency responsible for workforce development and reemployment services

6. Notice must also be given to the chief elected official of the local government where the employment site is located

A WARN Notice delivered on shortened time must contain the brief statement of the reason for reducing the notice and all of the other elements required to be in the WARN notice.[28]

The notice must contain specific information, including:

- The name and address of the employment site;

---

[28] *See In re Dewey & Leboeuf LLP* 507 B.R. 522, 532 (2014)

- The name and contact information of a company official to contact for further information;

- A statement explaining whether the layoff or closing is permanent or temporary;

- The expected date of the first separation and the schedule for subsequent separations;

- The job titles of affected positions and the number of affected employees in each job classification;

- Whether bumping rights exist (i.e., whether employees can displace others with less seniority);

- The name of the union representing affected employees (if any) and the name and address of the union's chief elected officer.

PLAINTIFFS' PROPOSED JURY INSTRUCTION #22

WHAT CONSTITUTES PROPER NOTICE UNDER THE NEW YORK WARN ACT

To comply with the New York WARN Act, the employer must provide written notice to affected employees, representatives of affected employees, the Commissioner of Labor, and also the local Workforce Investment Board where the site of employment is located.[29]

All notices must be sent on official letterhead of the employer or via the employer's computer network and must be signed by an individual with authority to represent the employer in this regard. The employer representative must have the authority to bind the employer and must attest to the truthfulness of all information provided in the notice.[30]

Notice to affected employees is required to be given to employees who may reasonably be expected to experience an employment loss.[31] Notice to the affected employees must include the following specific information:

(1)    The expected date of the first separation of employees and the date when the individual employee will be separated;

(2)    A statement as to whether the planned action is expected to be permanent or temporary, and whether the entire plant is to be closed. If the planned action is expected to affect identifiable units of employees differently, e.g. should the employer expect a layoff of one unit to be temporary and the layoff of another unit to be permanent, the notice shall so indicate;

(3)    A statement as to whether bumping rights exist;

---

[29] §921-2.2(c)
[30] §921-2.2(c)
[31] §921-2.2(g)

(4)     The name and telephone number of an employer representative to contact for further information;

(5)     Information concerning unemployment insurance, job training, and re-employment services for which affected employees may be eligible. Such information shall, at a minimum, include the following notice:

"You are also hereby notified that, as a result of your employment loss, you may be eligible to receive job retraining, re-employment services, or other assistance with obtaining new employment from the New York State Department of Labor or its workforce partners upon your termination.  You may also be eligible for unemployment insurance benefits after your last day of employment.  Whenever possible, the New York State Department of Labor will contact your employer to arrange to provide additional information regarding these benefits and services to you through workshops, interviews, and other activities that will be scheduled prior to the time your employment ends. If your job has already ended, you can also access reemployment information and apply for unemployment insurance benefits on the Department's website or you may use the contact information provided on the website or visit one of the Department's local offices for further information and assistance."[32]

An employer is in violation of the New York WARN Act if the notice is not timely or lacks material information required by law.

---

[32] §921-2.3(b)

PLAINTIFFS'  PROPOSED JURY INSTRUCTION #24

DEFENSES TO BE NARROWLY CONSTRUED

The WARN Acts  require  that  the defenses, which  allow  less  than 60 days' or 90 days'

written  notices,  must  be  narrowly construed.   What that means, for your purposes,  is that if

you  have  doubt  whether  the  facts  as  you  have  found  them  are  the  sort  of facts  that come

within  the legal  definition  of these defenses,  you should  resolve  that doubt  in favor  of the

Plaintiffs and the Class,  and  should  find  that the defenses  are not proven.

Because the WARN Acts are remedial statutes designed to protect workers, any

exceptions or defenses that would reduce the protection afforded to employees must be

interpreted narrowly.[33]

---

[33] *Carpenters Dist. Council v  Dillrud's*, 15 F.2d 1275, 1282 (5th Cir. 1994) establishes that
the defenses are to be narrowly construed. The second sentence of this proposed instruction
is a plain-language explanation of how this principle should affect the jury's consideration
of the defenses  In the alternative, we propose that at least the first sentence of this
proposed instruction should be given, since it is settled law.

PLAINTIFFS'  PROPOSED JURY INSTRUCTION  #25
GOOD FAITH DEFENSE[34]

One of the Defendant's affirmative defenses is the good faith defense.  To qualify for the good faith defense, an employer must present evidence of its subjective intent to comply with the act and of the objective reasonableness of its compliance efforts.  Damages reductions are only intended for circumstances where the employer technically violates the law but shows that it did everything possible to ensure compliance.[35]   Under the good faith defense, the employer must establish that it had an honest intention to find out and follow the requirements of the WARN Acts and that it had reasonable grounds for believing that its conduct complied with the statute.[36]  If you find that Hotel 57 Services has established that it had an honest intention to find out and follow the requirements of the WARN Acts and that it had reasonable grounds for believing that its conduct complied with the WARN Acts, you may, but are not required to apply the Good Faith Defense.  However, if you do not find that it had an honest intention to find out and follow the requirements of the requirements of the WARN Acts and that it did not have reasonable grounds for believing that its conduct complied with the WARN Acts, you must find that the Good Faith defense does not apply.

---

[34] 20 C.F.R. § 639.9(b)
[35] In re Yellow Corp., 668 B.R. 337, 354–55 (Bankr. D. Del. 2025)
[36] Childress v. Darby Lumber, Inc., 357 F.3d 1000, 1007 (9th Cir. 2004)

PLAINTIFFS' PROPOSED JURY INSTRUCTION #26
UNFORSEEN BUSINESS CIRCUMSTANCE EXCEPTION[37]

The Defendant has also asserted the affirmative defense of the unforeseen business circumstance exception.  The WARN Acts generally require that an employer give affected employees at least 60 days' advance written notice before a mass layoff or plant closing. However, the Acts include an exception for situations involving unforeseeable business circumstances. An employer may be excused from giving the full 60 days' notice if the closing or layoff was caused by business circumstances that were not reasonably foreseeable at the time notice would have otherwise been required, provided it still gave proper notice.

To establish this defense, the employer must prove both of the following by a preponderance of the evidence:  (1)  That the business circumstances causing the layoff or closing were not reasonably foreseeable when the notice would otherwise have been required; and (2) That the employer gave as much notice as was practicable once the unforeseen business circumstance became known.

In deciding whether the circumstances were not reasonably foreseeable, you may consider whether the event was sudden, dramatic, or unexpected, such as the unexpected cancellation of a major contract, a natural disaster, or an abrupt economic downturn.  An event is reasonably foreseeable if, at the time notice was due, the employer could have reasonably predicted the event or its consequences and it was not a sudden, dramatic, or unexpected.

---

[37] 20 C.F.R. § 639.9(b)

If you find that the Defendant has proven both elements of this exception, then the Defendant is not liable for failing to provide 60 days' notice. If the defendant has not proven both elements, then the exception does not apply.

PLAINTIFFS' PROPOSED JURY INSTRUCTION #27

DEFENDANT'S AUGUST 5, 2020 LETTERS DID NOT COMPLY
WITH THE WARN ACTS

Defendant's August 5, 2020 letters lack various pieces of information that must appear in WARN Acts notices supplied to affected employees and government officials.

Accordingly, at least with respect to those requirements, the August 5, 2020 letters do not comply with the WARN Acts.[38]  The August 5, 2020 letters disregarded the requirements outlined in the WARN Acts' notice requirements.  Such disregard for the WARN Acts' requirements does not qualify as minor or inadvertent.[39]

Therefore, even though Defendant has invoked the business circumstance exception in this matter, it does not qualify for the exception, since it failed to provide proper WARN Notices in compliance with the WARN Acts' requirements.

As no legal exception to the WARN Act applies, it has already been determined by this Court that Defendant violated the WARN Acts in connection with the initial layoffs, which began in March 2020.  Under the WARN Acts, the date the first employees are laid off is considered the date of the initial violation, not the date that it exceeded six months.[40]

---

[38] *Staley v. FSR Int'l Hotels Inc.,* 775 F. Supp. 3d 720, 737–38 (S.D.N.Y. 2025)
[39] *Staley v. FSR Int'l Hotels Inc.,* 775 F. Supp. 3d 720, 738 (S.D.N.Y. 2025)
[40] 29 C.F.R. § 639.5(a)(1); 12 NYCRR § 921-1.1(f).

PLAINTIFFS' PROPOSED JURY INSTRUCTION #28

MULTIPLE WARN ACTS VIOLATIONS

While it has already been determined by this Court that the Defendant violated the WARN Acts, by failing to comply with the WARN Acts in its August 5, 2020 letters related to the March 2020 layoffs, you will still need to decide if the Plaintiffs and the Class suffered any additional employment losses under the WARN Acts. As I already instructed you, the WARN Acts define an employment loss as (1) a termination of employment (not including discharge for cause, voluntary departure, or retirement), (2) a layoff exceeding 6 months, or (3) a reduction in hours of work of more than 50% during each month of any 6-month period.

The WARN Acts require an employer, in this case, Hotel 57 Services, LLC to provide a new WARN notice when an employer has invoked the unforeseen business circumstances exception in connection with a temporary closure, and yet remains closed for other, unrelated reasons, and continues the closure for at least six months.

The fact that Defendant unsuccessfully invoked the business circumstances exception related to its improper WARN Acts letters dated August 5, 2020, is not a defense to future WARN Acts violations.

The application of the unforeseen business circumstances exception hinges on the particular "business circumstances" that "caused" that particular closure or layoff. Here, in its August 5, 2020 correspondence, Defendant stated that the layoff was caused by "the continued major economic downturn stemming from the COVID-19 virus pandemic and consequent travel and tourism disruptions outside the employer's control."

However, where a continued closure or layoff is caused by a new circumstance, at least five days after the prior reason for the closure or layoff, the former notice is no longer adequate and a new notice containing a "brief statement" concerning the new "basis" for the continued closure or layoff, is required to comply with the WARN Acts.[41]

You must determine whether Hotel 57 Services, LLC violated the WARN Acts by failing to provide additional WARN Acts notices each time the reasons for the Hotel's continued closure changed from the original COVID-19 pandemic and travel and tourism disruptions to other reasons and other circumstances, such as renovations and maintenance work, disputes between the owner and operator of the hotel's management agreement, or the time the hotel would need to staff the hotel in order to reopen. Each time the basis for the closure changed and no new notice was provided, constitutes a separate violation and separate employment loss under the WARN Acts.

If you find that the Hotel remained closed for reasons different from those stated in the August 5, 2020 letters, then you must find that Hotel 57 Services, LLC did not comply with the WARN Acts, and should have provided additional WARN Acts notices. Defendant does not claim here to have provided any other WARN Acts notice other than the August 5, 2020 letters.

---

[41] *Staley v. FSR Int'l Hotels Inc., 775 F. Supp. 3d 720, 736 (S.D.N.Y. 2025); Graphic Commc'ns Int'l Union, Loc. 31-N v. Quebecor Printing (USA) Corp., 252 F.3d 296, 299 (4th Cir. 2001)*

PLAINIIFFS' PROPOSED JURY INSTRUCTION #29

DETERMINING HOW MANY VIOLATIONS OCCURRED
AFTER THE FIRST VIOLATION

To the extent that you find that the Defendant is liable for more than one violation of the WARN Acts, to determine how many violations occurred you will need to decide the following:

Step One:  Determine if that initial or prior violation was a termination or not.   If it was a termination, there can be no more violations. Here, Defendant has maintained that Plaintiffs and the class members' employment was not terminated as a result of the furloughs.[42] Therefore you should proceed to step two.

Step Two: Determine the date of the prior employment loss under the WARN Acts by looking at the date the first person was furloughed for this reason or change in circumstance. [43] Therefore, you should proceed to step three.

Step Three: Identify the next date, if any, that the "continued closure or layoff is 'caused' by a new 'circumstance.'[44] Then proceed to step four.

Step Four: A new Violations must be at least five days apart.[45]  If the change in circumstance is at least five days apart, proceed to Step Five for damages. If the change in

---

[42] Elizabeth Ortiz Transcript, 224:21-225:18; Plaintiffs' Notices of Recall at DX78, DX79, and DX80 which indicated that it was recalling furloughed employees and "you are being recalled to your position… and will be returned to your job at the hotel…"

[43] 29 C.F.R. § 639.5(a)(1)

[44] Staley v. FSR Int'l Hotels Inc., 775 F. Supp. 3d 720, 735 (S.D.N.Y. 2025)

[45] Graphic Commc'ns Int'l Union, Loc. 31-N v. Quebecor Printing (USA) Corp., 252 F.3d 296, 299 (4th Cir. 2001)

circumstances was less than five days apart, it does not qualify as another WARN Acts violation.

If you have identified other subsequent changes in circumstances while the layoff continued, you must repeat this test again, if there were no subsequent changes in circumstances while the layoff continued, then there are no other WARN Acts violations.

Repeat steps one through five for as many violations as you believe there may have been.

PLAINTIFFS'  PROPOSED  JURY  INSTRUCTION  #30

INTRODUCTORY INSTRUCTION OF UNDISPUTED FACTS

Here, it is undisputed that the closure of the Four Seasons New York Hotel in March 2020 constituted a mass layoff under the WARN Acts.

Here it is also undisputed that:

(1) that Hotel 57 Services does business under the name the Four Seasons Hotel New York;

(2) Hotel 57 Services a/k/a The Four Seasons Hotel New York is the employer responsible for complying with the WARN Acts;

(3) the August 5, 2020 letters sent by Defendant lacked several requirements making them insufficient to qualify as proper WARN Notices under the New York State or federal WARN Acts;

(4) Hotel 57 Services LLC invoked the unforeseen business circumstances exception in connection with its temporary closure;

PROPOSED JURY INSTRUCTION NO. 31

DAMAGES – INTRODUCTION

As the Plaintiffs and the class have met their burden of proof with respect to at least one violation of the New York WARN Act and the federal WARN Act – therefore you must consider the issue of damages.

It is your job to render a verdict in a sum of money that will justly and fairly compensate, or make them whole, for all the losses they sustained for up to 60 days of wages and benefits for each Plaintiff and Class member for each separate violation of the WARN Acts, up to as many times you believe that the Defendant violated the WARN Acts.

PROPOSED JURY INSTRUCTION NO. 32

DAMAGES CALCULATION

It is your job to render a verdict in a sum of money that will justly and fairly compensate, or make them whole, for all the losses they sustained for up to 60 days of wages and benefits for each Plaintiff and Class member for each separate violation of the WARN Acts.

If you only find the Defendant violated the WARN Acts one time, you may only award each Plaintiff and each class member a maximum of 60 days' pay and benefits.

For each subsequent violation that you find, you may award each Plaintiff and each class member who suffered that violation an additional award of 60 days pay and benefits.

However, the purpose of this award is to compensate the Plaintiffs and the class member no more and no less than they are rightfully owed. Therefore, to avoid double payment for multiple violations, the violations must be at least 60 days apart to award each Plaintiff and each class member of the full 60 days' pay and benefits. This means that if you find that another WARN Act violation occurred at least 60 days after the prior violation, you may award the full amount of damages for the new employment loss. If, however, you find that the subsequent employment loss occurred less than 60 days apart, you may only award the amount of days separating the two violations and no more. For example, if the second violation occurred 45 days after the first violation, you may only award 45 days of damages for that second violation and not the full 60 days' pay for that violation.[46]

---

[46] *See ~29 U.S.C. § 2104(a)(1)

PROPOSED JURY INSTRUCTION NO. 33

POSSIBLE OFFSET OF DAMAGES

Only voluntary and direct payments made by Hotel 57 Services, LLC to the affected employees while they were furloughed and not working can be considered as offsets against WARN Act damages. Payments from unrelated entities or those made under pre-existing legal obligations, such as ERISA, severance agreements, or any other legally binding agreements do not qualify as offsets.

Therefore, when considering whether any payments should reduce the Defendant's liability under the WARN Acts, you must remember that only those payments that were made directly by the Defendant and were not required by any statutory, contractual, or pre-existing legal obligation or agreement can qualify as an offset. If the payments do not meet these criteria, they cannot be used to offset the Defendant's portion of damages to be paid to the Plaintiffs and the class.[47]

---

[47] *Gautier v. Tams Mgmt., Inc.*, 659 F. Supp. 3d 714, 721 (S.D.W. Va. 2023), *Gorini v. AMP Inc.*, 94 F. App'x 913, 921 (3d Cir. 2004)

<u>PROPOSED JURY INSTRUCTION NO. 34</u>

FINAL GENERAL CHARGES
RIGHT TO SEE EXHIBITS AND HEAR TESTIMONY; COMMUNICATIONS WITH COURT

Ladies and gentlemen of the jury, that about concludes my instructions to you. You are about to go into the jury room to begin your deliberations. If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room. If you want any of the testimony read, please send out a note specifying what you want to hear and we will bring you back to the Courtroom to read it back for you. Please be as specific as you possibly can in requesting exhibits or portions of the testimony. If you want any further explanation of the law as I have explained it to you, you may also request that.

Your requests for exhibits or testimony – in fact any communications with the Court – should be made to me in writing, signed by your foreperson, and given to the Courtroom Deputy. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

PROPOSED JURY INSTRUCTION NO. 35
NOTES

Many of you have taken notes periodically throughout this trial. I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory. Notes that any of you may have made may not be given any greater weight or influence in determination of the case than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. Any difference between a juror's recollection and another juror's notes should be settled by asking to have the court reporter read back the transcript, for it is the court record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

<u>PROPOSED JURY INSTRUCTION NO. 36</u>
USE OF EXPERTISE

Although as jurors you are encouraged to use all of your life experiences in analyzing

testimony in reaching a fair verdict, you may not communicate any personal professional

expertise you might have, or other facts not in evidence, to the other jurors during the

deliberations. You may not consider or speculate on matters not in evidence or matters outside

the case, but rather must base your discussions and decisions solely upon the evidence presented

to you during the trial.

<u>PROPOSED JURY INSTRUCTION NO. 37</u>
JUROR OATH

In determining the facts in this case, I remind you that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law. I know that you will do this and reach a just and true verdict.

<u>PROPOSED JURY INSTRUCTION NO. 38</u>
DUTY TO DELIBERATE/UNANIMOUS VERDICT

You will now retire to decide the case. For Plaintiffs to prevail on their claims, they must sustain their burden of proof as I have explained to you with respect to each element of their claims. If you find that Plaintiffs have succeeded with respect to one or more violation in their claim, you must return a verdict in their favor. If you find that they have not, then your verdict must be for the Defendant. It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or himself, but you should do so only after consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict solely because of the opinion of other jurors.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

<u>PROPOSED JURY INSTRUCTION NO. 39</u>
VERDICT FORM

I have prepared a verdict form for you to use in recording your decisions. Remember, each verdict must reflect the conscientious judgment of each juror. You should answer every question except where the verdict form indicates otherwise. You should also proceed through the questions in the order in which they are listed.

PROPOSED JURY INSTRUCTION NO. 40
DUTIES OF FOREPERSON

Finally, you should by your own vote select one of you to sit as your foreperson. The foreperson will send out any notes, and when the jury has reached a verdict, he or she will notify the Courtroom Deputy that the jury has reached a verdict, and you will come into open court and give the verdict.

PROPOSED JURY INSTRUCTION NO. 41
RETURN OF VERDICT

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the Courtroom Deputy outside your door that you are ready to return to the courtroom.

I will stress that each of you must be in agreement with the verdict that is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

<u>PROPOSED JURY INSTRUCTION NO. 42</u>
EXCEPTIONS

Members of the jury, that concludes my instructions to you. I will ask you to remain

seated while I confer with the attorneys to see if there are any additional instructions that they

would like to have me give to you or anything I may not have covered in my previous statement.

In this regard, I ask you not to discuss the case while seated in the box because the case has not

yet been formally submitted to you.

Dated:        August 4, 2025

New York, New York

Respectfully Submitted

By: _____*/s. Evan Brustein*_____

Evan Brustein
Brustein Law PLLC
299 Broadway, Suite 800
New York, New York 10007
(212) 233-3900

Brian Bromberg
Bromberg Law Office P.C.
295 Madison Avenue, 22nd Floor
New York, New York 10017

Maya Risman
Risman & Risman, P.C.
233 Broadway, Suite 2707
New York, New York 10279
(212) 233-6400

*Attorneys for Plaintiffs*
*Selena Staley, Vivian Holmes, and*
*Olive Ivey*