UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

SELENA STALEY, VIVIAN HOLMES, and OLIVE : 
IVEY, on behalf of themselves and all others similarly :
situated, :
                                     :   Case No.: 22-CV-6781 (JSR)
                                     :
                 Plaintiffs,    :
          v.                             :
                                       :

HOTEL 57 SERVICES, LLC,                 :
                                         :
                 Defendant.    :

---------------------------------------------------------------- X

## HOTEL 57 SERVICES, LLC'S OPENING BRIEF
## IN RESPONSE TO THE COURT'S AUGUST 8, 2025 ORDER (ECF No. 186)

Marc B. Zimmerman
Kathryn T. Lundy
James J. Boland
Carly M. Allen
SMITH GAMBRELL & RUSSELL, LLP
1301 Avenue of the Americas, 15th Floor
New York, NY 10019
(212) 907-9700

*Attorneys for Defendant Hotel 57 Services, LLC*

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND .................................................................................................. 2

ARGUMENT ....................................................................................................... 3

    I.     Article III Standing/Jurisdiction ............................................................. 3

          A.     This Court Lacks Jurisdiction Over the Remaining WARN Acts
                   Claims Based on Additional Notices Because Plaintiffs Lack
                   Article III Standing ................................................................... 6

                 1.     Plaintiffs Have Not and Cannot Establish their Standing
                         and the Standing of Each and Every Class Member Under
                         Article III to Assert WARN Acts Claims For Damages
                         Based on Additional WARN Notices ............................................. 7

                 2.     The Class Should Be Decertified .................................................. 10

          B.     Plaintiffs Lack Both Statutory and Article III Standing to Assert
                     Claims Based on the Content of WARN Notices to
                     Governmental Officials ............................................................ 12

    II.     The WARN Acts ................................................................................. 13

          A.     The WARN Acts Do Not Provide a Private Right of Action for
                     Statutory Damages Based on an Alleged Failure to Provide
                     Additional Notices During a Single Temporary Closure or
                     Layoff ................................................................................. 14

          B.     The WARN Acts Unambiguously Provide Only One Set of
                     Statutory Damages for a Violation of the WARN Acts Based on
                     A Single Plant Closure or Mass Layoff .................................... 16

           C.     It is Plaintiffs' Burden to Calculate Statutory Damages Under
                       the WARN Acts Pursuant to the Statutory Formulas That
                       Mandate Deduction of Any Wages and Voluntary Payments
                       Made ................................................................................. 18

          D.     Although the WARN Acts Are Unambiguous, Legislative
                     History Confirms That the Purpose of the WARN Acts is to
                     Require Advance Notice of Plant Closures and Mass Layoffs
                     and that the Remedy for Failing to Do So Is Confined to a
                     Maximum 60 Days Back Pay and Benefits ............................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
532 U.S. 275 (2001)................................................................................................. 15, 16

*Allen v. Wright*,
468 U.S. 737 (1984)........................................................................................................ 9

*Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co.*,
436 F.3d 82 (2d Cir. 2006)............................................................................................. 3

*Calcano v. Swarovski N. Am. Ltd.*,
36 F. 4th 68 (2d Cir. 2022)............................................................................................. 6

*California v. Texas*,
593 U.S. 659 (2021)................................................................................................... 4, 9

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*,
508 U.S. 602 (1993)..................................................................................................... 20

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)..................................................................................................... 10

*Graphic Communications Int'l Union v. Quebecor Printing (USA) Corp.*,
252 F.3d 296 (4th Cir. 2001) .................................................................................. 17, 18

*Guthrie v. Rainbow Fencing, Inc.*,
113 F.4th 300 (2d Cir. 2024) ................................................................. 4, 5, 6, 7, 8, 13

*Harty v. West Point Realty, Inc.*,
28 F.4th 435 (2d Cir. 2022) ....................................................................................... 5, 7

*In re Auction House Antitrust Litig.*,
52 F. App'x 511 (2d Cir. 2002) ..................................................................................... 4

*Jin v. Shanghai Original, Inc.*,
990 F.3d 251 (2d Cir. 2021) ................................................................................... 10, 11

*Johnson v. Telespectrum Worldwide, Inc.*,
29 F. App'x 76 (3d Cir. 2002) ..................................................................................... 20

*Kildea v. Electro Wire Prods., Inc.*,
60 F. Supp. 2d 710 (E.D. Mich. 1999)......................................................................... 20

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994)....................................................................................................... 4

*Laufer v. Ganesha Hospitality LLC*,
No. 21-995, 2022 WL 2444747 (2d Cir. July 5, 2022)................................................. 7

*Lopez v. Jet Blue Airways*,
662 F.3d 593 (2d Cir. 2011) ........................................................................................ 16

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................................ 4, 5, 8, 9

*Mach Mining, LLC v. Equal Employment Opportunity Commission*,
   575 U.S. 480 (2015).......................................................................... 19, 20

*Maddox v. Bank of New York Mellon Trust Co., N.A.*,
   19 F.4th 58 (2d Cir. 2021) ........................................................................ 7

*Marques v. Telles Ranch, Inc.*,
   131 F.3d 1331 (9th Cir. 1997) ................................................................ 13

*National R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002)................................................................................ 20

*Plutzer on behalf of Tharanco Group, Inc. v. Bankers Trust Company of South Dakota*,
   No. 22-561-cv, 2022 WL 17086483 (2d Cir. November 21, 2022) .......... 5

*Roberts v. Genting New York LLC*,
   68 F.4th 81 (2d Cir. 2023) .......................................................... 15, 16, 17

*Spokeo, Inc. v. Robbins*,
   578 U.S. 330 (2016)...................................................................... 4, 5, 6, 7

*Teamsters Nat. Automobile Transporters Industry Negotiating Committee v. Hook Up, Inc.*,
   No. Civ.A. 7:02CV00035, 2002 WL 1066954 (W.D. Va. May 23, 2002)............... 13

*Touche Ross & Co. v. Redington*,
   442 U.S. 560 (1979) ............................................................................... 15

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
   444 U.S. 11 (1979)................................................................................. 15

TransUnion LLC v. Ramirez,
   594 U.S. 413 (2021)..................................................... 1, 5, 6, 7, 8, 10

*U.S. v. Kozeny*,
   541 F.3d 166 (2d Cir. 2008) ................................................................... 20

*United States v. Kahn*,
   5 F.4th 167 (2d Cir. 2021) ..................................................................... 20

*United States v. Ron Pair Enters., Inc.*,
   489 U.S. 235 (1989)................................................................................ 20

**Statutes**

Article III of the U.S. Constitution .............................................. 1-10, 12, 13

29 U.S.C. § 2102 ...................................................................... 3, 12, 14

29 U.S.C. § 2104 ................................................... 12, 13, 15, 17, 19, 23

N.Y. Lab. L. §860-b .................................................................... 14

N.Y. Lab. L. §860-g ...................................................... 12, 15, 17, 19

Public Law 100-379 ........................................................... 21, 22, 23

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................ 10, 11

**Regulations**

20 C.F.R. § 639.7(e) .......................................................................................................... 1, 11

**Other Authorities**

134 CONG. REC. S8376 (1988) ............................................................................................ 22

134 CONG. REC. S8541 (1988) ............................................................................................ 22

134 CONG. REC. S8542-43 (1988) ...................................................................................... 22

134 CONG. REC. S8546 (1988) ............................................................................................ 22

134 CONG. REC. S8626 (1988) ............................................................................................ 23

H.R. 1122 .............................................................................................................................. 21

H.R. 1616 .............................................................................................................................. 21

H.R. 3 .................................................................................................................................... 21

H.R., Rep. No. 100-285 ........................................................................................................ 21

S. 2527 ...................................................................................................................... 21, 22, 23

S. 538 ............................................................................................................................. 21, 23

S. Rep. No. 100-62 ............................................................................................................... 21

## <u>INTRODUCTION</u>

Recognizing that the parties' motions in limine raised "several questions of law that implicate this Court's jurisdiction, as well as questions of law concerning the scope of damages available under the federal and state Worker Adjustment and Retraining Notification ("WARN") Acts," on August 8, 2025 the Court ordered the parties to file supplemental briefs addressing five questions:

> (1)    Whether, assuming that the defendant violated plaintiffs' statutory rights under the WARN Acts, plaintiffs have suffered a concrete injury in fact under Article III consistent with the Supreme Court's decision in <u>TransUnion LLC v. Ramirez</u>, 594 U.S. 413 (2021)?

> (2)    Whether, as a matter of law, plaintiffs have standing to assert that the defendant violated the WARN Acts by omitting information required under 20 C.F.R. § 639.7(e) that concerns "notices separately provided to the State dislocated worker unit and to the chief elected official of the unit of local government"?

> (3)    Whether, as a matter of law, plaintiffs may receive multiple sets of damages for multiple WARN Acts violations that occur within a single closure, furlough, or layoff?

> (4)    Whether, as a matter of law, defendants may offset damages under the WARN Acts? If so, what offsets are permitted?

> (5)    Whether there is any legislative history from either Congress or the New York State legislature concerning the nature and scope of damages under the WARN Acts?

ECF No. 186 at 1-2. As explained below, the answers to the Court's first two questions are dispositive of this class action lawsuit. No Plaintiff – and certainly no absent class member – has established their standing under Article III of the U.S. Constitution to assert federal or New York WARN Act claims for damages under the principles set forth in *TransUnion* and binding Second Circuit law. The Court thus lacks jurisdiction over the WARN Acts claims asserted on behalf of Plaintiffs and the class.

But even if Plaintiffs had established their standing under Article III (and the standing of each and every class member), the answers to the Court's remaining three questions all are dispositive of the overblown "eight informational WARN Acts notice violation" claims Plaintiffs have concocted. For one, there is no private right of action under the WARN Acts for an employer's alleged failure to send additional informational notices to affected employees who already received WARN notices over the course of a single temporary layoff or closure – and even if there was, statutory damages under the WARN Acts are expressly confined to a maximum, 60-days of back pay and benefits. And, as a matter of law, the calculation of that amount must account for, be reduced by, all amounts paid to an employee that are expressly required to be deducted under the two statutes.

## **BACKGROUND**

This case involves the temporary closure of the Four Seasons Hotel New York ("FSHNY") as a result of the onset of the COVID-19 pandemic. ECF No. 149 at 1. On March 20, 2020, hospitality services (*i.e.,* housing hotel guests and all other related operations) were temporarily suspended, and most employees at FSHNY were placed on furlough/temporary layoff. *Id* at 5. After initially believing FSHNY could reopen within a few months of closing, FSHNY officials determined in August 2020 that it could not reopen pursuant to any foreseeable timeline. *Id.* at 6. As a result, on August 5, 2020, WARN Acts notices were sent to each non-union furloughed employee, containing their individual temporary layoff date. *Id*. at 6-7.

As a result of the Court's ruling on the Warner Defendants' motion to dismiss, ECF No. 78, and all Defendants' motions for summary judgment, ECF No. 149, only Plaintiffs' two WARN Acts claims against H57 remain in this case for trial. With respect to those two claims, the Court granted H57 summary judgment on Plaintiffs' claim that the August 5, 2020 WARN Acts notice was untimely, holding any failure to comply with the notice periods was exempted under the Acts.

*Id.* at 33 ("Given these quintessentially unforeseen business circumstances, the Court concludes that FSHNY's failure to comply with the statutory notice periods was exempted under the federal and state WARN Acts"). The Court, however, held as a matter of first impression that "the WARN Act requires employers to provide additional notice when an employer relies upon the unforeseen business circumstances exception and the reasons underlying the proceeding [sic] closure or layoff change." *Id.* at 24. Specifically, the Court held:

> where a continued closure or layoff is "caused" by a new "circumstance," id. at §2102(a)(2)(A) [sic], the former notice is no longer adequate and a new notice containing a "brief statement" concerning the new "basis" for the continued closure or layoff, id. at 2102(b)(3), is required to comply with the WARN Act.

ECF No. 149 at 28. On this issue, the Court denied H57's motion, finding that a genuine issue of material fact existed as to whether H57 complied.

Following this Court's ruling, Plaintiffs submitted two purported damages disclosures, both of which are premised on allegations of multiple alleged "violations" based on H57's failure to provide additional WARN Acts notices resulting from the same, single, plant closing or mass layoff. Plaintiffs' last disclosure (for which they have no witness to provide an evidentiary foundation), alleges eight violations for failing to provide notices with additional information – *i.e.* alleged new "reasons" for the continued closure and temporary layoff unrelated to the unforeseen business circumstances identified in the August 5, 2020 WARN Acts notice.

## **ARGUMENT**

## I.    **ARTICLE III STANDING/JURISDICTION**

The Court's first two questions relate to Article III standing and thus implicate its jurisdiction over the remaining WARN Acts claims in this lawsuit. *Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) (district court must

establish federal constitutional jurisdiction, including whether plaintiff has Article III standing, before deciding case on the merits).

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Guthrie v. Rainbow Fencing, Inc.*, 113 F.4th 300, 304 (2d Cir. 2024) ("Federal Courts have only the power that is authorized by Article III of the Constitution *and* the statutes enacted by Congress thereto.") (citation omitted, emphasis in original). Article III of the Constitution limits a federal court's jurisdiction to cases and controversies. *California v. Texas*, 593 U.S. 659, 668 (2021) ("The Constitution gives federal courts the power to adjudicate only genuine 'Cases' and 'Controversies.'"); *Guthrie*, 113 F.4th at 304 ("'[o]ur jurisdiction is limited by both statute . . . and by Article III of the United States Constitution, which provides that we may hear only Cases or Controversies'"), citing *In re Auction House Antitrust Litig.*, 52 F. App'x 511, 515 (2d Cir. 2002).

"That power includes the requirement that litigants have standing." *California*, 593 U.S. at 668.; *Lujan v. Defenders of Wildlife¸* 504 U.S. 555, 560 (1992) ("the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III"). To have standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016), citing *Lujan*, 504 U.S. at 560-61 (1992).

Injury in fact – "the first and foremost of standing's three elements" – is "a constitutional requirement." *Spokeo*, 578 U.S. at 338-339. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 339, citing *Lujan*, 504 U.S. at

560. To be "particularized," an injury "must affect the plaintiff in a personal and individual way." *Id*.; *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022). To be "concrete," an injury "must be 'de facto'; that is, it must actually exist." *Spokeo* at 340; *see also Harty*, 28 F.4th at 442-43 ("Concrete injuries are physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts.") (citation omitted).

As the Supreme Court held in *TransUnion*, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim they press and for each form of relief that they seek (for example, injunctive relief and damages)." 594 U.S. at 431. "As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating they have standing." *TransUnion*, 594 U.S. at 430-31, citing *Lujan*, 504 U.S. at 561. In a class action such as this, Plaintiffs must prove Article III standing for not only themselves, but for each and every class member: "Every class member must have Article III standing in order to recover individual damages. Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *Id*. at 431.

Moreover, standing must be established at each and every stage of a case, from the initial complaint through summary judgment and trial. *Id*. ("A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'") *citing Lujan*, 504 U.S. at 561; *Guthrie*, 113 F.4th at 308-09 ("Because the elements of Article III standing are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof") (citation omitted); *see also Plutzer on behalf of Tharanco Group, Inc. v. Bankers Trust Company of South Dakota*, No. 22-561-cv, 2022 WL 17086483, at *1 (2d Cir. November 21, 2022) (unpublished) ("At all stages of litigation, the party invoking federal jurisdiction bears

the burden of establishing the elements of Article III standing.") citing *Calcano v. Swarovski N. Am. Ltd.*, 36 F. 4th 68 (2d Cir. 2022). A plaintiff's failure to establish Article III standing at ***any*** stage requires dismissal for lack of jurisdiction.

### A.    This Court Lacks Jurisdiction Over the Remaining WARN Acts Claims Based on Additional Notices Because Plaintiffs Lack Article III Standing

The Court's first question presents the issue of Article III standing in the context of statutory causes of action. "For standing purposes . . . an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *TransUnion*, 594 U.S. at 426-27.

The Supreme Court clearly held that a statutory violation does ***not*** create Article IIII standing to sue for that violation in federal court:

> Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact.

*TransUnion LLC*, 594 U.S. at 427; *Guthrie*, 113 F.4th at 305-06 (same). Instead, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341; *Guthrie*, 113 F.4th 305 (same) (citation omitted). "[A] plaintiff has standing to bring a claim for monetary damages following a statutory violation only when he can show a current or past harm *beyond the violation itself*." *Guthrie*, 113 F.4th at 306 (citation omitted, emphasis in original). Accordingly, "only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC*, 594 U.S. at 427.

1.      Plaintiffs Have Not and Cannot Establish their Standing and the Standing of Each and Every Class Member Under Article III to Assert WARN Acts Claims For Damages Based on Additional WARN Notices

The Supreme Court's decisions in *Spokeo* and *TransUnion*, as well as the Second Circuit's decisions in subsequent cases such as *Guthrie*, *Harty*, and *Maddox v. Bank of New York Mellon Trust Co., N.A.*, 19 F.4th 58 (2d Cir. 2021),[1] answer the Court's first standing question. Those cases make crystal clear that a plaintiff cannot establish Article III standing to recover monetary damages on the basis of an alleged statutory violation – including, specifically, an alleged violation based on the failure to provide "information" required by statute. Instead, these cases uniformly hold that an actual, particularized concrete injury-in-fact caused by the lack of information is required. *TransUnion*, 594 U.S. at 440 (no Article III standing for class members based on alleged failure to provide credit reports with information required under Fair Credit Reporting Act because no evidence class members "so much as opened" mailings or were harmed by any report deficiencies); *Guthrie*, 113 F. 4th at 309-310 (no Article III standing for alleged failure to provide wage notices and statements under Section 195 of New York Labor law because employee suffered no "downstream harm" from lack of required notices); *Harty*, 28 F.4th at 443-444 (no Article III standing for website's alleged failure to disclose information required by Americans with Disabilities Act because website-tester plaintiff did not rely on that information or suffer injury as a result); *Maddox*, 19 F.4th at 64-66 (no Article III standing for failure to record satisfaction of mortgage under New York statutes because plaintiffs did not suffer any injury or harm as a result of delayed recording).

---

[1] *See also*, *Laufer v. Ganesha Hospitality LLC*, No. 21-995, 2022 WL 2444747, at *2-3 (2d Cir. July 5, 2022) (unpublished).

These cases are dispositive of Plaintiffs' and class members' Article III standing based on Plaintiffs' alleged "additional notice" WARN Acts violations. Even if Plaintiffs could prove that FSHNY remained closed for the sundry reasons they now contend – rather than the impact of the COVID-19 pandemic on travel and tourism in the hotel's market (and they cannot) and that as many as eight additional WARN Acts notices were required under the Court's summary judgment Order, neither they – nor, significantly, any absent class members – have Article III standing to assert claims for damages based on those "violations."

As for absent class members, *TransUnion* is dispositive. As in *TransUnion,* there is not, nor has there ever been, any evidence presented by Plaintiffs at any stage of this litigation establishing any downstream harm resulting to each and every class member as a result of not receiving additional WARN Acts notices containing information Plaintiffs now contend should have been provided. Indeed, just as in *TransUnion*, Plaintiffs have adduced no evidence that any class members "so much as opened" or read the WARN Acts notices they received, let alone would have opened and read any additional notices. Nor, as explained in H57's opposition to Plaintiffs' motion in limine I (for judicial notice), have Plaintiffs adduced any evidence that each and every class member did not already know the facts and information that Plaintiffs now contend should have been disclosed. ECF No. 178 at 6-8.

An injury-in-fact for purposes of Article III must be "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. A party seeking to establish an injury-in-fact for purposes of Article III therefore "cannot rely upon speculation or conjecture." *Guthrie*, 113 F.4th at 309. Even at this "trial-ready" stage of the case, speculation and conjecture are all Plaintiffs can muster. Plaintiffs have not established that any absent class member suffered a concrete, particularized injury-in-fact as a result of not receiving any of the additional notices they claim should have been

provided and have not established the Article III standing of any class members to recover damages.

The same holds true for the three named Plaintiffs. Never during the more than three years that this lawsuit has been pending did any of Plaintiffs produce or provide to the Court evidence establishing an actual, particularized injury-in-fact as a result of not receiving an additional WARN Acts notice – let alone up to eight additional notices they now claim should have been provided. Their two complaints in this lawsuit never addressed these additional notices or their claimed injury as a result of not receiving them, and Plaintiffs subsequently produced no evidence of any resulting injury – even after the Court's summary judgment Order.

Simply put, there is nothing in this lawsuit to establish a particularized, concrete injury-in-fact suffered by any of the three named Plaintiffs to establish their standing under Article III to pursue their WARN Acts damages claims for any additional notice violations.

But even if there was, Plaintiffs lack Article III standing for another fundamental reason. To establish standing under Article III, a plaintiff must not only prove that they suffered a concrete injury in fact as a result of an alleged statutory violation, but also that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (citation omitted). Not every injury, however, is redressable; "[t]o determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered." *California*, 593 U.S. at 671, citing *Allen v. Wright*, 468 U.S. 737 (1984).

Here, assuming *arguendo* any Plaintiff or class member had established an injury-in-fact as a result of an alleged failure to receive one or more additional WARN Acts notice or notices (and they do not), that injury would not be redressable by a favorable judicial decision in this lawsuit. That is because the only judicial relief sought in this case is an award of statutory damages

under the WARN Acts, and as explained below, the WARN Acts do not provide a private right of action for statutory damages based on an alleged failure to provide additional WARN Acts notices over the course of a single temporary plant closing or mass layoff. *See infra* at II(A). Plaintiffs and class members lack Article III standing for this independent reason as well. *TransUnion*, 594 U.S. at 423 ("If the plaintiff does not claim to have suffered an injury that the defendant caused **and the court can remedy**, there is no case or controversy for the federal court to resolve.") (citation omitted, emphasis added).

2.    The Class Should Be Decertified

As explained above, the Court should dismiss the claims of absent class members for lack of jurisdiction given Plaintiffs' failure to establish those class members' standing under Article III to assert claims for WARN Acts damages based on any of the myriad additional WARN Acts notices they contend should have been provided during their temporary layoff. However, wholly-separate from that jurisdictional issue is the continued propriety of class certification. Even if dismissal is not warranted, the Court should nonetheless decertify the class.

"[D]istrict courts must ensure that a certified class satisfies Rule 23 throughout the litigation." *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 262 (2d Cir. 2021) citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982). As explained in H57's opposition to Plaintiffs' motion in limine for judicial notice of press releases and court filings, ECF No. 178 at 8, the Court already recognized the class certification stage that under *TransUnion* "'[e]very class member must have Article III standing to recover individual damages.'" ECF No. 113 at 9, n.7 (quoting *TransUnion*). As H57 explained, and has demonstrated again above, the Article III standing of each class member to assert Plaintiffs reformulated WARN Acts claims based on each of the alleged "violations" they identify is an individual issue of fact (which Plaintiffs have not established). That

individual issue overwhelmingly predominates in this lawsuit and makes class certification inappropriate under Fed. R. Civ. P. 23(b)(3).

But even beyond that fatal defect, apart from numerosity, there is no evidentiary or other basis to conclude that any of the requirements of Rule 23 remain satisfied in this case. Simply put, the nature of the WARN Acts claims for which Plaintiffs seek to proceed at trial are fundamentally different than the nature of the WARN Acts claims for which Plaintiffs sought, and the Court granted, class certification. Plaintiffs' proposed damages "demonstrative," for example, shows that there is no commonality among the myriad class members, as not all class members even are identified as having claims based on all of the alleged additional notice "violations." And, given the nature of the purported violations – failure to disclose discrete pieces of information that class members who already had been temporarily laid off allegedly did not already know – there is no basis to conclude that the claims of the three named Plaintiffs (none of whom have testified or otherwise established that they did not already know all of that allegedly undisclosed information let alone would have done anything different) are in any way typical of each and every class member. Instead, both liability and damages (if any) could only be determined on an individual, class member by class member basis.

District courts are "required to monitor class proceedings and reassess [their] class rulings as the case develops." *Jin*, 990 F.3d at 261. A court also must "decertify a class if they find that the class no longer meets the requirements of Rule 23 at any time before a final judgment is entered." *Id*. That is the case here. Certification is no longer appropriate for Plaintiffs' reformulated WARN Acts claims.

**B.    Plaintiffs Lack Both Statutory and Article III Standing to Assert Claims Based on the Content of WARN Notices to Governmental Officials**

The Court's second standing question – whether Plaintiffs have standing to assert claims under the WARN Acts based on the omission, in notices to employees, of "information required under 20 C.F.R. 639.7(e)" to be provided in "notices separately provided to the State dislocated worker unit and to the chief elected official of the unit of local government" – raises issues of both statutory and Article III standing.

With respect to statutory standing, the WARN Acts only provide employees with a private right of action with respect to the notices provided ***to them***. *See* 29 U.S.C. §§ 2104(a)(1) and (7); N.Y. Labor Law § 860-g(1) and (7). They do not provide a private right of action to employees for any failure to provide notices to ***governmental officials***, nor do the WARN Acts provide a right of action for "damages" for any such failure. As the Ninth Circuit clearly explained:

> The plaintiff employees also contend that TRI's failure to give timely notice to both the appropriate unit of local government and the state dislocated worker unit, as required by 29 U.S.C. § 2102(a)(2), gives rise to an independent claim for damages. WARN, on its face, does not provide a private right of action to enforce its local government notice requirement. The only remedy expressly provided by the Act for a violation of this provision is a civil penalty of not more than $500 "for each day of such violation...." 29 U.S.C. § 2104(a)(3).

> \*       \*       \*

> [I]t is unnecessary to go beyond the text of the statute itself to discern Congress' clear intent. First, WARN expressly creates a private right of action for an employee who is adversely affected by a plant closing. 29 U.S.C. § 2104(a)(1). However, this private right of action for back pay is expressly limited to "aggrieved employees," who are defined as only those employees who "did not receive timely notice...." 29 U.S.C. § 2104(a)(7). Finally, Congress has expressly spoken on the subject: "The remedies provided for in this section shall be the exclusive remedies for any violation of this chapter." 29 U.S.C. § 2104(b) (emphasis added). We conclude that WARN does not provide a private right of action to enforce its requirement under § 2102(a)(2) that notice of a plant closing or mass layoff be given to state and local government.

*Marques v. Telles Ranch, Inc.*, 131 F.3d 1331, 1335-36 (9th Cir. 1997); *see also Teamsters Nat. Automobile Transporters Industry Negotiating Committee v. Hook Up, Inc.*, 7:02CV00035, 2002 WL 1066954, at *2 (W.D. Va. May 23, 2002) (agreeing with *Marques* that "unlike § 2104(a)(1), the language of § 2104(a)(3) simply does not provide private parties with a right of action").

Beyond the lack of statutory standing, Plaintiffs also lack Article III standing to assert claims based on the content of notices to government officials, including the omission of any information in those notices. Just as with any alleged statutory violation, each Plaintiff and each class member must have suffered a particularized, concrete injury-in-fact "*beyond the statutory violation itself.*" *Guthrie*, 113 F.4th at 306 (citation omitted, emphasis in original). Despite having the opportunity to submit evidence in opposition to summary judgment of any injury Plaintiffs each suffered as a result of the absence of information in notices to government officials, not one Plaintiff did so. Nor did Plaintiffs submit evidence of any concrete, particularized injury-in-fact suffered by any class member.

Even if the WARN Acts gave plaintiffs a right of action to assert claims based on the content of notices to governmental officials (and they do not), Plaintiffs have not established Article III standing to assert claims and this Court lacks jurisdiction over any such claims.

## II.      THE WARN ACTS

The Court's final three questions relate to the availability and scope of damages recoverable under the WARN Acts. Before addressing those questions, however, it is necessary to first address the threshold question of whether the WARN Acts provide a private right of action for the alleged violations Plaintiffs are now pursuing.

### A.    The WARN Acts Do Not Provide a Private Right of Action for Statutory Damages Based on an Alleged Failure to Provide Additional Notices During a Single Temporary Closure or Layoff

Focusing on the federal WARN Act, in its summary judgment Order the Court held, as a matter of first impression, that "the WARN Act does require an employer to provide a new WARN notice when an employer has invoked the unforeseen business circumstances exception in connection with a temporary closure yet remains closed for other, unrelated reasons." ECF No. 149 at 27; *see also id*. at 31-32. Finding that there was a genuine issue of material fact as to whether H57 complied, the Court declined to dismiss Plaintiffs' federal and New York WARN Acts claims on summary judgment. *Id*. at 38, 44. What the Court did not address or decide, and was not presented with, is the question of whether federal or New York state WARN Acts provide a private right of action or remedy for a violation of the "additional WARN Act notice" requirement the Court recognized in its summary judgment Order. As explained below, they do not.

The WARN Acts unambiguously define and limit the conduct prohibited by the statutes: the WARN Acts prohibit an employer from "ordering" plant closures or mass layoffs before notice is provided to, among others, "affected employees":

> An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order—
>
> (1) to each representative of the affected employees as of the time of the notice or, if there is no such representative at that time, to each affected employee;

29 U.S.C. § 2102(a).

> § 860-b. Notice. 1. An employer may not order a mass layoff, relocation, or employment loss, unless, at least ninety days before the order takes effect, the employer gives written notice of the order to the following:
>
> (a) affected employees and the representatives of affected employees;

N.Y. Lab. Law § 860-b(1).

Thus, under both statutes, it is the act of ***ordering*** a plant closing, layoff, etc. without providing the ***advance notice*** that violates the WARN Acts. *Roberts v. Genting New York LLC*, 68 F.4th 81, 89 (2d Cir. 2023) ("a covered employer violates the WARN Act when it order[s] a plant closing or mass layoff without providing each employee, either individually or through [his or her] representatives, with sixty-days ***advance*** notice") (emphasis added); *see id*. at 92 ("Like the federal statute, the New York WARN Act requires that qualified employers give employees ***advance*** notice of plant closing or mass layoff.") (emphasis added).

The WARN Acts are equally clear about the limited private right of action and remedy they provide to employees if the statutes are violated. Both WARN Acts: (i) only provide a right of action to an employee who was entitled to the advance notice of an ordered plant closing or layoff and was not provided that notice in advance of the order/closing/layoff, and (ii) only allow the employee to recover back pay for the number of days that the required advance notice was delayed, up to a maximum of 60 days. 29 U.S.C. § 2104(a)(1) and (2); N.Y. Labor Law § 860-g(1), (2) and (4).

"Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) citing *Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979). A court's task is solely "to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id*., citing *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979). Without statutory direction, no private cause of action or remedy exist "and courts may not create one, no matter how desirably that might be as a policy matter, or how compatible with the statute." *Id.* (citations omitted).

Applying these bedrock principles, Plaintiffs simply do not have a statutory private right of action for damages under the WARN Acts based on the alleged failure to provide additional informational WARN Acts notices. The private right of action is confined solely to the act of an employer ordering a plant closing or mass layoff without providing advance notice of that closing or layoff, *Roberts*, 58 F.4th at 89, 91, and the remedy is confined to the back pay the aggrieved employees would have received during period that the advance notice was delayed (up to 60 days), *id.* at 89 ("The employer is liable to each affected employee for that employee's compensation for each day the required notice was not provided, up to 60 days of pay and benefits.) (citation omitted). No other right of action or remedy exists, nor can any other right of action or remedy be implied. *Alexander*, 532 U.S. at 290 ("The express provision of one method of enforcing a substantive rule suggest that Congress intended to preclude others.") (citing cases); *see also Lopez v. Jet Blue Airways*, 662 F.3d 593, 597-98 (2d Cir. 2011) ("The ACAA also provides a limited right of access to the federal courts by permitting an individual with a 'substantial interest' in an administrative decision to file a petition for review in a United States Court of Appeals. . . . Like the administrative-enforcement scheme, this limited right of review of an administrative decision suggest that Congress did not intend to otherwise allow access to federal courts under the statute.") (citing *Alexander*).

B.      **The WARN Acts Unambiguously Provide Only One Set of Statutory Damages for a Violation of the WARN Acts Based on A Single Plant Closure or Mass Layoff**

The Court's first question about the WARN Acts – whether a plaintiff may receive multiple sets of damages for alleged violations "that occur withing a single closure, furlough or layoff" – raises two distinct issues. It first raises the issue of whether there is a private right of action for statutory damages under the WARN Acts for an alleged "violation" based on the failure to provide additional WARN Acts notices over the course of "a single closure, furlough or layoff" as the

Court addressed in its summary judgment Order. As explained above, there is no private right of action for damages under either the federal or New York WARN Acts for such a violation.

The second issue is whether the WARN Acts provide for multiple sets of damages. Under the plain language of the WARN Acts, the only conduct that gives rise to a private right of action for statutory damages is the act of ordering a plant closing or mass layoff without providing the affected employees the required advance notice. 29 U.S.C. § 2104(a); N.Y. Lab. Law § 860-g(1); *Roberts*, 58 F.4th at 89, 91. In the context of a WARN Acts violation involving "a *single* closure, furlough or layoff," the WARN Acts are unambiguous: an aggrieved employee may only recover a single set of statutory damages: back pay and benefits the employee would have received had the employee continued to be employed "***up to a maximum of 60 days***," reduced by the number of days (if any) that notice was given in advance of the plant closing or mass layoff during which they continued to be paid (and any other required deductions). 29 U.S.C. §2104(a); N.Y. Lab. Law §860-g (emphasis added). The WARN Acts do not provide for any further or additional statutory damages for a violation relating to a single plant closure or mass layoff.

In its summary judgment Order, the Court cited *Graphic Communications Int'l Union v. Quebecor Printing (USA) Corp.*, 252 F.3d 296, 299 (4th Cir. 2001), "an employee may suffer multiple employment losses, necessitating separate notices." EDF No. 149 at 25. *Graphic Communications*, however, is perfectly consistent with the plain terms of the WARN Acts.

In *Graphic Communications*, there were ***two employer orders***: (i) the first ordering a temporary plant shutdown and employee layoff on December 11, 1998, for which employees were provided notice; and (ii) the second ordering a permanent plant closure and employee termination five days later, for which no notice was provided. 252 F.3d at 298, 299. Because there were two orders giving rise to two employment actions – layoff and termination – the Fourth Circuit merely

held that whether notice was required or properly given with respect to the first was irrelevant to whether notice was required for the second. *Graphic Communications*, 252 F.3d at 299-300.

The Fourth Circuit did not hold in *Graphic Communications* that multiple WARN notices are, or even may be, required for a single order of a plant closing or mass layoff, which is the case here. Nor did the Fourth Circuit hold – or even suggest – that multiple sets of statutory damages are available for a WARN Acts violation arising out of a single plaint closing or mass layoff order. As explained above, even when an employer violates the WARN Acts by ordering a closing or layoff without giving the required advance notice, the affected employees' statutory damages, if any, are limited to a maximum of 60 days back pay and benefits, less mandatory deductions.

### C.    It is Plaintiffs' Burden to Calculate Statutory Damages Under the WARN Acts Pursuant to the Statutory Formulas That Mandate Deduction of Any Wages and Voluntary Payments Made

The Court's second WARN Acts question relates to the calculation of statutory damages under those Acts. As literally posed, however, the question – "[w]hether, as a matter of law, defendants may offset damages under the WARN Acts? If so, what offsets are permitted?" – is not consistent with the language of the WARN Acts or with Plaintiffs' burden of proof in this case.

Under the WARN Acts, there are no "offsets" to damages that a "defendant" must show or establish. Rather, there is a statutory formula for the calculation of statutory damages that includes the deduction of various amounts, as applicable. And it is not a defendant's burden to perform that damages calculation; it is the plaintiff's burden to do so consistent with a plaintiff's burden to prove damages in any lawsuit.

As for the statutory calculation, the WARN Acts are crystal clear. Once a plaintiff calculates the amount of any back pay and benefits for the relevant period of violation (up to a maximum of 60 days) for which the defendant may be liable, both WARN Acts provide that the amount calculated "***shall be reduced by***" various amounts that may have been paid to the

employee. Thus, the federal WARN Act provides that back pay and benefits "***shall be reduced by***":

> (A) any wages paid by the employer to the employee for the period of the violation;

> (B) any voluntary and unconditional payment by the employer to the employee that is not required by any legal obligation;

> (C) any payment by the employer to a third party or trustee (such as premiums for health benefits or payments to a defined contribution pension plan) on behalf of and attributable to the employee for the period of the violation.

29 U.S.C. §2104(a)(2). Similarly, the New York WARN Act provides that an employer's liability for back pay and benefits "***shall be reduced by***":

> (a) Any wages, except vacation moneys accrued before the period of the employer's violation, paid by the employer to the employee during the period of the employer's violation.

> (b) Any voluntary and unconditional payments made by the employer to the employee that were not required to satisfy any legal obligation.

> (c) Any payments by the employer to a third party or trustee, such as premiums for health benefits or payments to a defined contribution pension plan, on behalf of and attributable to the employee for the period of the violation.

> (d) Any liability paid by the employer under any applicable federal law governing notification of mass layoffs, plant closings, or relocations.

> (e) In an administrative proceeding by the commissioner, any liability paid by the employer prior to the commissioner's determination as the result of a private action brought under this article.

> (f) In a private action brought under this article, any liability paid by the employer in an administrative proceeding by the commissioner prior to the adjudication of such private action.

N.Y. Lab. L. §860-g(4)(a)-(f).

These statutory deductions are not "offsets" that a defendant interposes to "damages under the WARN Acts." They are statutorily prescribed elements of a damages calculation under those Acts. And they are not discretionary. They are ***mandatory*** deductions that "shall be" made under both the federal and New York state WARN Acts. *Mach Mining, LLC v. Equal Employment*

*Opportunity Commission*, 575 U.S. 480, 486 (2015) (use of word "shall" in statute "is mandatory, not precatory"); *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) ("mandatory shall . . . creates and obligation impervious to judicial discretion"); *United States v. Kahn*, 5 F.4th 167, 174 (2d Cir. 2021) ("The word 'shall' in a statute indicates a command; what follows the word 'shall' is 'mandatory, not precatory.'") citing *Mach Mining.*

As with each element of their claims in this case, Plaintiffs alone bear the burden of proving their purported damages.  *See Johnson v. Telespectrum Worldwide, Inc.,* 29 F. App'x 76, 77 (3d Cir. 2002) (unreported); *Kildea v. Electro Wire Prods., Inc.* 60 F. Supp. 2d 710, 713 (E.D. Mich. 1999), aff'd, 238 F.3d 422 (6th Cir. 2000). Because the damages Plaintiffs seek are expressly provided by the WARN Acts, Plaintiffs alone bear the burden to calculate any alleged damages under the express terms of the statutes – including accounting for the deductions that those statues mandate "shall be" made.

> **D.    Although the WARN Acts Are Unambiguous, Legislative History Confirms That the Purpose of the WARN Acts is to Require Advance Notice of Plant Closures and Mass Layoffs and that the Remedy for Failing to Do So Is Confined to a Maximum 60 Days Back Pay and Benefits**

The Court's final question is "whether there is any legislative history from either Congress or the New York State legislature concerning the nature and scope of damages under the WARN Acts?" As a threshold matter, there is no reason for the Court to turn to the legislative history of either WARN Acts in this case. It is only when "the text of that statute itself is not clear" that "a court applying that statute may consult the legislative history to discern 'the legislative purposes as revealed by the history of that statute.'" *U.S. v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008) *citing Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602 (1993). "Where a statute's language is 'plain,' 'the sole function of the courts is to enforce it according to its terms.'" *Id*, citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989).

That is the case here. As explained above, the language of the WARN Acts is plain and unambiguous in terms of both (i) the limited private right of action they provide to aggrieved or affected employees, and (ii) the limited statutory remedy they provide. Resorting to legislative history to apply this plain language is neither appropriate nor necessary.

Nevertheless, the answer to the Court's question is that although the legislative history is sparse (research into the history of the New York statute did not uncover any information relevant to the Court's question), what exists confirms the purpose of the WARN Act is to require ***advance notice*** of plant closures and mass layoffs, and that the remedy for the failure to do so is confined to a maximum of 60 days back pay and benefits, reduced by any wages or voluntary payments made. Briefly, that history is as follows:

The series of bills that became the federal WARN Act, were first introduced at the 93rd Congress by Michigan Representative William D. Ford and Minnesota Senator Walter Mondale. In the first Congressional floor action, the U.S. House of Representatives rejected H.R. 1616 on November 21, 1985.

In 1987, the U.S. House and Senate labor committees approved subsequent bills (H.R. 1122 and S. 538) addressing worker dislocation based on plant closings and mass layoffs, which provided for, *inter alia*, advance notice of terminations and layoffs (up to 180 days, depending on the number of employees affected by a plant closing or mass layoff).[2] These bills evolved into a subtitle of H.R. 3, the Omnibus Trade and Competitiveness Act of 1988, which was vetoed.

On June 16, 1988, Ohio Senator Howard Metzenbaum introduced S. 2527, which was enacted as Public Law 100-379, the present-day federal WARN Act.

---

[2] H.R., Rep. No. 100-285, at 45-46 (1987), Legislative History of S. 2527, 100th Congress, Worker Adjustment and Retraining Act, Public Law 100-379 ("Legislative History"), at 784-88; S. Rep. No. 100-62, at 66-70 (1987).

Massachusetts Senator Edward Kennedy, the Chair of the Senate Committee on Labor and Human Resources (and a sponsor of S. 2527), set forth the purposes of the legislation:

> First, advance notice is essential to the successful adjustment of the workers to the job loss caused by changing economic conditions. Times have changed for American workers. The person who will stay with one employer for thirty years is becoming more the exception and less the rule. Frequent changes are becoming more common. **An advance notice provision ensures that large numbers of workers will not be displaced without warning and without planning**.... Second, advance notice saves the Government money. The Office of Technology Assessment estimated that advance notice could help save between $257 million and $386 million in unemployment compensation benefits each year.... Third, advance notice makes each dollar that we appropriate for adjustment efforts go further. We know that with advance notice, adjustment programs are more effective in getting employees back to work more quickly, and at better wages. Fourth, and **perhaps most important, an advance notice requirement assures fair play for American workers**.[3]

There is scarce reference in the years-long legislative history of the federal WARN Act that speak directly to the "nature and scope of damages" under the federal WARN Act. Two references, however, are instructive.

First, in response to a proposed amendment during Senate debates by Indiana Senator J. Danforth Quayle to permit employers to make severance payments in lieu of advance notice,[4] Ohio Senator Howard Metzenbaum stated:

> The fact is we do provide that if the notice is not given then there is an obligation to make up the salary, but we do not want anybody to think that this bill is a way of providing additional financial obligations on the part of employers. That is not the object of this bill. The object of this bill is to give employees notice so that they can be involved in **retraining and readjustment**.[5]

---

[3] 134 CONG. REC. S8376 (1988) (statement of Sen. Edward Kennedy), Legislative History of S. 2527, 100th Congress, Worker Adjustment and Retraining Act, Public Law 100-379, at 184.

[4] 134 CONG. REC. S8541 (1988), Legislative History at 248 and 256 (statement of Sen. Charles Grassley); see also 134 CONG. REC. S8546 (1988).

[5] 134 CONG. REC. S8542-43 (1988), Legislative History at 250 (emphasis added).

Second, and critically, the current version of the federal WARN Act (Public Law 100-379 (August 4, 1988)) contains unambiguous language capping the liability for a federal WARN Act violation for a single plant closing or mass layoff "up to a maximum of 60 days" (29 U.S.C. § 2104(a)(1)), while the prior, unenacted and rejected version of the bill (S. 538) did not.

As above, the rejected bill (S. 538) set forth three tiers of damages (from 90 – 180 days back pay for each affected employee, depending on the number of affected employees) resulting from an employer ordering a plant closing or mass layoff without providing required notice. S. 538 § 332. The *only* limitation on damages in S. 538 was that an affected employee could not claim damages for more than "one-half the number of days the employee was employed by the employer." S. 538 § 334(a)(1)(A).

A year later, S. 2527, Public Law 100-379 corrected the prior bill by adopting the now-familiar and unambiguous statutory language mandating ***both*** a maximum liability of 60 days and a further limitation of back pay to one-half the number of days an affected employee was added:

> **Such liability shall be calculated for the period of the violation, up to a maximum of 60 days**, but in no event for more than one-half the number of days the employee was employed by the employer.

102 Stat. 893; Public Law 100-379 (August 4, 1988); S. 2527; 29 U.S.C. § 2104. The only reference to this major change in the legislative history of S. 2527 was made by Arkansas Senator Dale Bumpers during the U.S. Senate debate on the S. 2527:

> The conference report made clear that in cases where an employer fails to give timely notice and is liable for "each date of the violation," the maximum violation period is 60 days. **The Senate-passed bill was vague and could have led to a broader interpretation by the courts**.

134 CONG. REC. S. 8626 (1988) (emphasis added).

Accordingly, the history of the federal WARN Act makes clear what the statute's plain language provides: it is an employer's ordering a plant closing or mass layoff without providing

the required advance notice that gives rise to a private right of action by affected employees, and

the statutory damages resulting a single plant closing or mass layoff consist of a maximum of 60

days' back pay and benefits, reduced by wages and any voluntary and payments made.

Dated: New York, NY
      August 25, 2025

                            Respectfully submitted,

                            */s/ James J. Boland*
                            Marc B. Zimmerman
                            Kathryn T. Lundy
                            James J. Boland
                            Carly M. Allen
                            SMITH, GAMBRELL & RUSSELL, LLP
                            1301 Avenue of the Americas, 15th Floor
                            New York, NY 10019
                            (212) 907-9700

                            *Attorneys for Defendant Hotel 57 Services, LLC*