UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
SELENA STALEY, VIVIAN HOLMES, and OLIVE       :
IVEY, on behalf of themselves and all others similarly   :
situated,                                                                    :
                                                                               :    Case No.: 22-CV-6781 (JSR)
                                                                               :
                                     Plaintiffs,                            :
               v.                                                           :
                                                                               :
                                                                               :
HOTEL 57 SERVICES, LLC,                                      :
                                                                               :
                                                                               :
                                     Defendant.                            :
------------------------------------------------------------- X

# HOTEL 57 SERVICES, LLC'S RESPONDING BRIEF
# IN FURTHER RESPONSE TO THE COURT'S AUGUST 8, 2025 ORDER (ECF No. 186)

Marc B. Zimmerman
Kathryn T. Lundy
James J. Boland
Carly M. Allen
SMITH GAMBRELL & RUSSELL, LLP
1301 Avenue of the Americas, 15th Floor
New York, NY 10019
(212) 907-9700

*Attorneys for Defendant Hotel 57 Services, LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT .................................................................................................... 2

I.    THE COURT LACKS JURISDICTION OVER PLAINTIFFS' WARN
ACTS CLAIMS BASED ON ADDITIONAL NOTICES................................... 2

    A.    No Plaintiff or Class Member Suffered Any "Loss of Backpay"
or "Lost Wages and Benefits" as a Result of Not Receiving
Additional Notices ...................................................................... 2

    B.    Plaintiffs' Claim to Be "Affected Employees" Under the
WARN Acts Is Irrelevant to Article III Standing ...................................... 8

    C.    Plaintiffs' Reliance on Unpaid Wages Claims Under the Fair
Labor Standards Act Is Baseless .............................................................. 9

    D.    Plaintiffs' Opening Brief Further Demonstrates the Class
Should be Decertified .............................................................. 11

II.    PLAINTIFFS CONCEDE THEY LACK STANDING TO ASSERT
CLAIMS BASED ON WARN ACTS NOTICES TO
GOVERNMENTAL OFFICIALS ....................................................... 12

III.    THE WARN ACTS DO NOT PROVIDE FOR MULTIPLE SETS OF
STATUTORY DAMAGES BASED ON A SINGLE PLANT
CLOSING OR MASS LAYOFF ......................................................... 13

    A.    It is "Order[ing] a Plant Closing or Mass Layoff" Without
Advance Notice That Triggers Liability Under the WARN Acts,
and Plaintiffs Cannot Experience Multiple "Employment
Losses" From a Single Plant Closing or Mass Layoff Order.................. 14

    B.    The WARN Acts Expressly Cap an Employer's Liability
Arising Out of Single Order Resulting in a Plant Closure or
Mass Layoff at 60 Days Backpay and Benefits (Less Mandatory
Deductions) .............................................................................. 16

IV.    PLAINTIFFS, NOT H57, BEAR THE BURDEN OF PROVING ANY
WARN ACTS DAMAGES, WHICH MUST BE CALCULATED
ACCORDING TO THE STATUTES' REQUIREMENTS ............................... 18

V.    PLAINTIFFS MISSTATE THE LEGISLATIVE HISTORY ........................... 22

CONCLUSION.................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alexander v. Sandoval*,
   532 U.S. 275 (2001)................................................................................................ 18

*Day v. Celadon Trucking Services, Inc.*,
   827 F.3d 817 (8th Cir. 2016) ................................................................................. 20

*Eason v. U.S. Well Services, LLC*,
   H-20-2995, 2023 WL 6279359 (S.D. Tex. Sept. 26, 2023)................................... 12

*Graphic Communications Int'l Union v. Quebecor Printing (USA) Corp.*,
   252 F. 3d 296 (4th Cir. 2001) .......................................................................... 15, 16

*Gray v. Walt Disney Co.*,
   915 F. Supp. 2d 725, (D. Md. 2013).................................................... 19, 20, 21, 22

*Guthrie v. Rainbow Fencing, Inc.*,
   113 F.4th 300 (2d Cir. 2024) ....................................................... 3, 4, 7, 9, 11, 16

*Harty v. West Point Realty, Inc.*,
   28 F.4th 435 (2d Cir. 2022) ......................................................................... 3, 7, 10

*Jin v. Shanghai Original, Inc.*,
   990 F.3d 251 (2d Cir. 2021) ................................................................................. 12

*Kuan v. Notoriety Grp. LLC*,
   No. 22 CV 1583 (JLR) (KHP), 2023 WL 3937317 (S.D.N.Y. May 22, 2023)........ 10

*Lavigne-Soucie v. Blue Max Trucking, Inc.*,
   No. 3:23-CV-00498-FDW-SCR, 2023 WL 8603025 (W.D.N.C. Dec. 12, 2023).......... 4, 6, 7, 8

*Lucero v. Shaker Contractors, Corp.*,
   No. 21 CIV. 8675 (LGS), 2023 WL 4936225 (S.D.N.Y. July 27, 2023) ................ 10

*Lujan Defenders of Wildlife*,
   504 U.S. 555 (1992)................................................................................................. 7

*Mach Mining, LLC v. Equal Employment Opportunity Commission*,
   575 U.S. 480 (2015)............................................................................................... 19

*Maddox v. The Bank of New York Mellon Trust Company, N.A.*,
   19 F.4th 58 (2d Cir. 2021) ....................................................................... 3, 4, 7, 26

*National R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002)............................................................................................... 19

*Neor v. Acacia Network, Inc.*,
  No. 22-CV-4814 (ER), 2023 WL 1797267 (S.D.N.Y. Feb. 7, 2023) ..................................... 10

*Ramirez v. Urion Constr. LLC*,
  674 F. Supp. 3d 42 (S.D.N.Y. 2023) ................................................................................ 10

*Roberts v. Genting New York LLC*,
  68 F.4th 81 (2d Cir. 2023) .................................................................................................. 5

*Spokeo, Inc. v. Robbins*,
  578 U.S. 330 (2016) ................................................................................... 2, 3, 7, 8, 16

*Struebel v. Comenity Bank*,
  842 F.3d 181 (2d Cir. 2016) .............................................................................................. 3

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ................................................................................... 2, 3, 7, 8, 11, 26

*United Mine Workers of Am. Int'l Union v. Martinka Coal Co.*,
  45 F. Supp. 2d 521 (N. D. W. Va. 1999) .......................................................................... 24

*United States v. Kahn*,
  5 F.4th 167 (2d Cir. 2021) ........................................................................................ 19, 20

**Statutes**

Article III of the U.S. Constitution ................................................... 1-9, 11, 12, 15, 16

29 U.S.C. § 2101(a)(6) ............................................................................................... 18

29 U.S.C. § 2102(a) .................................................................................................. 13

29 U.S.C. § 2102(b)(3) ................................................................................................ 7

29 U.S.C. § 2104(a) .................................................................................................. 17

29 U.S.C. § 2104(a)(1) ....................................................................................... 14, 17, 18

29 U.S.C. § 2104(a)(1)(A) ............................................................................................ 22

N.Y. Lab. L. § 860-a(2) .............................................................................................. 18

N.Y. Lab. L. § 860-b ................................................................................................. 13

N.Y. Lab. L. § 860-g(1) ....................................................................................... 14, 17, 18

N.Y. Lab. L. § 860-g(2) .............................................................................................. 17

**Regulations**

20 C.F.R. § 639.7(e) .......................................................................................... 6

**Other Authorities**

134 Cong. Rec. H. 5503 (1988) ...................................................................... 22, 23

134 Cong. Rec. S. 8542-8543 (1988) .................................................................. 25

S. 538 ............................................................................................ 24, 25, 26

S. 2527 ........................................................................................ 22, 24, 25

S. Rep. No. 62, 100th Cong., 1st Sess. 24 (1987) ............................................... 24

## INTRODUCTION

In its opening brief addressing the Court's five questions on standing and damages issues under the federal and New York state WARN Acts, H57 explained that:

- Under binding Supreme Court and Second Circuit law, no Plaintiff or class member has standing under Article III to assert their current federal or New York WARN Act claims for damages following the Court's summary judgment order. This Court therefore lacks jurisdiction over the remaining WARN Acts claims asserted on behalf of Plaintiffs and the class.

- Under both the plain language of the WARN Acts and binding Supreme Court and Second Circuit law, no Plaintiff or class member has either statutory or Article III standing to assert claims under the WARN Acts based on notices required to be provided to governmental officials.

- Under the plain language of the WARN Acts, there is no private right of action for an employer's alleged failure to send additional informational notices to affected employees who already received a WARN Acts notice over the course of a single temporary layoff or closure, and even if there was, any statutory damages under the WARN Acts are expressly limited to a maximum of 60 days back pay and benefits, less any wages or voluntary payments made.

- Under the plain language of the WARN Acts, the calculation of statutory damages must account for all wages and voluntary payments that are expressly required to be deducted under the two statutes.

- Because the language of the WARN Acts are clear and unambiguous, there is no need to resort to considering legislative history. But even if the Court did so, that history, while sparse, confirms the purpose of the federal WARN Act is to require ***advance notice*** of plant closures and mass layoffs, and that the remedy for the failure to do so is confined to a maximum of 60 days back pay and benefits, reduced by any wages or voluntary payments made.

Given the jurisdictional issues under Article III and the fundamental change in the nature of the WARN Acts claims now being pursued by Plaintiffs following the Cout's summary judgment order, H57 also explained, as it has previously suggested, that the class should be decertified.

In addressing each of the above points and issues, H57 carefully and candidly set forth the relevant statutes, cases and other authorities. H57 explained in detail how those authorities apply and how they support each of the above conclusions.

In contrast, Plaintiffs' opening brief demonstrates a fundamental disregard of both the governing law and the nature of their current WARN Acts claims following the Court's summary judgment order. As explained below, virtually nothing Plaintiffs argue about Article III, their Constitutional standing to assert the current WARN Acts claims, the text of the WARN Acts or the availability of statutory damages under them, has any merit.

## ARGUMENT

I.    **THE COURT LACKS JURISDICTION OVER PLAINTIFFS' WARN ACTS CLAIMS BASED ON ADDITIONAL NOTICES**

Plaintiffs' arguments about Article III standing with respect to the "additional notice" WARN Acts claims in this case are uniformly baseless. And they are not merely inconsistent with binding Supreme Court and Second Circuit precedent; they are directly contrary to the settled law those cases establish.

### A.    No Plaintiff or Class Member Suffered Any "Loss of Backpay" or "Lost Wages and Benefits" as a Result of Not Receiving Additional Notices

Plaintiffs' failure to apprehend the facts and the law is exemplified by their first argument: that they and class members have suffered "the loss of backpay" and "lost wages and benefits" sufficient to support Article III standing for their "additional notice" WARN Acts claims. Pls.' Br. at 2-6. As for "backpay," Plaintiffs ignore completely the binding principles set forth in *Spokeo, Inc. v. Robbins*, 578 U.S. 330, (2016), *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), and myriad Second Circuit cases (that Plaintiffs do not even cite or acknowledge). As those cases uniformly hold, neither an alleged statutory violation nor the availability of a statutory remedy for that violation is sufficient to establish a plaintiff' standing under Article III:

- "Congress' role in identifying and elevating intangible harms does not mean that plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341.

- "Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact." *TransUnion*, 594 U.S. at 427.

- "Although 'Congress may enact legal prohibitions and obligations' and 'may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations, it remains the case that '[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court.'" *Guthrie v. Rainbow Fencing, Inc.*, 113 F.4th 300, 305-306 (2d Cir. 2024), citing *TransUnion* (emphasis in original).

*See also Harty v. West Point Realty, Inc.*, 28 F.4th 435, 433 (2d Cir. 2022); *Maddox v. The Bank of New York Mellon Trust Company, N.A.*, 19 F.4th 58, 64 (2d Cir. 2021).[1]

Simply put, the creation of a statutory remedy such as "backpay" under the WARN Acts does not provide a plaintiff with Article III standing to pursue a statutory cause of action in federal court. *TransUnion*, 594 U.S. at 427 ("[e]ven if Congress affords . . . plaintiffs a cause of action (with statutory damages) . . . Article III standing doctrine sharply distinguishes" between plaintiffs who have suffered a concrete harm and those who have not). Instead, to have Article III standing to sue for a statutory violation in federal court and recover ***any*** remedy that Congress may provide, a plaintiff must have first suffered a concrete injury-in-fact from the alleged violation. *Id.* ("only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court"); *Spokeo*, 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation."); *Guthrie*, 113 F.4th 305 (same) (citation omitted). "[A] plaintiff has standing to bring a claim for monetary

---

[1] Indeed, after *TransUnion,* the Second Circuit clarified that although it had previously held in *Struebel v. Comenity Bank*, 842 F.3d 181 (2d Cir. 2016), that a procedural violation may, under certain circumstances, provide a plaintiff with standing under Article III, *TransUnion* made clear that the holding in *Struebel* was wrong. *Harty*, 28 F.4th at 443.

damages following a statutory violation only when he can show a current or past harm *beyond the violation itself.*" *Guthrie*, 113 F.4th at 306 (citation omitted, emphasis in original).

For these reasons, Plaintiffs' argument that "[s]ince the Class Members are suing for backpay and benefits provided for under the federal WARN Act, there is no doubt that they have standing under Article III" is legally baseless. Pls.' Br. at 4. So, too, is Plaintiffs' argument that suing for the same remedy under the New York WARN Act is sufficient to establish their standing under Article III. *Id.* at 4-5. As the Second Circuit explained, just as Congress cannot create Article III standing by statute, state legislatures cannot do so either. *Maddox v. The Bank of New York Mellon Trust Company, N.A.*, 19 F.4th 58, 64 (2d Cir. 2021) ("We need not decide whether state legislatures have the same power Congress enjoys to recognize or create legally protectible interests whose violation gives rise to Article III standing; TransUnion determined that Congress itself enjoys no such power.").

Citing *Lavigne-Soucie v. Blue Max Trucking, Inc.*, No. 3:23-CV-00498-FDW-SCR, 2023 WL 8603025 (W.D.N.C. Dec. 12, 2023), Plaintiffs argue that "even after the Supreme Court's decision in [*TransUnion*], courts have found Article III standing in WARN Act cases." Pls.' Br. at 5. Plaintiffs contend that the court in *Lavigne-Soucie* "held that the plaintiff alleged a concrete and particularized injury in fact under the WARN Act, holding that the plaintiff had adequately alleged monetary losses arising from the defendant's alleged wrongdoing." *Id.* Plaintiffs are not being candid. *Lavigne-Soucie **does not*** support Plaintiffs' argument about Article III standing. To the contrary, it demonstrates why Plaintiffs do not have Article III standing to assert the WARN Acts claims based on the "additional notice" violations they now are pursuing.

Plaintiffs misleadingly conflate WARN Acts claims based on an alleged failure to provide ***advance notice*** of a plant closing or mass layoff under the Acts (which Plaintiffs alleged in their

complaints and for which the Court granted class certification), with their current WARN Acts claims based on the failure to provide ***additional notices*** during the course of a single closure or layoff that are now at issue following the Court's summary judgment order.[2] These are very different purported "violations."

As explained in detail in H57's opening brief, under both the federal and New York WARN Acts, it is the act of ordering a plant closing or mass layoff without providing advance notice that violates the WARN Acts. *Roberts v. Genting New York LLC*, 68 F.4th 81, 89 (2d Cir. 2023) ("a covered employer violates the WARN Act when it order[s] a plant closing or mass layoff without providing each employee, either individually or through [his or her] representatives, with sixty-days ***advance*** notice") (emphasis added); *see id*. at 92 ("Like the federal statute, the New York WARN Act requires that qualified employers give employees ***advance*** notice of plant closing or mass layoff.") (emphasis added). When an employer does so, an "affected employee" – *i.e.*, one entitled to notice prior to being laid off or terminated but who did not receive it (either at all or sufficiently in advance) – may have suffered a concrete injury under Article III where they would have been paid and provided benefits for an additional 60 days after being laid off or terminated.

---

[2] Plaintiffs' attempt to confuse the nature of the claims is exemplified by their citation to the Court's discussion of standing in its order granting class certification. Pls.' Br. at 3. Plaintiffs neglect to remind the Court that this discussion was in the context of whether Plaintiff's then-existing "advance notice" WARN Acts claims had been mooted by voluntary and unconditional payments H57 made to Staley and other purported class members, not whether Plaintiffs or any class members had suffered a legally-cognizable injury-in-fact under Article III to establish standing for the reformulated "additional notice" WARN Acts claims now at issue. *See* ECF No. 113 at 8-10. With respect to Plaintiffs' then-claims as of July 2024 (8 months before the Court's summary judgment order), the Court concluded that it "need not resolve the parties debate [as to whether Plaintiffs had been made whole by voluntary or unconditional payments] at this juncture" and that "[for] now, the Court is satisfied that the hurdle of Article III standing has been met." *Id*. at 10, n. 8.

That was the court's conclusion in *Lavigne-Soucie*. There, the plaintiff alleged he was laid off and terminated without the required advance notice 2023 WL 8603025, at *1. The court found that the plaintiff had alleged a concrete injury in fact to support Article III standing because he had adequately alleged that but for the advance notice violation, he "would have been paid for a period of sixty (60) calendar days after the date of the members' terminations" "unpaid wages, accrued holiday pay, accrued vacation pay, accrued sick leave pay and benefits," but was not paid those amounts. *Id*. at *3.

But that is not this case here. This case does not involve a failure to provide (60 or 90 day) "advance notice" of FSHNY's closure or Plaintiffs' temporary layoff. The Court granted H57 summary judgment on Plaintiffs' claim that the August 5, 2020 WARN Acts notice H57 provided was untimely, holding any failure to comply with the notice periods was exempted under the Acts:

> Given these quintessentially unforeseen business circumstances, ***the Court concludes that FSHNY's failure to comply with the statutory notice periods was exempted under the federal and state WARN Acts***.

ECF No. 149 at 33 (emphasis added).

This case is now about a different alleged WARN Acts "violation": an alleged failure to provide ***additional*** notice (or notices) during the course of FSHNY's single closure or layoff.[3]  In its summary judgment order, the Court held that "the WARN Act requires employers to provide additional notice when an employer relies upon the unforeseen business circumstances exception

---

[3] In its summary judgment order, the Court observed that the August 5, 2020 WARN Act notices "lack various pieces of information that must appear in WARN notices supplied to affected employees and government officials." ECF No. 149 at 34. However, all of the "information" the Court identified described as missing information is ***only*** required in notices to government officials – ***not*** in notices to employees. *Id*.; *see also* 20 C.F.R. § 639.7(e). As explained in H57's opening brief, and as Plaintiffs now do not contest, Pls.' Br. at 24-30, Plaintiffs lack both statutory and Article III standing to assert WARN Acts claims based on the existence or content of notices to government officials. *See* H57's Br. at 12-13.

and the reasons underlying the proceeding [sic] closure or layoff change." *Id*. at 24. As the Court explained:

> where a continued closure or layoff is "caused" by a new "circumstance," id. at §2102(a)(2)(A) [sic], the former notice is no longer adequate and a new notice containing a "brief statement" concerning the new "basis" for the continued closure or layoff, id. at 2102(b)(3), is required to comply with the WARN Act.

ECF No. 149 at 28.

That is the alleged violation at issue in this case, and it renders Plaintiffs' reliance on *Lavigne-Soucie* misplaced, and their claims of "lost wages and benefits" factually baseless. Unlike in *Lavigne-Soucie*, each and every Plaintiff and class member was already on indefinite furlough/layoff at the times Plaintiffs contend additional WARN Acts notices were required to be provided. No Plaintiff or class member was being paid wages or benefits at any of those times, and, unlike in *Lavigne-Soucie*, no Plaintiff or class member was deprived of any wages or benefits they would otherwise have received for an additional 60, 90, or any other number of days (420, according to Plaintiffs' latest position) but for the failure to provide any additional notices.

"[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim they press and for each form of relief that they seek (for example, injunctive relief and damages)." 594 U.S. at 431. Standing must be also established at each and every stage of a case, from the initial complaint through summary judgment and trial. *TransUnion*, 594 U.S. at 431 ("A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'") citing *Lujan v. Defenders of Wildlife*, 504 U.S. at 561.

As explained in H57's opening brief, *Spokeo*, *TransUnion*, *Guthrie*, *Harty* and *Maddox* are dispositive of Plaintiffs' and class members' Article III standing based on Plaintiffs' alleged "additional notice" WARN Acts violations. H57's Br. at I(A)(1). Even if Plaintiffs could prove that FSHNY remained closed for the sundry reasons they now contend – rather than the impact of

the COVID-19 pandemic on travel and tourism in the hotel's market (they cannot) and that additional WARN Acts notices were required under the Court's summary judgment order, neither they nor any absent class members have established their Article III standing to assert claims for damages based on those supposed violations.

### B.  Plaintiffs' Claim to Be "Affected Employees" Under the WARN Acts Is Irrelevant to Article III Standing

In addition to incorrectly arguing that they have standing because they lost the back pay that the WARN Acts provide as a statutory remedy, Plaintiffs also incorrectly argue that they have standing because "they are all 'affected employees' who have each suffered at least one employment loss with resultant damages." Pls.' Br. at 6, 7. There are two fundamental problems with this argument.

First, being an "affected employee" who may have suffered an "employment loss" under the WARN Acts has nothing to do with standing under Article III. As Plaintiffs' own case recognizes, statutory standing is fundamentally different from Article III standing. *Lavigne-Soucie*, 2023 WL 8603025, at *2 ("[t]he issue of statutory standing is a separate inquiry from Article III standing") (citation omitted). As the Supreme Court has made clear, "[f]or standing purposes . . . an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *TransUnion*, 594 U.S. at 426-27.  Being an "affected employee" who may have suffered an 'employment loss" relates to the former (statutory standing), not the latter (Article III standing).

Second, Plaintiffs' contention that they suffered an employment loss "with resultant damages" – or "associated damages," Pls.' Br. at 6, 7 – yet again misapprehends the injury-in-fact requirement under Article III and ignores the holdings in *TransUnion, Spokeo* and binding Second

Circuit cases. Plaintiffs again rely on the availability of statutory damages under the WARN Acts to establish standing. *Id*. at 7 ("Under the WARN Acts, a violation provides for damages of 60 days' backpay and benefits."). But the law is settled and clear that such a statutory remedy does ***not*** provide a plaintiff with standing under Article III. *TransUnion*, 594 U.S. at 427.

### C.    Plaintiffs' Reliance on Unpaid Wages Claims Under the Fair Labor Standards Act Is Baseless

Plaintiffs' last argument – that "[c]ases brought under the Fair Labor Standards Act ("FLSA") for failure to pay overtime and for failure to give proper wage notices are in accord with WARN Act cases and also support a finding of standing" – is, like Plaintiffs' other arguments, legally and factually baseless. To begin with, a claim for unpaid wages under either the FSLA or any equivalent state law is fundamentally different from – *i.e.*, not "in accord with" – a claim for lack of required notice under the WARN Acts. A claim for actual unpaid wages due is a claim for an existing monetary injury, which is always sufficient to support Article III standing.

But WARN Acts claims – and, in particular, Plaintiffs' reformulated WARN Acts claims in this case – based on a 'failure to give proper notices" under a federal or state statute are fundamentally different. They are about ***notice***. In "failure to provide notice" cases, since *TransUnion* the Second Circuit has consistently and unequivocally held that a plaintiff must show that the alleged lack of notice caused her to suffer a concrete injury-in-fact to establish her standing to sue for a statutory violation under Article III. *Guthrie*, 113 F. 4th at 309-310 (no Article III standing for alleged failure to provide wage notices and statements under Section 195 of New York Labor law because employee suffered no "downstream harm" from lack of required notices);

*Harty*, 28 F.4th at 443.[4] And, as the Second Circuit has also unequivocally held, any such harm cannot by conjectural or hypothetical, but must be actual and concrete:

> Before the district court—and again before this court—Guthrie identified potential harms that *could* result from an employer's failure to provide wage notices and wage statements. The lack of such notices and statements might impair "an employee's ability to seek relief for violations they may not have information about," for example, or result in a "lack of proper documentation to apply for public benefits." *Guthrie*, 2023 WL 2206568, at *4. Guthrie explains that wage statements may be "critical" for employees to determine "whether they are being robbed by the employer," "whether the hours and wages are correct," "whether the deductions for taxes are being made and in the correct amount," and "whether other deductions for health insurance, life insurance, retirement funds, and a variety of important matters are being made and in the correct amounts." Appellant's Br. 38. In addition, employees may need wage statements to file their taxes or to apply for public benefits, bank loans, credit cards, and other employment. *See id.* at 39.
>
> We recognize that the failure of an employer to provide the wage notices and wage statements that § 195 requires may result in various harms to an employee. But Guthrie has not plausibly alleged that RFI's failure to provide the wage notices and wage statements in this case caused him to suffer any of those harms.
>
> \*      \*      \*
>
> Like the district court, we do "not disagree" that "possible injuries" could result from violations of §195. Guthrie, 2023 WL 2206568, at *4. But Guthrie "fails to

---

[4] *See also Lucero v. Shaker Contractors, Corp.*, No. 21 CIV. 8675 (LGS), 2023 WL 4936225, at *3 (S.D.N.Y. July 27, 2023) ("Courts in this District have applied TransUnion to find plaintiffs lack standing to bring claims under the NYLL's wage notice and wage statement provisions when those plaintiffs do not make specific allegations of concrete injuries they suffered as a result of their employers' failure to provide required wage records."); *Ramirez v. Urion Constr. LLC*, 674 F. Supp. 3d 42, 56 (S.D.N.Y. 2023) ("Courts throughout the Second Circuit have since found no standing in cases, such as the instant case, where Plaintiffs have not established any injury traceable to violation of the wage notice and statement requirements."); *Neor v. Acacia Network, Inc.*, No. 22-CV-4814 (ER), 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023) ("Plaintiffs here lack standing because they fail to demonstrate how the lack of accurate wage notices and statements led to either a "tangible injury or something akin to a traditional cause of action."); *Kuan v. Notoriety Grp. LLC*, No. 22 CV 1583 (JLR) (KHP), 2023 WL 3937317, at *10 (S.D.N.Y. May 22, 2023), report and recommendation adopted, No. 1:22-CV-01583 (JLR), 2023 WL 3936749 (S.D.N.Y. June 9, 2023) ("In this case, Plaintiff merely states that she was not provided with a notice with her rate of pay, employer's regular pay day, and other information required by 195(1) or wage statements under 195(3). (Compl. ¶¶ 68-69.) She does not assert any other facts describing the injury in fact caused by not receiving these documents. Thus, she has failed to properly plead standing to assert the wage statement claims.").

link the general harms an employee might experience to any harms that Mr. Guthrie did, in fact, experience." Id. Without plausible allegations that he suffered a concrete injury because of RFI's failure to provide the required notices and statements, Guthrie lacks standing to sue for that statutory violation.

*Guthrie* at 310 - 311 (emphasis in original).

Again, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion*, 594 U.S. at 431. As explained above and in H57's opening brief, Plaintiffs have not shown a concrete harm to any Plaintiff or class member with respect to H57's alleged failure to provide any of the myriad additional WARN notices they contend should have been provided.

### D.    Plaintiffs' Opening Brief Further Demonstrates the Class Should be Decertified

As explained in H57's opening brief, the nature of the WARN Acts claims for damages that are now being pursued, coupled with the inherently individualized and jurisdictional issue of class members' Article III standing to pursue those damages claims, demonstrate that class certification is no longer appropriate. Plaintiffs' opening brief only reinforces that conclusion.

The sole basis for Plaintiffs' argument that they and class members suffered an injury-in-fact under Article III is that they are suing for the statutory back pay and benefits provided under the WARN Acts. As a matter of law, the availability of that – or any – statutory remedy does not provide any Plaintiff or class member with standing under Article III. *TransUnion*, 594 U.S. at 427.

Rather, to establish their standing and the standing of every class member – which is required for this Court to have jurisdiction over those class members' claims for damages – every class member would have to show a concrete, particularized injury-in-fact they suffered from each of the myriad "additional notice" violations Plaintiffs are now pursuing. Class certification for

those WARN Acts claims is no longer appropriate. *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 267 (2d Cir. 2021) (courts should "decertify a class if they find that the class no longer meets the requirements of Rule 23 at any time before a final judgment is entered"). *Id*.

## II.    PLAINTIFFS CONCEDE THEY LACK STANDING TO ASSERT CLAIMS BASED ON WARN ACTS NOTICES TO GOVERNMENTAL OFFICIALS

As explained in H57's opening brief, Plaintiffs lack both statutory and Article III standing to assert claims for damages based on WARN Acts notices to governmental authorities. H57's Br. at I(B). Although Plaintiffs devote seven of the thirty-two pages in their opening brief addressing this issue, they do not argue that they have standing to assert claims for damages based on those notices. Pls.' Br. at 24-30. As a result, Plaintiffs concede that they have no statutory claims under the WARN Acts based on those notices or their content.

Nevertheless, Plaintiffs argue that "[t]he question of whether Defendant failed to send proper notices to employees and to the government should go to the trier of fact and should be taken into account in deciding whether the employer acted in good faith and whether the employer may invoke the unforeseeable-business-circumstance exception." Pls.' Br. at 30. This argument, again, reflects their disregard for this Court's summary judgment order and the law.[5] The Court has already held that Plaintiffs may present evidence of notices to the government or their content

---

[5] It is also based on a misrepresentation of caselaw. Plaintiffs cite *Eason v. U.S. Well Services, LLC*, H-20-2995, 2023 WL 6279359 (S.D. Tex. Sept. 26, 2023), for the proposition that the court "den[ied] the plaintiff's motion for partial summary judgment—based on the defendant's failure to send notice to the government—on the affirmative defenses of unforeseeable business circumstances and good faith, and leaving the issues for trial." Pls.' Br. at 30, n.126. Not true. In truth, notices to the government were not even argued or discussed with respect to the good-faith defense, 2023 WL 6279359, at *14-15, and the court specifically held that notices provided to the government had nothing to do with the unforeseeable business circumstances defense. *Id*. at*13 ("The court agrees with US Well Services that its failure to notify the state dislocated worker unit and local governments does not preclude its unforeseeable-business-circumstances defense.").

may be presented to the jury to rebut H57's good-faith defense. If Plaintiffs have any ***admissible evidence*** proving that proper notices were not sent, they may present it.

As for "proper notices to employees," Plaintiffs ignore that the only defect the Court identified in the August 5, 2020, notices sent to employees was the omission of information required to be provided to government officials – not to employees. *See* ECF No. 149 at 34. Because Plaintiffs concede that they have no basis to assert claims based on the content of those notices, there is no "proper notice to employees" issue left in this case.

Nor is there an issue relating to H57's invocation of the unforeseen business circumstances exception to the timing of the August 5, 2020 WARN Acts notice left in this case, as Plaintiffs wrongly presume. Plaintiffs ignore – yet again – that the Court already found that H57 satisfied that exception: "Given these quintessentially unforeseen business circumstances, the Court concludes that FSHNY's failure to comply with the statutory notice periods was exempted under the federal and state WARN Acts." ECF No. 149 at 33.

## III.    THE WARN ACTS DO NOT PROVIDE FOR MULTIPLE SETS OF STATUTORY DAMAGES BASED ON A SINGLE PLANT CLOSING OR MASS LAYOFF

As set forth in H57's opening brief, the WARN Acts do not provide a private right of action for multiple alleged "violations" based upon the failure to provide additional notice(s) "that occur within a single closure, furlough or layoff." H57's Br. at II(A) (pp. 14-16). But even if they did, the WARN Acts explicitly limit an employer's liability to a maximum of 60 days resulting from its failure to provide notice based upon a single plant closing or mass layoff. *See* 29 U.S.C. § 2102(a); N.Y. Lab. Law § 860-b. Nothing Plaintiffs argue to escape that express limitation has any merit.

**A.      It is "Order[ing] a Plant Closing or Mass Layoff" Without Advance Notice That Triggers Liability Under the WARN Acts, and Plaintiffs Cannot Experience Multiple "Employment Losses" From a Single Plant Closing or Mass Layoff Order**

Plaintiffs conflate the concepts of an employer "order[ing] a plant closing or mass layoff" that results in an "employment loss" (sufficient to trigger the statutes) without providing notice, with the concept of an employee suffering such an "employment loss" as a result of that order. These are very different things. As explained in H57's opening brief and again above, it is the former that triggers liability under the WARN Acts; the latter merely specifies which employees are aggrieved and may sue. *See* 29 U.S.C. § 2104(a)(1); N.Y. Lab. L. § 860-g(1).

Plaintiffs disregard these statutory provisions entirely, arguing that "[n]owhere in the statute does it require the damages to be tied directly to an initial layoff or plant closing, but rather the actual violation of not giving proper notice." Pls'. Br. at 12. Plaintiffs are exactly wrong. That is *precisely* what the WARN Acts require. *See* 29 U.S.C. § 2104(a)(1) ("Any employer *who orders a plant closing or mass layoff in violation of section 2102 of this title shall be liable* to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for…."); N.Y. Lab. L. § 860-g(1) ("An employer who fails to give notice as required by… this article *before ordering a mass layoff, relocation, or employment loss is liable* to each employee entitled to notice who lost his or her employment for ….").

Plaintiffs know this. In the very first paragraph of Section II of their opening brief addressing WARN Act damages states, Plaintiffs state:

> Plaintiffs begin with the basic intent of the WARN Acts and the definitions underlying the Acts. *The federal WARN Act prohibits employers from ordering a "plant closing or mass layoff* until the end of a 60–day period after the employer serves written notice" of the closing or layoff to its employees. An employer who violates this notice provision is required to provide "back pay for each day of violation." *The New York WARN Act similarly prohibits employers from ordering a plant closing or mass layoff* unless the employer provides written notice at least 90 days prior to the plant closing or mass layoff to its employees.

Pls'. Br. at 8-9 (emphasis added)). Plaintiffs clearly know that it is the ordering of the closing or layoff without advance notice that triggers liability, and an employee who suffers an employment loss as a result may sue for statutory damages (provided the employee has suffered a concrete injury-in-fact under Article III). Any damages that may be recovered are expressly "tied" to the order of the layoff or closing that violated the statute.

To be clear, Plaintiffs' contention that the WARN Acts contemplate that an employee "can suffer an employment loss … and experience a subsequent employment loss" so long as an employee remains employed, Pls'. Br. at 11-12, is technically accurate. But it is *only* accurate if an employer *ordered* more than one mass layoff or plant closing that resulted in a second employment loss.

That was the case in *Graphic Communications Int'l Union v. Quebecor Printing (USA) Corp.*, 252 F. 3d 296 (4th Cir. 2001), which Plaintiffs cite for the proposition that "the WARN Act envisions multiple employment losses." Pls.' Br. at 11. As H57 explained in its opening brief, there were *two* employer orders in *Graphic Communications*: (i) an order of a temporary plant shutdown and employee layoff on December 11, 1998, for which employees were provided notice; and (ii) a second order of a permanent plant closure and employee termination five days later, for which no notice was provided. 252 F.3d at 298, 299. Because there were two orders giving rise to two employment actions – layoff and termination – the Fourth Circuit held that whether notice was required or properly given with respect to the first was irrelevant to whether notice was required for the second:

> Whether the Quebecor employees suffered an "employment loss" on December 11 is immaterial to whether the employees were entitled to notice of the permanent plant closing on December 16. Even if the Quebecor employees had suffered an "employment loss" on December 11, as the district court concluded, they still would have been entitled to WARN Act notice prior to the permanent plant closing.

The WARN Act clearly contemplates that an employee may suffer multiple employment losses, necessitating separate notices.

*Id*. at 299 (emphasis added).

In stark contrast, there was only one order closing FSHNY and resulting layoff of Plaintiffs and class members. *See* ECF No. 149 at 17, 23. Neither *Graphic Communications*, nor any other case that Plaintiffs cite (or that H57 has found) holds that an employee can suffer more than one "employment loss" in the context of a single order causing a plant closure or mass layoff.

Simply put, under the plain language of the WARN Acts, additional "employment losses" (as defined in the statutes) occur *only* where, as in *Graphic Communications*, an employer orders a new plant closing or mass layoff affecting the requisite number of employees. And additional claims for violations of the WARN Acts arise only when an employer issues such a second order without providing required notice to affected employees who experience a resulting employment loss.[6] That is not the case here.

### B.    The WARN Acts Expressly Cap an Employer's Liability Arising Out of Single Order Resulting in a Plant Closure or Mass Layoff at 60 Days Back Pay and Benefits (Less Mandatory Deductions)

Plaintiffs expressly recognize that "[w]hen Congress wishes to cap damages, it knows how to do so and does not hesitate to do so." Pls.' Br. at 13. That is accurate. Congress absolutely knows how to cap damages, and Congress did *exactly that* in the federal WARN Act:

Such liability shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer.

---

[6] Provided, of course, that the employees can first demonstrate a concrete injury-in-fact under Article III as a result of not receiving the second notice. *Spokeo*, 578 U.S. at 341; *Guthrie*, 113 F.4th at 306.

29 U.S.C. § 2104(a). The New York legislature no doubt knows how to cap damages as well, and it did the same thing in the New York WARN Act:

> Back pay and other liability under this section is calculated for the period of the employer's violation, up to a maximum of sixty days, or one-half the number of days that the employee was employed by the employer, whichever period is smaller.

N.Y. Lab. L. § 860-g(2). These statutory provisions are clear and unambiguous.

Unable to refute this language, Plaintiffs attempt to circumvent it. Although Plaintiffs concede (as they must) that both WARN Acts limit damages to 60 days back pay and benefits, Pls.' Br. at 13, they nonetheless argue that the 60-day cap is "for 'the violation' in the singular, as opposed to a limit for all "violations" of the Acts. *Id*. According to Plaintiffs, "[a]s WARN notices can be required multiple times during a single layoff, the logical consequence is that there can be multiple damages." *Id*.

Plaintiffs once again misrepresent the statutes. The only "violation" identified in the WARN Acts for which an affected employee may sue to recover statutory damages occurs when an employer ***orders*** a plant closing or mass layoff without providing notice to that employee the requisite number of days (60, 90) in advance. 29 U.S.C. § 2104(a)(1); N.Y. Lab. L. § 860-g(1). And as Plaintiffs concede, both the federal and New York WARN Acts expressly cap any recoverable statutory damages for that violation at 60-days of back pay and benefits less deductions. 29 U.S.C. § 2104(a); N.Y. Lab. L. § 860-g(2).

Plaintiffs' attempt to transform this Court's finding that additional WARN Acts notices may be required during the course of a single closure or layoff into multiple "violations" for which "the logical consequence is that there can be multiple damages" is meritless. Pls.' Br. at 13. Whether Plaintiffs believe allowing "multiple" WARN Act damages is "logical" is irrelevant; Congress (and the New York legislature) did not do so. As H57 explained in its opening brief,

"private rights of action to enforce federal law must be created by Congress" and, without statutory direction, no private cause of action *or remedy* exist "and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)

At bottom, Plaintiffs' argument – "there is no limit to the aggregate amount of damages for the period of ALL of the employer's violations" – is simply rehashing their prior claim that WARN notices and payments are required every six months during an employee's layoff.[7] The Court rejected that claim, and properly so. ECF No. 149 at 26-27. Plaintiffs' attempt to repackage it under a "multiple" sets of statutory damages with "no limit" theory ignores not only the plain language of the WARN Acts, but this Court's summary judgment order as well.

## IV.    PLAINTIFFS, NOT H57, BEAR THE BURDEN OF PROVING ANY WARN ACTS DAMAGES, WHICH MUST BE CALCULATED ACCORDING TO THE STATUTES' REQUIREMENTS

Plaintiffs do not – and cannot – contest the that the federal and New York WARN Acts provide that the calculation of statutory backpay and benefits, if any, "shall be reduced" by various amounts paid to employees, including wages, benefits and any voluntary and unconditional payments. Pls.' Br. at 30-31. Unable to contest the statutes' plain language and recognizing that Plaintiffs (who have no admissible calculation of damages) have not done so, Plaintiffs – who

---

[7] For example, Plaintiffs argue that: "if Congress had intended to limit violations of the WARN Act to only the initial furlough, it could have limited violations to the 'first 6-month period,' thereby capping damages to that first 6-month violation." Pls.' Br. at 13. This is just Plaintiffs' "every six months is another employment loss requiring payment" claim in different clothing. And as with that prior claim, Plaintiffs again conflate the trigger violation of the WARN Acts: it is not an "employment loss" (including "a layoff exceeding 6 months"), 29 U.S.C. § 2101(a)(6); N.Y. Lab. L. § 860-a(2), but the ordering of a plant closing or mass layoff without requisite notice, 29 U.S.C. 2104(a)(1); N.Y. Lab. L. § 860-g(1).

continue to mischaracterize these statutory components of a WARN Acts damages calculation as "offsets" – make two arguments to excuse their failure. Both are baseless.

First, although recognizing that both WARN Acts provide that backpay and benefits "shall be reduced" by various amounts, Plaintiffs nonetheless argue that this reduction is merely permissive. Pls.' Br. at 30 ("The WARN Acts *permit* a limited category of payments to offset damages. . . . Both the federal WARN Act and New York WARN Act *permit* a reduction in liability for a limited category of payments.") (emphasis added); *see also id.* at 31 ("While the above category of payments *may be* counted as offsets under the respective WARN Acts . . .") (emphasis added). Plaintiffs are wrong. Deduction of any payments as set forth in the WARN Acts is mandatory. *Mach Mining, LLC v. Equal Employment Opportunity Commission*, 575 U.S. 480, 486 (2015) (use of word "shall" in statute "is mandatory, not precatory"); *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) ("mandatory shall . . . creates and obligation impervious to judicial discretion"); *United States v. Kahn*, 5 F.4th 167, 174 (2d Cir. 2021) ("The word 'shall' in a statute indicates a command; what follows the word 'shall' is 'mandatory, not precatory.'") citing *Mach Mining.*

Second, after incorrectly arguing that the deductions required under the WARN Acts are merely permissive, Plaintiffs next argue that H57 bears the burden of proof on these components of Plaintiffs' purported damages. Pls.' Br. at 31-32. Citing *Gray v. Walt Disney Co.*, 915 F. Supp. 2d 725, (D. Md. 2013), Plaintiffs argue that H57 "must present admissible evidence to establish that a reduction in WARN Act damages is appropriate" and that "[u]nless [H57] can identify the specific evidence supporting a reduction, no offsets are permitted under the WARN Acts." *Id.* at 32. Plaintiffs are wrong and yet again fundamentally misrepresent the law.

As explained above (and in H57's opening brief), the plain language of the WARN Acts require the deduction of wages, benefits and certain voluntary payments made to employees. These are not "offsets" to damages; they are part and parcel of the calculation of damages in the first instance. And they are mandatory, not permissive ("permitted") as Plaintiffs falsely contend. *Kahn*, 5 F.4th at 174.

Also, contrary to Plaintiffs' proclamation, Plaintiffs – and Plaintiffs alone – bear the burden of production and proof on each and every element of any WARN Acts damages claim they may assert. H57 does not bear any burden of production or proof with respect to Plaintiffs' claimed damages. Nor does *Gray* hold otherwise. Indeed, *Gray* is miscited.[8]

*Gray* did not involve a court requiring a defendant to prove the existence or validity of any deductions to WARN Acts damages, as Plaintiffs contend. *Gray* involved the issue of whether an employer, Disney, could contract out of WARN Act liability via a "paid leave in lieu of notice"

---

[8] So, too, is *Day v. Celadon Trucking Services, Inc.*, 827 F.3d 817 (8th Cir. 2016), which Plaintiffs cite for the proposition that "in WARN Act case, district court did not abuse its discretion by shifting the burden to prove damages to employer after employees produced evidence supporting reasonable inference as to extent of their damages." Pls.' Br. at 31, n. 129. Plaintiffs fail to tell the Court that *Celadon* involved a WARN Act violation in the context of the sale of a business (asset sale), 827 F.3d at 822, following which the selling employer's personnel or payroll records were unavailable and were not produced. *Id.* at 825. As a result, the district court held, in a "pre-damages hearing order," that the employees "would not be subject to a strict, individualized claim process." *Id.* The court held that the plaintiffs would instead be permitted "to produce sufficient evidence, which the district court held could include representative evidence, to support a reasonable inference as to the extent of the employees' damages," which, if they did so, the defendant could rebut. *Id.* That is not the procedure in this case; there has been no failure by H57 to produce any data that Plaintiffs requested and, at class certification, Plaintiffs created a spreadsheet purporting to calculate each purported class member's individual damages and told the Court they could and would be able to do so ***at trial*** using H57's records. ECF No. 85 at 22-23 ("The trial of the damage portion of the case is also straightforward because . . . actual damages for any class member which can be determined from Defendants' own payroll records. In fact, as demonstrated in the accompanying declaration of Evan Brustein, Esq., dated May 10, 2024, the approximate damages available to the class ***can be calculated based on the records turned over by Defendants***.") (emphasis added).

provision, which provided that "to the extent you have been given less than WARN-required advance notice of the date your active services will actually terminate, you will be given a Paid Leave in Lieu of Notice for the balance of the WARN-required advance notice period." 915 F. Supp. 2d at 734-35. The court merely held that Disney could not do so because it would be inconsistent with the Act. *Id.*

Rather than support Plaintiffs, *Gray* actually confirms that Plaintiffs **alone** bear the burden of proof on WARN Act damages, including the statutorily-required deductions. In *Gray*, Disney closed a number of ESPN Zone restaurants. 915 F. Supp. 2d at 728. Employees were placed on leave and informed in written separation agreements that they would remain employed for 60 days, during which they would receive "a regular weekly paycheck ... based upon the weekly average of [their] total hours paid ... for the 6–month period prior to the notification," which the court termed "Notice Pay." *Id.* At issue in *Gray* was whether the Notice Pay Disney provided eliminated Disney's liability under the federal WARN Act. *Id.* at 731-33. Because the Notice Pay was not calculated to represent the full amount that employees would have received had they continued to work, the court denied summary judgment on liability. *Id.* at 732.

Significantly, however, the court expressly held that the burden to prove any statutory damages would remain solely on the plaintiffs, including accounting for required deductions such as wages (Notice Pay):

> During the next phase of this litigation, ***the burden remains on the plaintiffs to prove that what they were paid in lieu of notice was less than what they would have received under the back-pay provision***. Certainly, if, as the defendants now appear to suggest, some plaintiffs were paid more under the defendants' formula than what they would have received under the WARN back pay provision, those plaintiffs would be entitled to no additional back pay.

*Id.* at 733 (emphasis added). The court also confirmed that the federal WARN Act also "requires an individualized determination, for each aggrieved employee, of the days they would have worked

during the notice period and what their higher rate of pay would have been (the three-year 'average regular' or 'final regular' rate)" – in other words, their actual federal WARN Acts damages. *Id*. citing 29 U.S.C. § 2104(a)(1)(A).

## V.    PLAINTIFFS MISSTATE THE LEGISLATIVE HISTORY

Having nothing to provide the Court in response to its question as to legislative history "concerning the nature and scope of damages under the WARN Acts," Plaintiffs resort to affirmatively mispresenting that history. Plaintiffs' memorandum contains only one direct citation to the legislative history addressing damages, which Plaintiffs intentionally misrepresent.

Plaintiffs cite Illinois Representative Harris W. Fawell's comments during the House of Representatives committee consideration of Senate bill S. 2527 (which would become the federal WARN Act), baldly proclaiming that Representative Fawell "[c]learly … understood that an employer who failed to provide the notice required by the federal WARN Act would be liable for each time that there was an employment loss without proper notice; in other words, multiple sets of damages" Pls'. Br. at 22. That simply is false.

During the House committee consideration of S. 2527, Representative Fawell (before casting a vote in opposition) opposed the bill as "tak[ing] away basic liberties of employers to the detriment of American competition and to the very workers it purports to help." 134 Cong. Rec. H. 5503 (1988). Representative Fawell criticized S. 2527's statutory design that required aggregating all employment losses in a 90-day period to satisfy the threshold triggering an employer's notice requirement – and thereby transforming previously "valid" employment losses into retroactively "illegal" ones. *Id*. In his words:

> In this bill, "Plant closing" is defined in terms of at least 50 terminations, layoffs, or reductions in working hours of full-time employees over any 90-day period resulting from a "permanent or temporary shutdown" of: First, a "single site of employment"; or second, one or more (i) "facilities" or (ii) "operating units" within an employment site.

In addition, the "employment losses" which trigger the advance notice requirement do not have to occur all at once. When the number of "employment losses" aggregate to the threshold of 50 or more, over any 90-day period, all of the 49 pevious [sic] employment losses, until then legal, suddenly become retroactively illegal. All other employment losses, over and above the threshold, occurring within the same 90-day period, of course, are also deemed illegal.

The same holds true for what is defined in the bill as a "mass layoff." A "mass layoff" is defined as a "reduction in force." A "Reduction in force," in turn, is defined in terms of an "employment loss," in this instance being a threshold of not more than 500 or 33 percent of the employees (but not less than 50 employees [sic]) over any 90-day period, but requiring not more than 500 and at least 50 employment losses. Once the threshold number of employment losses is reached within any 90-day period, then all employment losses occurring within that period, either before or after the threshold is reached, are deemed illegal, retroactively or not.

Each time the employer fails to send a proper 60-day advance notice or notices (within any 90-day period), the employer must pay each affected employee who suffers an employment loss back pay and benefits. The employer also must pay up to $500 per day for each failure to give proper notice of an employment loss to the unit of local government within which the employment losses take place. Presumably, the employee who has sustained an invalid employment loss, still holds a valid employment contract. If so, the employer would be obligated to issue a valid notice of employment loss to all such employees and pay further salaries until a new 60-day period expires.

*      *      *

The message seems clear. To be safe, employers should give the notice and wait 60 days before effecting any "employment losses", lest the employment losses aggregate beyond a threshold tolerated under this act. It is a goal long sought after by organized labor in order to keep its fading membership.

*Id*.

In full context, Representative Fawell expressed disapproval of the statutory scheme for which a notice requirement (or 60-day payment obligation resulting from an employer's failure to provide such notice) could be triggered *up to three months after an employment loss already occurred* – a far cry from Plaintiffs' twisted, misleading, characterization of his comments. Plainly, Representative Fawell neither (as Plaintiffs disingenuously contend) "explained that an employee could experience an 'employment loss' without an employee being terminated" Pls'. Br. at 19;

23

"recognized that the federal WARN Act would impose multiple sets of damages if there were multiple employment losses" Pls'. Br. at 21; nor "[c]learly … understood that an employer who failed to provide the notice required by the federal WARN Act would be liable for each time that there was an employment loss without proper notice; in other words, multiple sets of damages" Pls'. Br. at 22. It is inexcusable for Plaintiffs to so brazenly misrepresent the facts.

In addition to misrepresenting Representative Fawell's statements, Plaintiffs also misrepresent the law. Plaintiffs cite *United Mine Workers of Am. Int'l Union v. Martinka Coal Co.*, 45 F. Supp. 2d 521 (N. D. W. Va. 1999), for the proposition that "[m]ultiple sets of damages under the WARN Acts is also consistent with what the legislators intended the damages to accomplish". Pls'. Br. at 22. The court in *Martinka*, however, merely held that an injured employee would be entitled to damages under the federal WARN Act in addition to workers' compensation benefits. 45 F. Supp. 2d at 530. The court did not hold that "[m]ultiple sets of damages under the WARN Acts" were available, as Plaintiffs contend.

Moreover, in *Martinka Coal*, the Fourth Circuit cited a Senate Report on The Economic Dislocation And Worker Adjustment Assistance Act, S. Rep. No. 62, 100th Cong., 1st Sess. 24 (1987). That citation was misplaced as it was ***a report on a prior Senate bill (S. 538) that did not pass*** (the bill that became the federal WARN Act is, of course, S. 2527). Tellingly, the concept in Senate bill (S. 538) that that damages under the WARN Act is a liquidated damages provision to penalize an employer was rejected and *did not* carry forward to S. 2527. Nowhere in its legislative history of S. 2527 did Congress state, or even suggest, that damages under the WARN Acts are punitive or intended to penalize an employer – much less provide even a scintilla of support for Plaintiffs false pronouncement that "[m]ultiple sets of damages under the WARN Acts is also consistent with what the legislators intended the damages to accomplish." Pls'. Br. at 22.

To the contrary, as Senator Metzenbaum made clear, the bill (S. 2527) "provide[s] that if the notice is not given there is an obligation to make up the salary, but we do not want anybody to think that this bill is a way of providing additional financial obligations on the part of employers."[9]

As set forth in H57's opening brief, a comparison of the express language of the rejected bill (S. 538) to the passed legislation (S. 2527) plainly demonstrates Congress expressly clarified the maximum WARN Act damages available for a single plant closing or mass layoff – as it included an unambiguous 60-day damages cap in S. 2527 that did not appear in the prior failed bill. S. 2527 provides:

SEC. 5. ADMINISTRATION AND ENFORCEMENT OF REQUIREMENTS.

(a) Such CIVIL ACTIONS AGAINST EMPLOYERS.– (1) Any employer who orders a plant closing or mass layoff in violation of section 3 of this Act shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for–

(A) back pay for each day of the violation…

\*       \*       \*

Such liability shall be calculated for the period of the violation, ***up to a maximum of 60 days***, but in no event for more than one-half the number of days the employee was employed by the employer.

S. 2527, Sec. 5(a) (emphasis added). In contrast, the failed prior version of the bill (S. 538) cited by Plaintiffs did not contain the 60-day damages cap:

ADMINISTRATION AND ENFORCEMENT OF REQUIREMENTS

SEC. 334. (a) CIVIL ACTIONS AGAINST EMPLOYERS–(1) Any employer who orders a plant closing or mass layoff in violation of section 332 of this Act shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for–

(A) back pay for each day of the violation up to a maximum of one-half the number of days the employee was employed by the employer…."

---

[9] 134 Cong. Rec. S. 8542-8543 (1988).

S. 538, Sec. 334(a)(1)(A).

## **CONCLUSION**

"No concrete harm; no standing." *TransUnion*, 594 U.S. at 442. "This equation . . . leaves little room for interpretation." *Maddox*, 19 F.4th at 63.

For all of the foregoing reasons, neither Plaintiffs nor any class member has established their Constitutional standing to assert the current WARN Acts claims for damages in this case. The class should be decertified, and this case should be dismissed for lack of jurisdiction. But even if Plaintiffs could establish their standing, there is no statutory cause of action for damages under the WARN Acts based on the failure to provide additional notices during the course of a single plant closure or mass layoff, and any such damages would nonetheless be capped at 60 days of back pay and benefits, less deductions for various amounts paid to employees as prescribed in the statutes.

Dated: New York, NY
    September 3, 2025

Respectfully submitted,

*/s/ James J. Boland*
Marc B. Zimmerman
Kathryn T. Lundy
James J. Boland
Carly M. Allen
SMITH GAMBRELL & RUSSELL, LLP
1301 Avenue of the Americas, 15th Floor
New York, NY 10019
(212) 907-9700

*Attorneys for Defendant Hotel 57 Services, LLC*