**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x
SELENA STALEY, VIVIAN HOLMES, and OLIVE IVEY,      No. 22-CV-6781 (JSR)
on behalf of themselves and all others similarly situated,


                                      Plaintiffs,

            - against-

HOTEL 57 SERVICES, LLC,

                                     Defendant.
-------------------------------------------------------------------------x


### Plaintiffs' Supplemental Opposition Pretrial Memorandum of Law

<u>Attorneys for Plaintiffs</u>

Brian L. Bromberg
Bromberg Law Office, P.C.
295 Madison Ave, 22nd Floor
New York, NY 10017
Tel: (212) 248-7906
Email: <u>brian@bromberglawoffice.com</u>

Evan Brustein
Brustein Law PLLC
299 Broadway, Suite 800
New York, NY, 10007
Tel: (212) 233-3900
Email: <u>evan@brusteinlaw.com</u>

Maya Risman
Shannon Barry
Risman & Risman, P.C.
233 Broadway
Suite 2707
New York, NY 10279
Tel: 212-233-6400
Email: <u>mrisman@risman-law.com</u>
Email: <u>sbarry@risman-law.com</u>

**Table of Contents**

Introduction ................................................................................................................... 1

Argument ....................................................................................................................... 2

    I.    Article III Standing ........................................................................................... 2

        A.    This Court has Jurisdiction Over the WARN Acts Claims ............................................. 2

            1.    The Class Members suffered concrete injuries by suffering employment losses and backpay damages, thereby establishing standing ................................................. 2

            2.    Defendant's attempt to move informally for decertification on the eve of trial and without leave of Court is a violation of the Rules ............................................. 8

        B.    Plaintiffs have standing with respect to the governmental notices .............................. 10

    II.    The WARN Acts ................................................................................................ 12

        A.    The WARN Acts confer a private right of action for statutory damages for each violation, as they expressly authorize employees to sue for an employer's failure to provide required notice, and do not limit recovery to a single violation ..................................... 12

        B.    The WARN Acts provide a private right of action for multiple violations of the WARN Acts, with a separate set of damages of up to 60 days pay and benefits for each violation . 16

        C.    Defendant has failed to identify any evidence in the record to support an offset of Defendant's damages ............................................................................................ 21

        D.    The WARN Acts require advance notice of plant closures and mass layoffs, and the remedy for noncompliance is limited to a maximum of 60 days' back pay and benefits per violation, not aggregated across all violations ........................................................ 24

    CONCLUSION .............................................................................................................. 29

## Table of Authorities

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
　532 U.S. 275 (2001)......................................................................................................12, 14

*Am. Bird Conservancy v. Harvey*,
　232 F. Supp. 3d 292 (E.D.N.Y. 2017) ....................................................................................5

*Bitsko v. Weltman, Weinberg & Reis Co., LPA*,
　No. 17-CV-0458, 2020 WL 8620130 (N.D.N.Y. Nov. 4, 2020) .............................................9

*In re Cargo, Inc.*,
　138 B.R. 923 (Bkrtcy.N.D.Iowa 1992) ...................................................................................4

*Cort v. Ash*,
　422 U.S. 66 (1975)................................................................................................................14

*Day v. Celadon Trucking Servs., Inc.*,
　827 F.3d 817 (8th Cir. 2016) ...............................................................................................23

*Doe v. Karadzic*,
　192 F.R.D. 133 (S.D.N.Y. 2000) ...........................................................................................8

*Fried v. JPMorgan Chase & Co.*,
　No. CV 15-2512, 2017 WL 5951585 (D.N.J. Nov. 30, 2017)..............................................14

*Gautier v. Tams Mgmt., Inc.*,
　No. 5:20-CV-00165, 2022 WL 3162177 (S.D.W. Va. Aug. 8, 2022) ....................................19

*Gordon v. Hunt*,
　117 F.R.D. 58 (S.D.N.Y. 1987) .............................................................................................8

*Gortat v. Capala Bros.*,
　949 F. Supp. 2d 374 (E.D.N.Y. 2013) ...................................................................................8

*Graphic Commc'ns Int'l Union, Loc. 31-N v. Quebecor Printing (USA) Corp.*,
　252 F.3d 296 (4th Cir. 2001) ....................................................................................... *passim*

*Guippone v. BH S & B Holdings LLC*,
　737 F.3d 221 (2d Cir. 2013)................................................................................................17

*Guthrie v. Rainbow Fencing Inc.*,
　113 F.4th 300 (2d Cir. 2024) ............................................................................................6, 7

*Guthrie v. Rainbow Fencing Inc.*,
  No. 21-CV-5929 (KAM)(RML), 2023 WL 2206568 (E.D.N.Y. Feb. 24,
  2023), *aff'd*, 113 F.4th 300 ........................................................................................6

*In re Hanlin Group, Inc.*,
  176 B.R. 329 (Bkrtcy.D.N.J. 1995) ............................................................................4

*Harty v. West Point Realty, Inc.*,
  28 F.4th 435 (2022) ....................................................................................................7

*Jermyn v. Best Buy Stores*,
  L.P., 276 F.R.D. 167 (S.D.N.Y., 2011) ......................................................................8

*Jin v. Shanghai Original, Inc.*,
  990 F.3d 251 (2d Cir. 2021)........................................................................................9

*Johnson v. Telespectrum Worldwide, Inc.*,
  29 F. App'x 76 (3d Cir. 2002) ..................................................................................21

*Kildea v. Electro Wire Prods, Inc.*
  60 F. Supp. 2d 710 (E.D. Mich 1999), aff'd, 238 F.3d 422 (6th Cir. 2000) ...........21

*Langley v. Coughlin*,
  715 F. Supp. 522 (S.D.N.Y. 1989)..............................................................................8

*Lavigne-Soucie v. Blue Max Trucking, Inc.*,
  23-CV-00498, 2023 WL 8603025 (W.D.N.C. Dec. 12, 2023)....................................5

*Levy v. Endeavor Air Inc.*,
  638 F.Supp.3d 324 (E.D.N.Y. 2022) ..........................................................................8

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)......................................................................................................5

*Mach Mining, LLC v. E.E.O.C.*,
  575 U.S. 480, 135 S. Ct. 1645, 191 L. Ed. 2d 607 (2015)........................................20

*Maddox v. Bank of New York Mellon Trust Co., N.A.*
  19 F 4th 58 (2d Cir. 2021) ..........................................................................................7

*N.Y. State Citizens' Coal. for Children v. Velez*,
  2016 WL 11263164 (E.D.N.Y. Nov. 7, 2016)............................................................5

*Nat'l R.R. Passenger Corp. v. Morgan*,
  536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)........................................20

*Staley v. FSR Int'l Hotels, Inc.*,
  775 F.Supp.3d 720 (S.D.N.Y. 2025)................................................................*passim*

iii

*Staley v. FSR Int'l Hotels,*
    22-CV-6781, 2024 WL 3534450 (S.D.N.Y. July 25, 2024) ....................................................4

*Transamerica Mortg. Advisors, Inc. v. Lewis,*
    444 U.S. 11 (1979) ....................................................12

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ....................................................5

*Tyler v. Hennepin Cnty.,*
    598 U.S. 631 (2023) ....................................................3

*United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.,*
    517 U.S. 544, 116 S.Ct. 1529, 132 L.Ed.2d 27 (1996) ....................................................4

*United States v. Kahn,*
    5 F.4th 167 (2d Cir. 2021) ....................................................20

*In re Vivendi Universal, S.A. Sec. Litig.,*
    No. 02-CV-5571, 2009 WL 855799 (S.D.N.Y. Mar. 31, 2009) ....................................................8

**Statutes**

29 U.S.C. 2104(a)(1) ....................................................12

29 U.S.C. §§ 2101–2109 ....................................................15

29 U.S.C. § 2101(a)(5) ....................................................13

29 U.S.C. § 2101(a)(6) ....................................................2, 13, 17, 26

29 U.S.C. § 2101(a) § 2101(a)(2) ....................................................10

29 U.S.C. § 2101, *et seq.* ....................................................3, 4, 16

29 U.S.C. § 2104(a) ....................................................15, 16

29 U.S.C. § 2104(a)(1) ....................................................6, 10

29 U.S.C. § 2104(a)(1)(A) ....................................................5

29 U.S.C. § 2104(a)(3) ....................................................11

29 U.S.C. § 2104(a)(7) ....................................................12

29 U.S.C. § 2104(b) ....................................................15

Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* (1990) ....................................................7

N.Y. WARN Act, N.Y. Labor Law, Article 25-A, §§ 860-860-i ........................................... *passim*

N.Y. Labor Law §§ 198(1)(b) and (d) ...................................................................................6

N.Y. Labor Law § 195 .........................................................................................................6

New York WARN Act, N.Y.C.R.R. Tit. 12 § 921-7.3 ................................................4, 5, 6

Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. §§ 2101, *et seq.* ........................................................................................... *passim*

WARN Act., 29 U.S.C. § 2104 ...............................................................................26, 27, 28

**Other Authorities**

20 C.F.R. § 639.1 .................................................................................................................11

20 C.F.R. § 639.3(a)(1) .......................................................................................................25

12 NYCRR § 921-1.1(a) .....................................................................................................13

12 NYCRR § 921-1.1(f) ......................................................................................................13

https://ww3.ca2.uscourts.gov/oral_arguments.html .........................................................19

Fed. R. Civ. P. 11 .................................................................................................................3

Fed. R. Evid. 403 ................................................................................................................23

Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/any ...............................................................................................13

Plant Closing Notification Act, 134 Cong. Rec. H. 5500 ...............................................13, 27

Legislative History of S. 2527, 100th Congress Worker Adjustment and Retraining Notification Act, Public Law 100-379 ........................................................ *passim*

## Introduction

Throughout this case and certainly during this last briefing, Defendants have taken inconsistent and contradictory positions to avoid liability at all costs. On the one hand, Defendant argues that Plaintiffs and the Class Members (collectively referred to as the "Class Members") lack standing altogether; on the other hand, Defendant simultaneously contends that Plaintiffs are limited to no more than 60 days of damages—positions that are inherently at odds with each other. Much of Defendant's Opening Brief includes arguments without legal support, either because no case has been cited, or the cases themselves do not stand for the proposition for which they are cited.[1] Defendant also continues to attempt to relitigate issues already decided by this Court, including the adequacy of Plaintiffs as class representatives and the sufficiency of the Class, despite this Court's prior determination on those very issues following testimony and a hearing.[2] Defendant even attempts to claim a "good faith" defense, which requires some ambiguity, while simultaneously arguing that the WARN Acts are unambiguous.[3] In Defendant's Opening Brief, Defendant improperly briefs issues not only not requested by this Court and already decided by this Court, but in violation of the Federal Rules of Civil Procedure and Judge Rakoff's Individual Practices, as it has not sought leave to do so.[4]

Defendant's Opening Brief is further flawed because it relies on circular reasoning grounded in the unsubstantiated assumption that Class Members lack standing.[5] From this premise, the Defendant concludes that they could not have suffered multiple employment losses

---

[1] *See* ECF# 190, Hotel 57 Services, LLC's Opening Brief in Response to the Court's August 8, 2025 Order ("Defendant's Opening Brief").
[2] *See* Defendant's Opening Brief, at I(A)(2).
[3] *See Id.,* at II(D).
[4] *See* Defendant's Opening Brief.
[5] *See Id*., at I.

and therefore could not have experienced multiple violations of the WARN Acts—leading to the erroneous conclusion that they are not entitled to multiple sets of damages and ultimately reinforcing the initial (and unsupported) claim that they lack standing.[6]  Missing from Defendant's analysis is the observation by the Fourth Circuit, in *Graphic Commc'ns Int'l Union, Loc. 31-N v. Quebecor Printing (USA) Corp.,* which this Court has cited with approval, that "The WARN Act clearly contemplates that an employee may suffer multiple employment losses, necessitating separate notices."[7] Reframing all of Defendant's arguments with the understanding that employees, including the Class Members may "suffer multiple employment losses, necessitating separate notices," all of Defendant's arguments fall apart like a house of cards.

**Argument**

**I.      Article III Standing**

  **A.  This Court has Jurisdiction Over the WARN Acts Claims**

   **1.   The Class Members suffered concrete injuries by suffering employment losses and backpay damages, thereby establishing standing**

The Class Members here all suffered at least one "employment loss." That is, each Class Member suffered "a layoff exceeding 6 months" or "a reduction in hours of work of more than 50 percent during each month of any 6-month period."[8] Shockingly, Defendant claims that where Defendant has clearly violated the WARN Acts and where the Class Members were furloughed for up to 4.5 years, enduring multiple employment losses during that time, the Class Members have somehow not suffered a concrete injury. This cavalier attitude is reflected in the deposition

---

[6] *See Id.*

[7] *Graphic Commc'ns Int'l Union, Loc. 31-N v. Quebecor Printing (USA) Corp.,* 252 F.3d 296, 299 (4th Cir. 2001), cited at *Staley v. FSR Int'l Hotels, Inc.*, 775 F.Supp.3d 720, 734 (S.D.N.Y. 2025).

[8] 29 U.S.C. § 2101(a)(6).

testimony of Defendant's owner, H. Ty Warner, who stated that this case is "about three girls that were terminated"[9] and in the testimony of Defendant's former Director of People and Culture, Elizabeth Ortiz ("Ms. Ortiz"), who when asked if three years was a long time to be without a salary responded: "… that's  relative. If somebody's independently wealthy or they don't need to work, then they don't need a salary."[10]

Defendant seems to claim disingenuously that the employment losses suffered over 4.5 years are not concrete injuries, because "Plaintiffs have adduced no evidence that any class members 'so much as opened' or read the WARN Acts notices they received, let alone would have opened and read any additional notices."[11] Not only is the insinuation that the Class Members do not read insulting and offensive, but to suggest that they did not want to receive notice is contradicted by this lawsuit, their testimony, and the very purpose of the WARN Acts.[12] More significantly, whether any Class Members would have opened the notices, which were never sent, is not only speculative, but irrelevant, as there is no such requirement or element in the WARN Acts.[13]

---

[9]  Warner Dep at 180:21-22 (Bromberg Opp Decl, <u>Exhibit A</u>).
[10] Ortiz Dep at 171:1-7 (Bromberg Opp Decl, <u>Exhibit B</u>).
[11] *See* Defendant's Opening Brief, at 8.
[12] James Boland, Esq's representation in this Brief that there is no evidence that any class member even opened the August 5, 2020 letters, is not only irrelevant to the Court's questions, but is also in violation of Fed. R. Civ. P. 11, as it is directly contradicted by his own questioning of Plaintiff Selena Staley, where Mr. Boland asked:
Q: And this is a copy of a letter to you from Four Seasons Hotel signed by Rudolf Tauscher dated August 5, 2020, right?
A: Yes
Q: This is one of the documents that you found in your files and you turned over to be produced?
A: Yes.
Staley Dep at 243:7-13, attached (Bromberg Opp Decl, <u>Exhibit C</u>); Exhibit 78 to Staley Dep (Bromberg Opp Decl, <u>Exhibit D</u>).
[13] *See, generally,* 29 U.S.C. § 2101, *et seq*.; NYLL § 860, *et seq*.

As this Court observed in granting class certification, "'This is a classic pocketbook injury sufficient to give [them] standing.' *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 636 (2023)."[14] The Class Members are seeking the required damages that the WARN Acts provide for—backpay and benefits—that each affected employee is entitled to. In other words, Plaintiffs have Article III Standing because they have alleged that the Class Members are due backpay resulting from employment losses without having been given proper WARN Acts notices.

This is in accord with Supreme Court precedent, which holds that when employees are suing under the federal WARN Act, they are seeking to collect backpay. In *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*,[15] the Supreme Court recognized this by holding unanimously that unions had standing to bring suit for WARN Act damages on behalf of their members. In the Supreme Court's words, "The Worker Adjustment and Retraining Notification Act (WARN Act or Act), 102 Stat. 890, 29 U.S.C. § 2101, *et seq.*, obligates certain employers to give workers or their union 60 days' notice before a plant closing or mass layoff. If an employer fails to give the [proper] notice, the employees may sue for backpay for each day of the violation, and, in the alternative, the union is ostensibly authorized to sue on their behalf."[16] Since the Class Members are suing for backpay and benefits provided for under the federal WARN Act, there is no doubt that they have standing under Article III.

---

[14] *Staley v. FSR Int'l Hotels,* 22-CV-6781, 2024 WL 3534450 at *3 (S.D.N.Y. July 25, 2024) (citing *Hyland v. Navient Corp.*, 48 F.4th 110, 117-18 (2d Cir. 2022); footnote omitted).
[15] *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 116 S.Ct. 1529, 132 L.Ed.2d 27 (1996).
[16] *Id.*, 517 U.S. at 545-46, 116 S.Ct. at 1531 (citing *North Star Steel Co. v. Thomas*, 515 U.S. 29, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995)).

4

This is also consistent with how bankruptcy courts have considered WARN Act backpay liability as wages.[17]

Further, the New York WARN Act[18] statute reveals the same purposes and the same remedies for violations as the federal WARN Act. The damages provision of the New York WARN Act, N.Y.C.R.R. Tit. 12 § 921-7.3, entitled "Violation; liability", reflects calculations based on "back pay" and "benefits."[19]

Given the Supreme Court precedents cited above, it is hardly surprising that even after the Supreme Court's 2021 decision in *TransUnion v. Ramirez*,[20] courts have found Article III standing in WARN Act cases.[21] As addressed in Plaintiffs' Opening Brief in Response to the Court's August 8, 2025 Order, titled Plaintiffs' Supplemental Pretrial Memorandum of Law[22] ("Plaintiffs' Opening Brief") at Point I, here, similarly, the Class Members suffered a concrete and particularized injury-in-fact caused by Defendant that is redressable by this Court.

Redressability requires that it be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[23] Courts need only determine whether they have the power to remedy the harm alleged.[24] Here, Plaintiffs seek lost wages and benefits under the WARN Acts, which expressly authorize back pay and benefits as a remedy for violations.[25]

---

[17] *See, e.g.*, *In re Hanlin Group, Inc.*, 176 B.R. 329 (Bkrtcy.D.N.J. 1995); *In re Cargo, Inc.*, 138 B.R. 923 (Bkrtcy.N.D.Iowa 1992).
[18] N.Y. WARN Act, New York Labor Law, Article 25-A, §§ 860-860-i.
[19] N.Y. WARN Act, N.Y.C.R.R. Tit. 12 § 921-7.3 ("Violation; liability").
[20] *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)
[21] *Lavigne-Soucie v. Blue Max Trucking, Inc.*, 23-CV-00498, 2023 WL 8603025, at * 3 (W.D.N.C. Dec. 12, 2023).
[22] ECF# 191, Plaintiffs' Opening Brief in Response to the Court's August 8, 2025 Order ("Plaintiffs' Opening Brief"), at I.
[23] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quotations omitted).
[24] *See, e.g.*, *Am. Bird Conservancy v. Harvey*, 232 F. Supp. 3d 292, 306 (E.D.N.Y. 2017); *N.Y. State Citizens' Coal. for Children v. Velez*, 2016 WL 11263164, at *4 (E.D.N.Y. Nov. 7, 2016).
[25] *See* 29 U.S.C. § 2104(a)(1)(A); N.Y. WARN Act, N.Y.C.R.R. Tit. 12 § 921-7.3.

Because the statute directly provides the relief sought, and courts have clear authority to award it, the injury is redressable under Article III.

Despite all the case law referenced here and in Plaintiffs' Opening Brief, Defendant rehashes the same arguments it made in unsuccessfully opposing class certification. Instead of citing to cases in support of its position, Defendant includes citations to several cases in support of a general discussion of Article III standing.[26] Defendant only cites to three post-*TransUnion v. Ramirez* cases from the Second Circuit in support of its argument,[27] although none of them support Defendant's position. Rather, these three cases bolster Plaintiffs' position that the Class Members have standing.

First, in *Guthrie v. Rainbow Fencing, Inc.*,[28] the Second Circuit actually held that "an employee who has actually lost wages is not analogous to a plaintiff-tester."[29] While Defendant may see no difference between a litigation tester and an employee who has been laid off and lost wages, the Second Circuit clearly does.[30] Defendant is attempting a sleight of hand by trying to argue that the proper WARN notice is somehow not directly connected to an employment loss and the lost wages and benefits provided under the WARN Acts. The statutory damages provided for in §§ 198(1)(b) and (d) of the New York Labor Law ("NYLL"), for violations of NYLL § 195, which are referenced in *Guthrie*, are designed as a penalty for not providing wage notices and wage statements, which the district court referred to as "technical violations."[31] Conversely, the statutory damages under the WARN Acts are intended to simplify the damage

---

[26] Defendant's Opening Brief, at I(A).
[27] *Id*.
[28] *Guthrie v. Rainbow Fencing Inc.,* 113 F.4th 300 (2d Cir. 2024).
[29] *Id.* at 309.
[30] *Id*.
[31] *Id.* at 304.

calculations for lost wages, backpay, and benefits.[32] Completely omitted from Defendant's recitation of the facts in *Guthrie* is the fact that the Second Circuit affirmed the district court's decision awarding plaintiff lost wages, which supports a finding of standing for the Class Members here.[33] "By contrast, a plaintiff-employee who has plausibly shown that defective notices led him or her to lose wages has such a concrete interest and is not simply policing legal infractions in the abstract."[34]

Next, *Harty v. West Point Realty, Inc.*,[35] involved an individual with a disability bringing claims against a defendant's website not complying with the Americans with Disabilities Act ("ADA").[36] The plaintiff in *Harty* alleged that the defendant's website did not comply with a section of the ADA relating to a description of a guest room's "accessibility."[37] The district court dismissed the *Harty* case for lack of Article III standing because there was not even an allegation that the plaintiff had any interest in staying at the hotel.[38] How that case has any relevance to the allegations here certainly is not explained by Defendant's Opening Brief.[39] Regardless, to state the obvious, Plaintiffs are not suing for some technical violation related to a random website, but rather for backpay and benefits for lost wages of dedicated employees from their actual employer, the Defendant.

---

[32] *See* 29 U.S.C. § 2104(a)(1); N.Y. WARN Act, N.Y.C.R.R. Tit. 12 § 921-7.3 ("Violation; liability").

[33] *Guthrie v. Rainbow Fencing Inc.,* No. 21-CV-5929 (KAM)(RML), 2023 WL 2206568, at *1 (E.D.N.Y. Feb. 24, 2023), *aff'd,* 113 F.4th 300.

[34] *Guthrie*, 113 F.4th at 310.

[35] *Harty v. West Point Realty, Inc.*, 28 F.4th 435 (2022).

[36] *Id*. at 438.

[37] *Id*.

[38] *Id*. at 444.

[39] *See* Defendant's Opening Brief, at I.

Finally, Defendant cites to *Maddox v. Bank of New York Mellon Trust Co., N.A.,*[40] a case involving borrowers who alleged a violation of a pair of New York statutes related to a statutory obligation to record satisfactions of mortgages within a specified time period.[41] In *Maddox*, the Second Circuit held, in pertinent part, that, the plaintiffs failed to allege that the delay caused any harm.[42] Unlike in *Maddox*, where the harm pleaded as resulting from the statutory violations was at best hypothetical, the harm here has materialized. As Judge Vitaliano put it, denying a motion to dismiss a NYLL class action involving the late payment of wages, "the loss of the time value of the money owed to plaintiff is not a harm that *might* materialize, but one that *has* materialized."[43] Here, similarly, the harm to the Class Members is not a harm that *might* materialize, but one that *has* materialized. That is, it has already been determined that the Class Members suffered at least one "employment loss" and the failure to give WARN Act notices gives rise to a right to backpay and benefits that has been recognized by the courts.

### 2. Defendant's attempt to move informally for decertification on the eve of trial and without leave of Court is a violation of the Rules

A "Court may not disturb its prior [certification] findings absent 'some significant intervening event,' or 'a showing of compelling reasons to reexamine the question.'"[44] Courts faced with a motion to decertify must also take account of the progression of the litigation.[45] Courts must also take into consideration that "an eve-of-trial decertification could adversely and

---

[40] *Maddox v. Bank of New York Mellon Trust Co., N.A.* 19 F 4th 58 (2d Cir. 2021).
[41] *Id*. at 59.
[42] *Id*. at 65.
[43] *Levy v. Endeavor Air Inc.*, 638 F.Supp.3d 324, 329 (E.D.N.Y. 2022) (emphasis in original).
[44] *Doe v. Karadzic*, 192 F.R.D. 133, 136–137 (S.D.N.Y. 2000) (internal citations omitted).
[45] *Langley v. Coughlin*, 715 F. Supp. 522, 552 (S.D.N.Y. 1989); *Jermyn v. Best Buy Stores*, L.P., 276 F.R.D. 167, 169 (S.D.N.Y. 2011); *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 383 (E.D.N.Y. 2013).

unfairly prejudice class members, who may be unable to protect their own interests."[46] "[D]efendants bear a heavy burden to prove the necessity of either the drastic step of decertification or the less draconian but still serious step of limiting the scope of the class."[47] Further, where a court has previously granted class certification and a party later seeks to alter the class definition, the court may "incorporate[ ] its prior analysis by reference" when considering "whether modification of the class ... impacts that analysis."[48]

Here, Defendant is correct that were this Court to find that Plaintiffs' lack standing under Article III, the Class would have to be decertified and dismissed, although that is not the case here. But Defendant does not limit itself to that statement. Instead, without having requested leave of Court as required under Judge Rakoff's Individual Rule of Practice 2(b), Defendant has moved to decertify the Class based on a claim that "the nature of the WARN Acts claims for which Plaintiffs seek to proceed at trial are fundamentally different than the nature of the WARN Acts claims for which Plaintiffs sought, and the Court granted, class certification."[49] Without citing a single case or attaching a single declaration, trial exhibit, page of testimony, or page from any of the numerous conferences or oral arguments held in this case, Defendant is asking this Court to decertify the Class, claiming lack of commonality.[50] Defendant's arguments in support of decertification are baseless, inappropriate, and lack merit, and as such, should be denied.

---

[46] *Langley*, 715 F. Supp. at 552.
[47] *Gordon v. Hunt*, 117 F.R.D. 58, 61 (S.D.N.Y. 1987); *see also In re Vivendi Universal, S.A. Sec. Litig.*, No. 02-CV-5571, 2009 WL 855799, at *3 (S.D.N.Y. Mar. 31, 2009) ("[D]ecertifying or redefining the scope of a class should only be done where defendants have met their 'heavy burden' of proving the necessity of taking such a 'drastic' step." (quoting *Gordon*)).
[48] *Bitsko v. Weltman, Weinberg & Reis Co., LPA*, No. 17-CV-0458, 2020 WL 8620130, at *1 (N.D.N.Y. Nov. 4, 2020).
[49] Defendant's Opening Brief, at 11.
[50] *See Id*.

Defendant's citation to *Jin v. Shanghai Original, Inc.*,[51] is also inapposite. In *Jin*, the district court decertified a class on the grounds that plaintiff's attorney had proven himself to be inadequate class counsel[52], which is not the case here. Accordingly, Defendant's motion to decertify should be denied.

### B.  Plaintiffs have standing with respect to the governmental notices

Defendant's argument that Plaintiffs lack both statutory and Article III standing to assert claims based on the content of WARN notices to government officials misunderstands the significance of the governmental notices. Under the federal WARN Act, employees have a private right of action when employers fail to provide notice in violation of § 2101 of the Act.[53] The notice required by the Act is to send written notice to both the employees, under § 2101(a)(1), and the governmental entities, under § 2101(a)(2).[54] The Act does not limit the employees' private right of action to when employers fail to provide the notice prescribed in § 2102(a)(1). Thus, the employees have statutory standing when their employer fails to provide "the notice required by section 2102," which includes the failure to provide the notice to government officials.[55]

The legislative history of bill S. 538, which was referenced in Defendant's Opening Brief,[56] also shows the legislative intent to have these acts provide employees with the ability to

---

[51] *Jin v. Shanghai Original, Inc.*, 990 F.3d 251 (2d Cir. 2021).
[52] *Id.*
[53] *See* 29 U.S.C. § 2104(a)(1).
[54] 29 U.S.C. § 2101(a).
[55] *Id.*
[56] *See* Defendant's Opening Brief, at 21 – 23.

enforce violations of the statutes. The Committee on Labor and Human Resources submitted in

their Report on bill S. 538 under the Enforcement section the following:

> Section 334 provides for civil damage actions to enforce the provisions of this
> Part. For violations of the notice provisions, damages are to be measured by the
> wages and fringe benefits … the employee would have received had the plant
> remained open or the layoff been deferred until the conclusions of the notice
> period, less any ways or fringe benefits received from the violating employer
> during that period. This is in effect a liquidated damages provisions (sic),
> designed to penalize the wrongdoing employer, deter future violations, and
> facilitate simplified damages proceedings.
>
> In addition, *in recognition of the fact that private plaintiffs will be functioning as
> private attorney-generals in enforcing this Part,* subsection 334(a)(7) provides for
> awards of attorneys fees to prevailing plaintiffs. The Committee intends that the
> standards for determining an entitlement to fees, and the method of calculating the
> amount of the fees, are to be those already established pursuant to the Civil Rights
> Attorneys Fees Awards Act of 1978, 42 U.S.C. sec. 1988.[57]

As the Legislative History suggests, because individuals were vested with the rights of being

private attorney-generals to enforce violations of the Act, Congress envisioned giving employees

standing to enforce violations of the governmental notice requirements. The fact that the

Committee was specifically referring to individuals as private attorney-generals is a nod to them

being quasi-governmental in their roles in enforcing the statute. This makes sense as the U.S.

Department of Labor provides guidance about the federal WARN Act, but does not have

authority to enforce violations of the federal WARN Act.[58] Clearly, it was intended that an

employer's failure to provide the notice required by the WARN Act was something that

employees could raise in their suits to enforce the WARN Act, and there is no indication that

employees were intended, in their roles as "private attorney-generals" to be prohibited from

---

[57] Relevant Excerpts from Legislative History of S. 2527, 100th Congress Worker Adjustment
and Retraining Notification Act, Public Law 100-379, at 742 ("Legislative History") (Bromberg
Opp Decl, <u>Exhibit E</u>), at 000024 (emphasis added).
[58] *See* 20 C.F.R. § 639.1.

claiming that their employer had violated a certain type of required notice, namely the notice to governmental officials.

To be clear, the Class Members are not claiming that they should be receiving the $500/day penalty which the WARN Act requires be paid to the government entities when the employer violates the government notice requirement. Should Plaintiffs prevail on their claims that Defendant violated the WARN Acts, however, this Court could certainly order those funds be paid to the local government. These funds allow the government to provide resources to people losing their jobs. For these reasons and those also discussed in Plaintiffs' Initial Brief, the Court should find that the Plaintiffs also have standing for the violations of the governmental notices.

## II.    The WARN Acts

### A.    The WARN Acts confer a private right of action for statutory damages for each violation, as they expressly authorize employees to sue for an employer's failure to provide required notice, and do not limit recovery to a single violation

Defendant's contention that the Class Members may have a private right of action under the WARN Acts, but only for damages corresponding to a single violation, is illogical and unsupported by the law. A private right of action either exists or it does not. If a statute or statutes recognize a private right of action, as the WARN Acts do, then the Class Members are entitled to seek all remedies the statutes provide. Allowing a private right of action for only one violation while simultaneously denying recovery for further violations of the same statutes would

be tantamount to disregarding the statutes. Statutory rights and remedies cannot be recognized based on desire; they must be intended by the statute.[59]

Here, the federal WARN Act grants a private right of action for damages to "each aggrieved employee who suffers an employment loss. . ."[60] "Aggrieved employee" is defined as "an employee who has worked for the employer ordering the plant closing or mass layoff and who, as a result of the failure by the employer to comply with section 2102 of this title, did not receive timely notice either directly or through his or her representative as required by section 2102 of this title."[61] "Employment loss" is defined as "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of **any 6-month period**[.]"[62] The definitions of these terms used in the New York WARN Act are materially identical to those used in the federal WARN Act.[63]

The federal WARN Act does not limit the private right of action for damages to the *first* employment loss without proper notice, nor does it limit the private right of action for damages to *one* employment loss without proper notice. By specifying that there is a private right of action for "an" employment loss, without any further limitation, the federal WARN Act does not limit the number of employment losses or corresponding violations that an employee may suffer or recover for. Especially when read in conjunction with Senator Harris Fawell's remarks, below,

---

[59] *See, e.g.*, *Alexander v. Sandoval,* 532 U.S. 275, 286-87 (2001)*; see also Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15-16 (1979)
[60] 29 U.S.C. § 2104(a)(1).
[61] 29 U.S.C. § 2104(a)(7)
[62] 29 U.S.C. § 2101(a)(6) (emphasis added).
[63] *Compare* 29 U.S.C. § 2101(a)(5) *with* 12 NYCRR § 921-1.1(a); *compare* 29 U.S.C. § 2101(a)(6) *with* 12 NYCRR § 921-1.1(f) (although the term "aggrieved employee" does not appear in the New York WARN Act.)

acknowledging that an employer could be required to pay damages to an employee multiple times if they violate the WARN Act's notice requirements multiple times,[64] there is no indication that the federal WARN Act forecloses the possibility of multiple violations of the Act. Notably, an "employment loss" can be during "any 6-month period."[65] The use of the word "any" further supports the understanding that a private right of action can arise multiple times. "Any" indicates an undetermined quantity;[66] certainly "any" does not mean limited to one.

While conceding that there could be a requirement that an employer must provide a new WARN notice when the reason for the closure changes,[67] without citing any case law, Defendant somehow claims that there is no corresponding private enforcement to address such a violation.[68] This would represent a departure from common sense and how "Courts construe statutory language to avoid interpretations that would render any phrase or provision superfluous."[69]

Defendant has cited to no authority for the proposition that where it is not explicitly stated in the statute, a private right of action to remedy a violation of the law is limited to a single violation, as is argued by Defendant here. Notably, had Defendant found legal support for its argument, Defendant certainly would have cited to such a case. Moreover, while not directly on point, case law addressing when a private cause of action may be implied—despite not being expressly provided in a statute—clearly weighs against Defendant's apparent theory.[70] Here,

---

[64] Plant Closing Notification Act, 134 Cong. Rec. H. 5500, attached to Bromberg Supp Decl as Exhibit I (ECF# 192-9), at Page 10 of 54, also found at Legislative History at 144 ("Legislative History") (Bromberg Opp Decl, Exhibit E) at 000003.
[65] 29 U.S.C. § 2101(a)(6).
[66] Merriam-Webster Online Dictionary: "Any, adjective" definition No. 2: "one, some, or all indiscriminately of whatever quantity." https://www.merriam-webster.com/dictionary/any.
[67] Defendant's Opening Brief, at 14, citing SJ Order at 27, 31-32.
[68] Id. at 14.
[69] Fried v. JPMorgan Chase & Co., No. CV 15-2512, 2017 WL 5951585, at *4 (D.N.J. Nov. 30, 2017) (internal citation omitted).
[70] Cort v. Ash, 422 U.S. 66, 78 (1975).

14

there is no question that there is a private right of action to remedy violations of the WARN Acts, and this cannot be changed based on Defendant's desires.[71]

Defendant is attempting to, yet again, undo the Court's decision on summary judgment that "the WARN Act does require an employer to provide a new WARN notice when an employer has invoked the unforeseen business circumstances exception in connection with a temporary closure and yet remains closed for other, unrelated reasons."[72] Defendant argues that the Class Members cannot have their rights violated multiple times.[73]

Furthermore, if Congress intended the WARN Acts to require multiple notices but not allow for the enforcement of that requirement—as Defendant argues[74]—it would have said so clearly. It did not. Permitting some WARN Act violations to go unremedied while others are privately enforceable contradicts the Acts' remedial purpose.[75]

Defendant's preoccupation with the "act of ordering"[76] is similarly unavailing. Defendant is apparently claiming that there must be a separate "order" to close/layoff, which Plaintiffs dispute, for there to be a private right of action. The term "order" is not defined by the WARN Acts.[77] Furthermore, it is the employee experiencing an employment loss that gives rise to the private right of action under the WARN Acts, not the employer ordering the plant closing or layoff.[78]

---

[71] *See, e.g., Alexander,* 532 U.S. at 286-87.
[72] *Staley*, 775 F.Supp.3d at 734.
[73] Defendant's Opening Brief, at 15.
[74] *Id*. at 14.
[75] *See Staley*, 775 F. Supp. 3d at 733.
[76] Defendant's Opening Brief, at 15.
[77] *See generally* 29 U.S.C. §§ 2101–2109; *see also* N.Y. Lab. Law §§ 860–860-i
[78] *See* 29 U.S.C. § 2104(a) ("Civil actions against employers: (1) Any employer who orders a plant closing or mass layoff in violation of section 2102 of this title shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff…").

**B.    The WARN Acts provide a private right of action for multiple violations of the WARN Acts, with a separate set of damages of up to 60 days pay and benefits for each violation**

The WARN Acts allow for damages of up to 60 days for each violation of the WARN Acts.  Defendant misconstrues the limitations of the WARN Acts.  The WARN Acts do limit the type of damages saying, "The remedies provided for in this section shall be the exclusive remedies for any violation of this chapter. Under this chapter, a Federal court shall not have authority to enjoin a plant closing or mass layoff."[79] Despite citing to section 29 U.S.C. § 2104(a), which is titled "Civil Actions Against Employers," for the proposition that the WARN Acts are unambiguous, Defendant devoted half its brief to arguing that there is no Article III Standing for this class action.[80] Despite repeatedly citing to the WARN Act statutes, nowhere in either statute does it say that an employee can suffer only one employment loss during "a single closure, furlough, or layoff."[81] Rather, the statutes limit the damages per violation.

Notably, the only case Defendant cited in this section of its brief, *Graphic Commc'ns Int'l Union, Loc. 31-N v. Quebecor Printing (USA) Corp.,* actually found multiple violations from a single plant closing.[82] In *Graphic*, unlike here, the employer issued a proper WARN notice informing its employees that "the layoff is expected to last longer than six (6) months."[83] However, before those six months were up, the employer decided that the plant would never reopen and terminated every employee's employment.[84] The Fourth Circuit in *Graphic* held that even though the employees were advised that they had received paid notice for an employment

---

[79] *See* 29 U.S.C. § 2104(b).
[80] *See* 29 U.S.C. § 2104(a); *see also* Defendant's Opening Brief, at 3-13.
[81] *See* 29 U.S.C. § 2101, *et seq.*; *see also* NYLL § 860, *et seq.*
[82] *Graphic Commc'ns Int'l Union, Loc. 31-N v. Quebecor Printing (USA) Corp.,* 252 F.3d 296 (4th Cir. 2001).
[83] *Id.* at 298.
[84] *Id.*

loss, the employees still suffered a new employment loss when they were told that their employment had been terminated and the employer was required to provide new paid notice.[85] The Fourth Circuit found that despite having received paid notice for a different employment loss, the employees could still be entitled to a new set of damages for the violation of providing a proper notice for this employment loss and remanded the case so that the district court could determine whether there was any basis to reduce those damages based upon a good faith defense.[86]

The facts in *Graphic* are instructive because the Fourth Circuit found that even if the employees did not have a reasonable expectation of being recalled for many months, they were still entitled to receive paid notice.[87] This is consistent with the stated purpose of the WARN Acts, which is to "warn" employees about future job losses so that they have time to retrain, adapt, and prepare for the loss of work.[88] In *Graphic*, it was understood that even where an employee can suffer a permanent layoff, they can still have a reasonable expectation of recall in the future and be an "affected employee" under the WARN Act and be entitled to receive notice of future employment losses.[89]

The WARN Acts define three distinct categories of employment loss: termination, permanent layoff, and reduction in hours.[90] By their plain meaning, a termination constitutes an

---

[85] *Id*. at 299.

[86] *Id.*

[87] *Id*. at 300-01.

[88] *E.g.*, *Guippone v. BH S & B Holdings LLC*, 737 F.3d 221 (2d Cir. 2013) (quoting 20 C.F.R. 639.1(a)); *Staley*, 775 F. Supp. 3d at 731.

[89] *Graphic*, 252 F.3d 296.

[90] *See* 29 U.S.C. § 2101(a)(6) ("the term 'employment loss' means (A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period….").

immediate and complete cessation of the employment relationship, whereas a reduction in hours contemplates the continuation of employment, albeit in a diminished capacity. Plaintiffs submit that the inclusion of "permanent layoff" in the definition of an employment loss serves to introduce flexibility into the statutory framework, allowing employers to implement layoffs expected to exceed six months without automatically effectuating a termination, provided the affected employees maintain a reasonable expectation of recall.

The structure of the WARN Acts reflects a recognition that employment conditions may evolve, and thus employers are not required to commit to irrevocable terminations before the necessity of such action becomes clear. However, when employers retain employees under the guise of a continued employment relationship—despite the absence of any realistic prospect of recall—they hinder those employees from seeking alternative employment, in clear contrast to the purpose of the WARN Acts.

In *Graphic Commc'ns Int'l Union, Loc. 31-N v. Quebecor Printing (USA) Corp.,*[91] the Fourth Circuit held that an employer has an obligation to provide an additional WARN notice to employees who had already been WARNed that they would suffer a permanent layoff, because those employees still had a reasonable expectation of recall and were entitled to be receive a proper WARN notice that their employment will be terminated. In *Graphic*, the employer issued WARN-compliant notices in September, informing employees of December layoffs expected to exceed six months.[92] The layoffs commenced as scheduled on December 11.[93] On December 16, the employer informed the affected employees that they would not be recalled and their

---

[91] *Graphic,* 252 F.3d at 299.
[92] *Id*. at 298.
[93] *Id*.

18

employment was terminated.[94] The court held that this constituted a separate employment loss requiring additional notice, despite the fact that it occurred during the first 6 months of that layoff.[95] This is significant because it means that the employees still had a reasonable expectation of recall after their permanent layoff and were entitled to know that they would not be recalled.[96] As an employer who has provided proper WARN notice of a permanent layoff is still required to provide notice of an employment termination,[97] it would be illogical to allow employers to escape liability by simply keeping employees on indefinite furloughs. Here, by keeping employees on furlough for more than 4.5 years, the Defendant has undermined the ability of its employees to receive the intended benefits of a proper WARN notice. The Defendant herein kept employees waiting around for 4.5 years, dangling a reasonable expectation of a recall, and to make matters worse, not all the employees who waited around for 4.5 years were ultimately recalled.[98]

Defendant seeks to distinguish *Graphic* on the basis that no formal terminations occurred here and that employees were simply kept on temporary furlough for 4.5 years.[99] However, this conduct is even more egregious than the employer's conduct in *Graphic* and underscores precisely why the WARN Acts must be interpreted in accordance with Plaintiffs' position. Defendant's practice exemplifies the risk of allowing employers to indefinitely defer employment loss designations while employees remain in protracted limbo.

---

[94] *Id.*

[95] *Id.*

[96] *Graphic*, 252 F.3d 296.

[97] *Id.* at 299.

[98] Greg Rice testified that the number of employees at the Hotel was reduced from over 500 to only 314 employees, and that not all employees were hired back because "customer demand was not there to support the hotel." *See* Greg Rice Transcript, attached to the Bromberg Declaration, as Exhibit F, at 76:5-21.

[99] Defendant's Opening Brief, at 17-18.

Allowing employers to evade notice obligations merely by avoiding referring to it as a termination—while the de facto employment relationship has long ceased—creates a perverse incentive. It permits employers to indefinitely postpone statutory obligations, provided they do not admit that the furlough has become a termination. In fact, Defendant's 30(b)(6) witness testified that there is no limit to how long a temporary furlough can last.[100] Defendant's counsel even refused to concede that a furlough could not persist for 20 or even 40 years.[101] Such reasoning exposes a dangerous loophole that undermines the protective purpose of the WARN Acts and inflicts significant harm on employees, who are left in a state of uncertainty and discouraged from seeking new employment due to a continuing, but illusory, expectation of recall.

The court in *Gautier v. Tams Mgmt., Inc.* recognized that a six-month period of non-work could constitute a 50% reduction in hours under the WARN Act.[102] Accordingly, under the plain language of the statute, any six-month period may independently constitute an employment loss, so long as the employee retains a reasonable expectation of recall and no statutory exception applies. Accordingly, to maintain both the purpose and internal logic of the WARN Acts, employers must be held liable not only when a long-term layoff is anticipated, but also when a layoff, in practice, extends beyond six months without proper WARN notice. Each additional period of furlough exceeding six months should be deemed an "employment loss" for any employee who continues to hold a reasonable expectation of recall. This interpretation aligns

---

[100] *See* Deposition Transcript of Cathy Hwang's 30(b)(6) testimony, attached to the Bromberg Declaration, as Exhibit G, at 321:5 – 9.
[101] *See* Audio Recording of Defendant's counsel, at Oral Argument before the Second Circuit on March 8, 2024, Appellate Case Nos. 23-770 & 23-771, from 2:26-3:35, available at https://ww3.ca2.uscourts.gov/oral_arguments.html.
[102] *Gautier v. Tams Mgmt., Inc.,* No. 5:20-CV-00165, 2022 WL 3162177, at *7 (S.D.W. Va. Aug. 8, 2022)

with the statutory framework and ensures that the protections afforded by the WARN Acts are not rendered illusory through prolonged employer inaction.

### C. Defendant has failed to identify any evidence in the record to support an offset of Defendant's damages

In response to the Court's inquiry—whether, as a matter of law, Defendant may offset damages under the WARN Acts, and if so, what offsets are permitted—the answer is clear: while offsets supported by evidence in the record are permissible, the Defendant has failed to identify any specific offset applicable here or provide any legal authority supporting its position. Instead, Defendant erroneously claimed without any legal authority that: "Plaintiffs alone bear the burden to calculate any alleged damages under the express terms of the statutes – including accounting for the deductions that those statutes mandate 'shall be' made."[103]

A review of the five cases cited by Defendant in support of its argument reveals that none supports its position. First, three of those cases[104]—*Mach Mining, LLC v. E.E.O.C.*;[105] *Nat'l R.R. Passenger Corp. v. Morgan*;[106] and *United States v. Kahn*[107]—are completely unrelated to any issues in this case or to the federal or New York State WARN Acts.

The remaining two cases likewise fail to advance Defendant's argument. While Defendant argues in its brief that:

> As with each element of their claims in this case, Plaintiffs alone bear the burden of proving their purported damages. *See Johnson v. Telespectrum Worldwide, Inc.,* 29 F. App'x 76, 77 (3d Cir. 2002) (unreported); *Kildea v. Electro Wire Prods, Inc.* 60 F. Supp. 2d 710, 713 (E.D. Mich 1999), aff'd, 238 F.3d 422 (6th Cir. 2000).[108]

---

[103] *See* Defendant's Opening Brief, at 20.
[104] *See Id.*, at 19-20.
[105] *Mach Mining, LLC v. E.E.O.C.,* 575 U.S. 480, 135 S. Ct. 1645, 191 L. Ed. 2d 607 (2015).
[106] *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).
[107] *United States v. Kahn,* 5 F.4th 167 (2d Cir. 2021).
[108] Defendant's Opening Brief, at 20.

The cases cited by Defendant do not support the very thing Defendant cites them for.[109]  Starting with *Johnson*, that case did not involve any discussion of damages as the Court found as an initial matter that the plaintiffs could not even establish that 50 employees had suffered an employment loss, in a putative class of 55 employees, which included six employees who had resigned for one reason or another.[110] As there was absolutely no discussion of damages or offsets, it is unclear why Defendant cited to this case.[111]

The final case cited by Defendant, *Kildea v. Electro Wire Prods., Inc.,*[112] also did not address offsets but rather dealt with the "good faith defense." Rather than support Defendant's claim that all burdens fall on the Plaintiffs, *Kildea* stands for the opposite. Notably, the Court in *Kildea* held that "the Sixth Circuit specifically held that defendant met its burden to establish that it had reasonable grounds for believing that the acts and omissions giving rise to the WARN Act violation in this case were not actually a violation."[113] While the court in *Kildea* did not reach an ultimate decision on who bears the burden for establishing the appropriate level of damages after a defendant has met its burden of establishing the "good faith defense," the court found that assuming that the burden was on the defendant, the "defendant did produce evidence which strongly suggests that plaintiffs did not suffer any actual damages" which was not rebutted by the plaintiff.[114] Furthermore, that court relied on "the evidence in the record," to determine how much of a reduction to make based upon the "good faith" defense.[115] Far from supporting

---

[109] *Id.*
[110] *Johnson v. Telespectrum Worldwide, Inc.,* 29 F. App'x 76, 77 (3d Cir. 2002) (unreported).
[111] Defendant's Opening Brief at (II)(C).
[112] *Kildea v. Electro Wire Prods., Inc.,* 60 F. Supp. 2d 710 (E.D. Mich. 1999), *aff'd,* 238 F.3d 422 (6th Cir. 2000).
[113] *Id.* at 714.
[114] *Id.*
[115] *Id.* at 713.

Defendant's position, *Kildea* actually confirms that the burden of establishing good faith—and any related reductions—rests on the defendant.[116] The court there relied on "the evidence in the record" to determine any reductions.[117] Defendant here has offered none.

Despite citing *Kildea*, Defendant has failed to explain why the Court should not be confined to "the evidence in the record" to make any offsets.  Plaintiffs have never disputed that offsets, if supported by the evidence in the record, are not just permissible, but required. Instead of producing documents and evidence which might support an offset, however, Defendant has purposefully throughout this litigation attempted to hide the ball, claiming it is somehow the Plaintiffs' burden to prove up *Defendant's* alleged offsets.

It is clear from the deposition of Defendant's purported expert Joseph Krock, Ph.D. ("Dr. Krock"), that ignoring the facts and hiding the evidence is Defendant's intended legal strategy.[118] Dr. Krock swore in his expert report and supplemental report that his assignment was as follows: "I have been asked by counsel for Hotel 57 Services, LLC … to rebut any expert testimony or other evidence relating to Plaintiff's claimed damages."[119] But when it came time for his deposition, Dr. Krock testified that he understood that anything he left out of his report, he could not testify about.[120] Even though Dr. Krock created his own spreadsheet for his report which had a category titled "All Offsets", Dr. Krock testified that he did not attempt to calculate all offsets, but only the ones that Defendant's counsel, Smith Gambrell, told him to calculate.[121] Dr. Krock further testified that he did not review the "data that would reflect the amounts of the deductions"

---

[116] *Id*. at 713-14.

[117] *Id*. at 713.

[118] *See, generally,* Transcript of Joseph Krock Deposition ("Krock Dep.") (Bromberg Opp Dec, <u>Exhibit H</u>).

[119] Krock Dep, at 41:11-45:6.

[120] Krock Dep., at 67:4-24.

[121] Krock Dep., at 137:19-138:24; 153:6-154:25; 172:1-183:10.

for any offsets.[122] This stands in direct contrast to what Dr. Krock said during a podcast that "the bottom line for anything that we do… is it's data. We do a lot of data analysis, and that's kind of what we're really good at."[123] Yet, here, it appears that Defendant directed Dr. Krock to ignore the underlying facts and data, which he did. Further, Dr. Krock testified that he didn't even review the documents he claimed to have reviewed as per his expert reports.[124]

The Eighth Circuit in *Day v. Celadon Trucking Servs., Inc.,*[125] concluded "that the district court did not abuse its discretion by shifting the burden to Celadon after the employees made their initial showing."[126] Similarly, here, this Court should hold that while the initial burden of establishing damages under the WARN Acts rests with the Plaintiffs, the burden of reducing those damages as a result of either the good faith defense or any required offsets rests with the Defendant to establish by evidence in the record.  As evidenced by Defendant's Opening Brief on this question, Defendant can point to no evidence in the record that any offsets should be made.[127] Accordingly, the Court should not permit any offsets to be made, nor should the Court permit the Defendant or any witnesses to testify about potential offsets, as Defendant has failed to establish that there is any evidence in the record to support such a reduction, and as such, any argument or testimony to the contrary would only confuse the jury.[128]

**D.  The WARN Acts require advance notice of plant closures and mass layoffs, and the remedy for noncompliance is limited to a maximum of 60 days' back pay and benefits per violation, not aggregated across all violations**

---

[122] Krock Dep., at 283:9-284:6.
[123] Krock Dep., at 263:10-14.
[124] Krock Dep., at 212:1-213:1; 222:16-226:15; 229:6-238:4, 240:8-244:14.
[125] *Day v. Celadon Trucking Servs., Inc.,* 827 F.3d 817 (8th Cir. 2016).
[126] *Id.* at 835.
[127] *See* Defendant's Opening Brief, at II(C).
[128] Fed. R. Evid. 403.

Defendant appears to have ignored the Court's question of whether the legislative history supports capping damages at 60 days' pay and benefits when there are multiple violations and instead answered whether the legislative history supports capping damages at 60 days' pay and benefits for *each violation*.[129] To be clear, Plaintiffs have not claimed and do not claim that the WARN Acts authorize more than 60 days of damages for each violation. In fact, Plaintiffs agree with almost all of Defendant's points regarding what the legislative history says about the maximum damages for *each individual violation*.

Defendant correctly recognizes that the remedy *for a violation* of the WARN Act is confined to a maximum of 60 days back pay and benefits.[130] This, however, is not at issue. Much of Defendant's discussion of the legislative history is actually irrelevant to the issues in this case. The Court has already held in its summary judgment decision that more than one WARN notice can be required "over the course of a single closure or layoff"[131] when "an employer has invoked the unforeseen business circumstances exception in connection with a temporary closure and yet remains closed for other, unrelated reasons."[132] The Court further recognized that the federal WARN Act is intended to "provide workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that [would] allow [them] to successfully compete in the job market,"[133] and the notice requirements further that objective,[134] such that requiring that additional notices be provided under the WARN Acts is consistent with the purpose of the

---

[129] *See* Defendant's Opening Brief, at II(D).
[130] Defendant's Opening Brief at 21, 23.
[131] *See Staley*, 775 F. Supp. 3d at 730.
[132] *See Id*. at 734.
[133] *Id*. at 731.
[134] *Id.* at 731.

WARN Acts.[135] Accordingly, the Court should respectfully find that each failure to give an additional required notice is a violation of the WARN Acts, entitling the Class Members to a separate set of damages. Defendant failed to address this question whatsoever.

Defendant correctly recognized that Senator Edward Kennedy, a sponsor of S. 2527, recognized the importance of advance notice for workers,[136] although it is unclear what meaning, if any, this has for the question of multiple violations and resultant sets of damages. Defendant further recognized that Senator Howard Metzenbaum stated that the object of the bill was to give employees notice that that they can be involved in retraining and readjustment,[137] although this supports Plaintiffs' contention that multiple sets of damages are envisioned under the WARN Acts. Plaintiffs posit that Senators Kennedy and Metzenbaum's statements indicate that Congress intended to protect workers by providing them with advance notice of a layoff, and that to allow an employer, namely the Defendant here, to violate the WARN Act's notice requirements multiple times and yet only pay the damages for one violation would run counter to this intention.

As discussed in Plaintiffs' Opening Brief, an individual who has a reasonable expectation of recall is considered an employee under the WARN Acts.[138]  Unlike an individual whose employment has been terminated, an affected employee is still entitled to proper notice under the WARN Acts.[139] Plaintiffs submit that each time there is a change in circumstances regarding the

---

[135] *Id*. at 736.

[136] Defendant's Opening Brief, at 22, citing Legislative History at 184 (Bromberg Opp Decl, Exhibit E) at 000006. (Notably, Defendant has not annexed any portion of the history it has cited to in its brief.)

[137] Defendant's Opening Brief, at 22, citing Legislative History at 250 (Bromberg Opp Decl, Exhibit E) at 000012.

[138] Plaintiffs' Opening Brief, at 11-12.

[139] 20 C.F.R. § 639.3(a)(1).

layoff, or it exceeds another six months without there being an unforeseen business circumstance, the employer is obligated under the WARN Acts to provide a new notice to affected employees. Requiring additional notices ensures employees get updated information to decide between retraining or waiting for recall, while also forcing employers to reassess layoffs and determine which employees can reasonably expect to be recalled.

Defendant is also correct that an earlier version of the bill which was not passed, S. 538, would have required 90, 120, or 180 days of advance notice, depending on the number of affected employees,[140] and employers would have been liable for damages of back pay for each day of violation up to one-half the number of days the employee was employed by the employer.[141] Thus, the version of the WARN Act ultimately enacted represented a compromise.[142] Rather than 180, 120, or 90 days of damages for each violation, the damages for each violation was 60 days in the enacted WARN Act.[143]

It is interesting to note that the prior version of the bill, providing for up to 180 days' damages,[144] aligns with the 6-month period relevant to the definition of "employment loss."[145] 180 days' damages would have perfectly compensated affected employees for the full period of their employment loss. This furthers Plaintiffs' argument that even when debating the bill, Congress understood that a permanent layoff was a 6-month period, not 4.5 years or longer. Despite Defendant's claims to the contrary, a 60-day cap on damages for a *single violation* is not

---

[140] Legislative History at 757-58 (Bromberg Opp Decl, <u>Exhibit E</u>) at 000026-000027.

[141] *Id*. at 758 (Bromberg Opp. Decl., Exhibit E) at 000027.

[142] *See* Legislative History at 203 (Bromberg Opp Decl, <u>Exhibit E</u>) at 000009.

[143] 29 U.S.C. § 2104 ("Such liability shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer.").

[144] Legislative History at 757-58 (Bromberg Opp Decl, <u>Exhibit E</u>) at 000026-000027.

[145] *See* 29 U.S.C. § 2101(a)(6).

inconsistent with the fact that an employer can violate the WARN Act multiple times and be responsible for damages for each of those violations.

There is no indication that Congress or the New York State Legislature intended for the damages for multiple violations to be anything other than 60 days for each individual violation. This is reflected time after time in the legislature's reference to the 60-day damages as being for "the violation"[146] (singular), or for "each" time there is a violation.[147] Congress never indicated that the 60-day cap was intended to be for "violation**s**" (plural). Without any legislative history indicating otherwise, there is no reason to depart from the obvious conclusion that when there is more than one violation of a law, the employer is responsible for the damages for each violation.

Congress considered and decided not to require more than 60 days' backpay and benefits for each violation. Simultaneously Congress did not implement any maximum number of violations. As Congress was allowing the damages for each violation to 60 days' backpay and benefits,[148] Congress was also recognizing that an employer would be responsible for multiple violations if the employees experienced multiple employment losses without proper notice:

> ***Each time*** the employer fails to send a proper 60-day advance notice or notices… *the employer must pay* each affected employee who suffers an employment loss back pay and benefits… Presumably, the employee who has sustained an invalid employment loss, still holds a valid employment contract. If so, the employer would be obligated to issue a valid notice of employment loss to all such employees and pay further salaries until a new 60-day period expires.[149]

---

[146] 29 U.S.C. § 2104; *see also Remarks by Senator Bumpers*: "the conference report made clear that in cases where an employer fails to give timely notice and is liable for 'each day of the violation,'" Legislative History at 313 (Bromberg Opp Decl, <u>Exhibit E</u>) at 000019.

[147] Plant Closing Notification Act, 134 Cong. Rec. H. 5500, attached to Bromberg Supp Decl as <u>Exhibit I (ECF# 192-9)</u>, at Page 10 of 54, also found at Legislative History at 144 (Bromberg Opp Decl, <u>Exhibit E</u>) at 000003.

[148] *See* Legislative History at 203 and 507 (Bromberg Opp Decl, <u>Exhibit E</u>) at 000009 and 000020.

[149] Plant Closing Notification Act, 134 Cong. Rec. H. 5500, attached to Bromberg Supp Decl as <u>Exhibit I (ECF# 192-9)</u>, at Page 10 of 54 (emphasis added), also found at Legislative History at 144 (Bromberg Opp Decl, <u>Exhibit E</u>) at 000003.

Congress appears to have envisioned that the WARN Act would allow for multiple violations when there are multiple employment losses without proper notice.[150]

Congress further knew how to cap the damages for each violation,[151] if that is what Congress wanted to do. Just as Congress reduced damages for a single violation from 180 days to 60 days, so too could Congress have capped the cumulative damages for multiple violations, in response to the concerns stated by Senator Fawell – but it did not.

Further, Congress did not include any language capping the cumulative damages for multiple violations or otherwise suggesting that multiple sets of damages for multiple violations were anything but intended. Thus, the fact that Congress intended to, and did, cap damages to 60 days' backpay and benefits for each individual violation, as is the focus of Defendant's Opening Brief, only bolsters Plaintiffs' understanding that Congress intended for there to be no cap on cumulative damages for multiple violations.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully submit that the Court should find that: (1) the Class Members have Article III standing; (2) there is no basis to decertify the Class; (3) the Plaintiffs have standing with respect to the governmental notices; (4) the WARN Acts provide a private right of action for multiple violations of the WARN Acts; (5) the WARN Acts allow for the recovery of a separate set of 60 days of pay and benefits for each violation of the WARN Acts; (6) Defendant has failed to identify any eligible reductions for offsets in the record and no testimony or arguments about offsets should be made to the jury; (7) the legislative

---

[150] *Id.*

[151] 29 U.S.C. § 2104; *see also* Remarks by Senator Metzenbaum, Legislative History at 507 (Bromberg Opp Decl, <u>Exhibit E</u>) at 000020.

history supports a finding that the WARN Acts can be violated multiple times and a separate set

of damages is permitted for each violation; and, (8) any other and further relief that the Court

deems just and proper.

Dated: September 3, 2025

/s/ *Brian L. Bromberg*
Brian L. Bromberg

<u>Attorneys for Plaintiffs</u>

Brian L. Bromberg
Bromberg Law Office, P.C.
295 Madison Ave, 22nd Floor
New York, NY 10017
Tel: (212) 248-7906
Email: brian@bromberglawoffice.com

Evan Brustein
Brustein Law PLLC
299 Broadway, Suite 800
New York, NY, 10007
Tel: (212) 233-3900
Email: evan@brusteinlaw.com

Maya Risman
Shannon Barry
Risman & Risman, P.C.
233 Broadway
Suite 2707
New York, NY 10279
Tel: 212-233-6400
Email: mrisman@risman-law.com
Email: sbarry@risman-law.com