UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SELENA STALEY, VIVIAN HOLMES, and OLIVE IVEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>HOTEL 57 SERVICES, LLC,<br><br>Defendant. | 22-cv-6781 (JSR)<br><br>OPINION & ORDER |

JED S. RAKOFF, U.S.D.J.:

As we all know, capitalism can be cruel, but its rigors may be reduced by ameliorative legislation. In 2014, Congress enacted the Worker Adjustment and Retraining Notification Act – known as the "WARN" Act – in order to assure workers who were the subject of mass layoffs that they would be given sufficient time and information to try to ease their predicaments. Among other things, the Act provided that workers whose employers planned, not to fire them, but to furlough them for more than six months as a result of a contemplated plant closing or mass layoff involving at least 50 permanent workers, had to give the workers 60 days advance notice of such a closing or layoff so as to provide such "workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs," etc. 30 CFR § 639.1(a), "Purpose of WARN." This 60-day advance notice was

1

in most cases mandatory, and "[a]n employer **shall not** order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order . . . to each" affected employee. 29 U.S.C. § 2102(a); (a)(1) (emphasis added). Notice was also required to be given to certain state and local officials or entities, and indeed many states, including New York, subsequently enacted their own state WARN Acts. (While both the New York State and the federal WARN Acts are the subject of this instant lawsuit, and are different in a number of respects, for purposes of this Opinion and Order there are no significant differences between them that affect the Court's final ruling below, and so focus will be on the federal act.)

Interestingly, Congress, while empowering the Secretary of Labor to "prescribe such regulations as may be necessary to carry out this Act," 29 U.S.C. § 2107(a), expressly vested enforcement of the WARN Act in "each aggrieved employee who suffers an employment loss as a result of such closing or layoff" 29 U.S.C. § 2104(a)(1). Such an employee, if not provided the required 60-day advance notice, was entitled to sue in federal court for up to 60 days back pay. 29 U.S.C. § 2104(a)(1)(A). For example, if 50 or more employees were peremptorily laid-off in a plant closing without the required 60 days' notice, and the layoff was expected to last more than six months (part of the definition of "employment loss"), each of these 50 employees could sue for the "back pay"

they would have otherwise received if the proper notice had been timely given 60 days before their layoff. Moreover, the WARN Act expressly provided that "[a] person seeking to enforce such liability . . . may sue either for such person or for other persons similarly situated, or both," i.e., a class action. 29 U.S.C. § 2104(a)(5).

Congress realized that there might be occasions when notice could not reasonably be given 60 days before a plant closing, and thus provided, among other exceptions, that "[n]o notice under this chapter shall be required if the plant closing or mass layoff is due to any form of natural disaster, such as a flood, earthquake, or the drought currently ravaging the farmlands of the United States." 29 U.S.C. 2102(b)(2)(B). Somewhat more obliquely, the Act also provides that "[a]n employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." Id. at 2102(b)(2)(A).

Along came the coronavirus pandemic. The history of that scourge as relevant to this case is set forth in the Court's previous Opinion & Order of March 31, 2025, dealing with certain parties' motions for summary judgment. See ECF No. 149 (the "Summary Judgment Opinion"). In brief, on March 7, 2020, New York State Governor Cuomo declared a state-wide public health

3

emergency, followed very soon after by a similar nation-wide declaration by President Trump. About two weeks later, the Four Seasons Hotel New York (the "Hotel") suspended much of its services and many of its employees, but with the stated expectation, communicated in a letter to the employees, of resuming services in a few weeks. However, as the pandemic worsened, there were both further suspensions and further letters, each pushing the reopening date further into the summer. Finally, on August 5, 2020, the Hotel, having by then pretty much closed down, issued a letter to approximately 464 employees, which it characterized as a "notice . . . pursuant to the WARN Act," that stated that the employees' "temporary" layoffs were now being extended indefinitely "due to unforeseen business circumstances." See Summary Judgment Opinion at 6-7. Although this notice did not fully comply with all requirements of a complete WARN Act notice, nonetheless, in terms of timeliness, as this Court previously ruled, it was timely in light of the "quintessentially unforeseen business circumstances" that accompanied the rapid spread of the coronavirus, and the rapid increase in governmentally-imposed and/or business-necessitated restrictions and limitations that proceeded apace through the summer of 2020. Id. at 33. For this and other reasons, the Court concluded in its Summary Judgment Opinion "that the Hotel's failure to comply with the statutory notice periods was exempted under the federal and state WARN Acts." Id.

4

However, this was not the end of the story. The WARN ACT notice of August 5, 2020 expressly told each employee that because of the travel and tourism disruptions stemming from the pandemic, "the Four Seasons Hotel New York will continue your temporary layoff which began on 3/21/2020 for an as yet undetermined number of months." See ECF No. 97, Exhibit E, at 1. As the Court previously held, taking the evidence most favorably to plaintiffs, this created a reasonable expectation on the part of the employees that their furlough would end once the pandemic had moderated to the point that the hotel could be expected to re-open. See Summary Judgment Opinion at 37. And indeed, there is evidence that plaintiffs have indicated they would have introduced at the forthcoming trial of this case (which had been scheduled to begin September 10, 2025) that, after the lifting of the state and federal pandemic emergency orders in May 2023, many hotels similarly situated to the Four Seasons Hotel New York, and with which the Hotel itself normally considers itself rightly classed, began to re-open,. By contrast, the Four Seasons Hotel New York did not re-open until November 2024.

The reason, again taking the evidence most favorably to the plaintiffs, was that a decision had been reached by the Hotel, at least by June 25, 2021, to undertake major renovations of the Hotel, which began even before the pandemic was over. See Summary Judgment Opinion at 37. And there is substantial evidence, which

5

a jury might have credited at the forthcoming trial, that at some point the Hotel knew that this renovation work would require the Hotel to remain closed well beyond the point where the lifting of pandemic restrictions would otherwise permit its reopening. If so, as the Court previously held, the Hotel was required to issue a new WARN Act notice, so that employees could understand that their previous reasonable expectations that the Hotel would reopen and they could resume employment shortly after the pandemic subsided, was no longer accurate. Id. at 37.

However, no such additional WARN Act notice was ever issued. Which brings us to the matter at hand. In what way, if any, were the Hotel employees harmed by the Hotel's failure to issue this second notice? While this question was only somewhat belatedly raised by the remaining defendant in this case, Hotel 57 Services, LLC (the Hotel's employer of record and the entity responsible for its WARN Act compliance), it is a question of jurisdictional importance and thus cannot be ignored by the Court. See TransUnion LLC v. Ramirez, 594 U.S. 413, 430-31 (2021); Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). Most particularly, in the recent case of Guthrie v. Rainbow Fencing, Inc., 113 F.4th 300 (2d Cir. 2024), the Second Circuit concluded that even though a plaintiff has been deprived of information required by law to be provided to her, she does not have standing to seek relief in federal court

unless she can show that she has suffered an actual injury-in-fact from the deprivation. Id. at 308-09.

In an ordinary WARN Act case, this can often be shown, since, as noted, the Act mandates that employers must continue to employ their regular employees for at least 60 days after the employees are given the WARN Act information, failing which they can sue the employer for up to the 60 days of back pay, that they would have received if the employer had complied with the Act's mandated timing. In effect, the employees have been deprived of the up-to-60 days of ordinary wages if the employer fails to meet the Act's timeliness requirements. But in the instant case, the otherwise untimely issuance of the original notice was (as already determined by this Court) legally permissible under the untimeliness-exceptions provided in the statute. The only wrong the Hotel now stands accused of is failing to issue a second WARN Act notice providing the further information indicating that there were new reasons for postponing the recall of the Hotel's employees going beyond the originally stated reasons related to the pandemic, and that these new reasons, namely, the desire to complete substantial Hotel renovations, would require a further extension of the already-in-place closure.

With those renovations already well underway before the pandemic emergency orders were lifted, it would have been totally unrealistic to expect the Hotel to reopen before they were

7

completed — and the plaintiffs have never claimed otherwise. But this does not erase the obligation of the Hotel to correct the now-false impression created by its prior WARN Act notice that it was just the pandemic that was keeping the Hotel closed and that the long-furloughed employees could reasonably expect to return to work at last once the pandemic was effectively over. Providing truthful information to laid-off employees is a primary purpose of the WARN Act, for how can they otherwise know how best to organize their lives? Thus, when circumstances render an earlier WARN Act notice no longer accurate, a new notice is required to make employees aware of the new decisions being made and the consequences thereof for the long-suffering furloughed employees.

Nevertheless, the employees' defeated expectations, and the defendant's failure to supplement or supplant a prior no-longer-fully-accurate WARN Act notice in light of new factors requiring new scheduling, do not constitute the kind of concrete, immediate, personal injury-in-fact giving rise to standing under Spokeo, TransUnion, and Guthrie. Here, as in Guthrie, there is no indication that these informational derelictions caused specific economic loss to any already-furloughed employees, let alone to the entire class.

Indeed, after raising this issue some weeks ago, the defendant challenged the plaintiffs to come forward with a single specific instance of where any member of the class of employees in this

8

case had actually suffered any economic or similarly cognizable harm from not receiving the required second WARN Act notice in this case. In all the subsequent voluminous submissions on this issue, plaintiffs have failed to do so. Rather, in addressing this challenge, plaintiffs contend that the backpay and benefits authorized by the WARN Act constitute "classic pocketbook injury sufficient to give them standing." Plaintiffs' Supp. Opp. Pretrial Memorandum of Law, at 4. They also argue, in conclusory fashion, that all the class members have suffered at least "employment loss," as that term is defined by the WARN Act. Id. at 2-3. But these contentions are misplaced. As explained above, when a business first closes without proper WARN notice, the failure can create both an injury-in-fact and an injury-in-law because, with timely notice, employees would have received an additional 60 days of pay and benefits. Here, by contrast, with the employees having already been furloughed and having received a prior WARN Act notice, the failure to supply further information in the form of a further WARN Act notice, though in this Court's view required, did not cause any additional loss of pay. And so, while the statute speaks of "backpay," here, any recovery for the failure to file the second WARN Act notice would in fact be in the nature of a statutory penalty for that failure, rather than an actual

compensation for lost pay. That may establish an injury-in-law, but it does not amount to an injury-in-fact.[1]

It follows that plaintiffs' action must be dismissed for want of standing. TransUnion, 594 U.S. at 431 ("A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'"). The Court is not happy about this result, since the WARN Act, by leaving it to injured employees to enforce the Act, seems to have unintentionally created a situation in which there will sometimes be no one left to ensure that employers will be forced to amend or supplement original WARN Act notices that have become inaccurate or misleading because of subsequent acts or decisions by the employers. Nevertheless, the Court is obliged to apply the aforesaid rulings of the higher courts.

Accordingly, this action is hereby dismissed with prejudice, Clerk to enter final judgment.

---

[1] It is no defense that courts have found Article III standing in WARN Act cases even after TransUnion. In Lavigne-Soucie v. Blue Max Trucking, Inc., a case that the employees rely upon, the plaintiff alleged a concrete injury-in-fact: he was laid off without required advance notice and thus deprived of unpaid wages and accrued benefits he otherwise would have received. 2023 WL 8603025, at *1-3 (W.D.N.C. Dec. 12, 2023). By contrast, the Hotel's continued closure here deprived plaintiffs of no additional pay or benefits. For the same reason, plaintiffs' reliance on cases under the Fair Labor Standards Act ("FLSA") is misplaced. FLSA claims involve recovery of actual wages that employees earned but were unlawfully withheld.

SO ORDERED.

New York, NY

September __4__, 2025

                                          JED S. RAKOFF, U.S.D.J.